# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Rev. GEORGE P. BYRUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-02102 (RJL) |
| | ) | |
| DONALD C. WINTER | ) | |
| In his Official Capacity as Secretary, | ) | |
| DEPARTMENT OF THE NAVY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendant hereby
moves the Court to dismiss plaintiff's Complaint with prejudice, for the reasons set forth in the
accompanying Memorandum of points and authorities in support of this motion.

Dated: March 19, 2007                Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director

**/s/ Kathryn L. Wyer**
KATHRYN L. WYER
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Room 7218
Washington, D.C.  20001
Telephone: (202) 616-8475 / Fax: (202) 616-8202
kathryn.wyer@usdoj.gov
*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Rev. GEORGE P. BYRUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-02102 (RJL) |
| | ) | |
| DONALD C. WINTER | ) | |
| In his Official Capacity as Secretary, | ) | |
| DEPARTMENT OF THE NAVY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director

**/s/ Kathryn L. Wyer**
KATHRYN L. WYER
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Room 7218
Washington, D.C. 20001
Telephone: (202) 616-8475 / Fax: (202) 616-8202
kathryn.wyer@usdoj.gov
*Attorneys for Defendant*

## TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY AND REGULATORY FRAMEWORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.      Convening and Operation of Selective Early Retirement Boards . . . . . . . . . . . . . 3

    II.     The Board for Correction of Naval Records  . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    III.    1999 Navy EO Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    IV.    Statutory Restrictions on Judicial Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          A.      The Administrative Procedure Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          B.      10 U.S.C. § 1558 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    I.      TO THE EXTENT PLAINTIFF SEEKS TO CHALLENGE HIS SELECTION
          BY THE 1996 SERB, JUDICIAL REVIEW IS PROHIBITED BY
          PLAINTIFF'S FAILURE TO EXHAUST HIS ADMINISTRATIVE
          REMEDIES UNDER 10 U.S.C. § 1558(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          A.      10 U.S.C. § 1558 Applies to This Action Because Plaintiff's Claim
                Involves A Selection Board Recommendation and Was Filed After
                December 28, 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          B.      Plaintiff Failed to Exhaust Administrative Remedies As Required
                To Challenge a Selection Board Action or Recommendation . . . . . . . . . .16

    II.     TO THE EXTENT PLAINTIFF'S CLAIM IS NOT SUBJECT TO
          THE EXHAUSTION REQUIREMENT IN § 1558, IT IS TIME-BARRED

BECAUSE IT ACCRUED MORE THAN SIX YEARS BEFORE THE DATE HIS COMPLAINT WAS FILED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

A.    Absent § 1558(f)(1)'s Exhaustion Requirement, the Statute of Limitations on Plaintiff's Claim Began to Run On the Date of His Early Retirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

B.    Plaintiff's Petitions to the BCNR Did Not Toll the Statute of Limitations Because They Were Not Mandatory Prerequisites to Filing a Constitutional Challenge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

C.    There Is No Other Basis for Tolling the Statute of Limitations . . . . . . . . . .22

III.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

A.    Judicial Review of the BCNR Decisions Cannot Reach the Validity of the Underlying SERB Decision or the Constitutionality of the EO Provision in the 1996 SERB Precept . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

B.    Plaintiff's Complaint Fails to State a Claim On Any Other Basis . . . . . . . 27

IV.    IF NOT DISMISSED ON OTHER GROUNDS, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS DUPLICATIVE OF HIS ONGOING LITIGATION IN ANOTHER CASE INVOLVING THE SAME CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

<u>PAGE(S)</u>

Adair v. England,
    183 F. Supp. 2d 31 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 26

Aftergood v. CIA,
    225 F. Supp. 2d 27 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Am. Bioscience, Inc. v. Thompson,
    269 F.3d 1077 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Berkley v. United States,
    48 Fed. Cl. 361 (Fed. Cl. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Bittner v. Secretary of Defense,
    625 F. Supp. 1022 (D.D.C. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Cadle Co. v. Whataburger of Alice, Inc.,
    174 F.3d 599 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Califano v. Sanders,
    430 U.S. 99 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Carter v. Department of the Navy,
    No. 05-0775, 2006 WL 2471520 (D.D.C. Aug. 24, 2006) . . . . . . . . . . . . . . . . . . . . . . 22

Chevron U.S.A. Inc. v. Natural Resources Defense Council,
    467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 28

Christensen v. United States,
    50 Fed. Cl. 19 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Christian v. United States,
    337 F.3d 1338 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Coit Independence Joint Venture v. FSLIC,
    489 U.S. 561 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Columbia Plaza Corp. v. Security National Bank,
    525 F.2d 620 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Comm. for GI Rights v. Callaway,
        518 F.2d 466 (D.C. Cir.1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

DePippo v. Chertoff,
        453 F. Supp. 2d 30 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Dibble v. Fenimore,
        339 F.3d 120 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Dickson v. Sec'y of Defense,
        68 F.3d 1396 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Dodson v. Dep't of Army,
        988 F.2d 1199 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

DSE, Inc. v. United States,
        169 F.3d 21 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

EEOC v. St. Francis Xavier Parochial Sch.,
        117 F.3d 621 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Felter v. Norton,
        No. 06-5092, 2007 WL 120302 (D.C. Cir. Jan. 19, 2007) . . . . . . . . . . . . . . . . . . . . 18

Fontana v. Caldera,
        160 F. Supp. 2d 122 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Handy v. Shaw, Bradford, Veilleux & Roth,
        325 F.3d 346 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 28, 31, 32

Harris v. FAA,
        352 F.3d 1006 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Homer v. Roche,
        226 F. Supp. 2d 222 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Hurick v. Lehman,
        782 F.2d 984 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

Isenbarger v. Farmer,
        463 F. Supp. 2d 13 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Kalodner v. Bodman,

No. 06-818, 2006 WL 3704783 (D.D.C. Dec. 18, 2006) . . . . . . . . . . . . . . . . . . .. . . . . 29, 31

Kendall v. Army Bd. for Correction of Military Records,
     996 F.2d 362 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Kreis v. Sec'y of Air Force,
     866 F.2d 1508 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 23, 24, 26

Kyriakopoulos v. George Washington Univ.,
     866 F.2d 438 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

Lebrun v. England,
     212 F. Supp. 2d 5 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Levant v. Roche,
     384 F. Supp. 2d 262 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Lewis v. United States,
     67 Fed. Cl. 158 (Fed. Cl. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27

Lozowski v. Mineta,
     292 F.3d 840 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

Marshall County Health Care Auth. v. Shalala,
     988 F.2d 1221 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Martinez v. United States,
     333 F.3d 1295 (Fed. Cir. 2003) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Miller v. Dep't of Navy,
     No. 05-5343, 2007 WL 120306 (D.C. Cir. Jan. 19, 2007) . . . . . . . . . . . . . . . . . . . . . . 11

Myers v. United States,
     50 Fed. Cl. 674 (Fed. Cl. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

Nat'l Family Planning & Reproductive Health Ass'n,
     468 F.3d 826, 831 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Nelson v. Geringer,
     295 F.3d 1082 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Nihiser v. White,
     211 F. Supp. 2d 125 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Oxbow Energy, Inc. v. Koch Indus., Inc.,
    686 F. Supp. 278 (D. Kan. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Piersall v. Winter,
    435 F.3d 319 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rogers v. Johnson-Norman,
    466 F. Supp. 2d 162 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Role Models America, Inc. v. Harvey,
    459 F. Supp. 2d 28 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sanders v. McCrady,
    537 F.2d 1199 (4th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Sanders v. United States,
    594 F.2d 804 (Ct. Cl. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Saunders v. Caldera,
    193 F. Supp. 2d 1 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Sinclair v. United States,
    66 Fed. Cl. 487 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Spannaus v. Dep't of Justice,
    824 F.2d 52 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Stanton v. Dist. of Columbia Court of Appeals,
    127 F.3d 72 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Sutcliffe Storage & Warehouse Co. v. United States,
    162 F.2 849 (1st Cir. 1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Tolson v. United States,
    732 F.2d 998 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Tri-State Hosp. Supply Corp. v. United States,
    341 F.3d 571 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Haytian Republic,
    154 U.S. 118 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Velikonja v. Ashcroft,

        355 F. Supp. 2d 197 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Von Hoffburg v. Alexander,
        615 F.2d 633 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

Watson v. Ark. Nat'l Guard,
        886 F.2d 1004 (8th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24,
        751 F.2d 721 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

White v. Sec'y of the Army,
        629 F. Supp. 64 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Wilkins v. United States,
        279 F.3d 782 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

Zerilli v. Evening News Ass'n,
        628 F.2d 217 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## STATUTES

5 U.S.C. §§ 701-706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

5 U.S.C. § 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . 6, 19

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

10 U.S.C. § 611 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

10 U.S.C. § 628 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16, 24

10 U.S.C. § 638 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

10 U.S.C. § 638a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

10 U.S.C. § 1552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 6, 9, 10, 17, 20

10 U.S.C. § 1558 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 8, 15 16, 17, 18, 21, 23

28 U.S.C. § 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18, 19, 22

Pub. L. 107-107, Div. A, Title V, § 503(c), 115 Stat. 1084 (Dec. 28, 2001) . . . . . . . . . . . . . . . 7, 15

## **REGULATIONS**

32 C.F.R. § 700.1126 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

32 C.F.R. §§ 723.1 -.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

32 C.F.R. § 723.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

32 C.F.R. § 723.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 25

32 C.F.R. § 723.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

32 C.F.R. § 723.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Department of Defense Directive ("DODD") 1332.32 (Jan. 22, 1982) . . . . . . . . . . . . . . . . . . . . 3

SECNAVINST 5350.16 (June 28, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 27

SECNAVINST 5350.16A (Dec. 18, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . 5

SECNAVINST 5354.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## INTRODUCTION

Plaintiff retired from the United States Navy Chaplain Corps on August 1, 1996, pursuant to the recommendation of the Navy's Fiscal Year ("FY") 1996 Selective Early Retirement Board ("SERB"). Plaintiff's selection by the 1996 SERB went unchallenged for nearly six years. Since 2002, however, Plaintiff has sought to overturn the SERB's decision in a number of different fora and under a number of different theories. Beginning in 2002, Plaintiff filed a series of petitions with the Board for Correction of Naval Records ("BCNR"), requesting correction of his record based on various alleged defects with the 1996 SERB. Each of these petitions was denied. In 2006, Plaintiff filed a challenge to the SERB decision on constitutional and statutory grounds, as a named plaintiff in a putative class action, Gibson et al. v. United States Navy et al., No. 06-1696, a case that is currently pending before Judge Urbina in this court. Now, Plaintiff has filed this separate action, this time purporting to appeal the BCNR decisions. In essence, though, Plaintiff simply challenges the 1996 SERB decision on constitutional grounds additional to those raised in his first lawsuit. The fundamental allegation that Plaintiff raises before this Court is that an equal opportunity provision that was applicable at the time of his 1996 SERB was facially invalid under the Equal Protection Clause and that his selection by the SERB is therefore void.

Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Through his application to the BCNR for correction of his military record, and now through this action, Plaintiff is attempting to have his 1996 SERB selection overturned while bypassing the statutory requirements that apply to SERB challenges. In order to raise a proper challenge to his selection, Plaintiff should have asked the Secretary of the Navy to convene a special board under 10 U.S.C. § 1558, and he should have initiated any court challenge to the

SERB within the six-year statute of limitations period set forth in 28 U.S.C. § 2401(a).

Furthermore, since Plaintiff is already involved in a court action challenging his SERB selection

in Gibson, he should have raised the Equal Protection issue he raises here in that case.  Instead,

Plaintiff is attempting to use his BCNR application to do an end run around these statutory

requirements and the pending Gibson litigation and bring a separate claim that he could not

otherwise bring.

   However, the BCNR, which operates as an administrative means of providing equitable

relief in individual circumstances, is not a proper forum for raising the constitutional claim that

Plaintiff seeks to raise, and judicial review of the BCNR's decisions simply cannot reach the

question of whether the equal opportunity provision in an 11-year-old SERB precept was

unconstitutional on its face.  Moreover, Plaintiff's involvement in BCNR proceedings over the

past four years did not toll the statute of limitations on his constitutional claim.  In addition, the

fact that Plaintiff sought correction of his record from the BCNR based on the constitutional

issue he raises here does not distinguish his cause of action here from the one raised in Gibson

since Plaintiff also alleged his SERB selection was caused by unconstitutional religious

discrimination – which is the issue involved in Gibson – before the BCNR.

   This Court lacks jurisdiction over this action because Plaintiff has failed to exhaust the

administrative remedies available for challenging a SERB recommendation, and his

constitutional challenge is barred by the statute of limitations.  Moreover, Plaintiff's allegation

that the BCNR decisions are contrary to law fails to state a claim for which relief can be granted,

and the present lawsuit raises the same cause of action raised in Plaintiff's first lawsuit, in

violation of the rule against claim splitting.[1]

## STATUTORY AND REGULATORY FRAMEWORK

### I.    Convening and Operation of Selective Early Retirement Boards

The Department of the Navy is authorized to convene a selection board "[w]henever [its] needs . . . require," for the purpose of recommending officers for selective early retirement in accord with the statutory eligibility criteria set forth in 10 U.S.C. §§ 638 and 638a.  10 U.S.C. § 611(b).  These boards, or SERBs, are convened, and subsequently operate, pursuant to regulations prescribed by the Secretary of Defense.  Id. §§ 611(c), 638(e).   The governing regulation at the time of Plaintiff's selection was Department of Defense Directive ("DODD") 1332.32 (Jan. 22, 1982).[2]  This Directive provided that "[e]arly retirement shall be used as a means of managing an officer grade imbalance or strength overage within a competitive category" of military service.  DODD 1332.32(D).  Thus, when the Secretary of a military department decides to initiate an early retirement selection process, "[s]eparate [SERBs] shall be convened for each grade and competitive category," and the Secretary must provide each SERB with a list of the names of the officers on active duty in the relevant grade and competitive category, and with other necessary information.  Id. 1332.32(E).

---

[1]Based on the belief that the cause of action in this case is identical to that raised in Gibson, Defendant has filed a Notice of Related Case pursuant to Local Civil Rule 40.5.  However, because there are other grounds warranting dismissal of Plaintiff's action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the Court may, in its discretion, address those grounds before it is determined whether this action should be transferred to the docket of Judge Urbina.

[2]DODD 1332.32 was amended and reissued on September 30, 1996, and again on December 27, 2006.  All references herein are to the 1982 version unless otherwise indicated.

## II.     The Board for Correction of Naval Records

The BCNR is authorized to act on behalf of the Secretary of the Navy by correcting Naval records.  10 U.S.C. § 1552(a); 32 C.F.R. § 700.1126(c).  This authority is limited to situations where the BCNR determines that it is "necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1); see 32 C.F.R. § 700.1126(a).   Applications for correction of a naval record are to be made within three years of the time the alleged error or injustice is discovered, but the BNCR may excuse an untimely application "in the interest of justice."  10 U.S.C. § 1552(b). Under the Navy regulations governing BCNR procedures, 32 C.F.R. §§ 723.1 -.11, the applicant bears the burden of providing "substantial evidence" to establish "the existence of probable material error or injustice."  Id. § 723.3(e)(2).  The BCNR is authorized to take final action on applications for correction in most circumstances, but if it is not unanimous in its recommendation, the Secretary of the Navy must make the final determination.  Id. § 723.6(e)(1)(ii).  Filing an application for correction of record does not stay any other proceedings with respect to the applicant.  Id. § 723.3(d).

If a service member's application for correction of a naval record is denied, a petition for reconsideration "will be granted only upon presentation by the applicant of new and material evidence or other matter not previously considered."  Id. § 723.9.  Evidence qualifies as new and material if it was "not previously considered by the Board and not reasonably available to the applicant at the time of the previous application," and is "likely to have a substantial effect on the outcome."  Id.

## III.     1999 Navy EO Instruction

Plaintiff's Complaint also cites and quotes isolated excerpts from SECNAVINST

5350.16. This instruction was not in effect at the time of Plaintiff's early retirement but was originally issued on June 28, 1999.[3] See id. The instruction sets forth the responsibilities of Naval officers in administering the Navy's equal opportunity policy, and the process by which individual acts of unlawful discrimination by Naval military personnel are to be reported and investigated. Id. 5350.16(7). In particular, the instruction directs that any such incidents are to be reported to the appropriate authorities in accord with SECNAVINST 5354.1. The latter instruction specifically details the procedure for processing such complaints, instructing that complaints should be made within sixty days of the offending incident. SECNAVINST 5354.1(5)(b).[4]

## IV.    Statutory Restrictions on Judicial Review

### A.    The Administrative Procedure Act

The availability and scope of judicial review of military decisions is, at one level, governed by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Dickson v. Sec'y of Defense, 68 F.3d 1396, 1401 (D.C. Cir. 1995).[5] The APA generally allows review if the

---

[3]On December 18, 2006, SECNAVINST 5350.16 was superseded by SECNAVINST 5350.16A.

[4]Plaintiff does not allege in his Complaint that he followed the procedure for filing a complaint under this instruction, nor does he allege that this instruction applies in any way to the FY 1996 SERB decision or to any subsequent decisions of the BCNR with respect to Plaintiff's application for correction of his military record.

[5]Notably, Plaintiff fails to cite the APA in his Complaint; however, as indicated in Dickson, there is no question that the APA would govern this action. Plaintiff also fails to allege that the federal government's sovereign immunity has been waived for purposes of this action. The plaintiff in an action against government officials acting in their official capacities bears the burden of establishing a statutory waiver of sovereign immunity. See Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003). The only bases for jurisdiction

decision is a "final agency action." 5 U.S.C. § 704. There are exceptions, however, where "a particular statute 'preclude[s] judicial review' or if 'agency action is committed to agency discretion by law.'" <u>Dickson</u>, 68 F.3d at 1401 (quoting 5 U.S.C. § 701(a)(1), (2)).

The APA itself allows only a limited scope of review, restricting a court's ability to set aside agency action to those situations specified in 5 U.S.C. § 706(2). In the context of military correction board decisions, APA review takes into account the fundamental principle that "'judges are not given the task of running the military.'" <u>Piersall v. Winter</u>, 435 F.3d 319, 322 (D.C. Cir. 2006) (quoting <u>Kreis v. Sec'y of Air Force</u>, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (alterations omitted)). This principle together with the broad discretion that 10 U.S.C. § 1552 grants to the Secretary of a military department, acting through its board of correction, requires an unusually deferential form of review in the correction board context. <u>Kreis</u>, 866 F.2d at 1514 ("While the broad grant of discretion implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's determination."). "It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act '*when he considers it necessary* to correct an error or remove an injustice,'" 10 U.S.C. § 1552(a) (emphasis added), than it is if he is required to act whenever a court determines that certain objective conditions are met." <u>Kreis</u>, 866 F.2d at 1514.

