UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Rev. GEORGE P. BYRUM,           )
                                )
                  *Plaintiff,*  )
                                )
        v.                      )          Civil No. 06-02102 (RJL)
                                )
DONALD C. WINTER,               )
                                )
                  *Defendant.*  )          Judge Leon


PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES
IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Eugene R. Fidell (112003)
Matthew S. Freedus (475887)
Brent C. Harvey (501155)
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W.
Second Floor
Washington, DC  20036
(202) 466-8960

*Attorneys for Plaintiff*

April 27, 2007

Table of Contents

*Page*

Introduction..................................................................................................................... 1

Governing Constitutional Provision and Statutes............................................................. 2

Questions Presented......................................................................................................... 2

      1. DID REV. BYRUM EXHAUST HIS REMEDIES AS REQUIRED BY 10 U.S.C. § 1558(f)?

      2. IS THE COMPLAINT TIME-BARRED?

      3. DOES REV. BYRUM'S REVERSE DISCRIMINATION CLAIM DUPLICATE THE OTHER LITIGATION TO WHICH HE IS A PARTY?

      4. DOES THE COMPLAINT STATE A CAUSE OF ACTION?

      5. WAS THE BCNR'S DECISION CONTRARY TO LAW?

Statement of Facts............................................................................................................ 2

Standard of Review .......................................................................................................... 6

Argument .......................................................................................................................... 6

    I.     REV. BYRUM EXHAUSTED HIS ADMINISTRATIVE REMEDIES .......... 6

    II.    THE COMPLAINT IS NOT TIME-BARRED ................................................ 7

    III.   THE CASE DOES NOT DUPLICATE OTHER LITIGATION ...................... 8

    IV.   THE COMPLAINT STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED, AND REV. BYRUM IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE BCNR'S DECISION WAS CONTRARY TO LAW ......................................................................................... 9

Conclusion ...................................................................................................................... 12

Table of Citations

*Page*

Cases:


*Adair v. England*, 183 F. Supp. 2d 31 (D.D.C. 2002)....................................................... 9
*Adarand Constructors, Inc. v. Peña,* 515 U.S. 200 (1995)............................................ 9
*Chappell v. Wallace*, 462 U.S. 296 (1983)........................................................................ 6
*Christian v. United States*, 46 Fed. Cl. 793 (Fed. Cl. 2000) ..................................... 11
*Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997) ......................................................... 6, 12
*Gibson v. United States Navy*, Civil No. 06-187 (N.D. Fla.) ............................... 1, 8, 9
*Guitard v. Secretary of Navy*, 967 F.2d 737 (2d Cir. 1992)...................................... 6, 7
*Kreis v. Sec'y of the Air Force*, 866 F.2d 1508 (D.C. Cir. 1989) .................................. 6
*Lebrun v. England*, 212 F. Supp. 2d 5 (D.D.C. 2002) .................................................. 8
*Lozowski v. Mineta*, 292 F.3d 840 (D.C. Cir. 2002).................................................... 9
*Lutheran Church-Mo. Synod v. FCC,* 141 F.3d 344 (D.C. Cir.1998) ....................... 11
*Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003) (en banc) ...................... 8
*Ortiz v. Secretary of Defense*, 41 F.3d 738 (D.C. Cir. 1994)...................................... 8
*Piersall v. Winter*, 435 F.3d 319 (D.C. Cir. 2006)..................................................... 5, 6
*Ridgely v. Marsh*, 866 F.2d 1526 (D.C. Cir. 1989) .................................................... 6
*Saunders v. White*, 191 F. Supp. 2d 95 (D.D.C. 2002) ............................................ 11
*Walters v. Secretary of Defense*, 725 F.2d 107 (D.C. Cir. 1983)................................ 8


Constitution and Statutes:


U.S. Const. amend. 5 ................................................................................................ 2, 5, 9
Administrative Procedure Act, 5 U.S.C. § 706 ......................................................... 5, 7
10 U.S.C. § 1552............................................................................................... 2, 5, 7, 9
10 U.S.C. § 1558................................................................................................... 2, 6
28 U.S.C. § 1491.......................................................................................................... 8


Miscellaneous:


