UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Rev. GEORGE P. BYRUM, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil No. 06-02102 (RJL) |
| | ) | **[Corrected Docket Number]** |
| DONALD C. WINTER, | ) | |
| | ) | |
| *Defendant*. | ) | Judge Leon |

PLAINTIFF'S STATEMENT OF MATERIALS FACTS

1. Rev. Byrum is a white male minister of the Gospel and a retired Commander in the Navy Chaplain Corps. A.R. 3, 654.

2. On August 1, 1996, Rev. Byrum was involuntarily retired in accordance with a recommendation of the Fiscal Year ("FY") 1996 Selective Early Retirement Board ("SERB"). A.R. 214-19.

3. The SERB was governed by a precept that established a preference for minority personnel. A.R. 703-11.

4. The precept's "Supplemental Guidance" provided, in pertinent part:

3. The Department of the Navy is dedicated to equality of treatment for all personnel without regard to race, creed, color, sex, or national origin. Aggressive commitment to equal opportunity is critical.

   a. Many minority officers have been assigned involuntarily outside the traditional career development patterns, i.e., recruiting, equal opportunity and specific billets requiring minorities. These assignments though beneficial to the interests of the Navy, have resulted in those officers having career patterns different from officers who have been able to serve in their primary or warfare specialties. In making your determination of those officers who are best suited for

  retention, you must view such assignments as having the same value as assignments within the primary or warfare specialty.

   b. The 1988 CNO [Chief of Naval Operations] Study Group Report on Equal Opportunity in the Navy, which is available to you, noted that minority officers who, prior to entering the Navy, had limited interaction with a predominantly majority environment, may take a longer time to adjust and perform to the level of their contemporaries. This may result in initially lower fitness reports at the junior officer level (through O-3 [full Lieutenant]) and a higher percentage of "late bloomers" than their majority counterparts. You must consider this when evaluating a minority officer.

   c. In evaluating the records of eligible officers, you should be aware that past discrimination may have operated to the disadvantage of minority officers. Such discrimination may have manifested itself in comparatively lower fitness reports. Equivalent performance by a minority officer and a non-minority officer may not have resulted in equivalent fitness reports. You must consider this when evaluating minority officers.

A.R. 707-08.

 5. Starting in 2002, Rev. Byrum sought relief from the BCNR on various grounds. A.R. 1, 136, 181, 297, 654.

 6. In a 2003 amended application, A.R. 181, he asked the BCNR to overturn the SERB because the Supplemental Guidance constituted illegal reverse racial discrimination. A.R. 184-85.

 7. The BCNR denied his amended application. A.R. 900.

 8. It found, *inter alia*, "nothing objectionable about the precept . . . as it related to minorities." A.R. 901.

 9. "The Board found the precept did not mandate preferential treatment for minorities, but merely encouraged fair and equitable consideration of all officers." *Id.*

10. In pre-litigation settlement correspondence, A.R. 654, which the Secretary elected to treat as a request for reconsideration by the BCNR, A.R. 670, Rev. Byrum stated through counsel:

> The Supplemental Guidance unmistakably places a "thumb on the scale" by stating that "[a]ggressive commitment to equal opportunity is critical." This is not subtle, and it represents reverse discrimination that inures to the detriment of white officers such as Chaplain Byrum. The rest of ¶ 3 continues this theme.
>
> Paragraph 3a refers to assignment patterns—"recruiting, equal opportunity and specific billets requiring minorities"—that have no meaningful application in the case of Chaplain Corps officers. The provision is also improper because board members would have no way of knowing whether the minority officers had in fact served in such assignments *involuntarily*.
>
> The "late bloomer" theory imposed on the board members by ¶ 3b affords an unjustified across-the-board benefit on minority officers by effectively telling board members they may discount fitness reports earned while such officers served in the first three pay grades. Non-minority officers may also be "late bloomers" for cultural and socio-economic reasons (*e.g.*, rural roots, poverty, foreign birth, and/or limited educational opportunities), but the Supplemental Guidance nowhere recognizes this.
>
> Finally, ¶ 3c is improper because (a) it rests on the notion that a study completed seven years earlier, with no indication that the earlier conditions were applicable to the officers being considered by the FY96 SERB, and (b) encourages board members to discount the fitness reports of the minority Chaplains under consideration in the absence of any evidence that the claimed historical disparity asserted actually applied to those officers.
>
> The practical effect of ¶ 3 was to afford minority personnel a preference in the board's decisional process based on generic assertions about the treatment of minority personnel, rather than focusing on the records of the individual minority officers. Taken as a whole, ¶ 3 violates the equal protection component of Fifth Amendment due process. The Supplemental Instructions do not withstand strict scrutiny, which is the pertinent test.

A.R. 654-55.

11. The Assistant General Counsel directed that a new BCNR panel "evaluate the language contained in the SERB precept and the effect, if any, it had on" Rev. Byrum. A.R. 670.

12. The office of the JAG submitted an advisory opinion that saw no evil in the precept and advised that Rev. Byrum had produced no evidence that ¶3 of the supplemental guidance caused his selection by the SERB for early retirement. A.R. 676.

13. On December 8, 2006, the BCNR found that Rev. Byrum had exhausted his administrative remedies and determined that the normal three-year limitation period under 10 U.S.C. § 1552(b) should be waived in the interest of justice, as that statute provides. A.R. 692 (¶¶3a-b).

14. On the merits, the BCNR again denied relief, adopting the views of the Office of the Judge Advocate General ("JAG"). A.R. 692.

15. The panel split 2-1. *Id.*

16. The majority held that the SERB precept did not violate the Constitution and that Rev. Byrum had not demonstrated that he was harmed by the precept. *Id.*

17. The dissenting member believed that the JAG had not properly analyzed the constitutional issue and would have required further development of the issues. *Id.*

18. The BCNR's decision was approved by the Assistant General Counsel to whom the Secretary has delegated his power to review BCNR decisions. A.R. 693.

                                                    Respectfully submitted,

                                                  /s/
                                                  Eugene R. Fidell (112003)
                                                  Matthew S. Freedus (475887)
                                                  Brent C. Harvey (501155)
                                                  Feldesman Tucker Leifer Fidell LLP
                                                  2001 L Street, N.W.
                                                  Second Floor
                                                  Washington, DC  20036
                                                  (202) 466-8960

                                                  *Attorneys for Plaintiff*

April 27, 2007