This deference recognizes that the decisionmaking process of the Secretary of a military

_____

asserted in Plaintiff's Complaint are 28 U.S.C. § 1331, 10 U.S.C. § 1552, and the Fifth Amendment. Compl. ¶ 1. None of these provides a waiver of sovereign immunity. The only statutory waiver that is possibly applicable is that contained in the APA, 5 U.S.C. § 702.

department, as implemented through a correction board such as the BCNR, may involve a balancing of considerations that are "well within [the Secretary's discretion]" and appropriately "free of judicial second-guessing." Id. In addition, to the extent that the correction board's decision rests on its interpretation of statutes and regulations, this court has held that Chevron deference applies. See Fontana v. Caldera, 160 F. Supp. 2d 122, 128-29 (D.D.C. 2001).

### B.     10 U.S.C. § 1558

In 2001, Congress enacted 10 U.S.C. § 1558, which now governs judicial review of actions of military boards for selective early retirement (SERBs), similarly to the operation of 10 U.S.C. § 628 with respect to military promotion boards. See Christian v. United States, 337 F.3d 1338, 1348 (Fed. Cir. 2003); Christensen v. United States, 50 Fed. Cl. 19, 24 & n.9 (2004). Section 1558 applies "with respect to any [challenge to an action of a selection board that is] pending on or after Dec. 28, 2001." Pub. L. 107-107, Div. A, Title V, § 503(c), 115 Stat. 1084 (Dec. 28, 2001). Just as § 628 limits a court's jurisdiction to consider claims based on a service member's failure to be selected for promotion by a promotion board, § 1558 limits a court's jurisdiction to consider claims based on the action or recommendation of a SERB. Compare 10 U.S.C. § 628(h), with 10 U.S.C. § 1558(f)(1). This provision imposes statutory restrictions on judicial review beyond those found in the APA. See 5 U.S.C. § 701(a)(1) (indicating that the APA governs judicial review except to the extent review is precluded by other statutes).

Under § 1558, in the context of SERB actions or recommendations, judicial review is, first of all, not available "unless the action or recommendation has been first considered by a special board under this section or the Secretary concerned has denied the convening of such a

7

board for such consideration." 10 U.S.C. § 1558(f)(1). Second, where judicial review is

available because the Secretary has decided not to convene a special board, review is limited to

the question of whether the Secretary's decision was "(i) arbitrary or capricious; (ii) not based on

substantial evidence; (iii) a result of material error of fact or material administrative error; or (iv)

otherwise contrary to law." Id. § 1558(f)(2)(A). If a court sets aside the Secretary's decision on

any of these bases, "it shall remand the case to the Secretary concerned, who shall provide for

consideration by a special board." Id. § 1558(f)(2)(B). These restrictions on judicial review do

not limit "the jurisdiction of any court . . . to determine the validity of any law, regulation, or

policy relating to selection boards," or "the authority of the Secretary of a military department to

correct a military record under [§] 1552." Id. § 1558(g).

## FACTUAL AND PROCEDURAL BACKGROUND

In November 1995, the Secretary of the Navy exercised his authority to convene selection

boards by issuing a precept "to consider Commanders, Chaplain Corps for Selective Early

Retirement." Ex. B at 1; AR 00004.[6] The precept directed that seven individuals at the grade of

Commander, within the competitive category of Chaplain Corps, be selected for early

retirement.[7] Id. at 2; AR  00005. The precept instructed the SERB to "consider each officer's

potential for future contributions in both traditional and more specialized assignments and retain

those who have the highest potential for significant further service." Id. Attached to the precept

---

[6]The certified administrative record has been filed in this case. Plaintiff's and other
individuals' social security numbers were redacted where they appear in the record.

[7]This precept was part of a larger selective early retirement implementation in FY 1996
that encompassed other grades and competitive categories. AR 00042-00056.

was Supplemental Guidance which, among other things, contained an equal opportunity provision (hereafter referred to as the "1996 SERB Precept EO Provision"). Compl. ¶ 6; ex. B encl. 2; AR 00092-00096. The FY 1996 SERB that was convened pursuant to this precept selected Plaintiff and six others, out of the twenty-four individuals considered eligible. AR 00007-00008; see Compl. ¶ 4. Plaintiff retired from Navy service on August 1, 1996. Compl. ¶ 4.

Plaintiff first challenged his selection by the 1996 SERB in an application for correction of military record under 10 U.S.C. § 1552, submitted to the BCNR on May 29, 2002. Compl. ¶ 9; see also AR 00001. This petition, which alleged that other eligible candidates for early retirement should have been selected before Plaintiff, was denied on February 1, 2003. AR 00113. Plaintiff petitioned the BCNR for reconsideration on February 13, 2003. AR 00136. The BCNR construed this petition as contending that other eligible chaplains were improperly excluded from consideration for early retirement, and that some of these were excluded based on their faith group. AR 00173. In December 2003, Plaintiff amended this petition, among other things adding the argument that the 1996 SERB precept was unfair because its EO provision "required re-grading of minorities." AR 00182; see AR 00184. The BCNR denied the amended petition for reconsideration on July 23, 2004, substantially concurring with the advisory opinion it had sought and obtained, which concluded that the precept did not permit re-grading of minority candidates, and no re-grading had occurred at Plaintiff's SERB. AR 00263-00264, 00292-00293. Plaintiff sought reconsideration again on August 28, 2004, this time alleging that SERB members were improperly selected based on religious affiliation, and that SERB eligibility was improperly determined. AR 00297, 00301. This petition for reconsideration was denied on

9

March 31, 2005.  AR 00652.

Plaintiff's counsel then submitted a letter on May 2, 2006, which the BCNR construed as another petition for reconsideration.  In this letter, Plaintiff contended that the 1996 SERB Precept EO Provision granted minority personnel a preference in violation of the Fifth Amendment's Equal Protection Clause.  AR 00655.  As relief for this alleged defect in the 1996 SERB, Plaintiff asked that the Navy convene "a Special Selection Board to consider him for promotion to Captain."  AR 00655.  The BCNR sought an advisory opinion on this claim.  The opinion rejected the claim, noting that 10 U.S.C. § 1552 places the burden on the petitioner to demonstrate material error or injustice in the military record and that the text of the precept's Supplemental Guidance did not constitute new evidence that could warrant reconsideration of the BCNR's previous findings that there was no material unfairness in Plaintiff's selection by the 1996 SERB.  AR 00680-00681.  The BCNR denied Plaintiff's petition on December 11, 2006.[8] AR 00690; see Compl. ¶¶ 10-13.

Meanwhile, on April 28, 2006 – four days before Plaintiff's attorney in this case submitted Plaintiff's final petition for reconsideration to the BCNR – Plaintiff, along with other current and former Navy chaplains, filed a Complaint in the U.S. District Court for the Northern District of Florida, Gibson et al. v. United States Navy et al., No. 06-187.  The Complaint in Gibson, a putative class action, alleged that certain Navy actions, including Plaintiff's selection by the 1996 SERB, were the product of religious discrimination in violation of the First and Fifth

---

[8]While two of the three members of the BCNR panel considering this petition recommended denial, one member recommended further consideration of Plaintiff's claim.  AR 00691-00692.  The Secretary of the Navy, acting through the Assistant General Counsel for Manpower and Reserve Affairs, approved the majority's recommendation.  AR 00693.

Amendments and the Religious Freedom Restoration Act.  Compl., <u>Gibson</u>, No. 06-187 (N.D. Fla. filed Apr. 28, 2006) [<u>Gibson</u> docket no. 1].  On September 29, 2006, upon a motion by the Navy defendants, <u>Gibson</u> was transferred to the U.S. District Court for the District of Columbia based on the similarity between <u>Gibson</u> and two other cases pending before Judge Urbina of the D.C. District Court – <u>CFGC v. Winter</u>, No. 99-2945, and <u>Adair v. Winter</u>, No. 00-566.  September 29, 2006 Order in <u>Gibson</u> at 1 (D.D.C. No. 06-1696).  Plaintiff and his fellow putative class members appealed the transfer to the Eleventh Circuit but were rejected; they then filed a petition for certiorari to the United States Supreme Court.

During this time, the Navy defendants sought to consolidate <u>Gibson</u> with <u>CFGC</u> and <u>Adair</u> but were initially unable to file a motion to consolidate because the latter two cases were stayed pending a decision by the U.S. Court of Appeals for the D.C. Circuit in <u>Miller v. Department of the Navy</u>, No. 05-5343.  Mot. to Stay, No. 06-1696 (D.D.C. Nov. 3, 2006) [<u>Gibson</u> docket no. 4].  On November 7, 2006, upon joint motion by the parties, <u>Gibson</u> was stayed pending resolution of the Supreme Court petition and the consolidation issue.  November 7, 2006 Order (D.D.C. No. 06-1696).  The Supreme Court petition was denied on January 16, 2007.  The D.C. Circuit issued an opinion in <u>Miller</u> on January 19, 2007.  <u>Miller v. Dep't of Navy</u>, No. 05-5343, 2007 WL 120306 (D.C. Cir. Jan. 19, 2007).  The stays in <u>CFGC</u> and <u>Adair</u> were then lifted, and the Navy defendants moved to consolidate <u>Gibson</u> for pretrial purposes with those two cases.  [<u>CFGC</u> docket no. 243; <u>Adair</u> docket no. 182].

On March 1, 2007, the stay in <u>Gibson</u> was also lifted, for the limited purpose of allowing the plaintiffs to file a motion to transfer that case back to the Northern District of Florida.  March 1, 2007 Order in <u>Gibson</u> (D.D.C. No. 06-1696).   The plaintiffs also filed their opposition to

11

consolidation on the basis that it would interfere with their anticipated motion to transfer.  Mem. at 1-2 (D.D.C. Feb. 21, 2007) [CFGC docket no. 246; Adair docket no. 185].  The Navy defendants responded that, as the Northern District of Florida had already determined that the appropriate venue in Gibson was in the D.C. District Court,  the Court should not allow the plaintiffs' meritless transfer motion to delay consolidation.  Reply at 2 (D.D.C. Mar. 5, 2007) [CFGC docket no. 247; Adair docket no. 186].  The Gibson plaintiffs' motion to transfer was filed on March 15, 2007 and remains pending.

On December 11, 2006, the date that Plaintiff's final petition to the BCNR was denied, and approximately a month after this court issued the stay in Gibson, Plaintiff filed his Complaint in the present action.  The Complaint alleges as its cause of action that "[t]he BCNR's denial of relief was contrary to law."  Compl. ¶ 15.  Although the Complaint suggests that Plaintiff had sought relief from the BCNR "on various grounds," id. ¶ 9, it specifies only one – that the BCNR was asked "to overturn the SERB" because the 1996 SERB Precept EO Provision "constituted illegal reverse racial discrimination."  Compl. ¶ 10.   The Complaint further alleges that, "[w]hen engaged in by the federal government, racial discrimination violates the equal protection component of Fifth Amendment due process."  Id. ¶ 7; see also id. ¶ 12 (quoting letter from Plaintiff's counsel alleging that the EO Provision "violates the equal protection component of Fifth Amendment due process").  The Complaint asks the Court to set aside the BCNR's ruling and to order the Navy to reinstate Plaintiff on active duty, correct his record to omit any indication of the SERB or his retirement, and consider him for promotion to Captain.  Compl. Prayer.

12

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), the court must dismiss any claim over which it lacks subject matter jurisdiction. Because federal courts are courts of limited jurisdiction, the law presumes that any claim lies outside this limited jurisdiction, and "the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." Role Models America, Inc. v. Harvey, 459 F. Supp. 2d 28, 33-34 (D.D.C. 2006). The factual allegations in a plaintiff's complaint "will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim," and material other than these allegations may be considered in determining whether subject matter jurisdiction exists, "so long as [the court] still accepts the factual allegations in the complaint as true." Isenbarger v. Farmer, 463 F. Supp. 2d 13, 18 (D.D.C. 2006).

Under Fed. R. Civ. P. 12(b)(6), the court's decision whether to dismiss for failure to state a claim upon which relief may be granted is based on "the legal sufficiency of the complaint." DePippo v. Chertoff, 453 F. Supp. 2d 30, 32 (D.D.C. 2006). The complaint must "giv[e] the defendant fair notice of the claim and the grounds upon which it rests," and the court should dismiss the complaint if the defendant "can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Id. In determining whether dismissal is warranted for failure to state a claim, a court may consider "'the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice.'" Rogers v. Johnson-Norman, 466 F. Supp. 2d 162, 165 n.3 (D.D.C. 2006) (quoting EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997)). "[T]he court must treat the complaint's factual allegations . . . as true and

13

draw all reasonable inferences therefrom in the plaintiff's favor," but "the court need not accept

as true inferences unsupported by facts set out in the complaint or legal conclusions cast as

factual allegations."  <u>DePippo</u>, 453 F. Supp. 2d at 33.

In the APA context, in determining whether the plaintiff states a claim, the court may rely

on the administrative record as well as any information in the public record without converting

the motion to one for summary judgment, as long as the record is not used to challenge the

factual allegations in the complaint.  <u>Marshall County Health Care Auth. v. Shalala</u>, 988 F.2d

1221, 1226 (D.C. Cir. 1993) ("[T]he district court can consult the [administrative] record to

answer the legal question before the court – in this case whether the agency adhered to the

standards of decision making required by the APA."); <u>see also</u> <u>Am. Bioscience, Inc. v.</u>

<u>Thompson</u>, 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("As we have repeatedly recognized, . . . when

a party seeks review of agency action under the APA, the district judge sits as an appellate

tribunal.  The 'entire case' on review is a question of law.").

## <u>ARGUMENT</u>

This Court should dismiss this action in its entirety.  First, the claim stated in the

Complaint is properly construed as a challenge to the 1996 SERB recommendation that led to

Plaintiff's early retirement, but Plaintiff has failed to exhaust the administrative remedies that he

is statutorily required to pursue before raising such a challenge in court.  Second, to the extent the

exhaustion requirement does not apply, Plaintiff's claim is barred by the six-year statute of

limitations because his constitutional challenge accrued on the date of his early retirement.

Third, to the extent this action requires the Court to review the BCNR decisions denying

14

Plaintiff's petitions for correction of his military record, the Complaint fails to state any cognizable basis for reversing those decisions.  Fourth, Plaintiff's cause of action in this case is duplicative of his claim in the Gibson case filed earlier in 2006, and thus improperly splits a single claim between two judicial proceedings.

I.     **TO THE EXTENT PLAINTIFF SEEKS TO CHALLENGE HIS SELECTION BY THE 1996 SERB, JUDICIAL REVIEW IS PROHIBITED BY PLAINTIFF'S FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES UNDER 10 U.S.C. § 1558(f)**

    A.     **10 U.S.C. § 1558 Applies to This Action Because Plaintiff's Claim Involves A Selection Board Recommendation and Was Filed After December 28, 2001**

As described above, § 1558(f) places restrictions on judicial review of military selection board decisions that supplement the limitations set forth in the APA.  Section 1558(f) applies to the extent that a plaintiff has sought to challenge "an action or recommendation of a selection board," where the plaintiff has filed for judicial review at any time on or after December 28, 2001.  See 10 U.S.C. § 1558(f); Pub. L. 107-107, § 503(c), 115 Stat. 1084.  Here, Plaintiff filed his Complaint on December 11, 2006, well after the date that § 1558 went into effect.  While his Complaint ostensibly seeks review of BCNR decisions, the Complaint also clearly alleges, and the administrative record confirms, that the only issues raised in the BCNR proceedings related to the 1996 SERB that selected Plaintiff for early retirement and to the precept that governed that SERB.  Compl. ¶¶ 4-6, 9-13.  Moreover, the relief that Plaintiff seeks is that his SERB selection be made void by "reinstat[ing] him on active duty" and "correct[ing] his record to show that he was never retired and by expunging all reference to the SERB."  Id. prayer.  There can be no real question that Plaintiff, through this action, is "seeking to challenge an action or recommendation

of a selection board, or an action taken by the Secretary of the military department concerned on the report of a selection board." 10 U.S.C. § 1558(f)(1). Section 1558 therefore applies here.

**B.    Plaintiff Failed to Exhaust Administrative Remedies As Required To Challenge a Selection Board Action or Recommendation**

Under 10 U.S.C. § 1558(f), as a prerequisite to any challenge in court of "an action or recommendation of a selection board," either the selection board's decision must have been reconsidered by a special board, or the Secretary must have denied the convening of a special board for this purpose. Id. § 1558(f)(1). This provision constitutes a statutory exhaustion requirement, and a plaintiff's failure to comply with this requirement deprives the court of jurisdiction over the claims to which the requirement applies. See Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 579 (1989) ("[E]xhaustion of administrative remedies is required where Congress imposes an exhaustion requirement by statute."). Additionally, an agency action does not become "final" for purposes of APA review until any statutorily prescribed administrative appeal mechanisms have been utilized. DSE, Inc. v. United States, 169 F.3d 21, 26 (D.C. Cir. 1999).

Here, Plaintiff does not allege in his Complaint that he ever requested the Secretary of the Navy to convene a special board pursuant to § 1558 in order to reconsider the action or recommendation that was the subject of the original selection board's consideration, nor does he allege that the Secretary ever denied the convening of such a board. The administrative record indicates that the question of whether to convene a special board on this issue was never raised or considered in the course of Plaintiff's successive petitions to the BCNR. Plaintiff did request relief from the BCNR, as he does in his Complaint, in the form of the convening of a special

16

selection board under 10 U.S.C. § 628 in order to consider him for promotion to Captain.  See, e.g., Compl. prayer; AR 00001, 00655.  However, this request is not equivalent to a request for a special board under § 1558 and does not qualify as satisfying § 1558's exhaustion requirement.  Rather than a means of pursuing an administrative appeals process, convening a special selection board to consider Plaintiff for promotion would simply provide him with a form of relief, one to which he is not entitled in any case.[9]

        While a board for correction of military records convened under § 1552 may be designated as a special board by the secretary of a military department, 10 U.S.C. § 1558(b)(1)(B), there is no indication, either in the Complaint or in the administrative record, that the Secretary here made this designation at any point in response to Plaintiff's application for record correction and subsequent petitions for reconsideration.  While § 1558 indicates that its requirements do not affect the authority of the Secretary, acting through the BCNR, to correct military records under § 1552, § 1558 does not suggest that judicial review of a SERB recommendation will become available simply by applying for record correction under § 1552.  If that were the case, the restrictions in § 1558 would be meaningless since anyone wishing to challenge a SERB could simply apply for record correction under § 1552 rather than following the requirements set forth in § 1558.  By the plain language of § 1558, the only means of exhausting administrative remedies for purposes of seeking judicial review of a SERB recommendation is to seek a special board, and applying for correction of one's record is not a

---

        [9]Insofar as Plaintiff requests this same relief in his Complaint, this is outside the scope of what § 1558 allows a court to provide.  See 10 U.S.C. § 1558(f)(2)(B) (indicating that the only relief that Plaintiff could receive is a special board that would reconsider his selection for early retirement).