Fed. R. Civ. P. 56 ...................................................................................................... 12
LCvR 40.5.................................................................................................................... 1
32 C.F.R. Pt. 723........................................................................................................ 2
32 C.F.R. § 723.6(a)(2)............................................................................................. 12
32 C.F.R. § 723.6(e)(2) ............................................................................................... 5
32 CFR § 723.2(c) ....................................................................................................... 6

## Glossary

APA ....................................................................................Administrative Procedure Act
A.R.........................................................................................Administrative Record
BCNR..............................................................Board for Correction of Naval Records
CNO ..........................................................................Chief of Naval Operations
FY.............................................................................................Fiscal Year
JAG ..........................................................Judge Advocate General of the Navy
SERB.............................................................Selective Early Retirement Board
SSB..............................................................................Special Selection Board

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Rev. GEORGE P. BYRUM,      )
                                )
             *Plaintiff,*     )
                                )
      v.                  )        Civil No. 06-02102 (RJL)
                                )
DONALD C. WINTER,       )
                                )
           *Defendant.*    )        Judge Leon

PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES
IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Introduction*

The Secretary has moved to dismiss on a variety of grounds that are without merit. In this memorandum we will explain why that motion should be denied. In addition, we will set forth (in Point IV) why Rev. Byrum is entitled to summary judgment. The Secretary has filed an administrative record (A.R.) and has been on notice as to the gravamen of Rev. Byrum's claim. Nothing has prevented the Secretary from briefing the merits, and there is no reason the Court should not address them, rather than—as the Secretary's recent "response" to our consent motion for enlargement portends—seeking to litigate this constitutional case piecemeal.

We respectfully object to the Secretary's identification of *Gibson v. United States Navy*, Civil No. 06-187 (N.D. Fla.), as a related case under LCvR 40.5. As explained in Point III, the two cases involve different issues. Only this case includes a claim of reverse racial discrimination in violation of the equal protection component

of Fifth Amendment due process. There is no reason to transfer it.

*Governing Constitutional Provision and Statutes*

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law. . . ."

Proceedings before the Board for Correction of Naval Records ("BCNR") are governed by 10 U.S.C. § 1552.[1] Review of actions of selection boards is governed by 10 U.S.C. § 1558.

*Questions Presented*

1. DID REV. BYRUM EXHAUST HIS REMEDIES AS REQUIRED BY 10 U.S.C. § 1558(f)?

2. IS THE COMPLAINT TIME-BARRED?

3. DOES REV. BYRUM'S REVERSE DISCRIMINATION CLAIM DU-PLICATE THE OTHER LITIGATION TO WHICH HE IS A PARTY?

4. DOES THE COMPLAINT STATE A CAUSE OF ACTION?

5. WAS THE BCNR'S DECISION CONTRARY TO LAW?

*Statement of Facts*

Rev. Byrum is a minister of the Gospel and a retired Commander in the Navy Chaplain Corps. A.R. 3. He is white. A.R. 654. On August 1, 1996, he was involun-tarily retired in accordance with a recommendation of the Fiscal Year ("FY") 1996 Selective Early Retirement Board ("SERB"). A.R. 214-19. The SERB was governed by a precept that established a preference for minority personnel. A.R. 703-11. The precept's "Supplemental Guidance" provided, in pertinent part:

---

[1] The BCNR's regulations appear at 32 C.F.R. Pt. 723.

3. The Department of the Navy is dedicated to equality of treatment for all personnel without regard to race, creed, color, sex, or national origin. Aggressive commitment to equal opportunity is critical.

a. Many minority officers have been assigned involuntarily outside the traditional career development patterns, i.e., recruiting, equal opportunity and specific billets requiring minorities. These assignments though beneficial to the interests of the Navy, have resulted in those officers having career patterns different from officers who have been able to serve in their primary or warfare specialties. In making your determination of those officers who are best suited for retention, you must view such assignments as having the same value as assignments within the primary or warfare specialty.

b. The 1988 CNO [Chief of Naval Operations] Study Group Report on Equal Opportunity in the Navy, which is available to you, noted that minority officers who, prior to entering the Navy, had limited interaction with a predominantly majority environment, may take a longer time to adjust and perform to the level of their contemporaries. This may result in initially lower fitness reports at the junior officer level (through O-3 [full Lieutenant]) and a higher percentage of "late bloomers" than their majority counterparts. You must consider this when evaluating a minority officer.

c. In evaluating the records of eligible officers, you should be aware that past discrimination may have operated to the disadvantage of minority officers. Such discrimination may have manifested itself in comparatively lower fitness reports. Equivalent performance by a minority officer and a non-minority officer may not have resulted in equivalent fitness reports. You must consider this when evaluating minority officers.