17

substitute for this requirement.  As indicated, all of the BCNR decisions that Plaintiff purports to challenge relate to Plaintiff's selection by the 1996 SERB, yet the prerequisites for judicial review of his selection, as set forth in § 1558, have not been met.  Thus, this Court should dismiss Plaintiff's action for failure to satisfy the statutory exhaustion requirement in § 1558.

II.     **TO THE EXTENT PLAINTIFF'S CLAIM IS NOT SUBJECT TO THE EXHAUSTION REQUIREMENT IN § 1558, IT IS TIME-BARRED BECAUSE IT ACCRUED MORE THAN SIX YEARS BEFORE THE DATE HIS COMPLAINT WAS FILED**

If the Court holds that Plaintiff was not required to seek a special board pursuant to 10 U.S.C. § 1558(f)(1), Plaintiff's action is nevertheless barred by the running of the six-year statute of limitations set forth in 28 U.S.C. § 2401(a).[10]

A.     **Absent § 1558(f)(1)'s Exhaustion Requirement, the Statute of Limitations on Plaintiff's Claim Began to Run On the Date of His Early Retirement**

Section 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a).  "Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed."  <u>Spannaus v. Dep't of Justice</u>, 824 F.2d 52, 55 (D.C. Cir. 1987).[11]

---

[10]Section 1558 does set forth an exception to the exhaustion requirement when the claim at issue involves the constitutional "validity of any law, regulation, or policy relating to selection boards."  <u>Id.</u> § 1558(g)(1).  Plaintiff's Complaint may reasonably be construed as essentially asserting a facial constitutional challenge to the 1996 SERB Precept EO Provision.  To the extent that the exception in § 1558(g)(1) excuses Plaintiff's failure to seek a special board, however, his constitutional claim is time-barred, as discussed below.

[11]The D.C. Circuit has held that the expiration of this six year period deprives federal courts of jurisdiction and that claims brought outside the statute of limitations are therefore

18

"Generally, a cause of action accrues as soon as the claimant can institute and maintain a suit in court." Aftergood v. CIA, 225 F. Supp. 2d 27, 29 (D.D.C. 2002).  In the context of an individual's challenge to an action of a federal agency pursuant to the Administrative Procedure Act, this date coincides with "the date of the final agency action." Harris v. FAA, 352 F.3d 1006, 1010 (D.C. Cir. 2004) (citing 5 U.S.C. § 704).  Thus, when an individual separated from military service brings a direct challenge to the separation, the six-year limitations period of § 2401(a) begins to run, at the latest, on the date of separation. Kendall v. Army Bd. for Correction of Military Records, 996 F.2d 362, 365-66 (D.C. Cir. 1993); Nihiser v. White, 211 F. Supp. 2d 125, 129 (D.D.C. 2002).  Here, Plaintiff's date of separation is August 1, 1996.  Accordingly, the statute of limitation for any direct challenge to his separation expired no later than August 1, 2002.

**B.      Plaintiff's Petitions to the BCNR Did Not Toll the Statute of Limitations Because They Were Not Mandatory Prerequisites to Filing a Constitutional Challenge**

The six-year deadline for filing suit was not extended by Plaintiff's attempt to seek recourse from the BCNR because his application for correction of his military record was not a mandatory prerequisite to filing a constitutional challenge to his SERB selection in court.  In general, the six-year statute of limitations imposed by § 2401(a) may be tolled while a claimant pursues available administrative remedies, but this is so primarily where exhaustion of

---

subject to dismissal under Rule 12(b)(1).  See Felter v. Norton, No. 06-5092, 2007 WL 120302, at *4 (D.C. Cir. Jan. 19, 2007) (citing longstanding Circuit rule that § 2401(a) is jurisdictional but noting this rule may have been undermined by more recent Supreme Court decisions).  Even if § 2401(a) is determined to be nonjurisdictional, however, there is no basis for tolling the statute in this case, and the court may therefore dismiss pursuant to Rule 12(b)(6). See id.

administrative remedies is required before filing suit.  See Martinez v. United States, 333 F.3d

1295, 1304 (Fed. Cir. 2003) (en banc) (stating the general rule that "a plaintiff's invocation of a

permissive administrative remedy does not prevent the accrual of the plaintiff's cause of action,

nor does it toll the statute of limitations pending the exhaustion of that administrative remedy");

Hurick v. Lehman, 782 F.2d 984, 987 (Fed. Cir. 1986) (rejecting plaintiff's argument that

correction board proceedings tolled statute of limitations on action challenging military discharge

because "resort to a Correction Board is a permissive (rather than a mandatory) step, which does

not suspend the running of the statute"); compare Kyriakopoulos v. George Washington Univ.,

866 F.2d 438, 443 (D.C. Cir. 1989) (holding university faculty's challenge to employment

decision was not tolled by his pursuit of optional university grievance procedures), with

Spannaus, 824 F.2d at 56-57 (holding that "a cause of action does not 'first accrue' . . . until a

party has exhausted all administrative remedies whose exhaustion is a prerequisite to suit").

Thus, in Martinez, the Federal Circuit held that the pursuit of relief from a military correction

board did not toll the statute of limitations applicable to Tucker Act claims because the

correction board legislation "creat[ed] a permissive avenue for collateral administrative relief,

not a mandatory prerequisite to suit."  333 F.3d at 1306.

       Other courts have held that plaintiffs were required to pursue an administrative remedy

with the military correction board under 10 U.S.C. § 1552 for some kinds of claims.  See Von

Hoffburg v. Alexander, 615 F.2d 633, 641 (5th Cir. 1980); Sanders v. McCrady, 537 F.2d 1199,

1201 (4th Cir. 1976).  However, "exhaustion of the administrative remedy provided by 10 U.S.C.

§ 1552 has not been required where the 'issues involved are purely legal, requiring no exercise of

military discretion or expertise.'"  Nelson v. Geringer, 295 F.3d 1082, 1096 n.14 (10th Cir. 2002)

20

(quoting <u>Comm. for GI Rights v. Callaway</u>, 518 F.2d 466, 474 (D.C.Cir.1975)).

In particular, courts have held that constitutional challenges to the facial validity of military policies may be more appropriately addressed by federal courts than by military correction boards, and that correction boards have no authority to decide constitutional issues. <u>Adair v. England</u>, 183 F. Supp. 2d 31, 55 (D.D.C. 2002); <u>see also Wilkins v. United States</u>, 279 F.3d 782 (9th Cir. 2002) (recognizing the BCNR's lack of authority where "the essence of [the plaintiff]'s case is a broad constitutional challenge to the structure and policies of the military chaplaincy"); <u>see also</u> <u>Califano v. Sanders</u>, 430 U.S. 99, 109 (1977) ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures . . . ."). Indeed, in <u>Adair</u>, the district court specifically held that plaintiffs challenging Navy policies under the First Amendment's Religion Clauses were not required to bring those claims before the BCNR before seeking judicial review. 183 F. Supp. 2d at 55.

Here, similarly, Plaintiff was not required to seek correction of his military record from the BCNR before challenging his SERB selection in court based on the alleged facial unconstitutionality of the 1996 SERB Precept EO Provision. As indicated above, Plaintiff's allegation that the Precept EO Provision is facially unconstitutional under the Fifth Amendment's Equal Protection Clause is the only allegation set forth in his Complaint. Thus, his petitions to the BCNR did not toll the applicable six-year statute of limitations. <u>See</u> <u>White v. Sec'y of the Army</u>, 629 F. Supp. 64, 67 (D.D.C. 1984) (holding that statute of limitations barred plaintiff's challenge to his discharge because "[r]egardless of plaintiff's subsequent decision to seek administrative relief, nothing prevented plaintiff from resorting to this Court immediately after his discharge"). Aside from the requirements imposed in 10 U.S.C. § 1558, to the extent those

21

apply to facial constitutional challenges, Plaintiff could have raised his claim that the Precept EO

Provision is unconstitutional, and that his 1996 SERB selection is therefore void, at any time

during the six years that followed his August 1, 1996, retirement.[12]

### C.     There Is No Other Basis for Tolling the Statute of Limitations

The plaintiffs in Adair who alleged that Navy policy was unconstitutional under the

Religion Clauses brought direct challenges to their discharge or other Navy action; the Court

rejected the government's statute of limitations argument in that case only because the plaintiffs

had alleged fraudulent concealment by the Navy of information relevant to their claim.  Adair,

183 F. Supp. at 53-54.  Here, Plaintiff's challenge is based on the written text of the 1996 SERB

Precept, which was publicly available.  Thus, there is no possible basis for a claim of fraudulent

concealment in this case; accordingly there can be no basis for tolling the statute of limitations.

Plaintiff therefore failed to bring a direct constitutional challenge to the EO Provision of the 1996

SERB Precept within the applicable six-year limitations period, and this Court now lacks subject

matter jurisdiction to consider this claim, even if it is presented in the guise of a challenge to

BCNR decisions.

---

[12]Significantly, in Carter v. Department of the Navy, this Court dismissed the plaintiff's claim that his discharge was unconstitutional based on race discrimination as barred by § 2401(a) because the claim accrued on the date of discharge.  No. 05-0775, 2006 WL 2471520, at *4 (D.D.C. Aug. 24, 2006).   In addition, constitutional challenges to EO policies of the Army and the Air Force were brought as direct challenges within six years of the dates of the selection or promotion boards at issue.  See Saunders v. Caldera, 193 F. Supp. 2d 1, 3 (D.D.C. 2001) (Army); Berkley v. United States, 48 Fed. Cl. 361, 365 (Fed. Cl. 2000) (Air Force), opinion rev'd, 287 F.3d 1076 (Fed. Cir. 2002).  It is worth noting that from the time of Plaintiff's early retirement on August 1, 1996 until § 1558 went into effect on December 18, 2001, there is no question that Plaintiff could have brought a direct challenge to his SERB selection, raising the claim that the Precept EO Provision was unconstitutional, without seeking administrative relief of any kind.

III.    **PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Even if the Plaintiff's Complaint is construed as what it claims to be – a challenge to the BCNR decisions – this Court should dismiss for failure to state a claim upon which relief may be granted. Judicial review of the BCNR decisions does not involve the Court in addressing Plaintiff's constitutional claim, and this constitutional claim is the only allegation apparent from the Complaint.

      A.     **Judicial Review of the BCNR Decisions Cannot Reach the Validity of the Underlying SERB Decision or the Constitutionality of the EO Provision in the 1996 SERB Precept**

As discussed above, the BCNR decisions themselves are only subject to a limited judicial review pursuant to the APA and principles of deference to military decisionmaking. In addition, because in this case the underlying subject of the BCNR decisions is a selection board recommendation, 10 U.S.C. § 1558(f) places further limitations on the scope of the Court's review. Given these limitations, judicial review of the BCNR decisions "requires the Court 'to determine only whether the . . . decision making process [of the Secretary, acting through the BCNR,] was deficient, not whether [its] decision was correct.'" Levant v. Roche, 384 F. Supp. 2d 262, 267 (D.D.C. 2005) (quoting Kreis, 866 F.2d at 1511)). In addition, judicial review in this context does not implicate the issue of whether the Precept EO Provision is constitutional on its face.

"[M]ilitary administrators," including those who sit on a correction board, "are presumed to act lawfully and in good faith like other public officers, and the military is entitled to

23

substantial deference in the governance of its affairs." <u>Dodson v. Dep't of Army</u>, 988 F.2d 1199,

1204 (Fed. Cir. 1993).  A plaintiff is therefore bound by a correction board decision "unless he

can demonstrate by cogent and clearly convincing evidence" that the decision should be set aside.

<u>Id.</u>; <u>see also</u> <u>Myers v. United States</u>, 50 Fed. Cl. 674, 688 (Fed. Cl. 2001).  Because "Congress

entrusted primary responsibility for the record-correction function to the service Secretaries

acting through correction boards," while a court "may disagree with a correction board about

whether or not a specific situation was unjust, [it] will not substitute [its] judgment for the

board's when reasonable minds could reach differing conclusions." <u>Sanders v. United States</u>,

594 F.2d 804, 814 (Ct. Cl. 1979); <u>see</u> <u>Myers</u>, 50 Fed. Cl. at 688 ("Determining who is fit or unfit

to serve in the armed forces is not a function of the judiciary . . . .").

      In addition, as explained in <u>Bittner v. Secretary of Defense</u>, 625 F. Supp. 1022 (D.D.C.

1985), the court in this context "does not and cannot review the actual [separation] of . . .

plaintiffs, but only the review boards' decisions." <u>Id.</u> at 1029; <u>see also</u> <u>Lebrun v. England</u>, 212 F.

Supp. 2d 5, 12 (D.D.C. 2002) ("[J]udicial review of a claim of wrongful discharge is distinct and

independent from judicial review of the underlying discharge decision . . . . [in that] the focus of

the former is on the action of discharge officials whereas the focus of the latter is on the action of

the Correction Board." (internal quotation and alteration omitted)).  The distinction between the

two is meaningful.  The deferential review that is involved in connection with a correction board

decision amounts to an examination of the agency's decisionmaking process rather than a

substantive analysis of the merits of the agency's decision. <u>See</u> <u>Levant</u>, 384 F. Supp. at 267

(citing <u>Kreis</u>, 866 F.2d at 1511); <u>see also</u> <u>Homer v. Roche</u>, 226 F. Supp. 2d 222, 225 (D.D.C.

2002) (applying the statutory limitations on judicial review set forth in 10 U.S.C. § 628, the court

may review the military's decision not to promote an individual only to ensure that a reasonable explanation for the decision was provided).

These limitations apply even in regard to the question of whether a correction board's decision was "contrary to law," which is what Plaintiff's Complaint alleges. A military board for correction of records cannot be held to the same standards of legal analysis that apply in an appellate court's review of a lower court's decision. Rather, courts have made clear that a military correction board is only held to have acted "contrary to law" when it has "fail[ed] to correct plain legal error committed by the military." Dodson, 988 F.2d at 1204. "Such legal error includes the military's violation of statute, or regulation, or published mandatory procedure, or unauthorized act." Id. (internal quotation omitted); see also Kreis, 866 F.2d at 1512 (describing the inquiry as whether the decision of the Secretary, acting through the board, was "arbitrary, capricious, or contrary to the statutes and regulations governing that agency"); Lewis v. United States, 67 Fed. Cl. 158, 161 (Fed. Cl. 2005) (explaining that a court may only review whether the military followed its own procedural regulations and policies in reaching its decision). In other words, legal error must be a clear violation of an existing law, not something that requires the correction board to engage in de novo constitutional analysis. This standard indicates that the court's review of a correction board determination must take into account the nature of the correction board itself as an administrative review board whose own standards for granting relief are based on equitable, rather than legal determinations. See 32 C.F.R. § 723.3(e)(2) (indicating that the BCNR can base its decision on whether a claim presents "probable material error or injustice").

This Court has recognized the limitations of the BCNR in making de novo legal

25

determinations other than those involving plain legal error.  As noted above, in <u>Adair</u>, the district

court held that the constitutional issues presented were outside the scope of the BCNR's

competence and authority to decide.  <u>Adair</u>, 183 F. Supp. 2d at 55.  While the Complaint alleges

that Plaintiff did in fact raise the argument before the BCNR that the 1996 SERB Precept EO

Provision was in violation of the Fifth Amendment's equal protection guarantee, Compl. ¶ 12,

Plaintiff's raising of the argument did not vest the BCNR with authority to decide the issue.  As

indicated, the BCNR simply lacks this authority.[13]  That being the case, it would make no sense

for the Court's review of the BCNR's decisions to involve examination of a legal issue that the

BCNR could not itself address.[14]

As a decision based on equitable principles, the BCNR's determination can best be

viewed as an individualized assessment of the particular circumstances that an applicant

presents.  This circuit views the substance of such individualized determinations to be

nonjusticiable.  <u>See</u> <u>Kreis</u>, 866 F.2d at 1511 (recognizing that courts are not competent to

compare a particular plaintiff "with other officers competing for . . . a promotion," and that

"Congress has vested in the Secretary alone the authority to determine whether the original

---

[13]The applicable regulation recognizes that the BCNR's jurisdiction is defined by external sources of law, including statutory law and judicial interpretations.  <u>See</u> 32 C.F.R. § 723.2(c) ("The B[CNR] shall have jurisdiction to review and determine all matters properly brought before it, <u>consistent with existing law</u>." (emphasis added)).

[14]Indeed, the administrative record demonstrates that the BCNR did not engage in a facial constitutional analysis of the Precept EO Provision.  The BCNR's decision in response to Plaintiff's petition raising the Fifth Amendment issue was based on its determination that Plaintiff had failed to present new and material evidence warranting reconsideration of its previous denial of Plaintiff's application for correction of his record.  This decision can be upheld simply on the basis that because the Precept had been available to Plaintiff at least from the time of his initial application to the BCNR, it could not constitute "new and material evidence" as required under 32 C.F.R. § 723.9.

selection boards erred in comparing [one individual] to the other candidates for promotion"); see also Dibble v. Fenimore, 339 F.3d 120, 126-28 (2d Cir. 2003) (joining the Fifth, Seventh, Eighth, Ninth, and D.C. Circuits in holding that an inquiry into whether the military violated a particular individual's constitutional rights by discharging him would "insert the federal courts into military decisionmaking in . . . an [overly] intrusive manner"); Lewis, 67 Fed. Cl. at 161 (explaining that the merits of the military's decision not to promote a service member is not justiciable).

This is not to say that military regulations are not subject to constitutional review, but, as indicated above, a facial constitutional challenge to a military regulation or policy accrues at the time the initial military decision implementing the regulation or policy, and must be brought within the applicable six-year statute of limitations. See Dibble, 339 F.3d at 126 (noting that "facial challenges to the constitutionality of military regulations" are allowed); Watson v. Ark. Nat'l Guard, 886 F.2d 1004, 1010 (8th Cir. 1989) (recognizing the "vast difference between judicial review of the constitutionality of a regulation or statute of general applicability and judicial review of a discrete military personnel decision," and observing that "courts are uniquely qualified to perform" the former, while the latter is within the scope of the military's expertise). As discussed above, there is no basis for allowing Plaintiff's successive BCNR petitions to bypass the statute of limitations on his constitutional claim.