A.R. 707-08.

Starting in 2002, Rev. Byrum sought relief from the BCNR on various grounds. A.R. 1, 136, 181, 297, 654. In a 2003 amended application, A.R. 181, he asked the BCNR to overturn the SERB because the Supplemental Guidance constituted illegal reverse racial discrimination. A.R. 184-85. The BCNR refused to do so. A.R. 900. It found "nothing objectionable about the precept . . . as it related to mi-

norities." A.R. 901. "The Board found the precept did not mandate preferential treatment for minorities, but merely encouraged fair and equitable consideration of all officers." *Id*.

In pre-litigation settlement correspondence, A.R. 654, which the Secretary elected to treat as a request for reconsideration, A.R. 670, Rev. Byrum stated through counsel:

> The Supplemental Guidance unmistakably places a "thumb on the scale" by stating that "[a]ggressive commitment to equal opportunity is critical." This is not subtle, and it represents reverse discrimination that inures to the detriment of white officers such as Chaplain Byrum. The rest of ¶ 3 continues this theme.

> Paragraph 3a refers to assignment patterns—"recruiting, equal opportunity and specific billets requiring minorities"—that have no meaningful application in the case of Chaplain Corps officers. The provision is also improper because board members would have no way of knowing whether the minority officers had in fact served in such assignments *involuntarily*.

> The "late bloomer" theory imposed on the board members by ¶ 3b affords an unjustified across-the-board benefit on minority officers by effectively telling board members they may discount fitness reports earned while such officers served in the first three pay grades. Non-minority officers may also be "late bloomers" for cultural and socio-economic reasons (*e.g.*, rural roots, poverty, foreign birth, and/or limited educational opportunities), but the Supplemental Guidance nowhere recognizes this.

> Finally, ¶ 3c is improper because (a) it rests on the notion that a study completed seven years earlier, with no indication that the earlier conditions were applicable to the officers being considered by the FY96 SERB, and (b) encourages board members to discount the fitness reports of the minority Chaplains under consideration in the absence of any evidence that the claimed historical disparity asserted actually applied to those officers.

> The practical effect of ¶ 3 was to afford minority personnel a preference in the board's decisional process based on generic assertions

about the treatment of minority personnel, rather than focusing on the records of the individual minority officers. Taken as a whole, ¶ 3 violates the equal protection component of Fifth Amendment due process. The Supplemental Instructions do not withstand strict scrutiny, which is the pertinent test.

A.R. 654-55.

The Assistant General Counsel of the Navy (acting for the Secretary)[2] directed that a new BCNR panel "evaluate the language contained in the SERB precept and the effect, if any, it had on" Rev. Byrum. A.R. 670. The Office of the Judge Advocate General ("JAG") submitted to the BCNR an advisory opinion that saw no evil in the precept and advised that Rev. Byrum had produced no evidence that ¶ 3 of the Supplemental Guidance caused his selection by the SERB for early retirement. A.R. 676.

On December 8, 2006, the BCNR found that Rev. Byrum had exhausted his administrative remedies and determined that the usual three-year limitation period should be waived in the interest of justice, as 10 U.S.C. § 1552(b) provides. A.R. 692 (¶¶3a-b). On the merits, the BCNR again denied relief, adopting the JAG's views. A.R. 692.

The BCNR panel split 2-1. *Id.* The majority held that the SERB precept did not violate the Constitution and that Rev. Byrum had not demonstrated that he was harmed by the precept. *Id.* The dissenting member believed that the JAG had not

---

[2] Some decisions of the BCNR must be approved by a delegate of the Secretary of the Navy. *See* 32 C.F.R. § 723.6(e)(2). Where that is so, the BCNR merely makes a recommendation and the delegate's action is the final agency action for Administrative Procedure Act ("APA") purposes. *See Piersall v. Winter*, 435 F.3d at 320 n.* (D.C. Cir. 2006).

properly analyzed the constitutional issue and would have required further development of the issues. *Id.*

The Assistant General Counsel approved the recommendation of the BCNR majority. A.R. 693.