**B.      Plaintiff's Complaint Fails to State a Claim On Any Other Basis**

Aside from the constitutional challenge to the Precept EO Provision, which must fail for the reasons explained above, there is no other cognizable claim discernible in Plaintiff's Complaint.  While Plaintiff raised arguments in his BCNR petitions other than the constitutional

27

claim referenced in the Complaint, the Complaint gives insufficient notice that any of these arguments are at issue.  Moreover, it is apparent from the administrative record that no such argument could prevail, as the BCNR decisions were reasonable and supported by substantial evidence.  The selected quotations in Plaintiff's Complaint from SECNAVINST 5350.16, the Navy equal opportunity instruction issued in 1999, fail to give notice of a separate claim.  Moreover, Plaintiff never referred to this instruction before the BCNR.  See Lozowski v. Mineta, 292 F.3d 840, 847 (D.C. Cir. 2002) ("Absent exceptional circumstances [such as a change in the law between the time of the BCNR proceeding and the judicial action], [a plaintiff] cannot rely in court upon an argument not made to the [Correction] Board."); Sinclair v. United States, 66 Fed. Cl. 487, 496 (2005) (arguments not raised before the military correction board are waived).  As this circuit has stated, "it is difficult to see how the [Correction Board] could have acted arbitrarily or capriciously in failing to address an argument never presented to [it]."  Lozowski, 292 F.3d at 848.  To the extent the BCNR's decisions can be read as interpreting the 1996 SERB Precept as consistent with this instruction, that interpretation is entitled to deference under Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984).  See Nat'l Family Planning & Reproductive Health Ass'n, 468 F.3d 826, 831 (D.C. Cir. 2006) (recognizing agency "is entitled to deference in interpreting its own regulation").  To the extent this action is viewed as a challenge to the BCNR decisions, therefore, it should be dismissed for failure to state a claim upon which relief may be granted.

28

**IV.     IF NOT DISMISSED ON OTHER GROUNDS, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS DUPLICATIVE OF HIS ONGOING LITIGATION IN ANOTHER CASE INVOLVING THE SAME CAUSE OF ACTION**

Even if this Court determines that Plaintiff has exhausted the requisite administrative remedies and his claim is not barred by the statute of limitations, or that the Complaint otherwise states a cognizable challenge to the BCNR decision, the Court should nevertheless dismiss this action pursuant to Rule 12(b)(6) based on the general rule against splitting a single cause of action among separate judicial proceedings.  Because Plaintiff has already initiated one lawsuit challenging his early retirement, the Court's interest in judicial economy and consistent results require that the current action be dismissed.

A plaintiff is generally not allowed to file multiple lawsuits challenging the same action of the defendant, whether the legal theories advanced by the plaintiff in each lawsuit are the same or different.  Handy v. Shaw, Bradford, Veilleux & Roth, 325 F.3d 346, 349 (D.C. Cir. 2003) ("In the case of parallel litigation in two federal district courts, the general principle is to avoid duplicative litigation."); Kalodner v. Bodman, No. 06-818, 2006 WL 3704783, at *3 (D.D.C. Dec. 18, 2006) (dismissing a complaint under Rule 12(b)(6) based partly on the fact that plaintiff's current claim was duplicative of others pending in another action).  As the Supreme Court has stated, "a party seeking to enforce a claim legal or equitable must present to the court . . . all the grounds upon which he expects a judgment in his favor.  He is not at liberty to split up his demand and prosecute it by piecemeal . . . ."  United States v. Haytian Republic, 154 U.S. 118, 125 (1947) (observing that "[t]here would be no end to litigation if such a practice were permissible").

29

The rule against splitting claims underlies the doctrine of res judicata, or claim preclusion, which bars litigants who have already been denied relief on a particular cause of action in one proceeding from bringing a second lawsuit seeking the same relief when the arguments raised in the second suit were or could have been raised in the initial suit. Stanton v. District of Columbia Court of Appeals, 127 F.3d 72, 78 (D.C. Cir. 1997). This Circuit defines "cause of action," "for purposes of claim preclusion, [as] all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Id. (internal quotation omitted).

In a situation where the plaintiff brings a second suit while the first suit, invoking the same cause of action, remains pending, the doctrine of res judicata does not apply since there is no final judgment on the claim. Velikonja v. Ashcroft, 355 F. Supp. 2d 197, 200 (D.D.C. 2005). Nevertheless, many of the principles underlying res judicata still apply, and some rationales are even more compelling in this context. For one thing, a final judgment in either of the suits, whenever it occurs, will trigger res judicata and render whatever efforts and resources have been expended in the remaining suit wasted. See Oxbow Energy, Inc. v. Koch Indus., Inc., 686 F. Supp. 278, 281 (D. Kan. 1988) ("'[T]here is no reason why a court should be bothered or a litigant harassed with duplicating lawsuits on the same docket; it is enough if one complete adjudication of the controversy be had.'" (quoting Sutcliffe Storag & Warehouse Co. v. United States, 162 F.2 849, 851 (1st Cir. 1947))). In addition, simultaneously advancing different theories and arguments in different judicial proceedings in support of the same claim runs the risk of inconsistent factual findings in regard to the same transaction, and otherwise inconsistent results. See Velikonja, 355 F. Supp. at 200 (listing "inconsistent results" as a problematic aspect

30

of multiple actions). Moreover, the process of appeal becomes impossibly confused if, at the time the first judgment is entered, it cannot be considered "final" because a separate lawsuit raising different arguments on the same claim is ongoing. See Tolson v. United States, 732 F.2d 998, 1001 (D.D.C. 1984) (observing, in the context of a rule 54(b) appeal, that "the rule against splitting claims" prevents an appeal of the lower court's rejection of one legal theory as long as a party may still be awarded relief under a different theory).

The bar imposed on a plaintiff who has already litigated a claim and received an unfavorable judgment in a prior action, preventing the claim from being raised a second time, serves, in essence, as a penalty since the plaintiff who failed to raise an argument in the first action is then prevented from raising the argument at all. It is not necessarily true that a court's dismissal of a case pursuant to the rule against claim-splitting, when another case based on the same cause of action is pending, will have the same effect since the plaintiff still has a chance to raise any arguments that were to be advanced in the second suit as additional arguments in the first suit. Dismissal under these circumstances is a procedural, rather than substantive, act, and is particularly appropriate when both suits were filed in federal court, and even more so when, as here, both suits are pending in the same federal court.[15] Handy, 325 F.3d at 349-50 (recognizing that principles of efficient judicial administration justify dismissal under Rule 12(b)(6), particularly where both proceedings are filed in federal court); Zerilli v. Evening News Ass'n,

---

[15]Dismissal is more appropriate than consolidation in these circumstances since Plaintiff's ability to raise new legal theories in support of his already-pending cause of action in another case should not be affected by his filing of a duplicative claim in another case; otherwise plaintiffs could avoid the restrictions imposed on amending pleadings under Fed. R. Civ. P. 15, simply by filing a duplicative claim and seeking to consolidate that claim with the original action. See Kalodner v. Bodman, No. 06-818, 2006 WL 3704783, at *3 (D.D.C. Dec. 18, 2006).

628 F.2d 217, 222 (D.C. Cir. 1980) (affirming a 12(b)(6) dismissal on the basis that "a plaintiff

has no right to maintain two separate actions involving the same subject matter at the same time

in the same court and against the same defendant" (internal quotation omitted)).

Here, the cause of action Plaintiff alleges in the current suit arises from the same nucleus

of facts as that alleged in Gibson. Specifically, the Gibson Complaint alleges that Plaintiff was

improperly selected by the 1996 SERB for involuntary retirement. The impropriety alleged in

Gibson is that the selection was made "on the basis of [Plaintiff's] faith group and because his

outstanding record as a non-liturgical chaplain was a threat to the liturgical domination of the

[U.S. Navy Chaplain Corps]." Compl. ¶ III.A.5, at 14, Gibson, No. 06-1696 (filed Oct. 23, 2006)

("Gibson Compl.").[16] According to the Gibson Complaint, "[n]o other explanation [for

Plaintiff's selection] is apparent given the records of those the [Chaplain Corps] retained

compared with [Plaintiff]'s." Id. The Gibson Complaint further indicates that Plaintiff

"challenged his selection for SER through the BCNR, using the same arguments presented here,

that the reservation of a selection board seat for a Catholic, for both promotion and SER boards,

was illegal." Id. The Gibson Complaint states that the BCNR petition had been denied by the

time the complaint was filed. Id.

Among other forms of relief, the Gibson Complaint requests the court to "[i]ssue the

necessary orders voiding all adverse personnel actions, including . . . early retirements, flowing

from" the alleged religious discrimination involved in, among other things, the 1996 SERB, and

to "take other action to remedy the results of the Navy's illegal activities described herein and

---

[16]As indicated above, the complaint was originally filed on April 28, 2006, in the U.S.
District Court for the Northern District of Florida.

make Plaintiff[] . . . whole." <u>Id.</u> ¶ X.C.8, at 141.  This is in effect the same relief that Plaintiff

requests in his Complaint here, which asks the Court to order the Navy to "reinstate him on

active duty;" "correct his record to show that he was never retired and by expunging all reference

to the SERB;" and "cause him to be considered for promotion to Captain."  Compl., Prayer.

Accordingly, whether Plaintiff's claims, here and in <u>Gibson</u>, are viewed as a direct challenge to

the SERB decision or as a challenge to the BCNR's review of the SERB decision, they are

improperly split between two proceedings in federal court – indeed, in the same court, unless the

<u>Gibson</u> plaintiffs' transfer motion succeeds[17] – and the proceedings are thus duplicative.  If not

otherwise barred, Plaintiff's Complaint should therefore be dismissed on this basis.

## CONCLUSION

For the foregoing reasons, this action should be dismissed in its entirety.

---

[17]The principle of avoiding duplicative litigation applies regardless of whether Plaintiff's <u>Gibson</u> claim is in federal district court in the District of Columbia or the Northern District of Florida.  If <u>Gibson</u> were returned to the Northern District of Florida, the principle of comity would also counsel against allowing Plaintiff to litigate the same cause of action simultaneously in another forum: "The federal courts long have recognized that the principle of comity requires federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs." <u>W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24</u>, 751 F.2d 721, 728 (5th Cir. 1985); <u>see also</u> <u>Cadle Co. v. Whataburger of Alice, Inc.</u>, 174 F.3d 599, 603 (5th Cir. 1999).  Following this principle, courts therefore generally apply a first-to-file rule, dismissing an action whenever there is an earlier-filed action pending in another district court. <u>Handy</u>, 325 F.3d at 350.  In applying the rule in this Circuit, courts "must balance equitable considerations rather than using a 'a mechanical "rule of thumb."'" <u>Id.</u>  Such considerations disfavor an alternative forum when it is a state, rather than federal court, <u>see id.</u> at 351, and favor allowing the "more ponderous" case to continue while dismissing the less complex litigation, <u>Columbia Plaza Corp. v. Security National Bank</u>, 525 F.2d 620, 628 (D.C. Cir. 1975).  Here, equitable considerations would favor dismissal of the instant case were the case re-transferred to the Northern District of Florida because the first-filed <u>Gibson</u> action involves additional plaintiffs, the Northern District of Florida is a sister federal court, and the defendant has already been prejudiced by having to defend against Plaintiff's cause of action in separate proceedings.

Dated: <u>March 19, 2007</u>                    Respectfully submitted,

                                PETER D. KEISLER
                                Assistant Attorney General
                                JEFFREY A. TAYLOR
                                United States Attorney
                                VINCENT M. GARVEY
                                Deputy Branch Director

                                **/s/ Kathryn L. Wyer**
                                KATHRYN L. WYER
                                Trial Attorney, U.S. Department of Justice
                                Civil Division, Federal Programs Branch
                                20 Massachusetts Ave. NW, Room 7218
                                Washington, D.C.  20001
                                Telephone: (202) 616-8475 / Fax: (202) 616-8202
                                kathryn.wyer@usdoj.gov
                                *Attorneys for Defendant*

34

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Rev. GEORGE P. BYRUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-02102 (RJL) |
| | ) | |
| DONALD C. WINTER | ) | |
| In his Official Capacity as Secretary, | ) | |
| DEPARTMENT OF THE NAVY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# EXHIBIT A

to Defendant's Motion to Dismiss

Department of Defense Directive 1332.32 (January 22, 1982)



January 22, 1982
**NUMBER** 1332.32

# Department of Defense Directive   ASD(MRA&L)

SUBJECT:  Selective Early Retirement of Regular Commissioned Officers on
the Active Duty List

References:  (a)  Title 10, United States Code
(b)  DoD Directive 5000.19, "Policies for the
Management and Control of Information
Requirements," March 12, 1976

## A.  PURPOSE

This Directive implements Section 638 of reference (a) to establish
policies and procedures governing the selection of regular commissioned
officers for early retirement.

## B.  APPLICABILITY AND SCOPE

1.  The provisions of this Directive apply to the Office of the
Secretary of Defense and to the Military Departments.  The term "Military Services," as used herein, refers to the Army, Navy, Air Force,
and Marine Corps.

2.  Its provisions cover commissioned officers on the active duty
list in the permanent grades of lieutenant colonel through major
general in the Army, Air Force, and Marine Corps, and of commander
through rear admiral in the Navy.

## C.  DEFINITIONS

1.  _Active Duty List_.  A single list for the Army, Navy, Air Force,
or Marine Corps that is required to be maintained under Section 620 of
reference (a) and that contains the names of all officers of that Military
Service (other than the officers described in Section 641 of reference
(a)) who are serving on active duty.

2.  _Commissioned Officer_.  An officer in any of the Military Services
who holds a grade and office under a commission signed by the President,
other than a commissioned warrant officer or retired commissioned officer.

3.  _Competitive Category_.  A separate promotion category established
by the Secretary of a Military Department under Section 621 of reference (a) for specific groups of officers whose specialized education,
training, or experience, and often relatively narrow utilization, make
separate career management desirable.

4. <u>Selection Board</u>. A board of commissioned officers convened under 10 U.S.C. 611(b) (reference (a)) to evaluate and recommend officers on the active duty list for retirement earlier than their mandatory retirement dates as established under Sections 633, 634, 635, and 636 of reference (a).

D. <u>POLICY</u>

It is the policy of the Department of Defense that the authority to select officers who are serving in the grades of lieutenant colonel or commander and colonel or captain for early retirement shall be used sparingly. Early retirement shall be used as a means of managing an officer grade imbalance or strength overage within a competitive category. It may not be used for the sole purpose of enhancing promotion opportunity; nor may it be used as a substitute for the disposition of commissioned officers who otherwise would be processed for separation for cause under Chapter 60 of reference (a). The early retirement of officers serving in permanent grades above colonel or captain shall be at the discretion of the Secretary of the Military Department concerned.

E. <u>PROCEDURES</u>

<u>Selection Boards</u>. Selection boards to consider commissioned officers for early retirement in accordance with Section 638(a) of reference (a) may be convened by the Secretary of the Military Department concerned, as circumstances warrant, to accommodate Military Service needs. Separate boards shall be convened for each grade and competitive category.

1. <u>Centralized Selection</u>. To ensure fairness in the selection process, a central board shall be convened to consider all commissioned officers in the same grade and competitive category who are eligible for early retirement.

2. <u>Information Furnished to a Selection Board</u>. The Secretary of the Military Department concerned shall furnish the selection board with all necessary information. Such information shall include, *as a minimum, the names of the officers (Last Name, First, M.I.)* on the active duty list whom the board will consider. This list shall include each officer on the active duty list in the same grade and competitive category whose position is between that of the most junior and the most senior officer in that grade and competitive category to be considered by the board. This information requirement is exempt from formal approval and licensing in accordance with subsection VII.B. of enclosure 3 to DoD Directive 5000.19 (reference (b)).

F. <u>RESPONSIBILITIES</u>

1. The <u>Assistant Secretary of Defense (Manpower, Reserve Affairs, and Logistics)</u> (ASD(MRA&L) shall modify or supplement this Directive, as appropriate.

2. The <u>Secretaries of the Military Departments</u> shall:

   a. Administer the policies and procedures prescribed herein.

   b. Recommend policy changes to this Directive to the ASD(MRA&L).

Jan 22, 82
1332.32

G.  <u>EFFECTIVE DATE AND IMPLEMENTATION</u>

    This Directive is effective September 15, 1981.  Forward two copies of
implementing documents to the Assistant Secretary of Defense (Manpower, Reserve
Affairs, and Logistics) within 120 days of the date of publication.

Frank C. Carlucci
Deputy Secretary of Defense

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rev. GEORGE P. BYRUM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )          Civil Action No. 06-02102 (RJL) |
| | ) |
| DONALD C. WINTER | ) |
| In his Official Capacity as Secretary, | ) |
| DEPARTMENT OF THE NAVY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

# EXHIBIT B

to Defendant's Motion to Dismiss

FY 1996 SERB Precept and Supplemental Guidance



**DEPARTMENT OF THE NAVY**
OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20350-1000

1 7 NOV 1995

From: Secretary of the Navy
To:   RADM Donald K. Muchow, CHC, USN, ████████/4100

Subj: PRECEPT CONVENING A FY-96 SELECTION BOARD TO CONSIDER
      COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE EARLY
      RETIREMENT

Encl: (1) Board Membership
      (2) Supplemental Guidance

1.  The selection board, consisting of yourself as president
and the officers listed in enclosure (1), is ordered to
convene at the Navy Department, Washington, D.C., at 0900 on
29 November 1995 or as soon thereafter as may be
practicable.

2.  Each fiscal year a number of commanders retire from the
Navy as a result of approved voluntary retirements or
involuntary retirements based on length of service.
However, the Navy is currently faced with the need to
increase the number of retirements of commanders during this
fiscal year beyond the number of approved voluntary and
involuntary retirements, and thus this selective early
retirement board is being convened. The function of the
board is to recommend for selective early retirement regular
and reserve commanders on the active-duty list, in the
Chaplain Corps community whose early retirement, in the
opinion of the majority of the board, is in the best
interest of the Navy.

3.  10 USC §638 and §638a provide that regular or reserve
officers may be considered for early retirement by a
selection board convened pursuant to 10 USC §611(b).  Those
statutes permit consideration for selective early retirement
of commanders who are within two years of retirement
eligibility or eligible for retirement.

4.  The records and names of all eligible officers
determined as of the date the board convenes will be
furnished to the board by the Chief of Naval Personnel.  The
board will carefully consider the case of every officer
whose name is furnished to it.  Under 10 USC §638(e)(2)(B),
officers with approved voluntary retirements, or officers
with involuntary retirement dates in FY-96 or FY-97, may not
be considered.  No officer whose name is on a promotion list
may be considered for early retirement.

ATTACHMENT I

Subj: PRECEPT CONVENING THE FY-96 SELECTION BOARD TO RECOMMEND COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE EARLY RETIREMENT

5.  The major criterion for the Navy's success is its ability to conduct prompt and sustained combat operations. A balance of skills among the Navy's leaders is the key to maintaining this ability. Excellence in operational environments and during arduous, demanding deployments is an important measure of the qualities the Navy requires. Officers may also have demonstrated leadership, skill, integrity and resourcefulness in other difficult and challenging joint and in-service assignments. Just as you must carefully consider positive outstanding performance, you must carefully consider documented incidents of misconduct, and substandard performance, which are included in an officer's official service record, in determining those officers who are best qualified for retention. You must ensure the officers retained possess the qualities to excel in positions of responsibility and authority appropriate to their grade. You must consider each officer's potential for future contributions in both traditional and more specialized assignments and retain those who have the highest potential for significant further service. For those eligible officers who are recommended for retention and who have received disciplinary action or whose privileged information record (Fiche 5) contains matters relating to conduct or performance of duty, each board member shall personally review the information contained therein, prior to the final board decision. Finally, when determining whom to retain, you should also give consideration to the resources expended by the Navy in preparing officers for particular assignments, and the needs of the Navy in managing billets with long training pipelines.