## Standard of Review

The Court reviews military record-correction board decisions "in light of familiar principles of administrative law," *Piersall, supra* note 2, at 321 (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989)), determining whether those decisions are, among other things, contrary to law. 5 U.S.C. § 706; *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997); *Ridgely v. Marsh*, 866 F.2d 1526, 1528 (D.C. Cir. 1989).

## Argument

## I

## REV. BYRUM EXHAUSTED HIS ADMINISTRATIVE REMEDIES

Rev. Byrum exhausted his remedies through the BCNR process.

Section 1558 requires exhaustion of a "special board" remedy as a precondition to a judicial challenge to a SERB. 10 U.S.C. § 1558(f). The statute is perfectly clear that the BCNR can serve as a "special board" within the meaning of § 1558. *See id.* § 1558(b)(1)(B). It has jurisdiction over "all matters properly brought before it, consistent with existing law." 32 C.F.R. § 723.2(c). Claims of a constitutional nature are within its purview. *Guitard v. Secretary of Navy*, 967 F.2d 737, 741 (2d Cir. 1992).

Rev. Byrum brought his reverse discrimination claim before the BCNR, A.R. 181, the Secretary's delegate (the Assistant General Counsel) considered it suitable for BCNR adjudication, A.R. 670 ("I have reviewed the information provided and determined that additional consideration of Commander Byrum's petition *is appropriate*") (emphasis added); the JAG never argued to the contrary, A.R. 674, 866; the BCNR itself saw no impediment to its consideration of the claim, A.R. 691, 900; and in the end the Assistant General Counsel upheld its recommended ruling. A.R. 693.

What is more, the BCNR itself explicitly found that Rev. Byrum had exhausted his remedies. A.R. 692 (¶ 3b).

Against this background, the Secretary's claim that Rev. Byrum cannot be heard here because he failed to exhaust some administrative remedy is preposterous.[3]

## II

## THE COMPLAINT IS NOT TIME-BARRED

The Secretary's claim that Rev. Byrum's complaint is time-barred is equally without merit. This claim thus did not accrue until the BCNR acted. The complaint seeks relief from a BCNR decision that is contrary to law. Rev. Byrum is not seeking direct review of the SERB. In cases seeking APA review of decisions of the record-

---

[3] It is far too late for the Secretary to argue that the BCNR cannot decide a constitutional issue: Rev. Byrum presented such an issue and the BCNR decided it. Neither the JAG, nor the BCNR, nor the Assistant General Counsel ever suggested that constitutional questions are outside the ambit of § 1552. Whether or not exhaustion of the BCNR remedy may be required in cases raising such questions, that is a far cry from saying that a correction board cannot decide them. The law is directly to the contrary. *E.g., Guitard, supra.*

correction boards the statute runs from the date of the correction board's decision, rather than from the date of the underlying agency action the correction board has been asked to review. *E.g., Lebrun v. England*, 212 F. Supp. 2d 5, 11-12 (D.D.C. 2002) (collecting cases); *see also Ortiz v. Secretary of Defense*, 41 F.3d 738, 744 (D.C. Cir. 1994) (distinguishing *Walters v. Secretary of Defense*, 725 F.2d 107 (D.C. Cir. 1983)).[4]

### III

### THE CASE DOES NOT DUPLICATE OTHER LITIGATION

Rev. Byrum made several submissions to the BCNR. The complaint challenges the December 8, 2006 denial of his claim that ¶ 3 of the Supplemental Guidance to the SERB precept included unconstitutional language that detrimentally affected him. A.R. 654-55. This is not at issue in *Gibson*, which involves other—prior—denials of relief by the BCNR. The *Gibson* complaint asserts that the Navy discriminated on the basis of religious denomination in Chaplain Corps promotion, accession, assignment, retention and separation systems and decision making. No such issue is presented here. *Gibson* thus involves neither the BCNR decision here at issue nor the reverse racial discrimination aspect of the SERB precept.

A decision in *Gibson* will have no effect on Rev. Byrum's complaint. This is confirmed by the JAG's own analysis before *Gibson* was even filed. In a May 19, 2004 advisory opinion, the JAG noted that Rev. Byrum was seeking to join other litigation that raised issues similar to the religious preference aspect of his BCNR claim, and

---

[4] The rule is otherwise under the Tucker Act, 28 U.S.C. § 1491; *e.g., Martinez v. United States*, 333 F.3d 1295, 1303, 1310 (Fed. Cir. 2003) (en banc), where the statute ordinarily runs from the time pay is lost. But this is not a Tucker Act case.

correctly observed that his "BCNR petition should not affect, or be affected by, either" an earlier Ninth Circuit case or *Adair*.[5] A.R. 844.