6.  The total number of officers that may be recommended will be exactly the number set forth below. This number may not exceed 30 percent of the in-zone eligible officers as of the date the board convened. The board will recommend no more than or less than the number provided below:

| GRADE | COMPETITIVE CATEGORY | NUMBER TO SELECT |
|-------|---------------------|------------------|
| COMMANDER | CHAPLAIN CORPS | 7 |

7.  The board will consider only those official records provided by the Chief of Naval Personnel as well as written communications from eligible officers. Requests for additional information can only be approved by the Secretary

2

ATTACHMENT I

Subj: PRECEPT CONVENING THE FY-96 SELECTION BOARD TO
RECOMMEND COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE
EARLY RETIREMENT.

of the Navy. No board member, recorder, assistant recorder,
or person acting on their behalf may communicate with an
eligible officer, reporting senior, or other person to
solicit information, favorable or unfavorable, about an
eligible officer. The Chief of Naval Personnel may
authorize communications as necessary to ensure the official
records are complete.

8. The report of the board, prepared per paragraphs 9g and
10 of the supplemental guidance (enclosure (2)), will be
forwarded to the Secretary of the Navy via; first, the Chief
of Naval Personnel; second; the Chief of Naval Operations;
and finally, the Judge Advocate General of the Navy for
legal review.

9. Enclosure (2) provides the oaths to be administered and
supplemental guidance.

JOHN H. DALTON
Secretary of the Navy

3

ATTACHMENT I

SUPPLEMENTAL GUIDANCE

1.   The following oath or affirmation will be administered to the
recorder and assistant recorders by the president of the board:

> "You, and each of you, do solemnly swear (or affirm)
> you will keep a true record of the proceedings of this
> board, and you will not divulge the proceedings of this
> board except as authorized or required by the Secretary
> of the Navy or higher authority.  So help you God."

The following oath or affirmation will then be administered by
the recorder to the members of the board:

> "You, and each of you, do solemnly swear (or affirm) you
> will perform your duties as a member of this board without
> prejudice or partiality, having in view both the special
> fitness of officers and the efficiency of the Naval service,
> and you will not divulge the proceedings of this board
> except as authorized or required by the Secretary of the Navy
> or higher authority.  So help you God."

The following oath or affirmation will then be administered by
the recorder to the projectionists and other support personnel:

> "You, and each of you, do solemnly swear (or affirm) you
> will not divulge the proceedings of this board except as
> authorized or required by the Secretary of the Navy or
> higher authority.  So help you God."

2.   Due to historic statutory restrictions on the assignment of
women in Navy, the records of female officers before the board
may show a career pattern different from that of their male
counterparts.   Such restrictions on duty assignments, which in
the past have foreclosed to women opportunities for operational
and command assignments available to men, cannot be allowed to
prejudice the selection of women for retention.   Therefore, in
determining a woman's qualification for retention, duty performed
by a female officer, whose past assignability was constrained by
law or policy, will be given weight equal to duty performed by a
male officer not so constrained which is equally well performed.
In making your determination of those female officers who are
best suited for retention, emphasis will be placed on her actual
performance in assignments rather than her pattern of assignments
as compared to male officers.

3.   The Department of the Navy is dedicated to equality of
treatment for all personnel without regard to race, creed, color,
sex, or national origin.  Aggressive commitment to equal
opportunity is critical.

                                          Enclosure (2)

                                          ATTACHMENT I

a. Many minority officers have been assigned involuntarily outside the traditional career development patterns, i.e., recruiting, equal opportunity and specific billets requiring minorities. These assignments, though beneficial to the interests of Navy, have resulted in those officers having career patterns different from officers who have been able to serve in their primary or warfare specialties. In making your determination of those officers who are best suited for retention, you must view such assignments as having the same value as assignments within the primary or warfare specialty.

b. The 1988 CNO Study Group Report on Equal Opportunity in Navy, which is available to you, noted that minority officers who, prior to entering Navy, had limited interaction with a predominately majority environment, may take a longer time to adjust and perform to the level of their contemporaries. This may result in initially lower fitness reports at the junior officer level (through 0-3) and a higher percentage of "late bloomers" than their majority counterparts. You must consider this when evaluating a minority officer.

c. In evaluating the records of eligible officers, you should be aware that past discrimination may have operated to the disadvantage of minority officers. Such discrimination may have manifested itself in comparatively lower fitness reports. Equivalent performance by a minority officer and a non-minority officer may not have resulted in equivalent fitness reports. You must consider this when evaluating minority officers.

4. Our ability to operate effectively with the other Services is vital to our warfighting capability. To foster this ability, a number of officers are assigned to joint military training and education and to duties with other Services and to joint staffs. Board members will give appropriate consideration to the performance of officers who are serving or have served in such assignments.

a. To meet statutory requirements, as well as to ensure our ability to conduct joint operations, Navy is firmly committed to placing as many officers as possible in joint duty assignments. These assignments, critical for the future success of Navy, may have resulted in a career pattern different from officers who have served exclusively in their primary or warfare specialty. In making your determination of those officers who are best suited for retention, you must view joint duty assignments as having the same value as assignments within the primary or warfare specialty.

b. Navy's ability to meet future joint operations requirements depends, in part, on senior officers who have served or are serving in joint duty assignments. Experience in a joint duty billet is a factor for you to consider in determining which officers are best qualified for retention.

**ATTACHMENT I**

5.  A Selective Early Retirement Board is prohibited from considering the marital status of a member or the employment, education, or volunteer service of a spouse.

6.  Many officers have special or advanced education (i.e., foreign language training, PhD., Masters degrees, etc.) and subspecialties of substantial value to Navy.  In determining an officer's fitness for retention, selection boards shall give weight to duty in subspecialty billets, equal to that given to other duty, equally well performed.  Proven expertise in training, education, recruiting, politico-military affairs and other subspecialties is a vital ingredient of the Navy's officer corps.

7.  The official military personnel records provided to the board may include medical documents relevant to an officer's physical qualifications.  If the board desires clarification of any such document, then the board president should reduce the board's questions to writing and forward them to me.  I will provide such clarification as may be appropriate.

8.  The senior member of the board has been appointed as president and will perform prescribed administrative duties.  The board president has no authority to constrain the board from recommending those officers whose retirements are determined to be in the best interest of Navy as specified by the Secretary. The board president will ensure that paragraph 9 of this enclosure is read to each board member, recorder and administrative support person on the convening date of the board or on the date of assignment to the board, whichever is later.

9.  The following instructions concerning communications and information apply to board proceedings:

    a.  Each of you (president, members, recorders, and administrative support personnel) is responsible to maintain the integrity and independence of this selection board, and to foster careful consideration, without prejudice or partiality, of all eligible officers.

    b.  You must pay particularly close attention to the rules governing communications with and among other board members, the information authorized to be furnished to you, and the procedures you should follow if you believe that the integrity of this selection board has been improperly affected.

    c.  You are to base your recommendations on the material in each officer's military record, any information I have provided to the board, and any information communicated to you by individual eligible officers under regulations I have issued.  In your deliberations, you may discuss your own personal knowledge and evaluation of the professional qualifications of eligible officers to the extent that such matters are not precluded by law or Service regulation from consideration by a selection board or

ATTACHMENT I

inclusion in an officer's military personnel record. You may not discuss or disclose the opinion of any person not a member of the board concerning an officer being considered unless that opinion is contained in material provided to the board.

d.   I am the only person who may appear in person to address you on any matter. All communications with this board, other than those that are clearly administrative, must be in writing, given to each of you and made part of the board's record. I have designated in writing those persons authorized to provide routine administrative information to you.

e.   Before the report of the selection board is signed, the recommendations may be disclosed only to members of the board, recorders and those administrative support personnel I have designated in writing. After you sign the board report, only the recommendations of the board may be disclosed. Except as authorized by law or regulation the proceedings of the board may not be disclosed to any person not a board member or board recorder.

f.   If at any time you believe that you cannot in good conscience perform your duties as a member of this board without prejudice or partiality, you have a duty to request relief by me from this duty. I will honor any such request. If, as a board member or recorder, you believe the integrity of the board's proceedings has been affected by improper influence of military or civilian authority, misconduct by the board president or a member, or any other reason, or believe someone is exerting or attempting to exert inappropriate influence over the board or its proceedings, you have a duty to request from me or the Secretary of Defense relief from your obligation not to disclose board proceedings and, upon receiving it, to report the basis for your belief.

g.   Upon the completion of board's deliberations, you will, as a minimum, certify in your report to me that:

(1) To the best of your knowledge, the board complied with all instructions contained in the precept, and, as appropriate, other letters of guidance or instruction provided by me.

(2) That you were not subject to or aware of any censure, reprimand, or admonishment about the recommendations of the board or the exercise of any lawful function within the authorized discretion of the board;

(3) That you were not subject to or aware of any attempt to coerce or influence improperly any action in the formulation of the board's recommendations;

(4) That you were not party to or aware of any attempt at unauthorized communications;

**ATTACHMENT I**

(5) That, to the best of your knowledge, the board carefully considered the records of each officer whose name was furnished to the board; and

(6) That selections of the officers recommended for retirement from among those officers considered are, in the opinion of the majority of the members of the board, in the best interest of Navy.

10.  The written report of the board will be signed by the board president, the board members and board recorders, and will contain a list of the names of the officers it recommends for retirement, with the certification described in paragraph 9g.

11.  The record of the board's proceedings will be compiled by the recorders and administrative support staff and will contain at a minimum:

   a.  Convening notice.

   b.  A list of all officers considered for early retirement.

   c.  A list of all officers recommended for early retirement.

   d.  Precept.

ATTACHMENT I

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| Rev. GEORGE P. BYRUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-02102 (RJL) |
| ) | |
| DONALD C. WINTER ) | |
| In his Official Capacity as Secretary, ) | |
| DEPARTMENT OF THE NAVY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

# EXHIBIT C

to Defendant's Motion to Dismiss

SECNAVINST 5350.16 (June 28, 1999)



**DEPARTMENT OF THE NAVY**
OFFICE OF THE SECRETARY
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

SECNAVINST 5350.16
ASN (M&RA)
28 June 1999

SECNAV INSTRUCTION 5350.16

From: Secretary of the Navy
To:   All Ships and Stations

Subj: EQUAL OPPORTUNITY (EO) WITHIN THE DEPARTMENT OF THE
      NAVY

Ref:  (a) DoD Directive 1350.2 of 18 Aug 95 (NOTAL)
      (b) SECNAVINST 12720.1A (NOTAL)
      (c) OPNAVINST 5354.1D (NOTAL)
      (d) MCO P5354.1C (NOTAL)
      (e) Uniform Code of Military Justice (NOTAL)
      (f) SECNAVINST 5354.1
      (g) DoD Instruction 1100.16 (NOTAL)
      (h) SECNAVINST 5800.11A (NOTAL)
      (i) OPNAVINST 3100.6G (NOTAL)
      (j) DoD Instruction 1350.3 of 29 Feb 88 (NOTAL)

Encl: (1) Equal Opportunity (EO) Definitions
      (2) Military Equal Opportunity (MEO) Assessment

1.  **Purpose.** To implement the Department of the Navy (DON)
policy on Equal Opportunity (EO), assign related
responsibilities, and all duties stipulated in reference (a).

2.  **Applicability.** This instruction applies to all DON military
personnel, Regular and Reserve; Naval Academy and Reserve
Officer Training Corps midshipmen; and Reservists performing
active or inactive duty for training or engaging in any activity
related to the performance of Department of Defense (DoD)
Reserve duty or function. Civilian Equal Employment Opportunity
(EEO) policy guidance and related assignment of responsibilities
are contained in reference (b).

3.  **Background.** The DON's ability to perform its mission at
home and abroad is directly related to the fair and equitable
treatment of its servicemembers. Every Sailor and Marine,
regardless of race, ethnicity, color, religion, gender or

SECNAVINST 5350.16
28 JUN 1998

national origin, will be treated with dignity and respect and be
assured that he or she is a valued member of the Navy/Marine
Corps team.  The inability to overcome prejudices in the past
has proved detrimental to our combat readiness and mission
accomplishment; therefore, it is the intent of this instruction
to provide guidance on EO matters.

4.  **Discussion**.  Sailors and Marines are our most precious
resource.  In order to ensure mission readiness, we must
overcome any prejudicial bias or stereotypes that impede our
cohesiveness, camaraderie, or morale.  Such behavior is contrary
to DON Core Values of Honor, Courage and Commitment and shall
not be tolerated.  Unlawful discrimination undermines and
diminishes a unit's ability to function in an effective manner.
Discrimination destroys members' confidence and trust in their
shipmates and erodes a unit's cohesion and combat readiness.
Every member of the DON must be afforded an equal opportunity to
become a productive, contributing member of the Navy/Marine
Corps team.

5.  **Definition and Terms**.  "Equal Opportunity" and other related
definitions are contained in enclosure (1).

6.  **Policy**.  It is DON policy that:

    a.  Unlawful discrimination based on race, ethnicity,
color, religion, gender or national origin is strictly
prohibited and will not be tolerated.

    b.  No commander or supervisor may, by act, word, deed, or
omission, condone or ignore unlawful discrimination.
Commanders, commanding officers and officers in charge are
responsible and accountable for enforcing the policy against
unlawful discrimination.

    c.  It is the responsibility of every Sailor and Marine to
ensure that unlawful discrimination does not occur in any form
at any level.  Every servicemember has the responsibility to
make the appropriate authorities aware of each violation of this
policy.

2

d.  Commanders or individuals in supervisory positions are
responsible for ensuring that all military personnel receive
equal opportunity training annually per references (c) and (d).

e.  Heritage ceremonies and observances conducted within
DON organizations or commands must comply with this policy and
references (c) and (d).

f.  All formal/informal equal opportunity complaints must
be handled per references (a), (e) and (f).

g.  Commanders shall ensure that a mandatory Fitness Report
or Enlisted Evaluation comment is made in the record of any
servicemember who has been found guilty by a court martial or
other court of competent jurisdiction or who has received
nonjudicial punishment based on commission of a criminal offense
involving unlawful discrimination against another person based
on race, ethnicity, color, gender, national origin or religion.

h.  Reprisals against any victim or witness of
discrimination are strictly prohibited.

i.  Commanders must also ensure that military personnel and
their families receive fair and equitable treatment both on and
off base.  Discriminatory practices detected by DON civilian and
military personnel shall be reported to the proper authorities
for appropriate action.

j.  Commanders shall take actions to overcome
discrimination in off-base housing and to impose off-limits
sanctions in housing cases, as required by reference (g).  In
cases of discriminations involving places of public
accommodation outside military installations, off-limits
sanctions may be imposed through the cognizant Armed Forces
Disciplinary Control Board.

7.  **Equal Opportunity Complaint Processing**.  Commanding officers
must be informed immediately, usually within 24 hours, of any
allegation of unlawful discrimination or equal opportunity
complaint in their command.  Every reported incident of
discrimination, formal or informal, must be investigated to
determine if the case is substantiated or unsubstantiated.

3

SECNAVINST 5350.16
26 JUN 1990

Anyone who has been discriminated against, observed an act of
unlawful discrimination or whose command believes may have been
discriminated against will be considered to be a victim or
witness and will be afforded all his/her rights under reference
(h).  These incidents must be reported to the appropriate
authorities in the chain of command as stated in reference (f).
Formal complaints of discrimination and sexual harassment must
be reported by SITREP per reference (i) via the Special Incident
Reporting System.  All formal complaints shall be processed per
reference (f).  Per reference (a), if a case is appealed to the
general court-martial convening authority (GCMA), the GCMA shall
ensure that the complaint is reviewed for legal sufficiency.  In
the event that the complaint is further appealed, final
consideration shall be made by the Secretary of the Navy.  In
forwarding such complaints, commands shall use the procedures
applicable to Article 138, UCMJ, complaints as detailed in
Chapter III of the Manual of the Judge Advocate General
(JAGMAN), with the recognition that EO complaints are generally
not subject to denial based on the ground that the complaint is
not cognizable.

8.  **Accountability and Enforcement**.  The policies detailed in
paragraph 6 apply to the conduct of all DON military personnel.
Any violation, attempted violation or solicitation of another to
violate these policies is subject to appropriate disciplinary
action, per Article 92 (failure to obey a lawful general order)
and other applicable articles of reference (e).  This
instruction is a lawful general order and it is effective
immediately.

9.  **Assignment of Responsibility**.  The Assistant Secretary of
the Navy (Manpower and Reserve Affairs) (ASN (M&RA)) is
responsible for the overall execution of the military equal
opportunity program, its administration and supervision, and
shall keep the Secretary and the Under Secretary informed of
progress and any significant issues.

10. **Action**.  The Chief of Naval Operations (CNO) and Commandant
of the Marine Corps (CMC) shall:

   a.  Implement these policies within their existing equal

4

SECNAVINST 5350.16
28 JUN 1990

opportunity instructions.  These changes should take place
within 180 days from date of issuance.

     b.  Notify the ASN (M&RA) of any substantive changes to
Service policies not less than 30 days prior to implementation
of those changes.

     c.  Ensure that this policy is covered in detail during all
entry-level training for both enlisted and officer accession
programs.

     d.  Provide annual training and updates on military equal
opportunity in Professional Military Education (PME)
courses, leadership training, commander's courses, troop
information programs, etc.

     e.  Submit an annual Military Equal Opportunity assessment
for the period ending September 30 to the Under Secretary of
Defense (Personnel & Readiness) (USD (P&R)) via the chain of
command to arrive no later than February 1 of the following year
as directed in reference (j) and provide the Secretary of the
Navy with an annual briefing of the results by June 1.  This
assessment and briefing shall include information contained in
enclosure (2).

11.  **Report.**  Symbol DD-P&R(A)1760(5350) is assigned to the
reporting requirement contained in paragraph 10e and enclosure
(2) in accordance with SECNAVINST 5214.2B

                                   Richard Danzig

Distribution:
SNDL Parts 1 and 2
MARCORPS PCN 71000000000000 and 71000000100

5

SECNAVINST 5350.16
28 JUN 1999

#### EQUAL OPPORTUNITY (EO) DEFINITIONS

1. <u>Affirmative Action</u>. Methods used to achieve the objectives of Military Equal Opportunity (MEO) program. Processes, activities, and systems designed to prevent, identify and eliminate unlawful discriminatory treatment as it affects the recruitment, training, assignment, utilization, promotion and retention of military personnel.