The same holds true with respect to *Gibson*. Consolidation with *Gibson* would be inappropriate as it would needlessly inject an unrelated issue into that litigation.

IV

THE COMPLAINT STATES A CLAIM UPON WHICH RELIEF
MAY BE GRANTED, AND REV. BYRUM IS ENTITLED TO
SUMMARY JUDGMENT BECAUSE THE DECISION
OF THE BCNR WAS CONTRARY TO LAW

The Secretary's contention that the complaint fails to state a claim upon which relief can be granted is without merit.[6] Moreover, for the reasons we will now explain, Rev. Byrum is entitled to summary judgment on the administrative record.

The SERB precept's racial classification language facially violates the Due Process Clause of the Fifth Amendment. "[A]ll racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed under strict scrutiny." *Adarand Constructors, Inc. v. Peña,* 515 U.S. 200, 227 (1995). Strict scrutiny means that "[f]ederal racial classifications, like those of a State, must serve a

---

[5] *Adair v. England*, 183 F. Supp. 2d 31 (D.D.C. 2002).

[6] *Lozowski v. Mineta*, 292 F.3d 840, 847-48 (D.C. Cir. 2002), is irrelevant because Rev. Byrum does not seek to overturn the BCNR's decision on the ground that it violated the Secretary's equal opportunity regulation. The bases on which he invokes the Court's federal question jurisdiction are the Fifth Amendment and 10 U.S.C. § 1552. *See* Complt. ¶ 1. The BCNR's error lies in its violation of those provisions. The Complaint (¶ 7) observes that "[w]hen engaged in by the federal government, racial discrimination violates the equal protection of Fifth Amendment due process." It cites the equal opportunity regulation (¶ 8) to provide the context for the assertion in the Supplemental Guidance that the "Department of the Navy is dedicated to equality of treatment for all personnel without regard to race, creed, color, sex, or national origin." This is entirely proper because the BCNR claimed to have evaluated Rev. Byrum's case under the "applicable . . . regulations." A.R. 900.

compelling governmental interest, and must be narrowly tailored to further that in-terest." *Id.* at 235.

The SERB precept states, in pertinent part:

3. The Department of the Navy is dedicated to equality of treatment for all personnel without regard to race, creed, color, sex, or national origin. Aggressive commitment to equal opportunity is critical.

a. Many minority officers have been assigned involuntarily out-side the traditional career development patterns, i.e., recruiting, equal opportunity and specific billets requiring minorities. These assign-ments though beneficial to the interests of the Navy, have resulted in those officers having career patterns different from officers who have been able to serve in their primary or warfare specialties. In making your determination of those officers who are best suited for retention, you must view such assignments as having the same value as assign-ments within the primary or warfare specialty.

b. The 1988 CNO [Chief of Naval Operations] Study Group Re-port on Equal Opportunity in the Navy, which is available to you, noted that minority officers who, prior to entering the Navy, had lim-ited interaction with a predominantly majority environment, may take a longer time to adjust and perform to the level of their contemporar-ies. This may result in initially lower fitness reports at the junior offi-cer level (through O-3 [full Lieutenant]) and a higher percentage of "late bloomers" than their majority counterparts. You must consider this when evaluating a minority officer.

c. In evaluating the records of eligible officers, you should be aware that past discrimination may have operated to the disadvantage of minority officers. Such discrimination may have manifested itself in comparatively lower fitness reports. Equivalent performance by a mi-nority officer and a non-minority officer may not have resulted in equivalent fitness reports. You must consider this when evaluating minority officers.

A.R. 707-8.