2. <u>Complaint</u>. An allegation of unlawful discrimination based on race, ethnicity, color, national origin, religion or sex.

    a. <u>Informal Resolution System (IRS)</u>. A system for resolving Equal Opportunity/Sexual Harassment complaints at the lowest possible level in the chain of command.

    b. <u>Informal Complaint</u>. Allegation of unlawful discrimination or sexual harassment, made either orally or in writing, that is not submitted as a formal complaint.

    c. <u>Formal Complaint</u>. Allegation of unlawful discrimination or sexual harassment that is submitted in writing to the authority designated for receipt of such complaints in Service implementing regulations.

3. <u>Complainant</u>. A servicemember who submits allegations of unlawful discrimination (as defined in item 16 below).

4. <u>Defense Equal Opportunity Council (DEOC)</u>. A senior executive-level decision-making body that provides advice and counsel to the Secretary and Deputy Secretary of Defense on all DoD Equal Opportunity and/or Equal Employment Opportunity matters.

5. <u>DoD Military Equal Opportunity (MEO) Program</u>. The DoD-wide military program of EO that is accomplished through efforts by the DoD Components. It provides an environment in which servicemembers are ensured an opportunity to rise to the highest level of responsibility possible in the military profession, dependent only on merit, fitness and capability.

Enclosure (1)

SECNAVINST 5350-16
28 JUN 1888

6.  Equal Opportunity (EO). The right of all persons to
participate in, and benefit from, programs and activities for
which they are qualified.  These programs and activities shall
be free from social, personal or institutional barriers that
prevent people from rising to the highest level of
responsibility possible.  Persons shall be evaluated on
individual merit, fitness and capability, regardless of race,
ethnicity, color, sex, national origin or religion.

7.  Equal Opportunity (EO) Climate Assessment. Determining the
"health" and functioning effectiveness of an organization by
examining such factors as morale, teamwork and communication.
This is accomplished through some or all of the following:
group and/or individual interviews, observations, surveys or
questionnaires and reviews of records and reports.

8.  Ethnic Group. A group socially distinguished or set apart
by others and/or by itself, primarily on the basis of cultural
or nationality characteristics.

9.  Ethnic and Racial Categories. The basic racial and ethnic
categories for DoD reporting are defined as follows:

     a.  American Indian or Alaskan Native. A person having
origins in the original peoples of North America.

     b.  Asian or Pacific Islander. A person having origins in
any of the original peoples of the Far East, Southeast Asia, the
Indian subcontinent or the Pacific Islands.  This area includes
China, India, Japan, Korea, the Philippine Islands and Somoa.

     c.  Black (Not of Hispanic Origin). A person having
origins in any of the original peoples of Africa.

     d.  Hispanic. A person having origins in any of the
original peoples of Mexico, Puerto Rico, Cuba, Central or South
America or of other Spanish cultures, regardless of race.

     e.  White (Not of Hispanic Origin). A person having
origins in any of the original peoples of Europe, Africa or the
Middle East.

Enclosure (1)                  2

10. Legal Sufficiency Review. A review of an investigation
into a formal complaint of unlawful discrimination or sexual
harassment to determine whether:

a. The investigation complies with all applicable legal
and administrative requirements;

b. The investigation adequately addresses the matters
complained of;

c. The evidence supports the findings of the investigating
officer or board;

d. The conclusions and recommendations of the
investigating officer or board are consistent with the findings;
and,

e. Any errors or irregularities exist, and, if so, their
legal effects, if any.

11. National Origin. An individual's or ancestor's place of
origin. Also applies to a person who has physical,
cultural or linguistic characteristics of a national group.

12. Protected Communication. A lawful communication to a
Member of Congress, an IG, any member of a DoD audit,
inspection, investigation or law enforcement organization, or to
any other person or organization (including any person or
organization in the chain of command) designated pursuant to
regulations or other established administrative procedures to
receive such communications, to which a member of the Armed
Forces makes a complaint or discloses information that he or she
reasonably believes evidences a violation of law or regulation
(including those covering unlawful discrimination and sexual
harassment), mismanagement, a gross waste of funds, an abuse of
authority, or a substantial and specific danger to public health
of safety.

13. Race. A division of human beings identified by the
possession traits that are transmissible by descent and that are
sufficient to characterize persons possessing these traits as a
distinctive human genotype.

3                           Enclosure (1)

SECNAVINST 5350.16
28 JUN 1998

14.  Religion.  A personal set or institutional system of
attitudes, moral or ethical beliefs, and practices that are held
with the strength of traditional religious views,
characterized by ardor and faith, and generally evidenced
through specific religious observances.

15.  Reprisal.  Taking or threatening an unfavorable personnel
action or withholding or threatening to withhold a favorable
personnel action, or any other act of retaliation, against a
military member for making or preparing a protected
communication.

16.  Sexual Harassment.  A form of sex discrimination that
involves unwelcome sexual advances, requests for sexual favors,
and other verbal or physical conduct of a sexual nature when:

     a.  Submission to such conduct is made either explicitly or
implicitly a term or condition of a person's job, pay or career,
or;

     b.  Submission to or rejection of such conduct by a person
is used as a basis for career or employment decisions affecting
that person, or

     c.  Such conduct has the purpose or effect of unreasonably
interfering with an individual's work performance or creates an
intimidating, hostile or offensive working environment.

Note:  This definition emphasizes that workplace conduct, to be
actionable as "abusive work environment" harassment, need not
result in concrete psychological harm to the victim, but rather
need only be so severe or pervasive that a reasonable person
would perceive, and the victim does perceive, the work
environment as hostile or offensive.  ("Workplace" is an
expansive term for military members and may include conduct on
or off duty, 24 hours a day.)  Any person in a supervisory or
command position who uses or condones any form of sexual
behavior to control, influence, or affect the career, pay or job
of a military member or civilian employee is engaging in sexual
harassment.  Similarly, any military member or civilian employee
who makes deliberate or repeated unwelcome verbal comments,

Enclosure (1)                    4

SECNAVINST 5350.16
28 JUN 1998

gestures or physical contact of a sexual nature in the workplace
is also engaging in sexual harassment.

17.  _Unlawful Discrimination_.  Includes discrimination on the
basis of race, ethnicity, color, national origin, religion, or
sex that is not otherwise authorized by law or regulation.

SECNAVINST 5350.16
28 JUN 1990

## MILITARY EQUAL OPPORTUNITY ASSESSMENT (MEOA) REPORTING REQUIREMENTS

Each DoD component shall submit an annual MEO assessment for the period ending September 30 to the USD (P&R) no later than February 1 of the following year. The report shall include the following information:

A.  An executive summary, providing an overall assessment of each DoD component's Affirmative Action Plans (AAPs) and EO Programs.

B.  An assessment of each affirmative action in the following ten categories shall be made an enclosure to the report. The assessment in each category should include quantitative data in the basic race and/or ethnic classifications for officers and enlisted personnel broken down by gender.

- Recruiting and/or accessions.
- Composition.
- Promotions.
- Professional Military Education.
- Separations.
- Augmentation and/or Retention.
- Assignments.
- Discrimination and/or Sexual Harassment Complaints.
- Utilization of Skills.
- Discipline.

C.  These requirements are further explained in DoD Instruction 1350.3 (reference (j)).

Enclosure (2)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) | |
| Rev. GEORGE P. BYRUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-02102 (RJL) |
| | ) | |
| DONALD C. WINTER | ) | |
| In his Official Capacity as Secretary, | ) | |
| DEPARTMENT OF THE NAVY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

# EXHIBIT D

to Defendant's Motion to Dismiss

SECNAVINST 5354.1 (January 2, 1997)



**DEPARTMENT OF THE NAVY**
OFFICE OF THE SECRETARY
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

SECNAVINST 5354.1
ASN(M&RA)
02 January 1997

## SECNAV INSTRUCTION 5354.1

From: Secretary of the Navy
To:   All Ships and Stations

Subj: DEPARTMENT OF THE NAVY (DON) POLICY ON MILITARY EQUAL
      OPPORTUNITY COMPLAINT PROCESSING

Ref:   (a) DODDir 1350.2 of 18 Aug 95 (NOTAL)
       (b) NAVPERS 15620
       (c) OPNAVINST 5354.1D (NOTAL)
       (d) MCO P5354.1C (NOTAL)

Encl:  (1) N05354-1

1. <u>Purpose</u>.  To provide a Department of the Navy (DON) policy
for military equal opportunity complaint processing and to
implement reference (a).

2. <u>Applicability</u>.  This instruction applies to all active duty
military personnel, Regular and Reserve; Naval Academy and
Reserve Officer Training Corps midshipmen; and Reserve personnel
when performing active or inactive duty for training or engaging
in any activity directly related to the performance of a
Department of Defense (DoD) Reserve duty or function.

3. <u>Definition and Terms</u>.  Reference (a) provides definitions of
key terms used in this instruction, and shall govern its
interpretation.

SECNAVINST 5354.1

0 2 JAN 1997

4. Background

    a. Military members of the DON must have the opportunity to serve in an environment free from unlawful discrimination and harassment. Because of the unique nature of military service, members must function as a team, unified by trust, mutual respect, and loyalty. Toward that end, equal opportunity programs and the complaint resolution process must support both individual opportunity and unit effectiveness.

    b. To ensure success of equal opportunity programs, commanders must have direct responsibility for managing the complaint process. They must ensure that informal and formal complaint resolution processes are clearly communicated and well understood by all personnel. The complaint and redress process must guarantee prompt, thorough and impartial investigation and quick resolution of all complaints, and must also guard against reprisals.

5. Policy. The DON is committed to ensuring that military members are afforded a fair and effective equal opportunity complaint process. In support of this commitment:

    a. All reported incidents of unlawful discrimination and sexual harassment will be investigated and resolved at the lowest appropriate level. The DON Informal Resolution System (reference (b) refers), serves as the model for informal complaint handling. Complaints should be resolved informally whenever possible; however, there is no requirement to attempt informal resolution prior to filing a formal complaint.

    b. A complaint should be made within 60 days of the offending incident, or in the case of a series of incidents, within 60 days of the most recent incident. Commanders may accept complaints beyond this timeframe if, in their judgment, circumstances warrant.

    c. Complaints will be investigated and resolved within 60 days of filing the complaint. In the case of complaints filed by an inactive Reservist or in which an inactive Reservist is the

2

SECNAVINST 5354.1
0 2 JAN 1997

subject of the complaint (a "Reserve complaint"), resolution of
formal complaints should be completed within 120 days of filing.

d.  A written complaint form provided by each Service
(references (c) and (d) refer) will be used for initiating and
processing formal complaints of discrimination and sexual
harassment.  The form will document all steps of the
investigation and resolution process, and will contain, at a
minimum, the following elements:

(1) A summary of the complaint, including date submitted
and remedy requested by the complainant.

(2) Referral to counseling and support services.

(3) A record of the investigative process, including
commencement and completion dates, findings and recommendations,
and acknowledgment of receipt of investigation findings and
recommendations by complainant and subject(s) of the complaint.

(4) A record of action taken to resolve the complaint by
the chain of command.

(5) A block in which the complainant can request appeal
of the command decision to higher authority.  Invoking the appeal
option should require no further application or documentation by
the complainant.

(6) A record of command follow-up with the complainant 30
to 45 days from completion of remedial action on the complaint.
In the case of a Reserve complaint, follow-up should extend
through a minimum period of 1 year following conflict resolution.
Command follow-up will include a determination of complainant
satisfaction with the effectiveness of corrective action,
timeliness, present command climate, and a check to ensure
reprisal did not occur.

e.  While submission of a written equal opportunity complaint
is the preferred method of filing a formal complaint, service
members may instead file an Article 138 Complaint against their

3

commanding officer or a NAVREGS 1150 against a superior (other than the commanding officer) in their chain of command. Additionally, all service members have the right to communicate with the Inspector General and members of Congress.

f. As part of the appeal process provided through the complaint form described in paragraph 5d, the first appeal of a decision on a formal complaint should be to the first commander in the chain of command with general court martial convening authority. Final resolution of an appeal on a formal complaint will rest with the Secretary of the Navy. A complainant may submit an appeal on any legal or equitable grounds, based upon his or her perception that existing DoD or DON regulations were incorrectly applied in the particular case, that facts were ignored or weighed incorrectly, that remedial action ordered by a commander was insufficient under the circumstances or on any other good faith basis. Both the initial and the final appellate authority may determine whether the initial complaint and/or the appeal was made in good faith, and if not, to take appropriate corrective measures, including punitive ones. The complainant may also submit documentation in addition to the complaint form, such as statements of witnesses, personnel record entries, etc., as may be helpful in resolving the appeal.

g. Commanders will ensure that their command climate does not tolerate acts of reprisal, intimidation or further acts of discrimination, and will take immediate action to stop, identify and prevent all forms of reprisal within their command. If a senior-subordinate relationship exists between the complainant and the subject(s) of the complaint, commanders will, when possible, relocate one or both parties, without prejudice, during the course of the investigation. If the subject of the complaint is the commander, and his or her motivation in a particular situation could be legitimately called into question (as in the case of writing the complainant's personnel evaluation), the commander should consider recusing himself or herself and requesting an appropriate reporting senior to fulfill his or her responsibilities. If the discrimination/harassment

SECNAVINST 5354.1
0 2 JAN 1997

investigation finds the complaint is substantiated, and the
subject of the complaint is the complainant's supervisor, the
commander may remove the subject from his/her supervisory role as
operational requirements necessitate.  In such an event, the
complainant will be moved only at his or her request.  Transfer
of the parties involved shall not be considered by the commander
to be a resolution of the complaint.  If the investigation finds
the complaint is unsubstantiated, the commander will monitor
potential reprisals by checking on workcenter climate and
ensuring performance appraisals document job performance
accurately (i.e., downgrades shall be supported by written
counseling and not related to the complaint).

     h.  Administrative investigations will be conducted by the
local command, as appropriate.  Reprisal investigations will
normally be handled at the next higher level in the chain of
command.

     i.  Complainants and subject(s) of the complaint will be
provided with feedback throughout the investigation and
resolution process.  Complainants and subject(s) of the complaint
will receive completed copies of the complaint form and, in
substantiated cases, receive either copies of investigative
results or a summary of the completed investigation, consistent
with the Privacy Act.  Complainants and subject(s) of the
complaint will be responsible for handling the complaint form and
investigative report in accordance with the Privacy Act and
Freedom of Information Act, per enclosure (1).

     j.  Upon accession, including Reserve indoctrination, all DON
personnel will receive training on the subject of this
instruction and will be made familiar with the informal and
formal complaint process in the area of unlawful discrimination
and sexual harassment.  Information on the complaints process and
equal opportunity will also be published in command Plans of the
Day and posted in a prominent location on bulletin boards.  Every
command in the DON shall have a current copy of the complaint
form and their respective Equal Opportunity Manual.

5

SECNAVINST 5354.1

0 2 JAN 1997

k.  Incidents of unlawful discrimination and sexual harassment will be reported fully and promptly, and investigated in like fashion.  DON progress in this area will be tracked to include the following data:

(1) Total numbers of claims, by category (i.e., sexual/ racial harassment), by gender, race and ethnicity of claimant;

(2) Information permitting the sorting of complaint data by geography, type command, community or similar groupings, sufficient so that trends may be identified;

(3) Length of time data showing complaint dates, local resolution time, formal or informal status, time for appeals (if made), and time for final response to the complainant; and

(4) Summary data in cases of substantiated complaints, indicating administrative and/or punitive measures taken against the offender, whether under Bureau of Naval Personnel (BUPERS) or Headquarters Marine Corps regulations, Article 15 of the Uniform Code of Military Justice (UCMJ), or by action of a court-martial.

6.  _Action_.  The Chief of Naval Operations (CNO) and the Commandant of the Marine Corps (CMC) shall:

a.  Implement policies consistent with this instruction and reference (a).

b.  Provide education and training programs that support the complaint process, including reprisal awareness.

c.  Establish effective systems to resolve informal and formal complaints.

d.  Establish systems to monitor the complaint process.

e.  Ensure that commanders conduct investigations which meet requirements of reference (a) and comply with the reporting process required to support paragraph 5k.

SECNAVINST 5354.1
0 2 JAN 1997

7.  <u>Report</u>.  The reporting requirement contained in paragraph 5k
is exempt from reports control by SECNAVINST 5214.2B.

Richard Danzig
Acting

Distribution:
SNDL Parts 1 and 2
MARCORPS PCN 71000000000
   and 71000000100

SECNAV/OPNAV Directives Control Office
Washington Navy Yard Bldg 200
901 M Street SE
Washington DC  20374-5074 (20 copies)

Order from:
Naval Inventory Control Point
Cog "I" Material
700 Robbins Avenue
Philadelphia PA  19111-5098

Stocked:  300 copies

7

SECNAVINST 5354.1

0 2 JAN 1997

N05354-1

**System name:**
    Equal Opportunity Management Information System (February
22, 1993, 58 FR 10757).

**System location:**
    Primary System-Bureau of Naval Personnel, 2 Navy Annex,
Washington, DC 20370-5001; and local activity to which individual
is attached.  Official mailing addresses are published as an
appendix to the Navy's compilation of system of record notices.
Secondary System-Department of the Navy activities in the chain
of command between the local activity and the headquarters level.
Official mailing addresses are published as an appendix to the
Navy's compilation of system of record notices.

**Categories of individuals covered by the system:**
    Navy personnel who are involved in formal or informal
complaints or investigations involving aspects of equal
opportunity; and/or who have initiated, or were the subject of
correspondence concerning aspects of equal opportunity.

**Categories of records in the system:**
    Correspondence and records concerning incident data,
endorsements and recommendations, formal and informal complaints
and investigations concerning aspects of equal opportunity.

**Authority for maintenance of the system:**
    5 U.S.C. 301, Departmental Regulations.

**Purpose(s):**
    To assist in equal opportunity measures, including but not
limited to, complaints, investigations, and correspondence.

**Routine uses of records maintained in the system, including
categories of users and the purposes of such uses:**

    In addition to those disclosures generally permitted under 5
U.S.C. 552a(b) of the Privacy Act, these records or information
contained therein may specifically be disclosed outside the DoD
as a routine use pursuant to 5 U.S.C. 552a(b)(3) as follows:
The `Blanket Routine Uses' that appear at the beginning of the
Navy's compilation of systems notices apply to this system.

Enclosure (1)

SECNAVINST 5354.1

0 2 JAN 1997

**Policies and practices for storing, retrieving, accessing, retaining, and disposing of records in the system:**

**Storage:**
   Automated records may be stored on magnetic tapes, disc, and drums.  Manual records may be stored in paper files, microfiche, or microform.