The precept effectively required the SERB to apply different standards when

evaluating minority and non-minority officers. The goal was to confer an advantage

on minority officers. It is of no moment whether hard quotas, soft quotas, or "goals" are employed as each will surely "result in individuals being granted a preference because of their race." *Lutheran Church—Mo. Synod v. FCC,* 141 F.3d 344, 354 (D.C. Cir. 1998); *see also Saunders v. White*, 191 F. Supp. 2d 95, 124 (D.D.C. 2002). "The crucial point is not . . . whether they require hiring in accordance with fixed quotas; rather, it is whether they oblige . . . grant[ing] some degree of preference to minorities in hiring." *Lutheran Church—Mo. Synod, supra*, at 351; *see also Saunders, supra*. "Even if there were no numerical goal or preordained outcome, the mere existence of special procedures and invocation of special factors for evaluating minorities confirms a suspect racial classification." *Christian v. United States*, 46 Fed. Cl. 793, 805 (Fed. Cl. 2000); *see also Saunders, supra*.

The SERB precept created a suspect racial classification with no compelling government interest.[7] The racial classification in the SERB process was facially unconstitutional. When Rev. Byrum challenged the precept, the BCNR denied relief. Neither the JAG (whose advisory opinion the BCNR adopted) nor the BCNR itself ever responded to his specific objections to the language of the Supplemental Guidance. A.R. 654-55. Nothing in the A.R. explains why the Secretary rejected that attack.

Rather than grappling with the specifics of this constitutional claim, the BCNR asserted—apparently as an alternative ground—that Rev. Byrum had failed to show that he was harmed by the unconstitutional SERB precept:

---

[7] The Navy has wisely discontinued use of the language to which Rev. Byrum objected. A.R. 733.

> Upon review and consideration of all the evidence of [the] record, and in concurrence with the advisory opinion at enclosure (3), the majority finds that relief should be denied. The majority notes no statistics have been presented to show that the precept language disadvantaged Petitioner.

A.R. 692. This is contrary to law because it reverses the settled burden of proof in military personnel cases, under which, once an error is shown, the burden is on the government to show that the same outcome would have occurred—here, involuntary retirement—in any event. *E.g., Frizelle v. Slater*, 111 F.3d 172, 179 (D.C. Cir. 1997). Even though the pertinent data were peculiarly within the Navy's ken, the JAG never undertook to make that showing. Neither did the BCNR, which could have called upon the Navy to provide the data, 32 C.F.R. § 723.6(a)(2), as the dissenting BCNR member obviously recognized. It was emphatically not Rev. Byrum's job to prove he would have been retained by the SERB absent the unconstitutional terms of the precept; it was the Navy's to *dis*prove.

Since,

(1) the SERB precept was unconstitutional;

(2) the BCNR inverted the burden of proof; and

(3) the Navy never proved that Rev. Byrum would have been involuntarily retired in any event,

the BCNR's decision was contrary to law and unsupported by substantial evidence. He is therefore entitled to relief.

*Conclusion*

For the foregoing reasons, Rev. Byrum's cross-motion for summary judgment should be granted and the Secretary's motion to dismiss should be denied. A judgment

should issue—

    a.  setting aside the BCNR's decision;

    b.  ordering the Secretary to—

        (i)    reinstate him on active duty;

        (ii)   correct his record to show that he was never retired and by expunging all reference to the SERB; and

        (iii)  cause him to be considered for promotion to Captain; and

    c.  grant such other and further relief as may in the circumstances be just and proper.

                           Respectfully submitted,

                           /s/
                           Eugene R. Fidell (112003)
                           Matthew S. Freedus (475887)
                           Brent C. Harvey (501155)
                           Feldesman Tucker Leifer Fidell LLP
                           2001 L Street, N.W.
                           Second Floor
                           Washington, DC  20036
                           (202) 466-8960

                           *Attorneys for Plaintiff*

April 27, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Rev. GEORGE P. BYRUM, )
 )
   *Plaintiff*, )
 )
 v. )  Civil No. 06-02102 (RJL)
 )
DONALD C. WINTER, )
 )
   *Defendant*. )

ORDER

On consideration of defendant's motion to dismiss and plaintiff's cross-motion for summary judgment, the parties' oppositions and replies, and the administrative record, it is, by the Court, this _____ day of _____, 2007,

ORDERED that plaintiff's cross-motion for summary judgment be, and the same hereby is, GRANTED, and defendant's motion to dismiss be, and the same hereby is DENIED, and it is

FURTHER ORDERED that, to the extent they address Rev. Byrum's reverse discrimination claim, the decision of the BCNR be, and the same hereby is, SET ASIDE. The Secretary shall reinstate Rev. Byrum on active duty, correct his record to show that he was never retired and by expunging all reference to the SERB, and cause him to be considered for promotion to Captain.

United States District Judge