**Retrievability:**
   Filed alphabetically by last name of individual concerned.

**Safeguards:**
   Computer facilities are located in restricted areas accessible only to authorized persons that are properly screened, trained and cleared.  Manual records and computer printouts are available only to authorized personnel having a need to know.

**Retention and disposal:**
   Records maintained for two years following completion of the investigation, and then destroyed.  If incident is the subject of litigation, destroy two years after conclusion of litigation.

**System manager(s) and address:**
   Chief of Naval Personnel (Pers 06), Bureau of Naval Personnel, 2 Navy Annex, Washington, DC 20370-5001.

**Notification procedure:**
   Individuals seeking to determine whether this system of records contains information about themselves should address written inquiries to the Chief of Naval Personnel (Pers 06), Bureau of Naval Personnel, 2 Navy Annex, Washington, DC 20370-5001; or to the local activity where assigned.  Official mailing addresses are published as an appendix to the Navy's compilation of system of record notices.
   The letter should contain full name and signature of the requester.  The individual may visit the Chief of Naval Personnel, Bureau of Naval Personnel, 2 Navy Annex, Washington, DC 20370-5001, for assistance with records located in that building; or the individual may visit the local activity to which attached for access to locally maintained records.  Proof of identification will consist of Military Identification Card for persons having such cards, or other picture-bearing identification.

Enclosure (1)

2

SECNAVINST 5354.1
0 2 JAN 1997

**Record access procedures:**
     Individuals seeking access to records about themselves
contained in this system of records should address written
inquiries to the Chief of Naval Personnel (Pers 06), Bureau of
Naval Personnel, 2 Navy Annex, Washington, DC 20370-5001; or, in
accordance with the Directory of Department of the Navy Mailing
Addresses (i.e., local activities).
     The letter should contain full name and signature of the
requester.  The individual may visit the Chief of Naval
Personnel, Bureau of Naval Personnel, 2 Navy Annex, Washington,
DC 20370-5001, for assistance with records located in that
building; or the individual may visit the local activity to which
attached for access to locally maintained records.  Proof of
identification will consist of Military Identification Card for
persons having such cards, or other picture-bearing
identification.

**Contesting record procedures:**
     The Navy's rules for accessing records, and for contesting
contents and appealing initial agency determinations are
published in Secretary of the Navy Instruction 5211.5; 32 CFR
part 701; or may be obtained from the system manager.

**Record source categories:**
     Federal, state, and local court documents; military
investigatory reports; general correspondence concerning
individual.

**Exemptions claimed for the system:**
     Parts of this system may be exempt under the provisions of
5 U.S.C. 552a(k)(1) and (k)(5), as applicable.
     An exemption rule for this system has been promulgated in
accordance with the requirements of 5 U.S.C. 553(b)(1), (2) and
(3), (c) and (e) and published in 32 CFR Part 701, subpart G.
     For additional information contact the system manager.

Enclosure (1)

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Rev. GEORGE P. BYRUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-02102 (RJL) |
| ) | |
| DONALD C. WINTER ) | |
| In his Official Capacity as Secretary, ) | |
| DEPARTMENT OF THE NAVY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

# EXHIBIT E

to Defendant's Motion to Dismiss

excerpts from Complaint in <u>Gibson et al. v. United States Navy et al.</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

DAVID L. GIBSON )
    6008 Yellow Rose Drive )
    Pensacola, FL 32526 )
    and )
     )
RICHARD L. ARNOLD )
    13055 Fringetree Drive, #E )
    Jacksonville, FL 32246 )
    and )
     )   CASE NO.: 3:06 cv 187/mcr/md
RAY A. BAILEY )
    345 Wilson Dr., )
    Havelock, North Carolina, 28532 )
    and )
     )
RICK P. BRADLEY )
    2580 Grummer Lane )
    Conway, Ark. 72034 )
    and )
     )
GEORGE P. BYRUM )
    3421 Anderson Drive )
    Winston-Salem, NC 27127 )
    and )
     )
ANDREW CALHOUN )
    3269 East Bonnie Drive )
    Oak Creek, WI 53154 )
    and )
     )
TIMOTHY J. DEMY )
    7 Ellen Road )
    Middletown, RI 02842 )
    and )
     )

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.

06 APR 28 PM 2: 28

FILED

Entire document
not scanned
Exhibits 1-20

THE ASSOCIATED GOSPEL CHURCHES )
    209 Pine Knoll Dr. Suite B )
    Greenville, SC 29609 )
            )
        Plaintiffs, )
            )
        v. )
            )
THE UNITED STATES NAVY )
    Washington, D.C. 20530 )
        and )
            )
THE SECRETARY OF THE NAVY )
    Room 4E686 - The Pentagon )
    Washington, D.C. 20350-1000 )
            )
        Defendants. )
            )

## CLASS ACTION
## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND EQUITABLE RELIEF, AND AN AS APPLIED CONSTITUTIONAL CHALLENGE TO 10 U.S.C. § 612 TO ADDRESS DEFENDANTS' UNCONSTITUTIONAL RELIGIOUS DISCRIMINATION, AND VIOLATIONS OF THE FIRST AND FIFTH AMENDMENT AND THE RELIGIOUS FREEDOM RESTORATION ACT

## I. INTRODUCTION

1.    The Complaint

    a.    This a federal class action by non-liturgical Christian Navy chaplains

challenging religious discrimination and violations of the First and Fifth Amendments

and the Religious Freedom Restoration Act (RFRA) in the U.S. Navy Chaplains

Corps (the "CHC") promotion, accession, assignment, retention and separation

systems and decision making processes. This includes: (i) the unconstitutional

composition of CHC chaplain selection boards and their discriminatory practices; (ii)

6

the unconstitutional delegation to denominational representatives, *i.e.*, chaplains, of discretionary civic authority to award, deny or terminate government benefits for other denominational representatives; (iii) the establishment of forbidden denominational preferences; (iv) the establishment of illegal religious quotas for Navy chaplain promotions and career opportunities; (v) the establishment of a preferred religious tradition and a religious patronage system in the CHC; and (vi) creation of a pervasive climate of bias, animosity and deceit toward plaintiffs and members of the class.

b.      This is also an as applied constitutional challenge to 10 U.S.C. § 612 which requires selection boards contain at least one member of the category under consideration. The Navy's chaplain promotion system uses small boards of five or six board members, including chaplains, who vote in secret with no accountability or guarantees of religious neutrality in making selection decisions. Because chaplains are denominational representatives on loan to the Navy from their faith groups, the delegation of discretionary government power to persons defined by their religious identity violates the Establishment Clause.

c.      An index of the Complaint's topics and counts is Exhibit 1.

d.      The issues involved in this litigation involve legal and constitutional questions uniquely suited for judicial review and resolution, do not involve or require unique military expertise or judgment, do not require exhaustion of administrative remedies as the issues are legal and constitutional, not do they involve judicial interference with military operations.

7

## II. JURISDICTION AND VENUE

2.    Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343, 1346, 5 U.S.C. §

702 and 42 U.S.C. § 2000-bb. A declaration of the rights of these and other Navy non-

liturgical Christian chaplains and the constitutionality of 10 U.S.C. § 612 as applied to

chaplain promotion boards, various Navy and CHC practices or policies is sought pursuant to

28 U.S.C. §§ 2201 and 2202. Venue is appropriate under 28 U.S.C. § 1391(e) since the

defendants are a federal agency and have offices and facilities located in Pensacola, Florida.

## III. PARTIES

### A. Plaintiffs

3.    a.    Individual Plaintiffs.

The following named plaintiffs bring this action on behalf of themselves and as a

class action on behalf of all other persons similarly situated in the class defined below in ¶ 9:

1.    CDR DAVID L. GIBSON. CH Gibson lives at 6008 Yellow Rose Dr.,

Pensacola, FL 32526. He is endorsed by the Church of God, Cleveland, Tennessee, a

pentecostal, non-liturgical denomination. He was commissioned as a chaplain in July

1984. He began active duty October 31, 1986, and was subsequently promoted to

LCDR. Despite outstanding fitness reports and a wide variety of challenging

assignments, he was not selected for Commander by the FY99 and subsequent

promotion boards. At the same time it denied CH Gibson promotion to Commander,

the Navy selected other chaplains with inferior records based on the Navy's bias

against non-liturgical chaplains and preference for liturgical chaplains.

8

reprimanded for praying in Jesus' Name at a graduation while assigned to Paris Island by his senior chaplain, although such a practice is consistent with his faith group's beliefs and practices.

CH Bradley's FOS to LCDR is believed to be the result of prejudice agasinst him for his consistent, effective performance and insistence on following the dictates of his conscience, which included praying in the name of Jesus, as authorized by his faith group.

5.    CDR GEORGE P. BYRUM. CH Byrum lives at 3421 Anderson Dr., Winston-Salem, NC 27127. He began his military career on March 24, 1972. Completing Navy flight school, he served as a Naval aviator until he entered the Theological Student Program in 1979. Graduating from Southwestern Baptist Theological Seminary, he became a Navy chaplain in 1981, endorsed by the Plymouth Brethren, a non-liturgical faith group. During his career as a chaplain, he was selected for post-graduate schooling and earned a Masters Degree in pastoral counseling. CH Byrum's outstanding performance is indicated by the fact that he never had less then an "A" on his 26 observed fitness reports, was rated in the top 1% and 25 times recommended for "early promotion." CH Byrum had two combat tours, serving on the USS KENNEDY during the Beirut (Lebanon) conflict and in Desert Storm with the 4th Marine Expeditionary Brigade. He was selected for the Chaplain Advanced Course during which he completed a second Masters Degree. He was awarded the Humanitarian Service Medal for his work as the command chaplain of the Naval Air Station Guam for his leadership in relief work following Typhoon

13

Omar in 1993. Despite his outstanding record, selection for post graduate school and two additional graduate degrees, the Chaplain Corps FY96 SERB selected CH Byrum for involuntary retirement effective July 31, 1996, before he was considered for promotion to Captain. CH Byrum challenged his selection for SER through the BCNR, using the same arguments presented here, that the reservation of a selection board seat for a Catholic, for both promotion and SER boards, was illegal. The BCNR rejected his petition.

Analysis of the FY96 SER candidate career histories shows while choosing CH Byrum with no FOS for SER, the board retained four of the six chaplains with numerous FOS to CAPT, including the chaplain with the most FOS (CH Palmer) who had about one year active service left. This is contrary to the Secretary's SER criteria for retention which emphasized future potential for service. CH Byrum believes the CHC selected him for involuntary retirement on the basis of his faith group and because his outstanding record as a non-liturgical chaplain was a threat to the liturgical domination of the CHC. No other explanation is apparent given the records of those the CHC retained compared with CH Bryrum's.

6. REV. ANDREW CALHOUN. Rev. Calhoun currently resides at 3269 East Bonnie Drive, Oak Creek, Wisconsin. He began his career as a Navy chapalin commissioned as an Ensign in 1984 in the Theological Student Program and endorsed by the Church of God in Christ, a non-liturgical denomination. He was subsequently given a superceding appointment to the CHC in 1988, came on active duty in 1990 and was assigned to the Naval Training Center, Great Lakes, Illinois. He was then

14

157. The NIG and the Judge Advocate General (JAG), despite ample indications of denominational considerations affecting chaplain promotions, has covered up and excused such abuses.

158. A recent DODIG hot line complaint, alleging compromise and manipulation of the FY07 Captain Chaplain Promotion Board as a reward for adultery, also suggests that other misconduct has occurred in the Chief's office or among senior CHC leadership but has been covered up.

159. The Navy has an obligation to expose and address misconduct, but has developed a culture where coverup is more important than its duty to see the law and regulations are followed.

160. This culture of coverup and non-accountability is a contributing factor to the culture of prejudice and bias alleged herein and results in a diminution of plaintiffs' constitutional and statutory rights.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for a declaration, injunction and judgment against the Defendants as follows:

### A. Declaratory Relief

The allegations in paragraphs 1 through 160 above show there is a bona fide dispute between the Plaintiffs and the Navy concerning whether the above challenged Navy policies violate the Establishment, Free Exercise and Free Speech Clauses and the Fifth Amendment's due process (equal protection) clause, the Civil Rights Act, the RFRA, and the DOD and Navy's own regulations.

Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiffs request that this Court render a Declaratory Judgment that:

1.     The following Navy policies and practices are unconstitutional as applied and suppress the Plaintiffs' and the class' fundamental rights secured by the First and Fifth Amendments to the United States Constitution, and that these policies also violate federal Civil Rights laws, RFRA, and DOD and Navy regulations:

    a.     The "Third's Policy" and its subsequent evolution or quotas which distributed chaplain allocations among select FGCs or denominations without regard to the Navy's religious needs as evidenced by it religious demographics.

    b.     The Navy's policies of: (I) reserving at least two promotion board memberships for Catholics between FY77 and 1986; (ii) reserving at least one selection board membership for a Catholic chaplain on each selection board not requiring Admirals from FY86 to 02; (iii) allowing the Chief of Chaplains or his Deputy to determine chaplain promotion board or SER board members; and (iv) allowing the Chief or his Deputy to be CHC selection board president.

    c.     The Navy's former policy of identifying the faith group of each chaplain being considered by a promotion board or SER board.

    d.     The Navy's hostility to and suppression of non-liturgical alternatives to a liturgical General Protestant service and/or other religious education services, *e.g.*, Sunday School, Vacation Bible School, and the Navy's

131

concomitant endorsement and establishment of an official liturgical General Protestant service and religious education.

e.     The establishment of systems and rating chains in which chaplains normally rate or provide unchallenged input to the evaluation of other chaplains of the same or different faith groups with no independent safeguards or provisions to: (I) insure religious neutrality in ratings or assignments; or, (ii) established criteria to insure denominational considerations or prejudice do not enter into the evaluation.

f.     The Navy's practice of "stacking" chaplain promotion boards between 1977 and 1986 with liturgical chaplain board members.

g.     The Navy's former practice of deriving accession goals unrelated to the free exercise needs of DON personnel and its current practice of having no accession goals violates the Establishment Clauses mandate of religious neutrality.

2.     10 U.S.C. § 612 is unconstitutional as applied to the CHC boards which have a small number of board members who vote in secret with no accountability or guarantees the voting power will be used only for neutral, secular and non-ideological purposes.

3.     The dominance of the Navy's senior ranks and key billets by (I) liturgical Protestant chaplains out of all proportion to their actual percentages in the Navy, (ii) Catholic chaplains out of all proportion to their percentage of the CHC, and (iii) the

concomitant absence of appropriate numbers of non-liturgical Protestant chaplains in those same ranks and billets is:

    a.    the result of the Navy's illegal religious discrimination and bias;

    b.    an illegal endorsement of the Catholic and liturgical Protestant traditions;

    c.    a violation of the First and Fifth Amendments;

    d.    an unconstitutional religious patronage system.

4.    The Navy's policy and practice of favoring certain religious denominations and discriminating against others in promotion, retention, key billeting decisions, and discipline and career opportunity has resulted in an unconstitutional religious test contrary to Article VI of the Constitution, an endorsement of religion, and illegal discrimination in violation of the First and Fifth Amendments, 42 U.S.C. § 1981 and RFRA, 42 U.S.C. § 2000-bb.

5.    Plaintiffs and members of the class have been unlawfully denied a fair opportunity for promotion in violation of the Constitution, federal statutes, and DOD and Navy regulations because CHC selection boards for LCDR through CAPT from FYs 1977 to the present have been (a) composed in violation of the Establishment and Due Process (Equal Protection) Clauses; (b) improperly biased with religious discrimination; and (c) the results of such promotion boards are void and the Navy's personnel actions in response to those boards are *ultra vires* and void *ab initio*.

6.    The CHC SER boards have been unconstitutionally composed, permeated by religious bias and/or conducted and administered in an unconstitutional manner in

violation of the First and Fifth Amendments and the Religious Freedom Restoration Act.

7.      SECNAVINST 1730.7C's restrictions on religious speech at ceremonies or other functions violates the Free Speech, Establishment, Free Exercise and Due Process Clauses.

8.      The challenged Chaplain Recruiting Directives and the CHC's Recruiting Policy violated the First and Fifth Amendments and any official comments in fitness reports or commendations reflecting those Directives (except for chaplains assigned recruiting duties) must be expunged from all chaplain records.

9.      All chaplain promotion boards held since the Navy promulgated the challenged Chaplain Recruiting Directives and their resulting Recruiting Policy are invalid since the Navy has injected unconstitutional standards and criteria into the promotion process.

10.     The Navy's failure to identify and meet the free exercise needs of its distinct religious communities, *e.g.*, pentecostal congregations at Naples and Rota, is unconstitutional and demonstrates hostility to those religious in violation of the Establishment Clause.

11.     The Navy's failure to identify and nurture chaplains who can effectively pastor and/or grow military congregations demonstrates hostility to religion in general and non-liturgical faith groups in particular.

12.     The Navy and CHC have illegally covered up misconduct and prejudice.

**B.      Injunctive Relief**

134

The allegations in paragraphs 1 through 160 above, incorporated herein by reference as though pleaded in full, show that the Plaintiffs have suffered, are suffering and will continue to suffer immediate, severe, and irreparable injury by virtue of the Navy's acts, policies and practices as set forth herein unless restrained by this Court.

Plaintiffs do not have an adequate remedy at law, so they seek injunctive relief on behalf of themselves and the class against the Navy, ordering the Defendants, their agents and employees be enjoined from:

1.    Further and future faith based discrimination or retaliation in accession, promotion, career development and duty assignment decisions against non-liturgical Christian chaplains.

2.    Considering, displaying or providing in the record which goes before a selection board a chaplain's denomination or faith group when he or she is being considered by selection boards.

3.    Applying faith group quotas to chaplains being considered for promotion, retention, career development and duty assignment decisions, except where necessary to meet free exercise needs.

4.    Further and future interference in any manner with the fundamental right to Free Exercise of religion by non-liturgical Christian chaplains and Navy personnel.[18]

---

15    Plaintiffs recognize the First Amendment does not protect religious practices that are hostile to the Constitution, the rule of law or good order and discipline. *E.g., United States v. Reynolds*, 98 U.S. 145 (1878) and *Davis v. Beason*, 133 U.S. 333 (1890) (First Amendment did not allow Mormon's to practice polygamy or shield them from prosecution for violation of anti-polygamy laws). These are not issues in this case.

5.     Further and future interfering in any manner with non-liturgical Christian chaplains' fundamental Free Speech rights including the religious content and viewpoint of their religious speech.

6.     Having a chaplain as a chaplain promotion or SER board member unless the number of non-chaplain board members is large (greater than 16), votes are not secret and there is accountability to ensure votes are based on neutral, secular and non-ideological criteria.  If these conditions are met, the Navy be enjoined from allowing the Chief or the Deputy Chief of Chaplains to have any role in deciding who that chaplain is and serving as president or member of a chaplain promotion board.

7.     Identifying the faith group of any chaplain being considered for promotion, the SER program or other personnel management or career development program except where such identification is needed to further the Free Exercise interests of Navy personnel based on actual and relevant DON religious needs and demographics.

8.     Prohibiting non-liturgical services when there is no danger to a compelling mission, or limiting non-Catholic Christian services to a "*liturgical* General Protestant" service when non-liturgical Christians are a majority of the relevant community.

9.     Restricting or denying Navy facilities for non-liturgical services or other religious activities where a non-liturgical chaplain (or authorized lay leader) is present and there are non-liturgical Navy personnel also present.

10.     Having chaplains (a) rate other chaplains, except in exceptional cases based on operational necessity, and then only where there are safeguards to insure that

denominational or religious neutrality is maintained and there are established

objective criteria for evaluation; or (b) providing input on other chaplains' fitreps

without objective, secular, neutral and non-ideological criteria.[19]

11.    Treating non-liturgical chaplains differently than liturgical chaplains in

matters of administration, career development and military justice or discipline.

12.    Bringing reservists to active duty above the grade of LT without a recorded,

specific justification directly related to meeting religious free exercise needs as

reflected in the Navy's religious demographics, and then only in accordance with

Navy regulations.

13.    Requiring chaplains to support the challenged Navy Chaplain Recruiting

policy or a similar future policy and referencing such support in chaplain fitness

reports, except for those chaplains who have been specifically assigned to recruiting

duty in the Navy Recruiting Command.

14.    Allowing in fitreps any term which identifies a chaplain's specific faith group,

*e.g.*, priest, rabbi, and be enjoined to remove all such terms in existing fitreps.

15.    Establishing accession goals unrelated to meeting DON free exercise needs in

an operational context.

16.    Not recording and reporting officer religious faith preferences.

**C.    An Order**

Plaintiffs request that the Court issue an Order requiring the Navy to:

---

16    The degree and manner in which a chaplain meets free exercise needs is a "secular"
      criteria.

1.     Eliminate all vestiges of its past religious bias and discrimination in selecting chaplains for promotion and career assignments. For chaplain promotion and SER boards, this includes:

     a.     Removal of all reference to a chaplain's faith group or denomination in the selection process unless required to remedy past discrimination.

     b.     Precluding chaplains from acting as chaplain selection board members until the provision of B.6. above are met, and reviewed by the Court.  Nothing here is intended to preclude allowing chaplains to assist in the operation of boards by acting as board recorders or having a chaplain available to provide information to board members and answer specific questions about chaplain assignments and terminology (*i.e.*, a technical advisor) provided such persons are chosen by a neutral personnel system based on neutral, non-religious criteria, and the Chief, the Deputy, or Office of the Chief of Chaplains are precluded from input or involvement in the selection of said recorders or CHC technical advisers.

     c.     Provide a system of checks and balances to insure that (I) religion, faith group or denomination does not affect the promotion or career process unless linked to remedying past discrimination, and (ii) complaints of religious discrimination are promptly investigated and addressed.

2.     Develop programs and policies that encourage the development of effective, caring and vibrant chapel communities, particularly in overseas or isolated areas.

3.   Take all necessary and affirmative actions to immediately:

a.   Identify the DON operational religious free exercise needs, including (I) DON religious demographics, *i.e.*, DON's identified free exercise needs, (ii) considering DON operational requirements, the resources required to meet those needs, (iii) the resources available through DON, (iv) the resources available in operational/deployment areas and other resources such as English speaking religious leaders/clergy in ports of call, and (v) other factors such as appropriate retention considerations;[20]

b.   Adjust the CHC, including its current rank structure, so it reasonably reflects the Navy's religious needs;

c.   Develop FGC and faith group accession quotas designed to structure the CHC to meet the Free Exercise needs identified in 3.a.; and

d.   Adjust and fill Navy Chaplain Corps key billets in a manner that is religiously non-discriminatory but corrects the current disparity between Chaplain Corps and actual Navy religious demographics, and insures that chaplain career assignments are made in a non-discriminatory manner that meets the religious needs of the service.

4.   Energetically and effectively investigate all allegations of religious prejudice by senior chaplains in rating or supervising non-liturgical Christian chaplains. Where

---

17   Sending people on deployment every six months may not be good for retention.

actual prejudice is found or bias demonstrated, correct the records and remove the prejudice from the affected non-liturgical Christian chaplain's official career file.

5. Develop new policies and guidelines that:

    a. Reflect and address the wide differences in theological perspectives among faith groups characterized as non-liturgical, *e.g.*, pentecostal/charismatic versus faith groups who reject pentecostal beliefs and practices;

    b. Provide approval and support mechanisms for alternative non-liturgical services that meet the varying needs of the Navy's non-liturgical religious community at Navy installations, posts, ships and facilities;

    c. Insure that such services receive priority or become the main Christian service when non-liturgicals constitute a majority at the installation, base or facility;

    d. Correct the Chaplains Corps bias against non-liturgical worship, beliefs and chaplains;

    e. Where a recognized faith community has developed, *e.g.*, pentecostal/charismatic, evangelical, insure that chaplains of that faith perspective are assigned in a manner that provides continuity and effective support;

    f. Develop secular, neutral criteria that measures and identifies the performance criteria and factors for chaplain evaluations.

6. Develop a system to insure that the above reforms are working and effective.

7.      Develop a system to officially record the religious preference of *all* Navy personnel (The Navy does not now record the religious preference of its officers nor does it recognize Charismatics as a faith group or tradition).

8.      Issue the necessary orders voiding all adverse personnel actions, including but not limited to separations and early retirements, flowing from the 1977-1986 "Two Catholics on Every Chaplain Selection Board Policy", the follow on 1RC Policy (1986-2002), the Thirds Policy and its progeny and the unconstitutional promotion and SER boards described herein, and take other action to remedy the results of the Navy's illegal activities described herein and make Plaintiffs and the class whole, *i.e.*, as if there had been no prejudice.

9.      Provide instructions to promotion boards that in considering former Navy, Marine or other military officers who have been commissioned in the Chaplain Corps after such service, their prior service and fitness reports may be considered positively in the promotion process and that they shall not be penalized in the selection process because of such prior service.

10.     Rescind SECNAVINST 1730.7C and void the challenged Navy Chaplain Recruiting Directives and policies related thereto and publish regulations affirming a chaplain's right as a denominational representative to freely speak and pray from his or her faith perspective.

11.     Except for those chaplains assigned to Navy Recruiting Command, remove from all chaplain fitness reports all references to either support for or opposition to the challenged Navy Chaplain Recruiting Directives and their related policies.

12.     Develop a screening, evaluation and treatment program for Post Traumatic
Stress Disorder (PTSD) for plaintiffs, the class, and where appropriate, their
dependents.  This is necessary due to a large number of Plaintiffs who have PTSD as
a result of working under command chaplains who have destroyed chaplain careers,
or other causes of PTSD or similar injury, such as betrayal by the CHC and the Navy.

**D.     Attorneys' Fees and Other Relief**

1.     That this Court award Plaintiffs the reasonable costs and expenses of this
action, including attorneys' fees in accordance with the Equal Access to Justice Act,
28 U.S.C. § 2412; the Civil Rights Act, 42 U.S.C. § 1988; the Religious Freedom
Restoration Act, 42 U.S.C. § 2000-bb; class action case law and/or any other
applicable statue or rule of law or equity.

2.     That this Court:

    a.     Retain jurisdiction of this matter for the purposes of enforcing the
Court's orders;

    b.     Appoint a monitor or special master to monitor the Navy's compliance
until such time as the Court is satisfied that the violations and injuries
challenged herein have been satisfactorily remedied;

    c.     Require the Navy to provide periodic reports as to its progress in
complying with B and C above; and

    d.     Award Plaintiffs "oversight costs", *i.e.*, costs to monitor the Navy's
compliance for an equitable and appropriate time period that reflect the
Navy's intransigence and cover up of its misconduct.

Respectfully submitted,

DATED: April 27, 2006

ARTHUR A. SCHULCZ, SR.
Counsel for the Plaintiffs
Bar. No. 453402 (D.C.)
2521 Drexel Street
Vienna, VA 22180
703-645-4010

Of Counsel:
Douglas McKusick, Esq.
THE RUTHERFORD INSTITUTE
P.O. Box 7482
Charlottesville, VA 22906-7482

## **EXHIBITS**

Exhibit 1 - Complaint's Table of Contents - topics and counts

Exhibit 2 - List of Chiefs of Chaplains

Exhibit 3 - *Wilkins v. Lehman*, Order granting injunction, 85-cv-3031, slip op. S.D. Cal
      2/10/86

Exhibit 4 - 7/8/98 Report by the Defense Manpower Data Center

Exhibit 5 - Navy Religious Demographics 1998-2001

Exhibit 6 - Formula for computing Accession Goals

Exhibit 7 - Affidavit of CAPT Larry Ellis, CHC, USN

Exhibit 8 - Accession goals FY88-2001

Exhibit 9 - 7/31/86 Memo re: Fiscal Year 87 Accession Plan

Exhibit 10 - Dr. Leuba's Allonge Declaration

Exhibit 11 - CAPT Ellis Memorandum to Chief of Chaplains (Ellis Report )

Exhibit 12 - Order recalling CDR Lyle

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Rev. GEORGE P. BYRUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-02102 (RJL) |
| | ) | |
| DONALD C. WINTER | ) | |
| In his Official Capacity as Secretary, | ) | |
| DEPARTMENT OF THE NAVY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# EXHIBIT F

to Defendant's Motion to Dismiss

Administrative Record Document Index

## DOCUMENT INDEX - VOLUME I

| Description of Document | Administrative Record Page Number |
|---|---|
| **Plaintiff's Initial Petition**<br>**BCNR Docket No. 04911-02**<br>**(A.R. 1-135)** | |
| Plaintiff's original petition to BCNR, dated May 29, 2002 (w/ enclosures) | 1-16 |
| Duplicate petition, dated June 10, 2002 (w/ enclosures) | 17-32 |
| Requests for advisory opinions and comments and recommendations | 33-36 |
| Navy Personnel Command comments and recommendation, dated October 10, 2002 (w/ enclosures) | 37-56 |
| Request for comments and recommendations, dated October 25, 2002 | 57-58 |
| Navy Personnel Command comments and recommendation, dated December 6, 2002 | 59 |
| Fax cover sheet to Plaintiff dated December 27, 2002 | 60 |
| BCNR letter to Plaintiff (forwarding advisory opinion), dated December 27, 2002 | 61-62 |
| Plaintiff's response to advisory opinion, dated January 6, 2003 (w/ enclosures) | 63-111 |
| BCNR decision memo, dated January 30, 2003 | 112 |
| BCNR letter to Plaintiff, dated February 1, 2003 (w/ enclosures) | 113-135 |
| **Plaintiff's Petition for Reconsideration**<br>**BCNR Docket No. 01519-03**<br>**(A.R. 135-296)** | |
| Plaintiff's letter to BCNR, dated February 13, 2003, requesting reconsideration (w/ enclosures) | 136-164 |
| BCNR Referendum, dated March 5, 2003, approving Plaintiff's request for reconsideration | 165 |
| Requests for advisory opinions and comments and recommendations | 166-172 |

2

| | |
|---|---|
| Deputy Assistant Judge Advocate General (Administrative Law) advisory opinion, dated October 22, 2003 | 173-178 |
| BCNR letter to Plaintiff (forwarding advisory opinion), dated November 3, 2003 (w/o enclosure) | 179-180 |
| Plaintiff's Amendment, dated December 8, 2003 (w/ enclosures) | 181-252 |
| BCNR request for advisory opinion, dated December 29, 2003 | 253 |
| Deputy Assistant Judge Advocate General (Administrative Law) advisory opinion, dated May 19, 2004 | 254-265 |
| BCNR letter to Plaintiff (forwarding advisory opinion), dated May 25, 2004 (w/o enclosure) | 266-267 |
| Fax from BCNR to Plaintiff confirming 30-day extension of time to rebut advisory opinion, dated June 14, 2004 | 268-269 |
| Plaintiff's Reply to advisory opinion, dated July 17, 2004 (w/ enclosures) | 270-289 |
| BCNR decision memo, dated July 22, 2004 | 290 |
| BCNR letter to Arthur A. Schulcz, dated July 23, 2004 | 291 |
| BCNR letter to Plaintiff, dated July 23, 2004 | 292-293 |
| Plaintiff's e-mail to BCNR (Mr. Deramous), dated August 2, 2004 (requesting voting results) | 294 |
| BCNR letter to Plaintiff, dated August 5, 2004 | 295 |
| BCNR fax cover sheet, dated August 5, 2004 | 296 |
| **Plaintiff's Second Petition for Reconsideration**<br>**BCNR Docket No. 07048-04**<br>**(A.R. 297-653)** | |
| Plaintiff's submission of supplemental material, dated August 28, 2004 (w/ enclosures) | 297-414 |
| Plaintiff's e-mail to BCNR (Mr. Deramous), dated August 29, 2004 | 415 |
| BCNR Referendum, dated August 31, 2004, approving Plaintiff's request for reconsideration | 416 |
| BCNR request for comment and recommendation, dated October 4, 2004 | 417 |

| Deputy Assistant Judge Advocate General (Administrative Law) advisory opinion, dated December 15, 2004 | 418-421 |
|---|---|
| BCNR letter to Plaintiff (forwarding advisory opinion), dated December 21, 2004 (w/o enclosure) | 422-423 |
| Plaintiff's letter (Target Date for Submission of Reply), dated January 11, 2005 | 424 |
| Copy of envelop, addressed to BCNR | 425 |
| Plaintiff's Reply to advisory opinion, dated February 22, 2005 (w/ enclosures) | 426-641 |
| Documents associated with inquiry from Senator Elizabeth Dole | 642-650 |
| BCNR decision memo, dated March 31, 2005 | 651 |
| BCNR letter to Plaintiff, dated March 31, 2005 (w/o enclosures) | 652-653 |
| **Plaintiff's Third Petition for Reconsideration<br>BCNR Docket No. 07392-06<br>(A.R. 654-737)** | |
| Eugene R. Fidell letter to Director, Office of the Judge Advocate General, General Litigation Division, dated May 2, 2006 | 654-668 |
| BCNR request for comments and recommendation, dated May 10, 2006 | 669 |
| Assistant General Counsel (Manpower and Reserve Affairs) Memorandum to BCNR, dated August 11, 2006 | 670 |
| BCNR Referendum approving Plaintiff's request for reconsideration (2 copies) | 671-672 |
| BCNR request for comments and recommendation, dated August 22, 2006 | 673 |
| Deputy Assistant Judge Advocate General (Administrative Law) advisory opinion, dated November 16, 2006 | 674-681 |
| BCNR letter to Mr. Fidell, dated November 20, 2006 (w/o enclosures) | 682-683 |
| BCNR letter to Plaintiff, dated November 20, 2006 (w/o enclosures) | 684-685 |
| Mr. Fidell letter to BCNR, dated December 5, 2006 | 686-687 |

| | |
|---|---|
| BCNR decision memo, dated December 8, 2007 (w/ notation to record) | 688-689 |
| BCNR letter to Mr. Fidell, dated December 11, 2006 (w/ enclosure) | 690-722 |
| Copy of Precepts convening FY-07 Promotion Selection Board for Captain, Chaplain Corps, U.S. Navy | 723-737 |

## DOCUMENT INDEX - VOLUME II

| Duplicate Materials Associated with Each of Plaintiff's Petitions (A.R. 738-1326) | |
|---|---|
| Duplicates of Plaintiff's initial (May 29, 2002) petition to BCNR, including enclosures | 738-763 |
| Duplicates of request for advisory opinions and comments and recommendations regarding Plaintiff's initial petition | 764-766 |
| Duplicate of Plaintiff's letter to BCNR, dated January 6, 2003 | 767-769 |
| Duplicate of BCNR's letter to Plaintiff, dated February 1, 2003 | 770-771 |
| Duplicate of Plaintiff's letter to BCNR, dated February 13, 2003 | 772-773 |
| Duplicate of BCNR Referendum, dated March 5, 2003, approving Plaintiff's request for reconsideration | 774 |
| Duplicate request for advisory opinion; Bureau of Naval Personnel response; Deputy Assistant Judge Advocate General (Administrative Law) advisory opinion, dated October 22, 2003 | 775-794 |
| Duplicate Plaintiff's Amendment, dated December 8, 2003 (w/ enclosures) | 795-839 |
| Duplicates of BCNR request for comments and recommendation, dated December 29, 2003 | 840-841 |
| Duplicates of Deputy Assistant Judge Advocate General (Administrative Law) advisory opinion, dated May 19, 2004 | 842-877 |
| Duplicate of Plaintiff's Reply, dated July 17, 2004 | 878-897 |
| Duplicates of BCNR memo, dated July 22, 2004 | 898-899 |
| Duplicates of BCNR letter to Plaintiff, dated July 23, 2004 | 900-903 |

| | |
|---|---|
| Duplicate BCNR request for comment and recommendation, dated October 4, 2004 | 904 |
| Duplicates of Deputy Assistant Judge Advocate General (Administrative Law) advisory opinion, dated December 15, 2004 | 905-908 |
| Duplicate of Plaintiff's Reply, dated February 22, 2005 (w/ enclosures) | 909-1029 |
| Duplicate BCNR Referendum approving Plaintiff's request for reconsideration; Assistant General Counsel (Manpower and Reserve Affairs) Memorandum to BCNR, dated August 11, 2006; BCNR request for comment and recommendation; and Mr. Fidell's letter of May 2, 2006 | 1030-1049 |
| Duplicates of Deputy Assistant Judge Advocate General (Administrative Law) advisory opinion, dated November 16, 2006 | 1050-1081 |
| Duplicate of Mr. Fidell's letter to BCNR, dated December 5, 2006 | 1082-1083 |
| Duplicates of BCNR's decision memo and letter to Plaintiff of March 31, 2005 | 1084-1086 |
| Duplicate BCNR Referendum, dated 31 Aug 04, and Plaintiff's Supplement, dated August 28, 2004 (w/ enclosures) | 1087-1205 |
| Duplicate BCNR letter to Plaintiff, dated March 31, 2005 | 1206-1207 |
| Duplicate BCNR Referendum, dated 31 Aug 04, and Plaintiff's Supplement, dated August 28, 2004 (w/ enclosures) | 1208-1326 |

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Rev. GEORGE P. BYRUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-02102 (RJL) |
| ) | |
| DONALD C. WINTER ) | |
| In his Official Capacity as Secretary, ) | |
| DEPARTMENT OF THE NAVY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## [Proposed] ORDER

Upon the Court's consideration of defendant's motion to dismiss, the opposition thereto,

and the entire record herein, it is, this _____ day of _____, 2007,

ORDERED that defendant's motion to dismiss is granted; and it is

FURTHER ORDERED that plaintiff's Complaint is dismissed with prejudice.

_____
The Honorable Richard J. Leon
United States District Judge