# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Rev. GEORGE P. BYRUM, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil No. 06-02102 (RJL) |
| | ) | |
| DONALD C. WINTER, | ) | |
| | ) | |
| *Defendant.* | ) | Judge Leon |

## JOINT APPENDIX

In accordance with LCvR 7(n), Plaintiff submits the attached index and joint appendix. Defendant has reviewed the documents and agrees with the submission.

Respectfully submitted,

/s/
Eugene R. Fidell (112003)
Matthew S. Freedus (475887)
Brent C. Harvey (501155)
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., 2d Floor
Washington, DC 20036
(202) 466-8960 tel
(202) 293-8103 fax

*Attorneys for Plaintiff*

June 13, 2007

Index

*Page*

## Initial Application

May 28, 2002    Application ................................................................ 1-3
                Attachment - excerpt from FY96 SERB precept ......................... 4-8
Aug. 2, 2002    BNCR memo to PERS-822 (Officer Retirements)........................... 34
Sep. 9, 2002    Response from PERS-822 ............................................... 35
Sep. 11, 2002   BCNR memo to PERS-06 (Office of Legal Counsel) ...................... 36
Oct. 10, 2002   Response from PERS-0612 .............................................. 37
                Attachment - FY96 SER Plan Memo & Shell Precept............... 38-56
Oct. 25, 2002   BCNR memo to PERS-80 (Officer Career Progression) ................. 57
Dec. 6, 2002    Response from PERS-80 ................................................ 59
Dec. 27, 2002   BCNR letter to Commander Byrum.................................... 61-62
Jan. 6, 2003    Response from Commander Byrum .................................... 63-65
                Attachment - FY96 SERB precept .................................... 88-96
Jan. 30, 2003   Record of application's denial...................................... 112
Feb. 1, 2003    BCNR letter to Commander Byrum................................... 113-14

## Petition for Reconsideration

Feb. 13, 2003   Petition ............................................................ 136-37
Mar. 4, 2003    Approval of reconsideration.......................................... 165
Apr. 17, 2003   BCNR memo to PERS-80................................................ 168
May 14, 2003    BCNR memo to PERS-822.............................................. 169
June 12, 2003   Response from PERS-822 re April 17, 2003 memo....................... 171
July 2, 2003    BCNR request to OJAG ................................................ 172
Oct. 22, 2003   Response from OJAG ............................................... 173-78
Nov. 3, 2003    BCNR letter to Commander Byrum................................... 179-180
Dec. 8, 2003    Response from Commander Byrum amending petition ........... 181-89
                Attachment - FY96 SERB precept and related papers ............ 203-19
Dec. 29, 2003   BCNR request to OJAG ................................................ 253
May 19, 2004    Response from OJAG ............................................... 254-65
                Duplicates........................................................ 844, 866
May 25, 2004    BCNR letter to Commander Byrum................................... 266-67
July 17, 2004   Response from Commander Byrum ................................... 270-74
July 22, 2004   Record of petition's denial......................................... 290
July 23, 2004   BCNR letter to Commander Byrum's attorney Mr. Schulcz......... 291
                Duplicates........................................................ 900-01
                Attachment - BCNR letter to Commander Byrum .................. 292-93
Aug. 2, 2004    Email from Commander Byrum...................................... 294
Aug. 5, 2004    Response from BCNR ................................................. 295

## Second Petition for Reconsideration

Aug. 28, 2004     Petition ................................................................. 297-304
Aug. 31, 2004     Approval of reconsideration ........................................ 416
Oct. 4, 2004      BCNR request to OJAG ............................................. 417
Dec. 15, 2004     Response from OJAG ............................................. 418-21
Dec. 21, 2004     BCNR letter to Commander Byrum ......................... 422-23
Feb. 22, 2005     Response from Commander Byrum ......................... 426-31
Mar. 31, 2005     Record of petition's denial ........................................ 651
Mar. 31, 2005     BCNR letter to Commander Byrum ......................... 652-53

## Third Petition for Reconsideration

May 2, 2006       Letter from Commander Byrum's attorney Mr. Fidell to
                  BCNR (Petition) ................................................... 654-55
May 10, 2006      BCNR request to OJAG ............................................. 669
Aug. 11, 2006     AGC memo to BCNR ................................................. 670
Aug. 21, 2006     Approval of reconsideration ........................................ 671
Aug. 22, 2006     BCNR request to OJAG ............................................. 673
Nov. 16, 2006     Response from OJAG ............................................. 674-81
Nov. 20, 2006     BCNR letter to Mr. Fidell ....................................... 682-83
Dec. 5, 2006      Response from Mr. Fidell ....................................... 686-87
Dec. 7, 2006      Record of petition's denial ........................................ 688
Dec. 11, 2006     BCNR letter to Mr. Fidell ........................................ 690
                  Attachment - Dec. 8, 2006 BCNR report ................... 691-93
Aug. 11, 2006     AGC memo to BCNR (Duplicate of 670) ..................... 694
Nov. 7, 1995      FY96 SERB precept (Duplicate-in part- to 203-19) ......... 703-11
Dec. 5, 2006      p. 1 of Response from Mr. Fidell (Duplicate of 686) ......... 720

May 20-02 00:20                                                                                    P.01

**OPS 23**

| APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552 *(Please read instructions on reverse side BEFORE completing application.)* | Form Approved OMB No. 0704-0003 Expires Sep 30, 2003 |
|---|---|

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports (0704-0003), 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.
PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE ADDRESS.                                          ON THE BACK OF
THIS PAGE.

PRIVACY

Byrum, George P.

*04911-02*

AUTHORITY: Title 10 US Code 1552, EO 9397.

PRINCIPAL PURPOSE: To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record.

... identifying n. The ...sure proper identification of the individual and appropriate records.

| 1. APPLICANT DATA | | | | | | |
|---|---|---|---|---|---|---|
| a. BRANCH OF SERVICE *(X one)* | ARMY | X NAVY | AIR FORCE | | MARINE CORPS | COAST GUARD |

| b. NAME *(Last, First, Middle Initial) (Please print)* | c. PRESENT PAY GRADE | d. SERVICE NUMBER *(if applicable)* | e. SSN |
|---|---|---|---|
| Byrum, George P | 0-5 | | |

| 2. TYPE OF DISCHARGE *(If by court-martial, state type of court)* | 3. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES *(Active duty, Retired, Reserve, etc.)* | 4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY *(YYYYMMDD)* |
|---|---|---|
| Honorable | Retired | 19960731 |

| 5. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD | 6. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C. *(No expense to the Government) (X one)* | |
|---|---|---|
| 2D Marine Division | X YES | NO |

| 7. COUNSEL *(if any)* | |
|---|---|
| a. NAME *(Last, First, Middle Initial)* | b. ADDRESS *(Street, Apartment Number, City, State and ZIP Code)* |
| | N 10789 353 |

**8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE:** 1. Remove my name from the FY96 Commander Chaplain Corps SERB list which resulted in my release from active duty. 2. Allow my record to be considered with those who were selected by the FY-99 Active Duty Captain Staff Selection Board.

**9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:**

1. I should not have been subject to SERB action and I should still be on active duty. 2. I believe my record should have been considered by the FY-99 Active Duty Captain Staff Selection Board.

**10. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING:** *(If Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)*

Enclosure (1) My DD Form 214, (2) Precept for FY-96 Selection Board, (3) pertinent sections from TITLE 10, (4) pertinent section of Lineal Listing from the 1996 Chaplain Corps Program Support Guide, and (5) ALNAV 045/98

| 11. ALLEGED ERROR OR INJUSTICE | |
|---|---|
| a. DATE OF DISCOVERY *(YYYYMMDD)* | b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION. |
| 20020525 | |

**12. APPLICANT MUST SIGN IN ITEM 16. IF THE RECORD IN QUESTION IS THAT OF A DECEASED OR INCOMPETENT PERSON, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION. IF APPLICATION IS SIGNED BY OTHER THAN APPLICANT, INDICATE RELATIONSHIP OR STATUS BY MARKING APPROPRIATE BOX.**

| SPOUSE | WIDOW | WIDOWER | NEXT OF KIN | LEGAL REPRESENTATIVE | OTHER *(Specify)* |
|---|---|---|---|---|---|

**13. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** *(U.S. Code, Title 18, Sec. 287, 1001, provides that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

| 14.a. COMPLETE CURRENT ADDRESS, INCLUDING ZIP CODE *(Applicant should forward notification of all changes of address.)* | b. TELEPHONE NUMBER *(Include Area Code)* | DOCUMENT NUMBER *(Do not write in this space.)* |
|---|---|---|
| PO Box 30309 Winston-Salem, NC 27130 | (336) 785-4523 | |

| 15. DATE SIGNED *(YYYYMMDD)* | 16. SIGNATURE *(Applicant must sign here.)* | |
|---|---|---|
| 20020528 | *George P. Byrum* | MAY 29 2002 |

DD FORM 149, SEP 2000                                    PREVIOUS EDITION IS OBSOLETE.

00001

May-28-02  00:29                                                                    P.02

## INSTRUCTIONS
*(All data should be typed or printed)*

1. For detailed information see: Air Force Instruction 36-2603; Army Regulation 15-185; Coast Guard, Code of Federal Regulations; Title 33, Part 52; or Navy, Code of Federal Regulations; Title 32, Part 723.

2. Submit only original of this form.

3. Complete all items. If the question is not applicable, mark "None."

4. If space is insufficient, use "Remarks" or attach additional sheet.

5. Various veterans and service organizations furnish counsel without charge. These organizations prefer that arrangements for representation be made through local posts or chapters.

6. List all attachments and enclosures.

7. ITEMS 6 AND 7. Personal appearance of you and your witnesses or representation by counsel is not required to ensure full and impartial consideration of applications. Appearances and representations are permitted, at no expense to the Government, when a hearing is authorized.

8. ITEM 8. State the specific correction of record desired.

9. ITEM 9. In order to justify correction of a military record, it is necessary for you to show to the satisfaction of the Board, or it must otherwise satisfactorily appear, that the alleged entry or omission in the record was in error or unjust. Evidence may include affidavits or signed testimony of witnesses, executed under oath, and a brief of arguments supporting application. All evidence not already included in your record must be submitted by you. The responsibility for securing new evidence rests with you.

10. ITEM 11. 10 U.S.C. 1552b provides that no correction may be made unless request is made within three years after the discovery of the error or injustice, but that the Board may excuse failure to file within three years after discovery if it finds it to be in the interest of justice.

## MAIL COMPLETED APPLICATIONS TO APPROPRIATE ADDRESS BELOW

| ARMY | COAST GUARD |
|---|---|
| **(For Active Duty Personnel)**<br>Army Board for the Correction of Military Records<br>1941 Jefferson Davis Highway, 2nd Floor<br>Arlington, VA 22202-4508<br><br>**(For Other than Active Duty Personnel)**<br>Army Review Boards Agency<br>Support Division, St. Louis<br>ATTN: SFMR-RBR-SL<br>9700 Page Avenue<br>St. Louis, MO 63132-5200 | Chairman<br>Board for Correction of Military Records (C-60)<br>Department of Transportation<br>400 7th St., SW<br>Washington, DC 20590 |

| NAVY AND MARINE CORPS | AIR FORCE |
|---|---|
| Board for Correction of Naval Records<br>2 Navy Annex<br>Washington, DC 20370-5100 | Board for Correction of Air Force Records<br>SAF/MIB<br>550-C Street West, Suite 40<br>Randolph AFB, TX 78150-4742 |

17. REMARKS *(Applicant has exhausted all administrative channels in seeking this correction and has been counseled by a representative of his/her servicing military personnel office. (Applicable only to active duty and reserve personnel.))*

In Jan. 1996, I was told by my Commanding Officer, Col. M. W. Forbush, that I had been selected by a SERB action to retire that year. After speaking to my supervisory Chaplain, Captain R. R. Gates, I called the Chief of Chaplains Office and spoke to my detailer, Captain C.E. Bourke, Jr. He informed me that as a result of the SERB action I would have to retire no later than 31 July 1996. (see Encl. 1)
On 25 May 2002 I learned from comparing Enclosures 2, 3 and 4, that there were many Commanders who met the criteria established by the statute whose names according to lineal number should have been on the list before mine. The record of each officer eligible for consideration was not assembled for inspection by the board. I have high-lighted many of them. Some are still on active duty. Because my record was presented to the SERB long before it should have, I retired and therefore was not considered for promotion to Captain. I should have come in zone in FY-99 for 0-6 (compare Enclosures 1, 4 and 5).

DD FORM 149 (BACK), SEP 2000

00002

May-28-02 00:30                                                                P.03
CAUTION: NOT TO BE USED FOR          THIS IS AN IMPORTANT RECORD.    ANY ALTERATIONS IN SHADED
IDENTIFICATION PURPOSES                    SAFEGUARD IT.              AREAS RENDER FORM VO

# CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NO |
|---|---|---|
| BYRUM, GEORGE PHILIP | NAVY/USN | |

| 4.a. GRADE, RATE OR RANK | 4.b. PAY GRADE | 5. DATE OF BIRTH (YYMMDD) | 6. RESERVE OBLIG. TERM. DATE | | |
|---|---|---|---|---|---|
| CDR | O-5 | 49 | Year N/A | Month | Day |

| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY | 7.b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) |
|---|---|
| FORT WORTH, TX | HOLLYWOOD, FL |

| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 8.b. STATION WHERE SEPARATED |
|---|---|
| 2D MARINE DIVISION, CAMP LEJEUNE, NC 28542 | 2D MARINE DIVISION, CAMP LEJEUNE, NC 2854 |

| 9. COMMAND TO WHICH TRANSFERRED | 10. SGLI COVERAGE | None |
|---|---|---|
| NAVAL RESERVE PERSONNEL CENTER, NEW ORLEANS, LA 70149 | Amount: $ | 200,000 |

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) | 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
|---|---|---|---|---|
| 4100 CHAPLAIN CORPS OFFICER | a. Date Entered AD This Period | 96 | AUG | 01 |
| | b. Separation Date This Period | 96 | JUL | 31 |
| 14YRS & 11MOS | c. Net Active Service This Period | 15 | 00 | 01 |
| | d. Total Prior Active Service | 08 | 01 | 26 |
| | e. Total Prior Inactive Service | 02 | 11 | 12 |
| | f. Foreign Service | 02 | 04 | 07 |
| | g. Sea Service | 03 | 01 | 00 |
| | h. Effective Date of Pay Grade | 93 | JUL | 16 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) |
|---|
| NATIONAL DEFENSE SERVICE MEDAL (2 AWARDS), .38 CAL PISTOL EXPERT MEDAL, BATTLE EFFICIENCY AWARD (2 AWARDS), SEA SERVICE DEPLOYMENT RIBBON (2 AWARDS), ARMED FORCES EXPEDITIONARY MEDAL, ARMED FORCES RESERVE MEDAL, OVERSEAS SERVICE RIBBON (3 AWARDS), NAVY ACHIEVEMENT MEDAL (2 AWARDS |

| 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) | | |
|---|---|---|
| CHAPLAIN BASIC COURSE | 08 WEEKS | 80AUG |
| CHAPLAIN ADVANCED COURSE | 31 WEEKS | 92MAY |

| 15.a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No | 15.b. HIGH SCHOOL GRADUATE OR EQUIVALENT | Yes | No | 16. DAYS ACCRUED LEAVE PAID |
|---|---|---|---|---|---|---|
| | | X | | X | | 60.0 DAYS |

| 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | Yes | X No |
|---|---|---|

| 18. REMARKS |
|---|
| THE INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPUTER MATCHING WITHIN THE DEPARTMENT OF DEFENSE OR WITH OTHER AFFECTED FEDERAL OR NON FEDERAL AGENCY FOR VERIFICATION PURPOSES AND TO DETERMINE ELIGIBILITY FOR, AND/OR CONTINUED COMPLIANCE, THE REQUIREMENTS OF A FEDERAL BENEFIT PROGRAM." |
| -DISTRIBUTION OF DD 214 IAW NAVMILPERSCOMINST 1900.1. |
| -"SUBJECT TO ACTIVE DUTY RECALL AND/OR ANNUAL SCREENING." |
| -"BLOCK 13 CONTINUED  M16 SHARPSHOOTER RIBBON, MERITORIOUS UNIT COMMENDATION, NAVY UNIT COMMENDATION RIBBON, SOUTH WEST ASIA SERVICE MEDAL (WITH 2 BRONZE STARS AND FMF DEVICE), KUWAITI LIBERATION MEDAL (SA) KUWAITI LIBERATION MEDAL (K), HUMANITARIAN SERVICE MEDAL, NAVY COMMENDATION MEDAL (2 AWARDS), MERITORIOUS SERVICE MEDAL, NAVY EXPEDITIONARY MEDAL. |

| 19.a. MAILING ADDRESS AFTER SEPARATION (Include Zip Code) | 19.b. NEAREST RELATIVE (Name and address - include Zip Code) |
|---|---|
| P.O. BOX 30309 | WILLIAM BYRUM  1204 BERTRAM COURT |
| WINSTON-SALEM, NC  27130 | AUGUSTA, GA  30909 |

| 20. MEMBER REQUESTS COPY 6 BE SENT TO | DIR. OF VET AFFAIRS | Yes | No | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and signature) |
|---|---|---|---|---|
| 21. SIGNATURE OF MEMBER BEING SEPARATED | | | | B. H. ROSEN, LT, MC, USNR, ASSTDIVSURG |
| *George P. Byrum* | | | | |

| SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only) |
|---|
| 23. RELEASE FROM ACTIVE DUTY | 24. CHARACTER OF SERVICE (Include upgrades) |
| | HONORABLE |

May-28-02 00:37                                                    P.01



**DEPARTMENT OF THE NAVY**
OFFICE OF THE SECRETARY
WASHINGTON. D.C. 20350·1000

1 7 NOV 1995

From:  Secretary of the Navy
To:    RADM Donald K. Muchow, CHC, USN, ▓▓▓▓▓▓▓/4100

Subj:  PRECEPT CONVENING A FY-96 SELECTION BOARD TO CONSIDER
       COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE EARLY
       RETIREMENT

Encl:  (1) Board Membership
       (2) Supplemental Guidance

1.   The selection board, consisting of yourself as president
and the officers listed in enclosure (1), is ordered to
convene at the Navy Department, Washington, D.C., at 0900 on
29 November 1995 or as soon thereafter as may be
practicable.

2.   Each fiscal year a number of commanders retire from the
Navy as a result of approved voluntary retirements or
involuntary retirements based on length of service.
However, the Navy is currently faced with the need to
increase the number of retirements of commanders during this
fiscal year beyond the number of approved voluntary and
involuntary retirements, and thus this selective early
retirement board is being convened. The function of the
board is to recommend for selective early retirement regular
and reserve commanders on the active-duty list, in the
Chaplain Corps community whose early retirement, in the
opinion of the majority of the board, is in the best
interest of the Navy.

3.   10 USC §638 and §638a provide that regular or reserve
officers may be considered for early retirement by a
selection board convened pursuant to 10 USC §611(b).   Those
statutes permit consideration for selective early retirement
of commanders who are within two years of retirement
eligibility or eligible for retirement.

4.   The records and names of all eligible officers
determined as of the date the board convenes will be
furnished to the board by the Chief of Naval Personnel.  The
board will carefully consider the case of every officer
whose name is furnished to it.  Under 10 USC §638(e)(2)(B),
officers with approved voluntary retirements, or officers
with involuntary retirement dates in FY-96 or FY-97, may not
be considered.  No officer whose name is on a promotion list
may be considered for early retirement.

*Encl 2-1*

\`\`\`\`\`\`\`\`\`

Subj:  PRECEPT CONVENING THE FY-96 SELECTION BOARD TO
       RECOMMEND COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE
       EARLY RETIREMENT

5.   The major criterion for the Navy's success is its
ability to conduct prompt and sustained combat operations.
A balance of skills among the Navy's leaders is the key to
maintaining this ability.  Excellence in operational
environments and during arduous, demanding deployments is an
important measure of the qualities the Navy requires.
Officers may also have demonstrated leadership, skill,
integrity and resourcefulness in other difficult and
challenging joint and in-service assignments.  Just as you
must carefully consider positive outstanding performance,
you must carefully consider documented incidents of
misconduct, and substandard performance, which are included
in an officer's official service record, in determining
those officers who are best qualified for retention.  You
must ensure the officers retained possess the qualities to
excel in positions of responsibility and authority
appropriate to their grade.  You must consider each
officer's potential for future contributions in both
traditional and more specialized assignments and retain
those who have the highest potential for significant further
service.  For those eligible officers who are recommended
for retention and who have received disciplinary action or
whose privileged information record (Fiche 5) contains
matters relating to conduct or performance of duty, each
board member shall personally review the information
contained therein, prior to the final board decision.
Finally, when determining whom to retain, you should also
give consideration to the resources expended by the Navy in
preparing officers for particular assignments, and the needs
of the Navy in managing billets with long training
pipelines.

6.   The total number of officers that may be recommended
will be exactly the number set forth below.  This number may
not exceed 30 percent of the in-zone eligible officers as of
the date the board convened.  The board will recommend no
more than or less than the number provided below:

| GRADE | COMPETITIVE CATEGORY | NUMBER TO SELECT |
|-------|---------------------|------------------|
| COMMANDER | CHAPLAIN CORPS | 7 |

7.   The board will consider only those official records
provided by the Chief of Naval Personnel as well as written
communications from eligible officers.  Requests for
additional information can only be approved by the Secretary

2

2-2



# DEPARTMENT OF THE NAVY
### OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20350-1000

From:   Secretary of the Navy
To:     President, FY96 Commander, Chaplain Corps Selective Early
        Retirement Board

Subj:   OFFICERS IN THE COMPETITIVE CATEGORY OF CHAPLAIN CORPS ON
        THE ACTIVE DUTY LIST OF THE NAVY IN THE GRADE OF
        COMMANDER, WHO ARE ELIGIBLE FOR SELECTIVE EARLY RETIREMENT

Encl:   (1) Chaplain Corps Officers eligible for Selective Early
            Retirement in FY96

1.  A list of subject officers is provided as enclosure (1).

2.  The record of each officer eligible for consideration has
been assembled in the Navy Department and is ready for inspection
by the board.

FOR THE SECRETARY OF THE NAVY

LEE F. GUNN
Rear Admiral, U.S. Navy
Deputy Chief of Naval Personnel

30 NOV 1995

OFFICERS IN THE COMPETITIVE CATEGORY OF CHAPLAIN CORPS ON THE
ACTIVE-DUTY LIST OF THE NAVY IN THE GRADE OF COMMANDER ELIGIBLE FOR
CONSIDERATION FOR SELECTIVE EARLY RETIREMENT

| in del # Precedence | CONSEC | NAME | SSN | DESIG |
|---|---|---|---|---|
| 1 | 0001 | MORGAN JAMES PATRICK | | 4100 |
| 13 | 0002 | UMBAUGH RAY DUANE | | 4100 |
| 10 | 0003 | NEWHOUSE EDWARD ARTH | | 4100 |
| 11 | 0004 | ADAIR ROBERT HAROLD | | 4100 |
| 22 | 0005 | BROWN NORMAN FRANKLI | | 4100 |
| 5 | 0006 | ROWLAND ROBERT GENE | | 4100 |
| 7 | 0007 | KLAPACH FRANK S | | 4100 |
| 8 | 0008 | STANFIELD EDWIN DOUG | | 4100 |
| 2 | 0009 | PALMER HAROLD D | | 4100 |
| 20 | 0010 | NIXON HENRY JR | | 4100 |
| 3 | 0011 | JENSEN STEVEN L | | 4100 |
| 4 | 0012 | PYRCH PAUL | | 4100 |
| 21 | 0013 | SIMONS GARY GALEN | | 4105 |
| 9 | 0014 | BENNETT WILLIAM THOM | | 4100 |
| 19 | 0015 | SIEGEL ENOCH ARNOLD | | 4100 |
| 17 | 0016 | TUMLIN GEORGE LEWIS | | 4100 |
| 12 | 0017 | SIMONELLI DOMINICK | | 4100 |
| 14 | 0018 | DURHAM RONALD WAYNE | | 4100 |
| 16 | 0019 | MCCREARY STANLEY HOW | | 4100 |
| 15 | 0020 | METZGER DAVID LAWREN | | 4100 |
| 6 | 0021 | LEVERETTE WALTER NOR | | 4100 |
| 24 | 0022 | BYRUM GEORGE PHILIP | | 4100 |
| 18 | 0023 | AVEN DONALD WEBSTER | | 4100 |
| 23 | 0024 | BURT ROBERT FRANCIS | | 4100 |



Enclosure ( 1 )

2-4

REPORT OF A SELECTION BOARD TO RECOMMEND COMMANDERS IN THE
COMPETITIVE CATEGORY OF CHAPLAIN CORPS ON THE ACTIVE-DUTY LIST OF
THE NAVY FOR SELECTIVE EARLY RETIREMENT

| CONSEC | NAME | SSN | DESIG |
|--------|------|-----|-------|
| 0001 | MORGAN JAMES PATRICK | | 4100 |
| 0004 | ADAIR ROBERT HAROLD | | 4100 |
| 0006 | ROWLAND ROBERT GENE | | 4100 |
| 0017 | SIMONELLI DOMINICK | | 4100 |
| 0020 | METZGER DAVID LAWREN | | 4100 |
| 0022 | BYRUM GEORGE PHILIP | | 4100 |
| 0023 | AVEN DONALD WEBSTER | | 4100 |

2-5



**DEPARTMENT OF THE NAVY**
NAVY PERSONNEL COMMAND
5720 INTEGRITY DRIVE
MILLINGTON TN 38055-0000

5420
Pers-00ZCB
02 AUG 02

MEMORANDUM FOR HEAD, OFFICER RETIREMENTS BRANCH (PERS-822)

Subj:    REQUEST FOR COMMENTS AND RECOMMENDATIONS IN CASE OF
         CDR GEORGE P. BYRUM, USN, RET, ███████████

Ref:    (a) 10 USC Section 1552

Encl:    (1) BCNR File 04911-02 w/Service record

1. Subject member petitioned the Board for Correction of Naval
Records (BCNR) in accordance with reference (a), to correct
errors and/or remove injustices in their service record.

2. The Board requests your comments and recommendations in order
to reach a fair and equitable decision in this case. You are
therefore requested to review enclosure (1); weighing the issues
presented therein with applicable navy policies, regulations, and
guidelines, formulate an advisory opinion, and return all
correspondence to this office.

3. If during your review of enclosure (1) you determine an
administrative resolution, within the scope and authority of the
Chief of Naval Personnel (CNP) is both available and appropriate,
alleviating the necessity for further BCNR intervention, you
should prepare a brief but formal commentary advising this office
of your action(s).

4. If a formal review by BCNR is required, your comments and
recommendations should be prepared in formal format, addressed to
the **Executive Director, Board for Correction of Naval Records** via
**Assistant for BCNR Matters, Pers-00ZCB**, and returned to me in the
Jamie Whitten Building (791), room A104.

5. Your response is requested **NLT 03 SEP 02**. Extensions may be
requested by contacting me at 874-3043.

H. K. TOPPING
Assistant for BCNR Matters
By direction

00034

## Topping, Heather

| From: | Chamberlin, Scott LT |
|---|---|
| Sent: | Monday, September 09, 2002 10:33 AM |
| To: | Topping, Heather |
| Cc: | Lewis, Robert D.; Harris, Toni YN1; Riddle, Kimberly |
| Subject: | BCNR ICO CDR BYRUM |

BCNR returned to you today.  PERS-822 added some of the old SERB documents in addition to the other SERB documents already in the green folder.  Recommend PERS-06 look at for validity/recommendation on the petition.

As discussed today (yes, I apologize it was late), it's off PERS-8's queue.  Thanks!
R/

LT Scott Chamberlin, PERS-822A
Asst Branch Head, Officer Retirements
5720 Integrity Drive
Millington TN 38055-8220
DSN 882-3184; FAX:  (901)874-2622, DSN 882-2622
*Check out our website at:*  http://www.bupers.navy.mil/pers8/p82/p822/p822.htm

*"The swiftest harts have posted you by land,*
*And winds of all the corners kissed your sails*
*to make your vessel nimble."*        - Shakespeare, *Cymbeline*



**DEPARTMENT OF THE NAVY**
NAVY PERSONNEL COMMAND
5720 INTEGRITY DRIVE
MILLINGTON TN 38055-0000

5420
Pers-00ZCB
11 SEP 02

MEMORANDUM FOR DEPUTY, OFFICE OF LEGAL COUNSEL (PERS-06)

Subj:   REQUEST FOR COMMENTS AND RECOMMENDATIONS IN CASE OF
        CDR GEORGE P. BYRUM, USN, ████████████

Ref:    (a) 10 USC Section 1552

Encl:   (1) BCNR File 04911-02 w/Service record

1. Subject member petitioned the Board for Correction of Naval
Records (BCNR) in accordance with reference (a), to correct
errors and/or remove injustices in their service record.

2.  The Board requests your comments and recommendations in order
to reach a fair and equitable decision in this case.  You are
therefore requested to review enclosure (1); weighing the issues
presented therein with applicable navy policies, regulations, and
guidelines, formulate an advisory opinion, and return all
correspondence to this office.

3.  If during your review of enclosure (1) you determine an
administrative resolution, within the scope and authority of the
Chief of Naval Personnel (CNP) is both available and appropriate,
alleviating the necessity for further BCNR intervention, you
should prepare a brief but formal commentary advising this office
of your action(s).

4.  If a formal review by BCNR is required, your comments and
recommendations should be prepared in formal format, addressed to
the **Executive Director, Board for Correction of Naval Records** via
**Assistant for BCNR Matters, Pers-00ZCB,** and returned to me in the
Jamie Whitten Building (791), room A104.

5.  Your response is requested **NLT 10 OCT 02**.  Extensions may be
requested by contacting me at 874-3043.

H. K. TOPPING
Assistant for BCNR Matters
By direction



**DEPARTMENT OF THE NAVY**
NAVY PERSONNEL COMMAND
5720 INTEGRITY DRIVE
MILLINGTON TN 38055-0000

5420
P0612/152
10 Oct 02

From:   Office of Legal Counsel (Pers-0612)
To:     Executive Director, Board for Correction for Naval
        Records
Via:    Assistant for BCNR Matters, Pers-00ZCB

Subj:   REQUEST FOR COMMENTS AND RECOMMENDATION IN CASE OF
        CDR GEORGE P. BYRUM

Ref:    (a) 10 USC 638
        (b) 10 USC 638a

Encl:   (1) BCNR File with cover memo dtd 28 Aug 2002 ~~9 Aug 95~~
        (2) CNO FY96 SER Plan Memo to SECNAV, dtd ~~3 Apr 02~~

1.  This responds to your request (enclosure (1)) for comments
and recommendation on subject BCNR petition.  Petitioner
requests removal of his name from FY96 Commander Chaplain Corps
SERB list and that his record be considered with those who were
selected by the FY99 Active Duty Captain Staff Selection Board.
For reasons set forth below, recommend denial of petitioner's
request.

2.  References (a) and (b) authorize selective early retirement
of regular officers on the active duty list who meet the
prescribed criteria set forth within.  Enclosure (2) implements
references (a) and (b) for FY96.  The evidence found in
enclosure (1) indicates that petitioner met the prescribed
criteria for consideration by the FY96 CDR SER board and was
properly considered and selected for early retirement.

3.  Please call me at DSN 882-3163 or (901) 874-3163 if you have
any questions.

Steven P. Hester
Assistant Legal Counsel



**DEPARTMENT OF THE NAVY**
OFFICE OF THE CHIEF OF NAVAL OPERATIONS
WASHINGTON, DC 20350-2000

IN REPLY REFER TO
Ser 00/5U500146
9 Aug 95

MEMORANDUM FOR THE SECRETARY OF THE NAVY

Subj:   FISCAL YEAR 1996 OFFICER SELECTIVE EARLY RETIREMENT (SER)
        PLAN - ACTION MEMORANDUM

Ref:    (a) Title 10, U.S. Code
        (b) DoD Directive 1332.32 of 22 Jan 82
        (c) DASD(MPP) memo of 19 Oct 94
        (d) SECNAVINST 1420.1A
        (e) SECNAVINST 1811.4E

Encl:   (1) Preliminary Estimate of FY96 Officer SER Requirements
        (2) FY96 Officer Selective Early Retirement
            Implementation and Procedural Guidance
        (3) FY96 Officer Selective Early Retirement Zones
        (4) FY96 Officer Selective Early Retirement Board Shell
            Precept

1.   Recommend approval of the FY96 Selective Early Retirement
(SER) Plan for regular and reserve officers on the active-duty
list in the grades of captain, commander, and lieutenant
commander, and regular chief warrant officers (CWO4 and CWO3).
SER is necessary to correct grade imbalances and strength
overages caused by the reduction in officer end strength.

2.   Enclosure (1) is a preliminary estimate of the number of
officer SERs required in FY96 by competitive category and grade.
This estimate will be continually updated as additional
retirement requests are received.  The final SER requirements
will be determined in November 1995, based on the latest
available retirement data.  These final requirements will be
briefed to the Chief of Naval Personnel, and the exact number of
SERs required by competitive category and grade will be specified
in the SER precepts for your approval prior to the convening of
the boards.

3.   The FY96 SER Plan conforms to the provisions of
references (a) and (b) which govern the selection and early
retirement of Navy officers.  As authorized by reference (c), the
FY96 plan incorporates §638a of reference (a), expanding SER
authority during the nine-year period beginning 1 October 1990
and, thereby, modifying the SER eligibility criteria specified in
reference (d).  Reference (a), §581, permits the selective early
retirement of regular chief warrant officers.

4.   As permitted under §638a(c)(3)(B), captain SER eligibility
criteria have been revised from criteria used in previous years
to place those captains actually promoted to their present grade
in calendar years 1990 (senior cohort) and 1993 (junior cohort)

Subj:   FISCAL YEAR 1996 OFFICER SELECTIVE EARLY RETIREMENT (SER)
        PLAN - ACTION MEMORANDUM

in the SER zone.   This revision was made to limit the number of
SER considerations each captain must face and to provide a three-
year interval between SER considerations, thereby improving
stability in career planning for individual officers and
efficiency in Navy's management of captains.

5.   Enclosure (2) contains the implementation and procedural
guidance for execution of the FY96 Officer SER Plan.
Enclosure (3) lists the FY96 captain, commander, lieutenant
commander, and chief warrant officer SER zones.   Enclosure (4) is
the standard precept that will be used by the selection boards.
The standard precept will be tailored to the specific boards as
required.

6.   Reference (d) stipulates that not more than a fixed number or
percentage, as prescribed by the Secretary of the Navy, of the
officers in each grade and competitive category who are
considered for SER may be selected by the board.   This year's
plan will prescribe a number (vice a percentage) for each grade
and competitive category which, except in the case of chief
warrant officers, may not exceed 30 percent of the total number
of officers considered in a particular grade and competitive
category.

7.   Based on experience, we anticipate that some officers SER'd
in FY96 will be concurrently retired and retained on active duty.
In general, these will be officers who are serving in critical
billets that require special training and for whom a qualified
relief will not be immediately available.   Concurrent retirement
and retention of officers under these circumstances is in the
best interest of Navy and will ensure continuity in the billet
until such time as a suitable relief can be identified and
trained.   Reference (e) governs the approval of requests for
concurrent retirement and retention on active duty.

8.   For the FY96 SER, officers will be permitted to submit
voluntary retirement requests and request retirement dates not
later than 1 September 1996.   By law, officers with approved
voluntary retirements may not be considered for early retirement.

9.   Approval of the FY96 Officer SER Plan will place those
eligible officers in the grades and competitive categories listed
in enclosure (3) before a SER board, as required, in FY96.

CNP _will_ personally review final
requirements in November. They will be as small as
possible or, in no case, more than in this package.

                                         J. M. BOORDA
                                         Admiral, U. S. NAVY

SECNAV DECISION:
Approved: _John H. Dalton_   22 Aug 95
Disapproved:
Other:

2

00039



**DEPARTMENT OF THE NAVY**
OFFICE OF THE JUDGE ADVOCATE GENERAL
200 STOVALL STREET
ALEXANDRIA, VA 22332-2400

IN REPLY REFER TO

1800
Ser 13/1PL11715.95
JUL 07 1995

MEMORANDUM FOR THE SECRETARY OF THE NAVY

Subj:  FISCAL YEAR 1996 OFFICER SELECTIVE EARLY RETIREMENT (SER) PLAN

1.  Subject plan is legally unobjectionable.

H. E. GRANT
Rear Admiral, JAGC, U.S. Navy
Judge Advocate General

## Preliminary Estimate of FY-96 Officer SER Requirements

| Competitive Category | O-6 | O-5 | O-4 | CWO4 | CWO3 |
|---|---|---|---|---|---|
| URL | 50 | 100 | 0 | | |
| EDO | 0 | 9 | 0 | | |
| AED | 1 | 4 | 0 | | |
| AMD | 4 | 2 | 0 | | |
| ADO | — | 3 | 0 | | |
| CRY | 0 | 2 | 0 | | |
| INT | 3 | 0 | 0 | | |
| PAO | 0 | 0 | 0 | | |
| FS | 0 | 0 | 0 | | |
| OCN | 2 | 1 | 0 | | |
| LDO(L) | 0 | 5 | 30 | | |
| MC | 0 | 0 | 0 | | |
| DC | 0 | 0 | 0 | | |
| MSC | 0 | 0 | 0 | | |
| JAG | 0 | 0 | 0 | | |
| NC | 3 | 4 | 0 | | |
| SC | 7 | 31 | 0 | | |
| CHC | 4 | 7 | 0 | | |
| CEC | 0 | 0 | 0 | | |
| LDO(S) | 0 | 1 | 0 | | |
| CWO | — | — | — | 25 | 20 |
| Total | 74 | 169 | 30 | 25 | 20 |

Enclosure (1)

## FY-96 OFFICER SELECTIVE EARLY RETIREMENT
## IMPLEMENTATION AND PROCEDURAL GUIDANCE

1.  <u>Selective Early Retirement Plan</u>.  Pursuant to §638 and §638a
of reference (a) for regular and reserve officers on the active-
duty list, and pursuant to §581 of reference (a) for regular
chief warrant officers, FY-96 SER selection boards will convene
under §611(b) of reference (a) to consider regular and reserve
captains, commanders and lieutenant commanders, and under §573(c)
to consider regular chief warrant officers who are subject to
involuntary retirement.

    a.  Captain Selective Early Retirement

        The captain SER boards will consider regular and reserve
captains who meet the statutory eligibility criteria for
selection for early retirement, are in promotion year groups
(PYG) Calendar Year 1990 (CY90) and Calendar Year 1993 (CY93),
have completed at least 19 years of active service as of 1 July
1995, who are within the zone defined by the senior and junior
captains in PYG(CY90) and PYG(CY93), and all officers junior to
the senior officer so identified and senior to the junior officer
so identified in each promotion year group.  Promotion year
groups CY90 and CY93 constitute the FY-96 O-6 SER zone for
applicable competitive categories and are further defined as
follows:

| Promotion Year Group | Captain Dates of Rank (inclusive) |
|---|---|
| PYG(CY90) | 1 Jan 1990 - 31 Dec 1990 |
| PYG(CY93) | 1 Jan 1993 - 31 Dec 1993 |

    b.  Commander Selective Early Retirement

        The commander SER boards will consider regular and
reserve commanders who meet the statutory eligibility criteria
for selection for early retirement, who are within the zone
defined by the senior and junior commanders, who have at least
one year time-in-grade and have completed 19 years of active
service as of 1 July 1995, and all officers junior to the senior
officer so identified and senior to the junior officer so
identified.

    c.  Lieutenant Commander Selective Early Retirement

        The lieutenant commander SER boards will consider regular
and reserve lieutenant commanders who meet the statutory
eligibility criteria for selection for early retirement, who are
within the zone defined by the senior and junior lieutenant
commanders, who have at least one year time-in-grade and have
completed 19 years of active service as of 1 July 1995, and all
officers junior to the senior officer so identified and senior to
the junior officer so identified.

Enclosure (2)

d.  Chief Warrant Officer Selective Early Retirement

The chief warrant officer SER boards will consider regular CWO4s who meet the statutory eligibility criteria for selection for early retirement, who are within the zone defined by the senior and junior CWO4s, who are retirement eligible and have at least one year time-in-grade as of 1 December 1995, and all officers junior to the senior officer so identified and senior to the junior officer so identified; and regular CWO3s who meet the statutory eligibility criteria for selection for early retirement, who are within the zone defined by the senior and junior CWO3s, who are retirement eligible and have at least one year time-in-grade as of 1 December 1995, and all officers junior to the senior officer so identified and senior to the junior officer so identified.

2.  Implementation and Procedural Guidance

a.  Selection Board Schedule.

(1) FY-96 selective early retirement board schedule is as follows:

| Selection Board | Convening Date |
|---|---|
| Line Commander | 27 November 1995 |
| Staff Limited Duty Officer Commander | 28 November 1995 |
| Nurse Commander | 29 November 1995 |
| Chaplain Commander | 29 November 1995 |
| Line Limited Duty Officer Lieutenant Commander | 30 November 1995 |
| Nurse Captain | 01 December 1995 |
| Chaplain Captain | 01 December 1995 |
| Supply Captain/Commander | 04 December 1995 |
| Line Captain | 04 December 1995 |
| Chief Warrant Officers | 04 December 1995 |

b.  Selection Board Precepts.  Selection board precepts will be forwarded to the Secretary of the Navy for approval at least ten working days before the convening date of a selection board.

c.  The actual number of selections for retirement in the grades of captain, commander, and lieutenant commander, shall not exceed the statutory limit of 30 percent of all eligible officers who are considered to be in-zone for that competitive category and grade at the time the board convenes.  There are no statutory limits on the number of selections for retirement in the chief warrant officer grades.

d.  Enclosure (3) defines the limits, by name, date of rank, and active-duty list number, of the selective early retirement zones for the grades of captain, commander, lieutenant commander, and chief warrant officer.  In the event the senior officer in

2

the zone for a competitive category and grade (or calendar year promotion year group, as applicable), as set forth in enclosure (3), retires or becomes ineligible for consideration as an in-zone eligible prior to the date of the convening of the selection board, the next junior eligible officer serving in the same grade becomes the senior officer in the zone.  In the event the junior officer in the zone, as set forth in enclosure (3), retires or becomes ineligible for consideration for selection by the selection board, the next senior eligible officer serving in the same grade and competitive category becomes the junior officer in the zone.

    e.  All eligible officers considered in zone for selection for retirement are included in the zones in enclosure (3).  Some of the officers included in the zones defined in enclosure (3) will be ineligible for consideration because they may no longer be on active duty or for the reasons described in subparagraphs 2(f) and 2(g) below.

    f.  The law directs those officers who are on a list of officers recommended for promotion are to be excluded from the zone being considered.

    g.  The law also directs that officers who have been approved for voluntary retirement or who are to be involuntarily retired during the fiscal year in which the selection board is convened (FY-96) or in the following fiscal year (FY-97) are to be excluded from the zone being considered.

    h.  The selection board shall recommend for retirement exactly that number specified in the precept.  An officer who is recommended for early retirement and whose early retirement is approved by the Secretary shall be retired, under any provision of the law under which the officer is eligible to retire, on the date requested by the officer and approved by the Secretary, but the date of retirement shall not be later than the first day of the seventh calendar month beginning after the month in which the Secretary approves the report of the board which recommended the officer for early retirement.  Retire/retain requests for concurrent retirement and retention on active duty past this date shall be granted only in very exceptional circumstances and must be approved by the Secretary of the Navy.

3.

FY-96 OFFICER SELECTIVE EARLY RETIREMENT ZONES

CAPTAIN

COMPETITIVE
CATEGORY

UNRESTRICTED LINE
PYG (CY90)
        Senior In-Zone        Becker, J. J.
        Lineal/DOR        00237850/1 Jan 90

        Junior In-Zone        Hutchison, J. R.
        Lineal/DOR        00245320/1 Dec 90
PYG (CY93) --
        Senior In-Zone        Cross, J. K.
        Lineal/DOR        00263320/1 Jan 93

        Junior In-Zone        Miller, M. J.
        Lineal/DOR        00272455/1 Dec 93

ENGINEERING DUTY
PYG (CY90)
        Senior In-Zone        Wilson, R. L.
        Lineal/DOR        00238030/1 Jan 90

        Junior In-Zone        Whiddon, W. D.
        Lineal/DOR        00244150/1 Sep 90
PYG (CY93)
        Senior In-Zone        Mayes, L. L.
        Lineal/DOR        00263620/1 Jan 93

        Junior In-Zone        Bruner, T. T. W.
        Lineal/DOR        00272215/1 Dec 93

AEROSPACE ENGINEERING DUTY
PYG (CY90)
        Senior In-Zone        Bucelato, J. C.
        Lineal/DOR        00238060/1 Jan 90

        Junior In-Zone        Riera, R. E.
        Lineal/DOR        00243670/1 Sep 90
PYG (CY93)
        Senior In-Zone        Yee, T. H.
        Lineal/DOR        00263230/1 Jan 93

        Junior In-Zone        Hill, W. J.
        Lineal/DOR        00271855/1 Nov 93

Enclosure (3)

CRYPTOLOGY
    PYG (CY90)
        Senior Eligible    McClusky, R. J.
        Lineal/DOR       00239230/1 Apr 90

        Junior Eligible    Glenn, P. L.
        Lineal/DOR       00244585/1 Oct 90
    PYG (CY93)
        Senior Eligible    Brinkman, W. R.
        Lineal/DOR       00264175/1 Mar 93

        Junior Eligible    Houle, N. A.
        Lineal/DOR       00271390/1 Oct 93

INTELLIGENCE
    PYG (CY90)
        Senior Eligible    Perkins, R. K.
        Lineal/DOR       00240700/1 Jun 90

        Junior Eligible    Gragg, R. V.
        Lineal/DOR       00245095/1 Dec 90
    PYG (CY93)
        Senior Eligible    Kelly, F. B.
        Lineal/DOR       00263245/1 Jan 93

        Junior Eligible    Lewis, P. S.
        Lineal/DOR       00272185/1 Dec 93

PUBLIC AFFAIRS
    PYG (CY90)
        Senior Eligible    Leeder, F. G.
        Lineal/DOR       00241930/1 Jul 90

        Junior Eligible    Prucha, R. S.
        Lineal/DOR       00244645/1 Oct 90
    PYG (CY93)
        Senior Eligible    Harlow, W. R.
        Lineal/DOR       00265585/1 May 93

        Junior Eligible    Connor, C. D.
        Lineal/DOR       00271690/1 Oct 93

FLEET SUPPORT
    PYG (CY90)
        Senior Eligible    Butler, S. R.
        Lineal/DOR       00240100/1 Jun 90

        Junior Eligible    Shupack, M. A.
        Lineal/DOR       00242635/1 Aug 90

PYG (CY93)

| | | |
|---|---|---|
| Senior In-Zone | Lentz, L. M. | |
| Lineal/DOR | 00263500/1 Jan 93 | |
| Junior In-Zone | Laraway, R. A. | |
| Lineal/DOR | 00272080/1 Nov 93 | |

OCEANOGRAPHY
    PYG (CY90)

| | |
|---|---|
| Senior In-Zone | Pentimonti, R. J. |
| Lineal/DOR | 00241285/1 Jul 90 |
| Junior In-Zone | Ladouce, R. J. |
| Lineal/DOR | 00244375/1 Oct 90 |

    PYG (CY93)

| | |
|---|---|
| Senior In-Zone | Hughes, J. G. |
| Lineal/DOR | 00263695/1 Feb 93 |
| Junior In-Zone | Johnson, W. F. |
| Lineal/DOR | 00271495/1 Oct 93 |

LIMITED DUTY OFFICER (LINE)
    PYG (CY90)

| | |
|---|---|
| Senior In-Zone | Jones, I. J. |
| Lineal/DOR | 00244255/1 Sep 90 |
| Junior In-Zone | Jones, I. J. |
| Lineal/DOR | 00244255/1 Sep 90 |

    PYG (CY93)

| | |
|---|---|
| Senior In-Zone | Curry, R. K. |
| Lineal/DOR | 00265645/1 Jun 93 |
| Junior In-Zone | Sides, J. E. |
| Lineal/DOR | 00272095/1 Dec 93 |

MEDICAL CORPS
    PYG (CY90)

| | |
|---|---|
| Senior In-Zone | Wignall, F. S. |
| Lineal/DOR | 00239710/1 May 90 |
| Junior In-Zone | Hall, R. B. |
| Lineal/DOR | 00245365/1 Dec 90 |

    PYG (CY93)

| | |
|---|---|
| Senior In-Zone | Rose, J. W. |
| Lineal/DOR | 00268240/1 Jul 93 |
| Junior In-Zone | Sainten, C. B. |
| Lineal/DOR | 00271750/1 Nov 93 |

3

DENTAL CORPS
    PYG (CY90)
                Senior In-Zone           McCall, R. W.
                Lineal/DOR               00238450/1 Feb 90

                Junior In-Zone           Rathbun, W. A.
                Lineal/DOR               00245065/1 Dec 90
    PYG (CY93)
                Senior In-Zone           Eldridge, M. C.
                Lineal/DOR               00263665/1 Jan 93

                Junior In-Zone           Jones, G. K.
                Lineal/DOR               00272200/1 Dec 93

MEDICAL SERVICE CORPS
    PYG (CY90)
                Senior In-Zone           Contreras, T. J.
                Lineal/DOR               00238105/1 Jan 90

                Junior In-Zone           Anderson, R. L.
                Lineal/DOR               00244990/1 Nov 90
    PYG (CY93)
                Senior In-Zone           Gervais, D. R.
                Lineal/DOR               00263680/1 Jan 93

                Junior In-Zone           Rutherford, B. D.
                Lineal/DOR               00272260/1 Dec 93

JUDGE ADVOCATE GENERAL'S CORPS
    PYG (CY90)
                Senior In-Zone           Dombroski, J. E.
                Lineal/DOR               00238045/1 Jan 90

                Junior In-Zone           Randall, T. E.
                Lineal/DOR               00244090/1 Sep 90
    PYG (CY93)
                Senior In-Zone           Leachman, T. L.
                Lineal/DOR               00265615/1 May 93

                Junior In-Zone           Hardy, D. M.
                Lineal/DOR               00271125/1 Oct 93

NURSE CORPS
    PYG (CY90)
                Senior In-Zone           Southerland, M. A.
                Lineal/DOR               00238945/1 Apr 90

                Junior In-Zone           Karrat, V. J.
                Lineal/DOR               00243355/1 Sep 90

4

```
        PYG (CY93)
                    Senior In-Zone        Lewis, R. D.
                    Lineal/DOR            00263260/1 Jan 93

                    Junior In-Zone        Phillips, D. W.
                    Lineal/DOR            00272110/1 Dec 93

    SUPPLY CORPS
        PYG (CY90)
                    Senior In-Zone        Herbst, H. P.
                    Lineal/DOR            00237835/1 Jan 90

                    Junior In-Zone        Pointer, B. R.
                    Lineal/DOR            00244720/1 Nov 90
        PYG (CY93)
                    Senior In-Zone        Easton, M. E.
                    Lineal/DOR            00263290/1 Jan 93

                    Junior In-Zone        Mitchell, M. L.
                    Lineal/DOR            00272245/1 Dec 93

    CHAPLAIN CORPS
        PYG (CY90)
                    Senior In-Zone        O'Connor, J. P.
                    Lineal/DOR            00238150/1 Feb 90

                    Junior In-Zone        Reidy, R. P.
                    Lineal/DOR            00245080/1 Dec 90
        PYG (CY93)
                    Senior In-Zone        Atwater, J. D.
                    Lineal/DOR            00266260/1 Jun 93

                    Junior In-Zone        Carter, T. C.
                    Lineal/DOR            00270175/1 Sep 93

    CIVIL ENGINEER CORPS
        PYG (CY90)
                    Senior In-Zone        Collins, J. P.
                    Lineal/DOR            00238075/1 Jan 90

                    Junior In-Zone        Venable, J. B.
                    Lineal/DOR            00244630/1 Oct 90
        PYG (CY93)
                    Senior In-Zone        Knoll, J. C.
                    Lineal/DOR            00263590/1 Jan 93

                    Junior In-Zone        Kraai, B. W.
                    Lineal/DOR            00272275/1 Dec 93
```

5

COMMANDER

COMPETITIVE
CATEGORY

UNRESTRICTED LINE
              Senior In-Zone          Thompson, G. R.
              Lineal/DOR             00634300/1 Jul 83

              Junior In-Zone          West, R. C.
              Lineal/DOR             00822075/1 Jul 94

ENGINEERING DUTY
              Senior In-Zone          Loser, D. A.
              Lineal/DOR             00678800/1 Mar 87

              Junior In-Zone          Metcalf, S. G.
              Lineal/DOR             00821235/1 Jul 94

AEROSPACE ENGINEERING DUTY (ENGINEER)
              Senior In-Zone          Tuttle, L. J.
              Lineal/DOR             00676520/1 Dec 86

              Junior In-Zone          Classick, M. A.
              Lineal/DOR             00807195/1 Aug 93

AEROSPACE ENGINEERING DUTY (MAINTENANCE)
              Senior In-Zone          Youngman, K. R.
              Lineal/DOR             00675890/1 Nov 86

              Junior In-Zone          Wernz, G. A.
              Lineal/DOR             00818310/1 Jun 94

AVIATION DUTY OFFICER
              Senior In-Zone          Dubois, W. G.
              Lineal/DOR             00657965/1 Jun 85

              Junior In-Zone          Silverman, D. B.
              Lineal/DOR             00817680/1 Jun 94

CRYPTOLOGY
              Senior In-Zone          Ross, J. C.
              Lineal/DOR             00667680/1 May 86

              Junior In-Zone          Kelly, K. M.
              Lineal/DOR             00820905/1 Jul 94

INTELLIGENCE
              Senior In-Zone          Lyda, W. W.
              Lineal/DOR             00651080/1 Oct 84

              Junior In-Zone          Howarth, T. A.
              Lineal/DOR             00812280/1 Nov 93

6

PUBLIC AFFAIRS

    Senior In-Zone      Stull, M. J.
    Lineal/DOR         00675900/1 Nov 86

    Junior In-Zone      King, G. M.
    Lineal/DOR         00812145/1 Oct 93

FLEET SUPPORT

    Senior In-Zone      Lyon, M. S.
    Lineal/DOR         00639680/1 Nov 83

    Junior In-Zone      Rafferty, E. R.
    Lineal/DOR         00821835/1 Jul 94

OCEANOGRAPHY

    Senior In-Zone      Handlers, R. G.
    Lineal/DOR         00653470/1 Jan 85

    Junior In-Zone      Green, C. W.
    Lineal/DOR         00820050/1 Jul 94

LIMITED DUTY OFFICER (LINE)

    Senior In-Zone      Phipps, F. P.
    Lineal/DOR         00693320/1 Sep 88

    Junior In-Zone      Cress, C. W.
    Lineal/DOR         00820755/1 Jul 94

MEDICAL CORPS

    Senior In-Zone      Townsend, J. W.
    Lineal/DOR         00572999/18 Dec 77

    Junior In-Zone      Eshman, S. J.
    Lineal/DOR         00811560/1 Oct 93

DENTAL CORPS

    Senior In-Zone      Tremann, C. F.
    Lineal/DOR         00581911/1 Aug 78

    Junior In-Zone      Martino, J. F.
    Lineal/DOR         00811545/1 Oct 93

MEDICAL SERVICE CORPS

    Senior In-Zone      Ehlert, G. J.
    Lineal/DOR         00613410/1 Jul 81

    Junior In-Zone      Young, W. M.
    Lineal/DOR         00822330/1 Jul 94

JUDGE ADVOCATE GENERAL'S CORPS

    Senior In-Zone      Newman, R. C.
    Lineal/DOR         00639900/1 Dec 83

```
                    Junior In-Zone        Getchell, A. B.
                    Lineal/DOR            00816375/1 Apr 94

        NURSE CORPS
                    Senior In-Zone        Dempsey, A. F.
                    Lineal/DOR            00655565/13 Mar 85

                    Junior In-Zone        Safran, D. J.
                    Lineal/DOR            00820260/1 Jul 94

        SUPPLY CORPS
                    Senior In-Zone        Jacobson, L.
                    Lineal/DOR            00684830/1 Jul 87

                    Junior In-Zone        Hargrove, R. D.
                    Lineal/DOR            00821550/1 Jul 94

    CHAPLAIN CORPS
                    Senior In-Zone        Pearson, C. J.
                    Lineal/DOR            00602860/1 Jul 80

                    Junior In-Zone        Morgan, J. P.
                    Lineal/DOR            00820500/1 Jul 94

    CIVIL ENGINEER CORPS
                    Senior In-Zone        Morris, D. E.
                    Lineal/DOR            00674070/1 Sep 86

                    Junior In-Zone        Hirakawa, J. S.
                    Lineal/DOR            00820440/1 Jul 94

    LIMITED DUTY OFFICER (STAFF)
                    Senior In-Zone        Toledo, C. A.
                    Lineal/DOR            00752385/1 Oct 90

                    Junior In-Zone        Mauricio, L. L.
                    Lineal/DOR            00818460/1 Jun 94


                        LIEUTENANT COMMANDER

    LIMITED DUTY OFFICER (LINE)
                    Senior In-Zone        Anderson, R. D.
                    Lineal/DOR            02351780/1 Sep 88

                    Junior In-Zone        Alvey, W. L.
                    Lineal/DOR            02526540/1 Jul 94

    LIMITED DUTY OFFICER (STAFF)
                    Senior In-Zone        Munar, I. A.
                    Lineal/DOR            02352010/1 Sep 88

                    Junior In-Zone        Johnston, H. R.
                    Lineal/DOR            02522760/1 Jul 94
```

8

<u>FY-96 Officer Selective Early Retirement Board</u>
<u>Shell Precept</u>

1.   This enclosure contains the wording to be used in all FY-96
Officer Selective Early Retirement board precepts.

From:  Secretary of the Navy
To:    (Board President)

Subj:  PRECEPT CONVENING A FY-96 SELECTION BOARD TO CONSIDER
       OFFICERS . . . . . . FOR SELECTIVE EARLY RETIREMENT

Encl:  (1) Board Membership
       (2) Supplemental Guidance

1.   The selection board, consisting of yourself as president and
the officers listed in enclosure (1), is ordered to convene at
the Navy Department, Washington, D.C., at _____ or as soon
thereafter as may be practicable.

2.   Each fiscal year a number of ... [Note 1] ... retire from
Navy as a result of approved voluntary retirements or involuntary
retirements based on length of service; however, Navy is
currently faced with the need to increase the number of
retirements of ... [Note 1] ... during this fiscal year beyond
the number of approved voluntary and involuntary retirements, and
thus this selective early retirement board is being convened.
The function of the board is to recommend for selective early
retirement regular [Note 2] and reserve ... [Note 1] ... on the
active-duty list, in the ... [Note 3] ... communities whose early
retirement, in the opinion of the majority of the board, is in
the best interest of Navy.

3.   10 USC §638 and §638a provide that regular or reserve
officers may be considered for early retirement by a selection
board convened pursuant to 10 USC §611(b).  10 USC §638a
restricts consideration for selective early retirement to ...
[Note 4].  [Note 5]

4.   The records and names of all eligible officers determined as
of the date the board convenes will be furnished to the board by
the Chief of Naval Personnel.  The board will carefully consider
the case of each officer whose name is furnished to it.  Under 10
USC §638(e)(2)(B) [Note 6] officers with approved voluntary
retirements, or officers with involuntary retirement dates in
FY-96 or FY-97, may not be considered.  No officer whose name is
on a promotion list may be considered for early retirement.

Enclosure (4)

5.   (URL boards only) .
     The major criterion for Navy's success is its ability to
conduct prompt and sustained combat operations.  A balance of
skills among Navy's leaders is the key to maintaining this
ability.  Excellence in operational environments and during
arduous, demanding deployments is an important measure of the
qualities Navy requires.  [Note 7]  Officers may also have
demonstrated leadership, skill, integrity, and resourcefulness in
other difficult and challenging joint and in-service assignments.
Just as you must carefully consider positive outstanding
performance, you must carefully consider documented incidents of
misconduct and substandard performance, which are included in an
officer's official service record, in determining those officers
who are best qualified for retention.  You must ensure the
officers retained possess the qualities to excel in positions of
responsibility and authority appropriate to their grade.  You
must consider each officer's potential for future contributions
in both traditional line and more specialized assignments and
retain those who have the highest potential for significant
further service.  For those eligible officers who are recommended
for retention and who have received disciplinary action or whose
privileged information record (Fiche 5) contains matters relating
to conduct or performance of duty, each board member shall
personally review the information contained therein, prior to the
final board decision.  Finally, when determining whom to retain,
you should also give consideration to the resources expended by
Navy in preparing officers for particular assignments, and the
needs of Navy in managing billets with long training pipelines.
[Note 8]

5.   (RL/Staff/LDO boards)
     The major criterion for Navy's success is its ability to
conduct prompt and sustained combat operations.  A balance of
skills among Navy's leaders is the key to maintaining this
ability.  Excellence in operational environments and during
arduous, demanding deployments is an important measure of the
qualities Navy requires.  Officers may also have demonstrated
leadership, skill, integrity, and resourcefulness in other
difficult and challenging joint and in-service assignments.  Just
as you must carefully consider positive outstanding performance,
you must carefully consider documented incidents of misconduct
and substandard performance, which are included in an officer's
official service record, in determining those officers who are
best qualified for retention.  You must ensure the officers
retained possess the qualities to excel in positions of
responsibility and authority appropriate to their grade.  You
must consider each officer's potential for future contributions
in both traditional and more specialized assignments and retain
those who have the highest potential for significant further
service.  For those eligible officers who are recommended for
retention and who have received disciplinary action or whose
privileged information record (Fiche 5) contains matters relating
to conduct or performance of duty, each board member shall
personally review the information contained therein, prior to the
final board decision.  Finally, when determining whom to retain,

2

you should also give consideration to the resources expended by Navy in preparing officers for particular assignments, and the needs of Navy in managing billets with long training pipelines.

5. (CWO boards)
   The major criterion for Navy's success is its ability to conduct prompt and sustained combat operations. A balance of skills among Navy's leaders is the key to maintaining this ability. Excellence in operational environments and during arduous, demanding deployments is an important measure of the qualities Navy requires. Officers may also have demonstrated leadership, skill, integrity and resourcefulness in other difficult and challenging joint and in-service assignments. Just as you must carefully consider positive outstanding performance, you must carefully consider documented incidents of misconduct and substandard performance, which are included in an officer's official service record, in determining those officers who are best qualified for retention. Your must ensure the officers retained possess the qualities to excel in positions of responsibility and authority appropriate to their grade. You must consider each officer's potential for future contributions and retain those who have the highest potential for significant further service. For those eligible officers who are recommended for retention and who have received disciplinary action or whose privileged information record (Fiche 5) contains matters relating to conduct or performance of duty, each board member shall personally review the information contained therein, prior to the final board decision. Finally, when determining whom to retain, you should also give consideration to the resources expended by Navy in preparing officers for particular assignments, and the needs of Navy in managing billets with long training pipelines.

6. The total number of officers that may be recommended will be exactly the number set forth below. This number may not exceed 30 percent of the in-zone eligible officers as of the date the board convened. [Note 9] The board will recommend no more than or less than the number provided below:

| GRADE | COMPETITIVE CATEGORY | NUMBER TO SELECT |
|---|---|---|
| AS REQUIRED | AS REQUIRED | AS REQUIRED |

7. The board will consider only those official records provided by the Chief of Naval Personnel as well as written communications from eligible officers. Requests for additional information can only be approved by the Secretary of the Navy. No board member, recorder, assistant recorder, or person acting on their behalf may communicate with an eligible officer, reporting senior, or other person to solicit information, favorable or unfavorable, about an eligible officer. The Chief of Naval Personnel may authorize communications as necessary to ensure the official records are complete.

8. The report of the board, prepared per paragraphs 10g and 11

3

[paragraphs 9g and 10 if enclosure (2) renumbered due to omission of its paragraph 4] of the supplemental guidance (enclosure (2)), will be forwarded to the Secretary of the Navy via, first, the Chief of Naval Personnel; second, the Chief of Naval Operations; and finally, the Judge Advocate General of the Navy for legal review.

9.  Enclosure (2) provides the oaths to be administered and supplemental guidance.

**Notes:**
1.  Insert "captains," "commanders," "lieutenant commanders" or "chief warrant officers," as appropriate.

2.  For CWO boards delete "and reserve."

3.  Insert "Unrestricted Line," "Restricted Line," "Limited Duty Officer," "Staff Corps," or "Chief Warrant Officer," as appropriate.

4.  For O-6 boards insert "only those captains with two or more years of active service in grade." For O-5/O-4 boards insert "commanders [or "lieutenant commanders", as appropriate] within two years of retirement eligibility."

5.  For chief warrant officer boards replace preceding two sentences with the following:  "10 USC §581 provides that regular chief warrant officers who are retirement eligible may be considered for selective early retirement by a selection board convened pursuant to 10 USC §573(c)."

6.  For CWO boards replace "Under 10 USC §638(e)(2)(B)" with "Under 10 USC §581."

7.  For URL O-6 boards replace preceding sentence with the following:  "Excellence in operational environments, during arduous, demanding deployments and selection for and performance in major command at sea and ashore are important measures of the qualities Navy requires."

8.  For URL O-6 boards replace preceding sentence with the following:  "As factors subordinate to the above criteria, when determining whom to retain, you should also give consideration to:
    (a) the potential impact on readiness, safety and the credibility of Navy's major command screening process of selecting officers screened for or serving in major command, and;
    (b) the resources expended by Navy in preparing officers for particular assignments, and the needs of Navy in managing billets with long training pipelines."

9.  For CWO boards only, delete preceding sentence.

4



**DEPARTMENT OF THE NAVY**
NAVY PERSONNEL COMMAND
5720 INTEGRITY DRIVE
MILLINGTON TN 38055-0000

5420
Pers-00ZCB
25 OCT 02

MEMORANDUM FOR DIRECTOR, OFFICER CAREER PROGRESSIONS DIVISION
(PERS-80)

Subj:   REQUEST FOR COMMENTS AND RECOMMENDATIONS IN CASE OF
        CDR GEORGE P. BYRUM, USN, RET, ███████████

Ref:    (a) 10 USC Section 1552

Encl:   (1) BCNR File 04911-02 w/Service record
        (2) NAVPERSCOM (PERS-06) memo 5420 of 10 OCT 02

1. Subject member petitioned the Board for Correction of Naval
Records (BCNR) in accordance with reference (a), to correct
errors and/or remove injustices in their service record.

2.  The Board requests your comments and recommendations in order
to reach a fair and equitable decision in this case.  You are
therefore requested to review enclosure (1); weighing the issues
presented therein with applicable navy policies, regulations, and
guidelines, formulate an advisory opinion, and return all
correspondence to this office.

3.  If during your review of enclosure (1) you determine an
administrative resolution, within the scope and authority of the
Chief of Naval Personnel (CNP) is both available and appropriate,
alleviating the necessity for further BCNR intervention, you
should prepare a brief but formal commentary advising this office
of your action(s).

4.  If a formal review by BCNR is required, your comments and
recommendations should be prepared in formal format, addressed to
the **Executive Director, Board for Correction of Naval Records** via
**Assistant for BCNR Matters, Pers-00ZCB**, and returned to me in the
Jamie Whitten Building (791), room A104.

5.  Your response is requested **NLT 25 NOV 02**.  Extensions may be
requested by contacting me at 874-3043.

H. K. TOPPING
Assistant for BCNR Matters
By direction



**DEPARTMENT OF THE NAVY**
NAVY PERSONNEL COMMAND
5720 INTEGRITY DRIVE
MILLINGTON TN 38055-0000

5420
PERS-80
06 DEC 2002

MEMORANDUM FOR EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
NAVAL RECORDS

Via:    Assistant for BCNR Matters (PERS-00ZCB)

Subj:   REQUEST FOR COMMENTS AND RECOMMENDATION IN CASE OF
        CDR GEORGE P. BYRUM, CHC, USN, ▓▓▓▓▓▓/4109

Ref: (a) 10 USC 638
     (b) 10 USC 638a
     (c) CNO FY-96 SER Plan Memo to SECNAV, dtd 3 Apr 02

Encl:   (1) BCNR File 04911-02

1.  Enclosure (1) is returned, recommending disapproval of CDR
Byrum's request for removal of his name from the FY-96 Commander
Chaplain Corps Selective Early Retirement Board (SERB) list and
consideration by the FY-99 Active Duty Captain Staff Selection
Board.   In accordance with references (a) thru (c), CDR Byrum
was properly considered by the FY-96 Commander SERB and selected
for early retirement.

C. E. JAMISON, JR.
Director, Active and Reserve
Officer Career Progression
Division



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:ks
Docket No:  -5264-02
27 December 2002

CDR GEORGE BYRUM USN
P O BOX 30309
WINSTON-SALEM NC  27130

Dear Commander Byrum:

This is in reference to your application for correction of your naval record.

Your case has been assigned to the Board's Performance Section.  All correspondence pertaining to your case should be sent to the attention of this section.

The Board has received an advisory opinion, a copy of which is enclosed.  The views set forth in this opinion are those of the office that submitted it, and are not binding on the Board or its reviewing authority.  If you wish to respond to the advisory opinion or submit documentary material in support of your application, it is requested that you do so within 30 days of the date of this letter.  Your response should be sent to the Board and not to the official who furnished the advisory opinion.

If you are unable to respond within the 30-day period, you may request an extension of time. In your request, please indicate when the Board may expect to receive your response.  If no response or request for an extension of time is received within the 30-day period, your case will be classified as being ready for review by the Board, and will be decided on the evidence of record as soon as the Board's crowded docket of cases permits.

As a general rule, the Board will not decide a case prior to the expiration of the 30-day period unless it has received the applicant's response to the advisory opinion.  However, an exception may be made if a case warrants expeditious action.  The most common example is when an applicant who is seeking removal of a fitness report is also scheduled to be considered for promotion within the 30-day period.  Under these circumstances, the Board

may, in its discretion, decide the case before the 30-day period expires and without waiting for the applicant's response to the advisory opinion. Should the case be denied, the Board will treat the applicant's response as a request for reconsideration.

Sincerely,

JONATHAN S. RUSKIN
Head, Performance Section

Enclosure
NPC memo dtd 10 Oct 02 w/enlcs
PERS-80 memo dtd 6 Dec 02

CDR George P. Byrum CHC, USN, Ret.
PO Box 30309
Winston-Salem, NC 27130
byrumjg@hotmail.com
336-785-4523        Fax 336-784-4759

6 Jan 03

To: Executive Director, Board for Correction for Naval Records

Subj: RESPONSE TO ADVISORY OPINIONS RE BCNR FILE 04911-02

Ref: (a) BCNR (Head, Performance Section) Fax of 27 Dec 02
     (b) Office of Legal Counsel (Pers-0612) input of 10 Oct 02
     (c) Director, Active and Reserve Officer Career Progression Division MEMO of 6
         Dec 02
     (d) Special Assistant for Minority Affairs (Pers-OOJ) MEMORANDUM for CNP
         ICO S.M. Aufderheide of 23 Dec 97

Encl: (1) Title 10, U. S. Code Sec. 611, 638, and 638a
      (2) FY 96 CHC CDR Lineal Listing
      (3) FY 96 SER Precept for Commanders, Chaplain Corps with enclosures
      (4) Officers in the Competitive Category (FY96, CHC, CDR, SER eligible)
      (5) CDR, CHC Lineal Listing of 2/13/94
      (6) Biographical and Service Record Sketches from Vol. 10 History CHC, USN
      (7) Judge Acknowledges factual Basis... (News Article of 14 Jan 02)

Facts

1. In response to reference (a) the following information is provided for the BCNR
   members. CDR Byrum is in agreement with most of the material facts provided
   in references (b) and (c). However, he does not agree with the opinions and
   recommendations.

2. References (b) and (c) are correct in recognizing the authority of enclosure (1) for
   conducting the SER board. As a statutory board the FY 96 Commander, SERB
   was required to follow the law. Under 638 of the code a commander who has
   failed for selection to captain two or more times is eligible to SER. Under
   638a(b)(A), the statute provides for enhanced authority for selective early
   retirement for the commander who has failed for selection to captain just one
   time. According to enclosure (2) many eligible officers more senior to CDR
   Byrum were not considered for SER. According to the lineal list there were 140
   officers senior to him. 43 were eligible under section 638(a) (1) (B) and/or 638a
   (b) (2) (A).

3. Enclosure (3) was supposed to implement enclosure (1). But the precept was not
   followed. According to enclosure (3) paragraph 4, The Secretary of the Navy
   indicated that records and names of all eligible officers for consideration were to

be assembled for the SER board. But according to enclosure (4) only 24 were considered. The Secretary of the Navy and those officers subordinate to him are required by law to follow the Secretary's own instructions. Neal v. Secretary of the Navy, 639 F.2d 1029, 1035 (3d Cir. 1981).

4. In addition to the 43 SER eligible officers referred to above, there were another 46 officers senior to CDR Byrum that qualified for SER consideration under section 638a (b)(2)(C) of the code. This can be verified by comparing enclosures (2), (5), and (6).

5. In enclosure (3), Supplemental Guidance, Paragraph 3 it states "...the Navy is dedicated to equality of treatment for all personnel with out regard to ...creed... Aggressive commitment to equal opportunity is critical." Yet none of the 21 eligible officers of the same denomination/creed/faith group as the Chief of Chaplains (LMS), Deputy Chief of Chaplains (ELCA), or Chaplain Corps Detailer (RC) had their records presented before the SERB. Some of the CDR Chaplains of these faith groups have chronic weight problems and substandard performance as documented in reference (d). Given that the Chief of Naval Operations places special emphasis on physical fitness as a major component of readiness, and that the Navy separates more that 1,300 enlisted personnel each year for failure to achieve body fat percentages, it is especially troubling that these chaplains' records were not considered by the SERB.

6. CDR Byrum was the most junior chaplain to be involuntarily retired as a result of the FY96 SERB action. However, according to the Consecutive Number order listing of enclosure (3), CDR Burt is the junior officer in zone. For SERB considerations there is no above zone or below zone categories, only in zone. Enclosures (2) and (5) state that CDR Byrum is junior by lineal number to CDR Burt. CDR Frederic Elkin and CDR Robert Milewski are junior to CDR Burt but senior to CDR Byrum. By comparing enclosures (2), (5), and (6) it can be verified that if the record of CDR Byrum was to be considered by the board then so should Chaplains Elkin and Milewski.

## Opinions

7. Our President, the Navy we love, and the American people are not well served when chaplains with documented inferior performance, weight problems, DUI and sexual misconduct convictions, are intentionally or accidentally excluded for consideration by the SER board when eligible. Although the Secretary of the Navy's Selection Board Precepts support the practice of "...giving due consideration to the needs of the Navy for officers with particular skills" neither the precepts nor Navy Regulations provide for these SER eligible officers to be excluded from consideration based on affiliation with a given faith or denomination. However, it appears that this is what happened. Excluding large numbers of selective early retirement eligible officers from consideration in FY96 was unfair to their junior CDR Byrum.

2

8. Recorded in enclosure (7) Judge Urbina indicates that it is beyond the scope and jurisdiction of the BCNR to address the system and structure that is responsible for causing the abuses inflicted. The counsel for the Navy claim that the BCNR provide relief for the chaplains individually who experienced injustice/unfairness. It would be interesting to know why and who authorized not complying with enclosures (1) and (3) which resulted in this unjust prejudice to CDR Byrum and his removal from active duty.

Recommendations

9. In consideration of the information provided, it is respectfully requested that CDR Byrum be granted relief petitioned on his DD Form 149 dated 25 May 02 by removing his name from the FY96 SERB list and allowing his record to be compared with those chaplains who were selected for captain by the FY99 promotion board.

*George P. Byrum*

3



**DEPARTMENT OF THE NAVY**
OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20350-1000

1 7 NOV 1995

From: Secretary of the Navy
To:   RADM Donald K. Muchow, CHC, USN, ███████████/4100

Subj: PRECEPT CONVENING A FY-96 SELECTION BOARD TO CONSIDER
      COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE EARLY
      RETIREMENT

Encl: (1) Board Membership
      (2) Supplemental Guidance

1.  The selection board, consisting of yourself as president
and the officers listed in enclosure (1), is ordered to
convene at the Navy Department, Washington, D.C., at 0900 on
29 November 1995 or as soon thereafter as may be
practicable.

2.  Each fiscal year a number of commanders retire from the
Navy as a result of approved voluntary retirements or
involuntary retirements based on length of service.
However, the Navy is currently faced with the need to
increase the number of retirements of commanders during this
fiscal year beyond the number of approved voluntary and
involuntary retirements, and thus this selective early
retirement board is being convened. The function of the
board is to recommend for selective early retirement regular
and reserve commanders on the active-duty list, in the
Chaplain Corps community whose early retirement, in the
opinion of the majority of the board, is in the best
interest of the Navy.

3.  10 USC §638 and §638a provide that regular or reserve
officers may be considered for early retirement by a
selection board convened pursuant to 10 USC §611(b).  Those
statutes permit consideration for selective early retirement
of commanders who are within two years of retirement
eligibility or eligible for retirement.

4.  ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████ by the Chief of Naval Personnel.  The
board will carefully consider the case of every officer
whose name is furnished to it.  Under 10 USC §638(e)(2)(B),
officers with approved voluntary retirements, or officers
with involuntary retirement dates in FY-96 or FY-97, may not
be considered.  No officer whose name is on a promotion list
may be considered for early retirement.

Subj: PRECEPT CONVENING THE FY-96 SELECTION BOARD TO
RECOMMEND COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE
EARLY RETIREMENT

5.  The major criterion for the Navy's success is its
ability to conduct prompt and sustained combat operations.
A balance of skills among the Navy's leaders is the key to
maintaining this ability.  Excellence in operational
environments and during arduous, demanding deployments is an
important measure of the qualities the Navy requires.
Officers may also have demonstrated leadership, skill,
integrity and resourcefulness in other difficult and
challenging joint and in-service assignments.  Just as you
must carefully consider positive outstanding performance,
you must carefully consider documented incidents of
misconduct, and substandard performance, which are included
in an officer's official service record, in determining
those officers who are best qualified for retention.  You
must ensure the officers retained possess the qualities to
excel in positions of responsibility and authority
appropriate to their grade.  You must consider each
officer's potential for future contributions in both
traditional and more specialized assignments and retain
those who have the highest potential for significant further
service.  For those eligible officers who are recommended
for retention and who have received disciplinary action or
whose privileged information record (Fiche 5) contains
matters relating to conduct or performance of duty, each
board member shall personally review the information
contained therein, prior to the final board decision.
Finally, when determining whom to retain, you should also
give consideration to the resources expended by the Navy in
preparing officers for particular assignments, and the needs
of the Navy in managing billets with long training
pipelines.



6.  The total number of officers that may be recommended
will be exactly the number set forth below.  This number may
not exceed 30 percent of the in-zone eligible officers as of
the date the board convened.  The board will recommend no
more than or less than the number provided below.

| GRADE | COMPETITIVE CATEGORY | NUMBER TO SELECT |
|-------|----------------------|------------------|
| COMMANDER | CHAPLAIN CORPS | |

7.  The board will consider only those official records
provided by the Chief of Naval Personnel as well as written
communications from eligible officers.  Requests for
additional information can only be approved by the Secretary

· 2

Subj: PRECEPT CONVENING THE FY-96 SELECTION BOARD TO
      RECOMMEND COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE
      EARLY RETIREMENT

of the Navy.  No board member, recorder, assistant recorder,
or person acting on their behalf may communicate with an
eligible officer, reporting senior, or other person to
solicit information, favorable or unfavorable, about an
eligible officer.  The Chief of Naval Personnel may
authorize communications as necessary to ensure the official
records are complete.

8.  The report of the board, prepared per paragraphs 9g and
10 of the supplemental guidance (enclosure (2)), will be
forwarded to the Secretary of the Navy via, first, the Chief
of Naval Personnel; second, the Chief of Naval Operations;
and finally, the Judge Advocate General of the Navy for
legal review.

9.  Enclosure (2) provides the oaths to be administered and
supplemental guidance.

                        JOHN H. DALTON
                        Secretary of the Navy

1.  Board Members:

RADM Timothy R. Beard, USN, ███████████/1310
CAPT Charles E. Bourke, Jr., CHC, USNR, ███████████/4105
CAPT Leroy Gilbert, CHC, USN, ████████/4100
CAPT Ivan B. Burnett, CHC, USN, ████████/4100

2.  CDR Eileen Ohickey, CHC, USN, will act as recorder.
LCDR Peter W. McGeory, CHC, USN will act as assistant
recorder.  The recorder or assistant recorder will be
present during all board deliberations.

3.  CAPT Judith A. Holden, USN; CDR Ann C. Stewart, USN;
LCDR Rufus S. Abernethy, USN; LT Kevin J. Couch, USN; LT
Christel E. Brown, USNR; LT Roger R. Garretson, USN; LT
Billy W. Castleberry, USN; LT Robert C. Moore, USN; ENS
Scott E. Armentrout, USN; ENS Anthony S. Kelly, USNR; ENS
Carl E. Smit, USN; CWO3 Billy J. Abrams, USN; CWO3 Stephen
A. Morton, USN; DPC Donald E. Reese, USN; DPC James L. Cole,
USN; YNC John M. Smith, USN; YN1 Derek C. Roberts, USN; YN1
Susan C. Ferretti, USNR; AT1 Philip T. Esposito, USN; AO1
Brian D. MacMillan, USNR; DP1 Angel T. Romero, USNR; DP2
Clifford P. Fetner, USN; and PN2 William R. Williams, USNR;
are designated to serve as projectionists and administrative
support personnel for this board.

Enclosure (1)

SUPPLEMENTAL GUIDANCE

1.  The following oath or affirmation will be administered to the recorder and assistant recorders by the president of the board:

> "You, and each of you, do solemnly swear (or affirm) you will keep a true record of the proceedings of this board, and you will not divulge the proceedings of this board except as authorized or required by the Secretary of the Navy or higher authority.  So help you God."

The following oath or affirmation will then be administered by the recorder to the members of the board:

> "You, and each of you, do solemnly swear (or affirm) you will perform your duties as a member of this board without prejudice or partiality, having in view both the special fitness of officers and the efficiency of the Naval service, and you will not divulge the proceedings of this board except as authorized or required by the Secretary of the Navy or higher authority.  So help you God."

The following oath or affirmation will then be administered by the recorder to the projectionists and other support personnel:

> "You, and each of you, do solemnly swear (or affirm) you will not divulge the proceedings of this board except as authorized or required by the Secretary of the Navy or higher authority.  So help you God."

2.  Due to historic statutory restrictions on the assignment of women in Navy, the records of female officers before the board may show a career pattern different from that of their male counterparts.  Such restrictions on duty assignments, which in the past have foreclosed to women opportunities for operational and command assignments available to men, cannot be allowed to prejudice the selection of women for retention.  Therefore, in determining a woman's qualification for retention, duty performed by a female officer, whose past assignability was constrained by law or policy, will be given weight equal to duty performed by a male officer not so constrained which is equally well performed. In making your determination of those female officers who are best suited for retention, emphasis will be placed on her actual performance in assignments rather than her pattern of assignments as compared to male officers.



3.  The Department of the Navy is dedicated to equality of treatment for all personnel without regard to race, creed, color, sex, or national origin.  Aggressive commitment to equal opportunity is critical.

Enclosure (2)

a.  Many minority officers have been assigned involuntarily outside the traditional career development patterns, i.e., recruiting, equal opportunity and specific billets requiring minorities.  These assignments, though beneficial to the interests of Navy, have resulted in those officers having career patterns different from officers who have been able to serve in their primary or warfare specialties.  In making your determination of those officers who are best suited for retention, you must view such assignments as having the same value as assignments within the primary or warfare specialty.

b.  The 1988 CNO Study Group Report on Equal Opportunity in Navy, which is available to you, noted that minority officers who, prior to entering Navy, had limited interaction with a predominately majority environment, may take a longer time to adjust and perform to the level of their contemporaries.  This may result in initially lower fitness reports at the junior officer level (through 0-3) and a higher percentage of "late bloomers" than their majority counterparts.  You must consider this when evaluating a minority officer.

c.  In evaluating the records of eligible officers, you should be aware that past discrimination may have operated to the disadvantage of minority officers.  Such discrimination may have manifested itself in comparatively lower fitness reports.  Equivalent performance by a minority officer and a non-minority officer may not have resulted in equivalent fitness reports.  You must consider this when evaluating minority officers.

4.  Our ability to operate effectively with the other Services is vital to our warfighting capability.  To foster this ability, a number of officers are assigned to joint military training and education and to duties with other Services and to joint staffs. Board members will give appropriate consideration to the performance of officers who are serving or have served in such assignments.

a.  To meet statutory requirements, as well as to ensure our ability to conduct joint operations, Navy is firmly committed to placing as many officers as possible in joint duty assignments. These assignments, critical for the future success of Navy, may have resulted in a career pattern different from officers who have served exclusively in their primary or warfare specialty. In making your determination of those officers who are best suited for retention, you must view joint duty assignments as having the same value as assignments within the primary or warfare specialty.

b.  Navy's ability to meet future joint operations requirements depends, in part, on senior officers who have served or are serving in joint duty assignments.  Experience in a joint duty billet is a factor for you to consider in determining which officers are best qualified for retention.

5.  A Selective Early Retirement Board is prohibited from considering the marital status of a member or the employment, education, or volunteer service of a spouse.

6.  Many officers have special or advanced education (i.e., foreign language training, PhD., Masters degrees, etc.) and subspecialties of substantial value to Navy.  In determining an officer's fitness for retention, selection boards shall give weight to duty in subspecialty billets, equal to that given to other duty, equally well performed.  Proven expertise in training, education, recruiting, politico-military affairs and other subspecialties is a vital ingredient of the Navy's officer corps.

7.  The official military personnel records provided to the board may include medical documents relevant to an officer's physical qualifications.  If the board desires clarification of any such document, then the board president should reduce the board's questions to writing and forward them to me.  I will provide such clarification as may be appropriate.

8.  The senior member of the board has been appointed as president and will perform prescribed administrative duties.  The board president has no authority to constrain the board from recommending those officers whose retirements are determined to be in the best interest of Navy as specified by the Secretary. The board president will ensure that paragraph 9 of this enclosure is read to each board member, recorder and administrative support person on the convening date of the board or on the date of assignment to the board, whichever is later.

9.  The following instructions concerning communications and information apply to board proceedings:

    a.  Each of you (president, members, recorders, and administrative support personnel) is responsible to maintain the integrity and independence of this selection board, and to foster careful consideration, without prejudice or partiality, of all eligible officers.

    b.  You must pay particularly close attention to the rules governing communications with and among other board members, the information authorized to be furnished to you, and the procedures you should follow if you believe that the integrity of this selection board has been improperly affected.

    c.  You are to base your recommendations on the material in each officer's military record, any information I have provided to the board, and any information communicated to you by individual eligible officers under regulations I have issued.  In your deliberations, you may discuss your own personal knowledge and evaluation of the professional qualifications of eligible officers to the extent that such matters are not precluded by law or Service regulation from consideration by a selection board or

inclusion in an officer's military personnel record.  You may not discuss or disclose the opinion of any person not a member of the board concerning an officer being considered unless that opinion is contained in material provided to the board.

d.  I am the only person who may appear in person to address you on any matter.  All communications with this board, other than those that are clearly administrative, must be in writing, given to each of you and made part of the board's record.  I have designated in writing those persons authorized to provide routine administrative information to you.

e.  Before the report of the selection board is signed, the recommendations may be disclosed only to members of the board, recorders and those administrative support personnel I have designated in writing.  After you sign the board report, only the recommendations of the board may be disclosed.  Except as authorized by law or regulation the proceedings of the board may not be disclosed to any person not a board member or board recorder.

f.  If at any time you believe that you cannot in good conscience perform your duties as a member of this board without prejudice or partiality, you have a duty to request relief by me from this duty.  I will honor any such request.  If, as a board member or recorder, you believe the integrity of the board's proceedings has been affected by improper influence of military or civilian authority, misconduct by the board president or a member, or any other reason, or believe someone is exerting or attempting to exert inappropriate influence over the board or its proceedings, you have a duty to request from me or the Secretary of Defense relief from your obligation not to disclose board proceedings and, upon receiving it, to report the basis for your belief.

g.  Upon the completion of board's deliberations, you will, as a minimum, certify in your report to me that:

(1) To the best of your knowledge, the board complied with all instructions contained in the precept, and, as appropriate, other letters of guidance or instruction provided by me.

(2) That you were not subject to or aware of any censure, reprimand, or admonishment about the recommendations of the board or the exercise of any lawful function within the authorized discretion of the board;

(3) That you were not subject to or aware of any attempt to coerce or influence improperly any action in the formulation of the board's recommendations;

(4) That you were not party to or aware of any attempt at unauthorized communications;

(5) That, to the best of your knowledge, the board carefully considered the records of each officer whose name was furnished to the board; and

(6) That selections of the officers recommended for retirement from among those officers considered are, in the opinion of the majority of the members of the board, in the best interest of Navy.

10.   The written report of the board will be signed by the board president, the board members and board recorders, and will contain a list of the names of the officers it recommends for retirement, with the certification described in paragraph 9g.

11.   The record of the board's proceedings will be compiled by the recorders and administrative support staff and will contain at a minimum:

    a.   Convening notice.

    b.   A list of all officers considered for early retirement.

    c.   A list of all officers recommended for early retirement.

    d.   Precept.

****** FOR OFFICIAL USE ONLY - PRIVACY ACT PROTECTED ******

MEMORANDUM TO FILE

Docket No. 04911-02

Examiner: HD    Branch/Status  CHC  2R-USNR  RETIRED

Subj: CDR    Byrum, George P. ,

Personal appearance requested: YES          Reconsideration:

Action Requested:  22          Request his name be removed from the FY96 Commander
                               Chaplain Corps SERB list which resulted in his
  implied? Set  38    50       release from active duty. He further requested that
  aside retirement on 1Aug96   his record be considered with those who were selected
                               by the FY-99 Active Duty Captain Staff Selection
In addition to Petitioner's application (DD-149) with any attachments and any related correspondence,
the Board considered the following records:  Board

[✓] Enlisted/Officer Service Record

[ ] Examiner's Case Summary

[ ] NDRB File                    [ ] Record of Court-Martial

[ ] Medical Record               [ ] VA Records      [ ] PEB Record

[✓] Advisory Opinion             PERS-0612 ltr dtd 10 Oct 02 w/encls
                                 PERS-80 memo dtd 6 Dec 02
[✓] Other: _____

                        Pt's ltr dtd 6 Jan 03 w/encls
Messrs. MC BRIDE, NEUSCHAFER + PFEIFFER

No. _____          EXECUTIVE SESSION

voted on 30 JAN 03 to:                    [ ] Grant relief

                                          [ ] Partial relief
[ ] Grant personal appearance
                                          [x] Deny

[ ] Minority Vote: Mr/Ms _____ voted To _____

Comments: _____

_____

_____

[ ] That Petitioner's naval record be corrected to show that on ----/--/-- /or _____.

Petitioner was issued a honorable/general discharge by reason of misconduct/or _____
vice the discharge actually issued on that date.

00112



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:hd
Docket No:  04911-02
1 February 2003

CDR GEORGE P BYRUM CHC USN RET
PO BOX 30309
WINSTON SALEM  NC  27130

Dear Commander Byrum:

This is in reference to your application for correction of your naval record pursuant to the provisions of title 10 of the United States Code, section 1552.

A three-member panel of the Board for Correction of Naval Records, sitting in executive session, considered your application on 30 January 2003. Your allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of this Board. Documentary material considered by the Board consisted of your application, together with all material submitted in support thereof, your naval record and applicable statutes, regulations and policies. In addition, the Board considered the advisory opinions furnished by the Navy Personnel Command dated 10 October and 6 December 2002, copies of which are attached. The Board also considered your letter dated 6 January 2003 with enclosures.

After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice. In this connection, the Board substantially concurred with the comments contained in the advisory opinions. They noted your contention that the Fiscal Year 96 Selective Early Retirement Board did not consider all eligible Chaplain Corps commanders. However, they were unable to find that any of those not considered were, in fact, eligible in all respects for consideration. In this regard, they noted that eligibility is not based on lineal position alone. In view of the above, your application has been denied. The names and votes of the members of the panel will be furnished upon request.

It is regretted that the circumstances of your case are such that favorable action cannot be taken. You are entitled to have the Board reconsider its decision upon submission of new and material evidence or other matter not previously considered by the Board. In this regard, it is important to keep in mind that a presumption of regularity attaches to all official records.

(336) 785-4523

00113

Consequently, when applying for a correction of an official naval record, the burden is on the applicant to demonstrate the existence of probable material error or injustice.

Sincerely,


W. DEAN PFEIFFER
Executive Director

Enclosures

CDR George P. Byrum CHC, USN, Ret.
PO Box 30309
Winston-Salem, NC 27130
byrumjg@hotmail.com
336-785-4523        Fax  336-784-4759

13 Feb 03

Executive Director
Board for Correction for Naval Records
2 Navy Annex
Washington, DC 20370-5100

Dear Mr. Pfeiffer:

Thank you for your letter dated 1 Feb 03 received this week.  I do appreciate you letting me know that the Board would reconsider its decision upon my submission of new and material evidence.

I was fearful when I submitted my DD149 package on 28 May 02 that I might not provide all of the exact information the Board would need to make a favorable ruling on my case.  This is why I checked the "YES" in block # 6 indicating my desire to appear in person before the Board in Washington, DC.

If the material evidence provided with this letter is not sufficient for the Board to rule favorably, please let me know what specific evidence they need.  Or, better yet, please permit me to bring before the Board in person all the materials I've received in response to my FOIA request from the Navy Personnel Command, Chaplain Resource Board and my internet research.  In this way the specific concerns and all the questions of each and every Board member could be addressed, thus insuring a favorable unanimous ruling.

You indicated the Board noted that eligibility for SERB consideration was not based on lineal position alone.  This is true.  And that is why I stated in my correspondence to you on 6 Jan 03 that not all of the 140 Commanders senior to me on the lineal list were eligible under the Code and Precept.

You also stated that the Board was, "unable to find that any of those not considered were, in fact eligible in all respects for consideration."  I realize now I didn't provide all the information needed.  Of course the Board could see from the FY 96 CHC CDR Lineal Listing and pages from the Biographical and Service Record Sketches from Vol. 10 History CHC, USN the chaplains who had:  1) two or more failures to select to Captain, 2) those who had failed once to select for Captain, and  3) those who had 20 years of active service, or after two additional years or less of active service would be eligible for retirement.  However, the Board members were unable to note those Commanders who were eligible because their names were: 1) not on a promotion list for Captain, or 2) on a list of those officers who had submitted a request to voluntarily retire in FY96.  Therefore I am providing copies of: 1) the Oct 97 Alpha List of Commander Chaplains from a

BUPERS Publications/Directives computer disk, 2) a news article regarding CDR Milewski, the article indicates that as late as 2002 he was still on active duty. From the copies of the lineal lists I submitted to BCNR it can be noted the he was immediately senior to me. 3) the March 1996 Alpha List of Chaplains containing names of the eligible Commanders not considered with their projected rotation dates.

This week during a televised news conference, Secretary of Defense, Donald Rumsfeld stated, "justice is based on the truth." He was speaking in connection with weapons inspections in Iraq and possible upcoming military action. But his comment can also be applied in these circumstances. From the time I learned of the SERB action in Jan 96 until Apr 02, I presumed that Title 10 and the Precept were followed. But early in 2002 a chaplain friend on active duty suggested I look very closely into the circumstances under which I was involuntarily retired. Not only were no Roman Catholic (RC) Chaplains selected for SER, but no record of a RC chaplain was considered by the FY96 SERB. This may be confirmed by comparing the list of 24 Commanders that were considered and the denominational codes on the lineal lists and in the Bios. Chaplains John Carter, Stuart Wilson, James Fahey, Michael Walsh, Leo Guarnieri, and Michael Diaz had failed to select one or more times for Captain. They were eligible for SER consideration under Title 10 section 638(a) (1) (B) and/or 638a (b) (2) (A). Chaplains Elkin, and Milewski were eligible under section 638a (b)(2)(C) of the code. None of these Commanders voluntarily retired in FY 96 or FY97 as may be noted in the enclosures. Under the Code they were all fully eligible for consideration by the SERB.

Although the Secretary of the Navy's Selection Board Precepts support the practice of "...giving due consideration to the needs of the Navy for officers with particular skills" neither the precepts nor Navy SER eligible Regulations provide for these SER eligible officers to be excluded from consideration based on affiliation with a given faith or denomination. Excluding the SER eligible chaplains named above from consideration in FY96 was done in violation of the code and board precept. One of our beloved Presidents would say, "trust but verify." My last enclosure regarding another Commander illustrates the need to do this and that some individuals in our Navy family (even chaplains) evidence a lack of understanding of basic principles of fairness and professional ethics.

In closing, I respectfully again request that if the information enclosed is insufficient for the Board to make a favorable ruling on docket No: 04911-02, then please let me know what specific information is needed and allow me to bring it personally and all the other possibly pertinent material evidence I currently posses before the Board.

Sincerely,

GEORGE P. BYRUM

Enclosures

hd

**REFERENDUM**

p-recoN

MAR 4 2003

Byrum, George P.

*01519-03*

Subject's Name:

| Byrum | George | P. | |
|-------|--------|-----|--------|
| Last | First | MI | Suffix |

☒ REQUEST FOR RECONSIDERATION

10 2003

☑ Approved: _A. Dmnn_ _3/5/03_
concur Jarishin 5 MAR 03

☐ Disapproved: _____

_____  _____
Signature        Date

☐ ADMINISTRATIVE RE-OPEN

☐ Approved: _____  _____
Signature        Date

COMMENTS: PERS-80: PLEASE COMMENT ON CDR BYRUM'S ASSERTION THAT OFFICERS WHO WERE FULLY ELIGIBLE TO BE CONSIDERED BY THE FY96 SERB WERE NOT CONSIDERED. FOR EACH INDIVIDUAL HE NAMES AS HAVING BEEN ELIGIBLE, BUT NOT CONSIDERED, PLEASE STATE WHETHER THAT PERSON WAS IN FACT, ELIGIBLE; AND IF THAT PERSON WAS INELIGIBLE, THE REASON(S) FOR INELIGIBILITY.

NOTE: Please deliver to
OIS Section with "closed"      NEW Docket No.
BCNR file

(OIS/11 1Jul86)                    00165



**DEPARTMENT OF THE NAVY**
NAVY PERSONNEL COMMAND
5720 INTEGRITY DRIVE
MILLINGTON TN 38055-0000

5420
Pers-00ZCB
17 APR 03

MEMORANDUM FOR DIRECTOR, OFFICER CAREER PROGRESSIONS DIVISION
(PERS-80)

Subj:   REQUEST FOR COMMENTS AND RECOMMENDATIONS IN CASE OF
        CDR GEORGE P. BYRUM, USN, RET, ████████████

Ref:    (a) 10 USC Section 1552

Encl:   (1) BCNR File 01519-03 w/Service record

1. Subject member petitioned the Board for Correction of Naval
Records (BCNR) in accordance with reference (a), to correct
errors and/or remove injustices in their service record.

2.  The Board requests your comments and recommendations in order
to reach a fair and equitable decision in this case.  You are
therefore requested to review enclosure (1); weighing the issues
presented therein with applicable navy policies, regulations, and
guidelines, formulate an advisory opinion, and return all
correspondence to this office.

3.  If during your review of enclosure (1) you determine an
administrative resolution, within the scope and authority of the
Chief of Naval Personnel (CNP) is both available and appropriate,
alleviating the necessity for further BCNR intervention, you
should prepare a brief but formal commentary advising this office
of your action(s).

4.  If a formal review by BCNR is required, your comments and
recommendations should be prepared in formal format, addressed to
the **Executive Director, Board for Correction of Naval Records** via
**Assistant for BCNR Matters, Pers-00ZCB,** and returned to me in the
Jamie Whitten Building (791), room A104.

5.  Your response is requested **NLT 16 MAY 03**.  Extensions may be
requested by contacting me at 874-3043.

H. K. TOPPING
Assistant for BCNR Matters
By direction



**DEPARTMENT OF THE NAVY**
NAVY PERSONNEL COMMAND
5720 INTEGRITY DRIVE
MILLINGTON TN 38055-0000

5420
Pers-00ZCB
14 MAY 03

MEMORANDUM FOR HEAD, OFFICER RETIREMENTS BRANCH (PERS-811)

Subj:   REQUEST FOR COMMENTS AND RECOMMENDATIONS IN CASE OF
        CDR GEORGE P. BYRUM, USN, RET, ████████████

Ref:    (a) 10 USC Section 1552

Encl:   (1) BCNR File 01519-03 w/Service record

1. Subject member petitioned the Board for Correction of Naval
Records (BCNR) in accordance with reference (a), to correct
errors and/or remove injustices in their service record.

2. The Board requests your comments and recommendations in order
to reach a fair and equitable decision in this case. You are
therefore requested to review enclosure (1); weighing the issues
presented therein with applicable navy policies, regulations, and
guidelines, formulate an advisory opinion, and return all
correspondence to this office.

3. If during your review of enclosure (1) you determine an
administrative resolution, within the scope and authority of the
Chief of Naval Personnel (CNP) is both available and appropriate,
alleviating the necessity for further BCNR intervention, you
should prepare a brief but formal commentary advising this office
of your action(s).

4. If a formal review by BCNR is required, your comments and
recommendations should be prepared in formal format, addressed to
the **Executive Director, Board for Correction of Naval Records** via
**Assistant for BCNR Matters, Pers-00ZCB**, and returned to me in the
Jamie Whitten Building (791), room A104.

5. Your response is requested **NLT 13 JUN 03**. Extensions may be
requested by contacting me at 874-3043.

H. K. TOPPING
Assistant for BCNR Matters
By direction



**~EPARTMENT OF THE NAVY**
BUREAU OF NAVAL PERSONNEL
5720 INTEGRITY DRIVE
MILLINGTON TN 38055-0000

5420
PERS-822
12 Jun 03

MEMORANDUM FOR EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
           NAVAL RECORDS

Via:    Assistant for BCNR Matters, PERS-00ZCB

Subj:  COMMENTS AND RECOMMENDATION ICO CDR GEORGE P. BYRUM,
      CHC, USN, RET, ███████████

Ref:   (a) NPC memo 5420 PERS-00ZCB of 17 Apr 03

Encl:  (1) BCNR file

1.  Reference (a) requests comments and recommendations in
subject officer's case. Specifically, Petitioner requests for
removal of his name from the FY-96 Commander Chaplain Corps
Selective Early Retirement Board (SERB) list and consideration
by the FY-99 Active Duty Captain Staff Selection Board.

2.  Information requested by member does not exist at PERS-82.
We recommend the case be forwarded to the Office of Judge
Advocate General for comments and recommendations.

3.  Enclosure (1) is returned.

*D. L. Rogers*

D. L. ROGERS
Asst Branch Head,
Officer Retirements



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:kes
Docket No. 01519-03
2 July 2003

From:   Chairman, Board for Correction of Naval Records
To:     OJAG (ADMIN LAW) CODE-13

Subj:   REQUEST FOR COMMENT AND RECOMMENDATION IN THE CASE OF
        CDR GEORGE P. BYROM, CHC, UCN, RET,

Ref:    (a) 10 U.S.C. 1552

Encl:   (1) BCNR File

1.  Pursuant to reference (a), subject requests a correction of
his naval record as indicated in enclosure (1).

2.  In order to assist the Board in arriving at a fair and
equitable decision in this case, it is requested that your
comments and recommendation be furnished.

3.  It is further requested that the enclosure be returned with
your reply.

*Jonathan S. Ruskin*

JONATHAN S. RUSKIN
By direction



00172



**DEPARTMENT OF THE NAVY**
OFFICE OF THE JUDGE ADVOCATE GENERAL
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON NAVY YARD DC 20374–5066

IN REPLY REFER TO

1070
Ser 13/1BC12029.03
22 Oct 03

From:  Deputy Assistant Judge Advocate General (Administrative Law)
To:    Chairman, Board for Correction of Naval Records

Subj:  REQUEST FOR COMMENTS AND RECOMMENDATION ICO CDR GEORGE P. BYRUM, CHC, USN (RET)

Ref:   (a) Your ltr HD:kes Docket No 01519-03 of 2 Jul 03
       (b) PHONCON OJAG (Code 13) LT McCracken/OJAG (Code 14) LCDR Roper of 14 Aug 03

Encl:  (1) Legal Analysis

1. This responds to your reference (a) request for our comments and recommendation in the case of Commander George P. Byrum, Chaplain Corps, U.S. Navy (Retired), Petitioner.

2. **Issues**

   a. Whether Petitioner's selection by FY96 Selective Early Retirement Board (SERB) was wrongful because chaplains senior to him on the lineal list were allegedly excluded from consideration.

   b. Whether some chaplains, including some with chronic weight problems and substandard performance issues, were excluded from consideration for selective early retirement (SER) based on their faith group/denomination.

   c. Whether Petitioner should be granted an FY99 USN Special Selection Board (SSB) for promotion to captain, the year he would have been in-zone for consideration had he not been selected for SER.

3. **Short answers**

   a. No. Because 10 U.S.C. §§ 638 and 638a, taken together with ALNAV 050/95, based eligibility for the FY96 SERB on years of service rather than lineal number. Petitioner, with six years of active service prior to joining the Chaplain Corps, attained the necessary minimum of 19 years of service before several officers senior to him on the lineal list.

OCT 31 2003

Subj:   REQUEST FOR COMMENTS AND RECOMMENDATION ICO CDR GEORGE P.
        BYRUM, CHC, USN (RET)

     b.   No.  Because eligibility criteria was based solely on
years of service and non-selection for captain, all eligible
officers were considered by the SERB regardless of their faith
group/denomination.

     c.   No.  Because Petitioner was properly selected for early
retirement in FY96, he is not eligible for an FY99 SSB.

4.   Discussion.  Petitioner raises the issues identified above
in his petition to BCNR.  CDR Byrum is seeking to become a named
plaintiff in Adair v. England, 183 F. Supp. 2d 31 (D.D.C. 2002),
and his issues are similar to those raised in Wilkins v. United
States of America, 279 F.3d 782 (9th Cir. 2002).  Reference (b)
advises that if BCNR action follows our advisory opinion, CDR
Byrum's BCNR petition should not affect, or be affected by,
either case.  Enclosure (1) provides a detailed legal analysis
of the issues listed above.

5.   Point of contact.  My point of contact for this matter is
LT Tamara McCracken, JAGC, USN, at (703) 604-8213, or E-Mail
Tamara.McCracken@navy.mil.

                         ERIC E. GEISER

00174

## Legal Analysis

1. __Issues__

   a.  Whether Petitioner's selection by FY96 Selective Early Retirement Board (SERB) was wrongful because chaplains senior to him on the lineal list were allegedly excluded from consideration.

   b.  Whether some chaplains, including some with chronic weight problems and substandard performance issues, were excluded from consideration for selective early retirement (SER) based on their faith group/denomination.

   c.  Whether Petitioner should be granted an FY99 USN special selection board (SSB) for promotion to captain, the year he would have been in-zone for consideration had he not been selected for SER.

2. __Short answers__

   a.  No.  Because 10 U.S.C. §§ 638 and 638a, taken together with ALNAV 050/95, based eligibility for the FY96 SERB on years of service rather than lineal number.  Petitioner, with six years of active service prior to joining the Chaplain Corps, attained the necessary minimum of 19 years of service before several officers senior to him on the lineal list.

   b.  No.  Because eligibility criteria was based solely on years of service and non-selection for captain, all eligible officers were considered by the SERB regardless of their faith group/denomination.  This includes the eight chaplains specifically named by Petitioner.

   c.  No.  Because Petitioner was properly selected for early retirement in FY96, he is not eligible for an FY99 SSB.

3. __Background__.  Petitioner became a chaplain in the Navy in Aug 81 with 6 years of prior active service.  He was selected for involuntary early retirement as a commander in FY96, which he did not desire.  He is seeking to join the lawsuit of Adair v. England, 183 F. Supp. 2d 31 (D.D.C. 2002), protesting alleged faith group/denominational discrimination in the Navy.  On 25 May 02, he applied to BCNR for correction of his military record, alleging that the board did not consider several eligible commanders senior to him on the lineal list and that some faith groups/denominations were spared consideration before the SERB.  Ultimately, he argues that these exclusions make his

own eligibility before the FY96 SERB wrongful.  He does not
address the fact that he met eligibility criteria.

4.  Discussion.  Petitioner claims that because the Chief of
Naval Personnel did not follow the regulations of the Secretary
of the Navy (SECNAV) in compiling a list of all Chaplain Corps
officers eligible for consideration under 10 U.S.C. §§ 638 and
638a, the list of eligible members for SER was fatally flawed.[1]
Therefore, he requests that he be restored to active duty and
requests an SSB for FY99, the first year he would have been in-
zone for consideration for promotion to captain.

    a.  Exclusion of chaplains senior to Petitioner from
consideration by the SERB

        (1) Statutory authority for eligibility before the FY96
SERB.  Sections 638 and 638a of title 10 U.S. Code, set the
eligibility criteria for consideration by a SERB.  These statutes
outline that officers may be considered for SER if eligible for
retirement in two years or less or if they have been passed over
for captain; and, if they are not on a list of officers
recommended for promotion or eligible to be retired under any
other provision of law.  However, 10 U.S.C. § 638a(c)(3) goes on
to state that:

        [t]he Secretary of the military department concerned
        may submit to a selection board. . .the names of all
        eligible officers described in that subsection in a
        particular grade and competitive category who are also
        in particular year groups, specialties, or retirement
        categories, or any combination thereof, within that
        competitive category.

        (2) Regulatory authority for eligibility before the FY96
SERB.  SECNAV did limit eligibility before the FY96 SERB in his
Notice of Convening the FY96 Officer SERB.  The only officers
that SECNAV authorized the FY96 SERB to consider were commanders
"who have completed one year time-in-grade and nineteen years of
active service as of 1 Jul 95, and who are senior to the junior
officer named [in his message]."  This accounts for the

---

[1] Further, he notes that no chaplains senior to him belonging to the faith groups of the
Chief of Chaplains (Lutheran Missouri Synod (LMS)), Deputy Chief of Chaplains
(Evangelical Lutheran Church of America (ELCA)), and the Chaplain Corps Detailer (Roman
Catholic (RC)), were considered for SER.

exclusion of all eight officers specifically named by Plaintiff.[2]

(3) Eligible officers for FY96 SERB based on all applicable guidance. Petitioner overlooked the restrictions set by SECNAV and looked at all officers with 18 years of service who had not selected for captain. This accounts for the majority of names Petitioner believe were inappropriately excluded from consideration before the FY96 SERB. Of the 146 names senior to Petitioner on the lineal list, 110 had fewer than 19 years of service.[3] An additional eight officers were already statutorily required to retire,[4] and six officers were selected for captain in FY96. Finally, despite his claim, Petitioner was not the most junior officer on the lineal list selected for SER. It appears that he confused a chaplain senior to him on the list with one considerably lower on the lineal list.[5]

b. Exclusion of certain faith groups/denominations from consideration for SER.

1. Eligibility based on faith group/denomination. Petitioner alleges that chaplains senior to him on the lineal list and belonging to the faith groups of the Chief of Chaplains (LMS), Deputy Chief of Chaplains (ELCA) and the Chaplain Corps Detailer (RC) were wrongfully excluded from consideration for SER. He is incorrect. Of the 48 chaplains in these faith groups senior to him on the lineal list, 47 did not meet eligibility requirements. One ELCA chaplain was considered, but was not selected for SER. The other 47 chaplains in these faith groups were properly excluded.[6]

---

[2] SECNAV WASHINGTON DC 252037Z AUG 95 (ALNAV 050/95), enclosed. The 8 chaplains named by Petitioner were CDRs John Carter, Stuart Wilson, James Fahley, Michael Walsh, Leo Guanieri, Michael Diaz, Frederic Elkin, and Robert Milewski.

[3] Per PHONCON OJAG (Code 13) LT McCracken/BUPERS (PERS-8E) LT Johnson of 20 Aug. 03 and PHONCON OJAG (Code 13) LT McCracken/BUPERS (PERS-2) Mrs. Burto of 18 Aug 03, it appears that the lineal lists used by Petitioner were drawn from a community guide and cannot be certified as an official list. BUPERS only has electronic media from FY98 forward. The lineal list contained within Petitioner's request is the best list available.

[4] These retirements were the result of chaplains reaching the maximum 28 years of service, or the maximum 62 years of age for service.

[5] Notes submitted by Petitioner to BCNR indicate that he confused James F. Moran, Roman Catholic, with James P. Morgan, Episcopal Church.

[6] Of the 37 RC chaplains, 2 were statutorily retired, 2 voluntarily retired, 32 had fewer than 19 years of service, and 1 selected for SER in FY95. Of the 6 LMS chaplains, 1 voluntarily retired and 5 had fewer than 19 years of service. Of the 5 ELCA chaplains, 4

(2) Selection for SER based on weight problems or substandard performance. Petitioner alleges that several chaplains of the RC, LMS, or ELCA faith groups/denominations deserved selection for SER due to "chronic weight problems and substandard performance."[7] The only chaplain eligible for consideration from these faith groups/denominations was, in fact, selected for SER.

c. Petitioner's request for an FY99 USN Captain Special Selection Board. As stated above, all eligible officers were considered and, therefore, his request should be denied.[8] Note, however, that the issues raised by Petitioner are under review by the courts.[9]

5. Conclusion. All eligible officers were considered by the FY96 SERB, including Petitioner. There is no evidence of discrimination based on faith group/denomination before the SERB. Because his retirement was not improper, he is not eligible for an FY99 SSB for consideration for promotion to Captain. Petitioner's request for BCNR redress should be denied.

---

had fewer than 19 years of service and 1, as stated above, was eligible for SER.

[7] CDR Byrum ltr of 6 Jan 03.

[8] SECNAVINST 1401.1B, allows consideration by a special selection board if an officer was eligible for a regularly scheduled board but not considered, or if an officer was considered but not selected by a regularly scheduled board and SECNAV determines the action of the board was contrary to law, involved material error of fact, administrative error, or resulted from the board not having before it material information for consideration. However, there was no administrative error in this case.

[9] Wilkins v. United States of America, 279 F.3d 782 (9th Cir. 2002)(examining whether the Navy FY95 SERB improperly reflects a systematic denominational preference, and whether the SERB gave unconstitutional preference to minorities and women); Adair v. England, 183 F. Supp.2d 31 (D.D.C., 2002)(examining systemic, unconstitutional denominational discrimination, including matters related to retention of Chaplain Corps officers in the Navy); Christian v. United States, No. 02-5165, 2003 U.S. App. LEXIS 15045 (Fed. Cir. 2003)(examining if impermissible instructions given to an Army SERB regarding minority and women officers violated equal protection under the Fifth Amendment).

00178



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:kes
Docket No. 01519-03
3 November 2003

CDR GEORGE P BYRUM USN
PO BOX 30309
WINSTON SALEM NC   27130

Dear Commander Byrum:

This is in reference to your application for correction of your
naval record.

Your case has been assigned to the Board's Performance Section.
All correspondence pertaining to your case should be sent to the
attention of this section.

The Board has received an advisory opinion, a copy of which is
enclosed. The views set forth in this opinion are those of the
office that submitted it, and are not binding on the Board or
its reviewing authority. If you wish to respond to the advisory
opinion or submit documentary material in support of your
application, it is requested that you do so within 30 days of
the date of this letter. Your response should be sent to the
Board and not to the official who furnished the advisory
opinion.

If you are unable to respond within the 30-day period, you may
request an extension of time. In your request, please indicate
when the Board may expect to receive your response. If no
response or request for an extension of time is received within
the 30-day period, your case will be classified as being ready
for review by the Board, and will be decided on the evidence of
record as soon as the Board's crowded docket of cases permits.

As a general rule, the Board will not decide a case prior to the
expiration of the 30-day period unless it has received the
applicant's response to the advisory opinion. However, an
exception may be made if a case warrants expeditious action.

The most common example is when an applicant who is seeking removal of a fitness report is also scheduled to be considered for promotion within the 30-day period. Under these circumstances, the Board may, in its discretion, decide the case before the 30-day period expires and without waiting for the applicant's response to the advisory opinion. Should the case be denied, the Board will treat the applicant's response as a request for reconsideration.

Sincerely,

JONATHAN S. RUSKIN
Head, Performance Section

Enclosure
OJAG memo w/encls dtd 22 Oct 2003

December 8, 2003

From:  CDR George P. Byrum, CHC, USN (Ret.)
To:    Head, Performance Section, Board for Correction of Naval Records

Subj:  Submission of Amendment to My Petition, Docket No. 01519-03

Ref:   (a) Your letter HD:kes of 3 November 2003
       (b) Phone conversations between Case Manager and Petitioner on 12 November
       2003 and 2 December 2003

Encl:  (1) Amendment to Block 17, my DD FORM 149 dtd 20020528

1. Reference (a) was received on 12 November. As discussed in reference (b), I am
submitting this amendment.

2. Please make the following emendations to my petition:

Block 7. COUNSEL.
a.  NAME.          Arthur A. Schulcz, Esq.
b.  ADDRESS.       2521 Drexel Street, Vienna, VA 22180.

Block 11. ALLEGED ERROR OR INJUSTICE.
a.  DATE OF DISCOVERY.  20030601 – 20031130.
b.  WHY THE BOARD SHOULD CONSIDER THIS APPLICATION. During the past
seven months I have had opportunity to consult with legal counsel and with active and
retired military officers familiar with matters pertinent to my case. My original petition
concerned only whether all eligible candidates were considered by my SERB. Advisory
opinions indicated that I had used some incorrect criteria for SERB eligibility. I concur,
and I apologize for any inconvenience that resulted. In reviewing my SERB, I discovered
some illegal Chaplain Corps personnel practices which had generated an excess of active-
duty chaplain commanders and unnecessarily caused my SERB. I also learned of several
problems with the SERB itself which were unfair to me. These practices and problems
are the bases for amending my petition. Although there are associated constitutional
issues presently being litigated in federal court, I understand that BCNR is not the proper
venue for these matters. I have limited my petition accordingly.

Block 17. REMARKS. Please see the enclosure.

3. Thank you for your assistance.

G. P. BYRUM

DEC 19 2004

## OUTLINE OF AMENDMENT

I.  INTRODUCTION

II.  ILLEGAL PERSONNEL PRACTICES WERE UNFAIR TO THE PETITIONER
A.  Career grade active-duty Reserve chaplain commanders were illegal.
B.  Retirement-eligible active-duty Reserve chaplain commanders were illegal.
C.  Overage active-duty Reserve chaplain commanders were illegal.
D.  Over-grade recalls of Reserve chaplains to active-duty were illegal.
E.  Summary.

III.  THE BOARD PRECEPT WAS UNFAIR TO THE PETITIONER
A.  The board precept required re-grading of minorities.
B.  Relevant rulings.
C.  Summary.

IV.  THE BOARD PROCEEDINGS WERE UNFAIR TO THE PETITIONER
A.  The Board violated the board precept by retaining chaplains with less potential for future service than the petitioner.
B.  The Board violated the Secretary of the Navy's All-Regular policy by retaining a Reserve officer.
C.  Summary.

V.  THE BOARD MEMBERSHIP WAS UNFAIR TO THE PETITIONER
A.  The United Methodist chaplain board member accommodation was unfair.
B.  The Baptist chaplain board member accommodation was unfair.
C.  A board member illegally serving on active duty was unfair.
D.  Summary.

VI.  CURRENT CHAPLAIN CORPS MANNING
A.  There are chaplain captains and commanders currently serving illegally on active duty.
B.  Summary.

VII.  THIS PETITION AND 10 USC 1558.
A.  Petition.
B.  Provisions of 10 USC 1558.
C.  Summary and Conclusion.

Amendment to Block 17, DD FORM 149 ico CDR George P. Byrum, CHC, USN (Ret.)

## AMENDMENT

I.  INTRODUCTION.  I have attached various documents and information to this amendment to assist the BCNR in its deliberations.  The standard designators 4100 and 4105 for chaplains are used throughout this amendment and its attachments.  4100 designates Chaplain, Regular Navy; and 4105 designates Chaplain, Naval Reserve.

II.  ILLEGAL PERSONNEL PRACTICES WERE UNFAIR TO THE PETITIONER. The following practices improperly produced an excess of chaplain commanders on active duty, so the resulting SERB selection of me was consequently unnecessary and unfair.

   A.  Career grade active-duty Reserve chaplain commanders were illegal.

      1.  There are at least four Secretary of the Navy directives delineating his policy that all officers in career grades (lieutenant commander and above) are to be Regular officers.  See Attachment A.

      2.  List of chaplains.  There were at least 25 (twenty-five) active-duty Reserve chaplain commanders at the time of my SERB.  See Attachment B.

   B.  Retirement-eligible active-duty Reserve chaplain commanders were illegal.

      1.  There are at least two Navy directives mandating the removal of active-duty Reserve officers who are retirement eligible.  See Attachment C.

      2.  List of chaplains.  There was at least one retirement-eligible active-duty Reserve chaplain commander at the time of my SERB.  See Attachment D.

   C.  Over-age active-duty Reserve chaplain commanders were illegal.

      1.  Federal law and Navy directives limit the maximum age of Reserve officers on active duty to age sixty.  See Attachment E.

      2.  List of chaplains.  There was at least 1 (one) overage active-duty Reserve chaplain commander serving in violation of federal law and Navy directives at the time of my SERB.  See Attachment F.

   D.  Over-grade recalls of Reserve chaplains to active-duty were illegal.

      1.  Navy directives prohibit recalling Reserve officers to active duty above the rank of lieutenant if they have had extended active duty or if they are within two years of being eligible for promotion.  See Attachment G.

Amendment to Block 17, DD FORM 149 ico CDR George P. Byrum, CHC, USN (Ret.)

    2. List of chaplains. There were at least 5 (five) active-duty chaplain commanders who should have been a lower rank at the time of my SERB. See Attachment H.

    E. Summary. These illegal personnel practices resulted in approximately 25 (twenty-five) chaplain commanders illegally serving on active duty at the time of my SERB. As a result, I was one of the seven chaplain commanders who were unnecessarily selected for retirement. I was legally serving on active duty but had to leave to make room for some two dozen chaplains to continue serving illegally. This was unfair to me, and I respectfully request that my retirement be rescinded accordingly.

## III. THE BOARD PRECEPT WAS UNFAIR TO THE PETITIONER.

    A. The board precept required re-grading of minorities.

    1. The board precept required re-grading minorities' records. See Attachment I, Supplemental Guidance, paragraphs 3.a. and b..

    2. There are several problems with the required re-grading.

    a. Discrimination was illegal for longer than candidates' entire periods of military service. In the unlikely event that a minority had been discriminated against, he should have added the appropriate statement to the offending report of fitness, he should have utilized his grievance procedures, and obtained assistance from the command's Equal Opportunity Office.

    b. Every individual officer is responsible for ensuring the accuracy of his own record. Each and every minority officers was responsible to ensure that an accurate record of his performance was considered by the SERB.

    c. BCNR, not a statutory selection board, is the proper venue for correcting records.

    d. The SERB voting members had no meaningful way to discern if any minority grades were unfair or to determine what fair replacement grades would be.

    B. Relevant rulings.

    1. Re-grading requirements have consistently been ruled unconstitutional by federal courts in cases such as, *Christian v. USA* and *Saunders v. White*.

    2. In the 1998 Navy case *Yourek v. Danzig*, LCDR Robert A. Yourek challenged the same precept wording. LCDR Yourek had been retired under TERA as a lieutenant commander with 15 years of service. OJAG settled the case out of court, and Yourek was promoted retroactively to commander, given back pay and credited with 26 years of

2

Amendment to Block 17, DD FORM 149 ico CDR George P. Byrum, CHC, USN (Ret.)

service. This was tacit acknowledgement by the Navy that the Equal Opportunity instructions were flawed.

C. Summary. The mandatory re-grading of minorities may have injured me. In consonance with the legal precedents, I respectfully request that my record be compared to retained minorities' records, and if my record is better than any that my retirement be rescinded accordingly.

## IV. THE BOARD PROCEEDINGS WERE UNFAIR TO THE PETITIONER.

A. The Board violated the board precept by retaining chaplains with less potential for future service than the petitioner.

1. The board precept required consideration of each candidate's potential for significant further service.

> "You must consider each officer's potential for future contributions in both traditional and more specialized assignments and retain those who have the highest potential for significant further service." Attachment I, Precept, paragraph 5.

2. Federal law and Navy directives limit the age of active-duty Regular officers to 62 and Reserve officers to 60. See Attachment J.

3. A passover for promotion limits the potential for future contribution. It is a rejection of the candidate for increased leadership and responsibility.

4. CDR Palmer had less than 2 years remaining before statutory retirement for age, and he had been passed over for promotion some five times. CDR Pyrch had less than 3 years remaining before statutory retirement for age, and he had been passed over three times for promotion to captain. CDR Simons had less than 3 years remaining before statutory retirement for age and was required by the All-Regular Career Force policy to retire. See Attachment K.

5. In dramatic contrast, I had more than 15 years remaining and had no failures of selection. In fact, I had not yet even come into zone for captain. I had immeasurably more potential for future contributions than any of these three candidates who were retained.

6. The Board decision to retire me and retain CDR Palmer, CDR Pyrch and CDR Simons was on its face arbitrary and capricious. It did not comport with the Secretary's precept, and it violated the Secretary's directives.

7. I respectfully request that my record be compared to those of CDR Palmer, CDR Pyrch and CDR Simons, and if my record is better than any, that my retirement be rescinded accordingly.

3

Enclosure (1)

Amendment to Block 17, DD FORM 149 ico CDR George P. Byrum, CHC, USN (Ret.)

B. The Board violated the Secretary of the Navy's All-Regular Career Force Policy by retaining a retirement-eligible Reserve commander.

1. Navy directives prohibited retaining a retirement-eligible career grade Reserve officer. See Attachments A and D.

2. CDR Simons was a retirement-eligible Reserve Officer (4105) with over 23 years of active duty. See Attachment K.

3. In accordance with the Secretary of the Navy's directives, CDR Simons should have been removed from active duty, and one of the involuntary-retired Regular officers should have been retained instead.

4. I respectfully request that my record be compared to those of the other five involuntarily-retired Regular officers. (CDR Morgan was permitted to retire voluntarily. See Attachment I, CNP handwritten note to SECNAV.) If my record is the best, I respectfully request that my retirement be rescinded accordingly.

C. Summary. Retaining a 4105 commander violated the board precept and Navy directives. Therefore, I respectfully request that if my record is better than those of the involuntary-retired Regular officers that my retirement be rescinded accordingly.

V. THE BOARD MEMBERSHIP WAS UNFAIR TO THE PETITIONER. The denominations of voting board members are at Attachment L, and the candidates' are at Attachment K.

A. The United Methodist chaplain board member accommodation was unfair.

1. The inherent conflict of interest of a United Methodist board member considering the retention of United Methodist candidates ethically should have precluded having a board member of that denomination. Instead, it appears that the United Methodist board membership was a concession to the existence of five United Methodist candidates. .

2. I did not receive equal treatment. The absence of a voting board member from my denomination while United Methodist candidates enjoyed one of theirs was unfair to me.

B. The Baptist chaplain board member accommodation was unfair.

1. The inherent conflict of interest of a Baptist board member considering the retention of Baptist candidates ethically should have precluded having a board member of that denomination. Instead, it appears that the Baptist board membership was a concession to the existence of seven Baptist candidates.

4

Enclosure (1)

Amendment to Block 17, DD FORM 149 ico CDR George P. Byrum, CHC, USN (Ret.)

2. I did not receive equal treatment. The absence of a voting board member from my denomination while Baptist candidates enjoyed one of theirs was unfair to me.

C. A board member illegally serving on active duty was unfair.

1. CAPT Bourke was a Reserve officer serving in a career grade on active duty after having been illegally recalled above the rank of lieutenant in 1982. See Attachments A, G, and M.

2. A Reserve board member who was illegally serving on active duty would not be inclined to see a problem with retaining the Reserve officer CDR Simons in violation of Navy directives.

D. Summary. The board membership was unfair to me, because no member of my denomination was a board member, so I did not receive equal treatment. Therefore, I respectfully request that my record be compared to the records of those eight United Methodist and Baptist chaplains who were not selected, and if my record is better than any of them that my retirement be rescinded accordingly.

## VI. CURRENT CHAPLAIN CORPS MANNING.

A. There are 35 (thirty-five) chaplain captains and commanders currently serving illegally on active duty. See Attachment N.

B. Summary. There are numerous chaplains currently serving illegally on active duty in the grades of captain and commander, and one can readily be removed. Therefore, the rescission of my retirement and my restoration to active duty will not cause any end-strength problems.

## VII. THIS PETITION AND 10 USC 1558.

A. Petition. I respectfully request due consideration of my combat service, Additional Qualification Designation, three advanced degrees and successful completion of the Chaplains School Advanced Course in all deliberations. In addition to losses in rank and pay, I lost my active duty ministry and service for the period of time from my retirement in 1996 to the present, some seven years. This injustice can be largely rectified by allowing me to serve seven additional years for a total of 37 years commissioned service if my petition is granted and I am promoted to captain.

B. Provisions. 10 USC 1558 empowers the Secretary to expedite rescission and selection decisions, and it requires BCNR petitions to be processed in 180 days. See Attachment O.

C. Summary and Conclusion. Subject to the provisions of 10 USC 1558, I respectfully request that within 180 days of BCNR's receipt of this petition that my retirement be rescinded, that I be retroactively promoted to captain, that I be restored to

Amendment to Block 17, DD FORM 149 ico CDR George P. Byrum, CHC, USN (Ret.)

active duty, and that I be allowed to serve for thirty-seven years of commissioned service. Due to the complexity of this petition, I request to appear with my attorney before the board. Thank you for your consideration. END OF AMENDMENT.

Enclosure (1)

INDEX OF ATTACHMENTS

A.  Citations Re All-Regular Policy.

B.  List of Active-Duty 4105 Commanders c. December 1995.

C.  Citations Re Retirement-Eligible Active-Duty 4105 Commanders.

D.  List of Retirement-Eligible Active-Duty 4105 Commanders c. 12/1995.

E.  Citations Re Maximum Age of Reserve officers on Active Duty.

F.  List of Over-Age 4105 Commanders c. 12/95.

G.  Citations Re Recalls.

H.  List of Illegally Recalled 4105s Who Were Commanders c. 12/95.

I.  FY96 SERB Precept

J.  Citations Re Maximum Ages of Regular and Reserve officers on Active Duty.

K.  Table of FY96 SERB Candidates' Career Life Remaining.

L.  Table of FY96 SERB Voting Board Members And Denominations.

M.  Biographies from History of the Chaplain Corps, U. S. Navy, Vol. X.

N.  List of Chaplain Captains and Commanders Currently on Active Duty Illegitimately.

O.  10 USC 1558.

ATTACHMENT INDEX

<u>**FY96 SERB PRECEPT**</u>                    19 OCT 95
                                            SECNAV SIGNS

MEMORANDUM FOR THE SECRETARY OF THE NAVY
                    UNDER SECRETARY OF THE NAVY

FROM: VADM F. L. Bowman        *HLBowman*  4/7/95
          Chief of Naval Personnel  *A C Stewart*
          Prepared by:      CDR A. C. Stewart, PERS-27, ☎614-2325

SUBJECT:      FY-96 Active Commander, Chaplain Corps Selective Early
                    Retirement Board Precept - ACTION MEMORANDUM

PURPOSE:      To forward the FY-96 Active Commander, Chaplain Corps
                    Selective Early Retirement Board precept for approval.

DISCUSSION:

- Attachment (1) provided a preliminary estimate of the number of
  officer early retirements required in FY-96 by competitive category
  and grade. The selection requirements identified in the attached
  precept are based upon current retirement information, and may
  be further modified (by change memo) to reflect any additional
  voluntary retirement requests received before the board convenes.

- Attachment (1) directed that the board convene on 29 November
  1995.

- The role of the board president and participation of the board
  members is addressed in the precept, enclosure (2), paragraphs 8
  and 9.

- The precept conforms to all directives governing the selective
  early retirement of officers.

RECOMMENDATION:    CNP, CNO, JAG sign memo forwarding the precept.
                    SECNAV approve (sign) the FY96 Active Commander,
                    Chaplain Corps SER precept atttached.

Attachments:
1. FY96 SER Plan dtd 22 AUG 95

| CHOP | VCNO | CNO | JAG | | |
|------|------|-----|-----|--|--|
| DATE | | | | | |

**ATTACHMENT I**

Subj:   PRECEPT CONV(   )ING THE FY96 SELECTION BOAF   TO CONSIDER
COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE EARLY RETIREMENT

--------------------------------------------------------------------

REVIEW BY THE CHIEF OF NAVAL OPERATIONS

1.  I recommend you sign the attached precept.

J. M. BOORDA

--------------------------------------------------------------------

8 Nov 95

REVIEW BY THE JUDGE ADVOCATE GENERAL

1.  The attached precept is legal and in proper form for your signature.

R. B. SCHIFF
Captain, JAGC, U.S. Navy
Acting Judge Advocate General

2

ATTACHMENT I



**DEPARTMENT OF THE NAVY**
OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20350-1000

1 7 NOV 1995

From: Secretary of the Navy
To:   RADM Donald K. Muchow, CHC, USN, ████████/4100

Subj: PRECEPT CONVENING A FY-96 SELECTION BOARD TO CONSIDER
      COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE EARLY
      RETIREMENT

Encl: (1) Board Membership
      (2) Supplemental Guidance

1.  The selection board, consisting of yourself as president
and the officers listed in enclosure (1), is ordered to
convene at the Navy Department, Washington, D.C., at 0900 on
29 November 1995 or as soon thereafter as may be
practicable.

2.  Each fiscal year a number of commanders retire from the
Navy as a result of approved voluntary retirements or
involuntary retirements based on length of service.
However, the Navy is currently faced with the need to
increase the number of retirements of commanders during this
fiscal year beyond the number of approved voluntary and
involuntary retirements, and thus this selective early
retirement board is being convened. The function of the
board is to recommend for selective early retirement regular
and reserve commanders on the active-duty list, in the
Chaplain Corps community whose early retirement, in the
opinion of the majority of the board, is in the best
interest of the Navy.

3.  10 USC §638 and §638a provide that regular or reserve
officers may be considered for early retirement by a
selection board convened pursuant to 10 USC §611(b).  Those
statutes permit consideration for selective early retirement
of commanders who are within two years of retirement
eligibility or eligible for retirement.

4.  The records and names of all eligible officers
determined as of the date the board convenes will be
furnished to the board by the Chief of Naval Personnel.  The
board will carefully consider the case of every officer
whose name is furnished to it.  Under 10 USC §638(e)(2)(B),
officers with approved voluntary retirements, or officers
with involuntary retirement dates in FY-96 or FY-97, may not
be considered.  No officer whose name is on a promotion list
may be considered for early retirement.

ATTACHMENT I

Subj:  PRECEPT CONVENING THE FY-96 SELECTION BOARD TO
       RECOMMEND COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE
       EARLY RETIREMENT

5.   The major criterion for the Navy's success is its
ability to conduct prompt and sustained combat operations.
A balance of skills among the Navy's leaders is the key to
maintaining this ability.  Excellence in operational
environments and during arduous, demanding deployments is an
important measure of the qualities the Navy requires.
Officers may also have demonstrated leadership, skill,
integrity and resourcefulness in other difficult and
challenging joint and in-service assignments.   Just as you
must carefully consider positive outstanding performance,
you must carefully consider documented incidents of
misconduct, and substandard performance, which are included
in an officer's official service record, in determining
those officers who are best qualified for retention.  You
must ensure the officers retained possess the qualities to
excel in positions of responsibility and authority
appropriate to their grade.  You must consider each
officer's potential for future contributions in both
traditional and more specialized assignments and retain
those who have the highest potential for significant further
service.  For those eligible officers who are recommended
for retention and who have received disciplinary action or
whose privileged information record (Fiche 5) contains
matters relating to conduct or performance of duty, each
board member shall personally review the information
contained therein, prior to the final board decision.
Finally, when determining whom to retain, you should also
give consideration to the resources expended by the Navy in
preparing officers for particular assignments, and the needs
of the Navy in managing billets with long training
pipelines.

6.   The total number of officers that may be recommended
will be exactly the number set forth below.  This number may
not exceed 30 percent of the in-zone eligible officers as of
the date the board convened.  The board will recommend no
more than or less than the number provided below:

| GRADE | COMPETITIVE CATEGORY | NUMBER TO SELECT |
|-------|----------------------|------------------|
| COMMANDER | CHAPLAIN CORPS | 7 |

7.   The board will consider only those official records
provided by the Chief of Naval Personnel as well as written
communications from eligible officers.  Requests for
additional information can only be approved by the Secretary

2

ATTACHMENT I

Subj: PRECEPT CONVENING THE FY-96 SELECTION BOARD TO
      RECOMMEND COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE
      EARLY RETIREMENT.

of the Navy.  No board member, recorder, assistant recorder,
or person acting on their behalf may communicate with an
eligible officer, reporting senior, or other person to
solicit information, favorable or unfavorable, about an
eligible officer.  The Chief of Naval Personnel may
authorize communications as necessary to ensure the official
records are complete.

8.  The report of the board, prepared per paragraphs 9g and
10 of the supplemental guidance (enclosure (2)), will be
forwarded to the Secretary of the Navy via; first, the Chief
of Naval Personnel; second, the Chief of Naval Operations;
and finally, the Judge Advocate General of the Navy for
legal review.

9.  Enclosure (2) provides the oaths to be administered and
supplemental guidance.

                              JOHN H. DALTON
                              Secretary of the Navy

3

ATTACHMENT I

1.  Board Members:

RADM Timothy R. Beard, USN, ████████/1310
CAPT Charles E. Bourke, Jr., CHC, USNR, ████████/4105
CAPT Leroy Gilbert, CHC, USN, ████████/4100
CAPT Ivan B. Burnett, CHC, USN, ████████/4100

2.  CDR Eileen Ohickey, CHC, USN, will act as recorder.
LCDR Peter W. McGeory, CHC, USN will act as assistant
recorder.  The recorder or assistant recorder will be
present during all board deliberations.

3.  CAPT Judith A. Holden, USN; CDR Ann C. Stewart, USN;
LCDR Rufus S. Abernethy, USN; LT Kevin J. Couch, USN; LT
Christel E. Brown, USNR; LT Roger R. Garretson, USN; LT
Billy W. Castleberry, USN; LT Robert C. Moore, USN; ENS
Scott E. Armentrout, USN; ENS Anthony S. Kelly, USNR; ENS
Carl E. Smit, USN; CWO3 Billy J. Abrams, USN; CWO3 Stephen
A. Morton, USN; DPC Donald E. Reese, USN; DPC James L. Cole,
USN; YNC John M. Smith, USN; YN1 Derek C. Roberts, USN; YN1
Susan C. Ferretti, USNR; AT1 Philip T. Esposito, USN; AO1
Brian D. MacMillan, USNR; DP1 Angel T. Romero, USNR; DP2
Clifford P. Fetner, USN; and PN2 William R. Williams, USNR;
are designated to serve as projectionists and administrative
support personnel for this board.

Enclosure (1)

ATTACHMENT I

<u>SUPPLEMENTAL GUIDANCE</u>

1.  The following oath or affirmation will be administered to the recorder and assistant recorders by the president of the board:

> "You, and each of you, do solemnly swear (or affirm) you will keep a true record of the proceedings of this board, and you will not divulge the proceedings of this board except as authorized or required by the Secretary of the Navy or higher authority.  So help you God."

The following oath or affirmation will then be administered by the recorder to the members of the board:

> "You, and each of you, do solemnly swear (or affirm) you will perform your duties as a member of this board without prejudice or partiality, having in view both the special fitness of officers and the efficiency of the Naval service, and you will not divulge the proceedings of this board except as authorized or required by the Secretary of the Navy or higher authority.  So help you God."

The following oath or affirmation will then be administered by the recorder to the projectionists and other support personnel:

> "You, and each of you, do solemnly swear (or affirm) you will not divulge the proceedings of this board except as authorized or required by the Secretary of the Navy or higher authority.  So help you God."

2.  Due to historic statutory restrictions on the assignment of women in Navy, the records of female officers before the board may show a career pattern different from that of their male counterparts.  Such restrictions on duty assignments, which in the past have foreclosed to women opportunities for operational and command assignments available to men, cannot be allowed to prejudice the selection of women for retention.  Therefore, in determining a woman's qualification for retention, duty performed by a female officer, whose past assignability was constrained by law or policy, will be given weight equal to duty performed by a male officer not so constrained which is equally well performed. In making your determination of those female officers who are best suited for retention, emphasis will be placed on her actual performance in assignments rather than her pattern of assignments as compared to male officers.

3.  The Department of the Navy is dedicated to equality of treatment for all personnel without regard to race, <u>creed,</u> color, sex, or national origin.  Aggressive commitment to equal opportunity is critical.

Enclosure (2)

**ATTACHMENT I**

a.  Many minority officers have been assigned involuntarily outside the traditional career development patterns, i.e., recruiting, equal opportunity and specific billets requiring minorities.  These assignments, though beneficial to the interests of Navy, have resulted in those officers having career patterns different from officers who have been able to serve in their primary or warfare specialties.  In making your determination of those officers who are best suited for retention, you must view such assignments as having the same value as assignments within the primary or warfare specialty.

b.  The 1988 CNO Study Group Report on Equal Opportunity in Navy, which is available to you, noted that minority officers who, prior to entering Navy, had limited interaction with a predominately majority environment, may take a longer time to adjust and perform to the level of their contemporaries.  This may result in initially lower fitness reports at the junior officer level (through 0-3) and a higher percentage of "late bloomers" than their majority counterparts.  You must consider this when evaluating a minority officer.

c.  In evaluating the records of eligible officers, you should be aware that past discrimination may have operated to the disadvantage of minority officers.  Such discrimination may have manifested itself in comparatively lower fitness reports.  Equivalent performance by a minority officer and a non-minority officer may not have resulted in equivalent fitness reports.  You must consider this when evaluating minority officers.

4.  Our ability to operate effectively with the other Services is vital to our warfighting capability.  To foster this ability, a number of officers are assigned to joint military training and education and to duties with other Services and to joint staffs.  Board members will give appropriate consideration to the performance of officers who are serving or have served in such assignments.

a.  To meet statutory requirements, as well as to ensure our ability to conduct joint operations, Navy is firmly committed to placing as many officers as possible in joint duty assignments.  These assignments, critical for the future success of Navy, may have resulted in a career pattern different from officers who have served exclusively in their primary or warfare specialty.  In making your determination of those officers who are best suited for retention, you must view joint duty assignments as having the same value as assignments within the primary or warfare specialty.

b.  Navy's ability to meet future joint operations requirements depends, in part, on senior officers who have served or are serving in joint duty assignments.  Experience in a joint duty billet is a factor for you to consider in determining which officers are best qualified for retention.

**ATTACHMENT I**

5. A Selective Early Retirement Board is prohibited from considering the marital status of a member or the employment, education, or volunteer service of a spouse.

6. Many officers have special or advanced education (i.e., foreign language training, PhD., Masters degrees, etc.) and subspecialties of substantial value to Navy. In determining an officer's fitness for retention, selection boards shall give weight to duty in subspecialty billets, equal to that given to other duty, equally well performed. Proven expertise in training, education, recruiting, politico-military affairs and other subspecialties is a vital ingredient of the Navy's officer corps.

7. The official military personnel records provided to the board may include medical documents relevant to an officer's physical qualifications. If the board desires clarification of any such document, then the board president should reduce the board's questions to writing and forward them to me. I will provide such clarification as may be appropriate.

8. The senior member of the board has been appointed as president and will perform prescribed administrative duties. The board president has no authority to constrain the board from recommending those officers whose retirements are determined to be in the best interest of Navy as specified by the Secretary. The board president will ensure that paragraph 9 of this enclosure is read to each board member, recorder and administrative support person on the convening date of the board or on the date of assignment to the board, whichever is later.

9. The following instructions concerning communications and information apply to board proceedings:

   a. Each of you (president, members, recorders, and administrative support personnel) is responsible to maintain the integrity and independence of this selection board, and to foster careful consideration, without prejudice or partiality, of all eligible officers.

   b. You must pay particularly close attention to the rules governing communications with and among other board members, the information authorized to be furnished to you, and the procedures you should follow if you believe that the integrity of this selection board has been improperly affected.

   c. You are to base your recommendations on the material in each officer's military record, any information I have provided to the board, and any information communicated to you by individual eligible officers under regulations I have issued. In your deliberations, you may discuss your own personal knowledge and evaluation of the professional qualifications of eligible officers to the extent that such matters are not precluded by law or Service regulation from consideration by a selection board or

ATTACHMENT I

inclusion in an officer's military personnel record. You may not discuss or disclose the opinion of any person not a member of the board concerning an officer being considered unless that opinion is contained in material provided to the board.

d. I am the only person who may appear in person to address you on any matter. All communications with this board, other than those that are clearly administrative, must be in writing, given to each of you and made part of the board's record. I have designated in writing those persons authorized to provide routine administrative information to you.

e. Before the report of the selection board is signed, the recommendations may be disclosed only to members of the board, recorders and those administrative support personnel I have designated in writing. After you sign the board report, only the recommendations of the board may be disclosed. Except as authorized by law or regulation the proceedings of the board may not be disclosed to any person not a board member or board recorder.

f. If at any time you believe that you cannot in good conscience perform your duties as a member of this board without prejudice or partiality, you have a duty to request relief by me from this duty. I will honor any such request. If, as a board member or recorder, you believe the integrity of the board's proceedings has been affected by improper influence of military or civilian authority, misconduct by the board president or a member, or any other reason, or believe someone is exerting or attempting to exert inappropriate influence over the board or its proceedings, you have a duty to request from me or the Secretary of Defense relief from your obligation not to disclose board proceedings and, upon receiving it, to report the basis for your belief.

g. Upon the completion of board's deliberations, you will, as a minimum, certify in your report to me that:

(1) To the best of your knowledge, the board complied with all instructions contained in the precept, and, as appropriate, other letters of guidance or instruction provided by me.

(2) That you were not subject to or aware of any censure, reprimand, or admonishment about the recommendations of the board or the exercise of any lawful function within the authorized discretion of the board;

(3) That you were not subject to or aware of any attempt to coerce or influence improperly any action in the formulation of the board's recommendations;

(4) That you were not party to or aware of any attempt at unauthorized communications;

ATTACHMENT I

(5) That, to the best of your knowledge, the board carefully considered the records of each officer whose name was furnished to the board; and

(6) That selections of the officers recommended for retirement from among those officers considered are, in the opinion of the majority of the members of the board, in the best interest of Navy.

10.  The written report of the board will be signed by the board president, the board members and board recorders, and will contain a list of the names of the officers it recommends for retirement, with the certification described in paragraph 9g.

11.  The record of the board's proceedings will be compiled by the recorders and administrative support staff and will contain at a minimum:

a.  Convening notice.

b.  A list of all officers considered for early retirement.

c.  A list of all officers recommended for early retirement.

d.  Precept.

ATTACHMENT I



# DEPARTMENT OF THE NAVY
### OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20350-1000

From:   Secretary of the Navy
To:     President, FY96 Commander, Chaplain Corps Selective Early
        Retirement Board

Subj:   OFFICERS IN THE COMPETITIVE CATEGORY OF CHAPLAIN CORPS ON
        THE ACTIVE DUTY LIST OF THE NAVY IN THE GRADE OF
        COMMANDER, WHO ARE ELIGIBLE FOR SELECTIVE EARLY RETIREMENT

Encl:   (1) Chaplain Corps Officers eligible for Selective Early
            Retirement in FY96

1.  A list of subject officers is provided as enclosure (1).

2.  The record of each officer eligible for consideration has
been assembled in the Navy Department and is ready for inspection
by the board.

                        FOR THE SECRETARY OF THE NAVY


                        LEE E. GUNN
                        Rear Admiral, U.S. Navy
                        Deputy Chief of Naval Personnel

**ATTACHMENT I**

30 NOV 1995

OFFICERS IN THE COMPETITIVE CATEGORY OF CHAPLAIN CORPS ON THE
ACTIVE-DUTY LIST OF THE NAVY IN THE GRADE OF COMMANDER ELIGIBLE FOR
CONSIDERATION FOR SELECTIVE EARLY RETIREMENT

| CONSEC | NAME | SSN | DESIG |
|--------|------|-----|-------|
| 0001 | MORGAN JAMES PATRICK | | 4100 |
| 0002 | UMBAUGH RAY DUANE | | 4100 |
| 0003 | NEWHOUSE EDWARD ARTH | | 4100 |
| 0004 | ADAIR ROBERT HAROLD | | 4100 |
| 0005 | BROWN NORMAN FRANKLI | | 4100 |
| 0006 | ROWLAND ROBERT GENE | | 4100 |
| 0007 | KLAPACH FRANK S | | 4100 |
| 0008 | STANFIELD EDWIN DOUG | | 4100 |
| 0009 | PALMER HAROLD D | | 4100 |
| 0010 | NIXON HENRY JR | | 4100 |
| 0011 | JENSEN STEVEN L | | 4100 |
| 0012 | PYRCH PAUL | | 4100 |
| 0013 | SIMONS GARY GALEN | | 4105 |
| 0014 | BENNETT WILLIAM THOM | | 4100 |
| 0015 | SIEGEL ENOCH ARNOLD | | 4100 |
| 0016 | TUMLIN GEORGE LEWIS | | 4100 |
| 0017 | SIMONELLI DOMINICK | | 4100 |
| 0018 | DURHAM RONALD WAYNE | | 4100 |
| 0019 | MCCREARY STANLEY HOW | | 4100 |
| 0020 | METZGER DAVID LAWREN | | 4100 |
| 0021 | LEVERETTE WALTER NOR | | 4100 |
| 0022 | BYRUM GEORGE PHILIP | | 4100 |
| 0023 | AVEN DONALD WEBSTER | | 4100 |
| 0024 | BURT ROBERT FRANCIS | | 4100 |

Enclosure ( | )

ATTACHMENT I

REPORT OF A SELECTION BOARD TO RECOMMEND COMMANDERS IN THE
COMPETITIVE CATEGORY OF CHAPLAIN CORPS ON THE ACTIVE-DUTY LIST OF
THE NAVY FOR SELECTIVE EARLY RETIREMENT

The board met at 0910 on 29 November 1995 pursuant to the
precept of the Secretary of the Navy of 17 November 1995.

I, the undersigned, hereby certify that:

(1) The board, to the best of my knowledge, complied with DOD
Directive 1320.12, all instructions contained in the precept,
and, as appropriate other letters of guidance or instruction
provided by the Secretary of the Navy;

(2) I was not subject to or aware of any censure, reprimand,
or admonishment resulting from the recommendations of the board
or the exercise of any lawful function within the authorized
discretion of the board;

(3) I was not subject to or aware of any attempt to coerce or
influence improperly any action in the formulation of the board's
recommendations;

(4) I was not party to or aware of any attempt at
unauthorized communications;

(5) The board, to the best of my knowledge, has carefully
considered the records of the officers whose names were furnished
to the board; and

(6) That the selections of the officers recommended for
retirement from among those officers considered are, in the
opinion of the majority of the members of the board, in the best
interest of the Navy.

At 1125 on 30 November 1995 the board adjourned to await
orders of the Secretary of the Navy.


DONALD K. MUCHOW                    EILEEN OHICKEY
Rear Admiral                       Commander
Chaplain Corps                     Chaplain Corps
U.S. Navy                          U.S. Navy
President                          Recorder


**ATTACHMENT I**

REPORT OF A SELECTION BOARD TO RECOMMEND COMMANDERS IN THE
COMPETITIVE CATEGORY OF CHAPLAIN CORPS ON THE ACTIVE-DUTY LIST OF
THE NAVY FOR SELECTIVE EARLY RETIREMENT

TIMOTHY R. BEARD
Rear Admiral
U.S. Navy
Member

CHARLES E. BOURKE, JR.
Captain
Chaplain Corps
U.S. Naval Reserve
Member

LEROY GILBERT
Captain
Chaplain Corps
U.S. Navy
Member

IVAN B. BURNETT
Captain
Chaplain Corps
U.S. Navy
Member

PETER W. MCGEORY
Lieutenant Commander
Chaplain Corps
U.S. Navy
Assistant Recorder

**ATTACHMENT I**

REPORT OF A SELECTION BOARD TO RECOMMEND COMMANDERS IN THE
COMPETITIVE CATEGORY OF CHAPLAIN CORPS ON THE ACTIVE-DUTY LIST OF
THE NAVY FOR SELECTIVE EARLY RETIREMENT

| CONSEC | NAME | SSN | DESIG |
|---|---|---|---|
| 0001 | MORGAN JAMES PATRICK | | 4100 |
| 0004 | ADAIR ROBERT HAROLD | | 4100 |
| 0006 | ROWLAND ROBERT GENE | | 4100 |
| 0017 | SIMONELLI DOMINICK | | 4100 |
| 0020 | METZGER DAVID LAWREN | | 4100 |
| 0022 | BYRUM GEORGE PHILIP | | 4100 |
| 0023 | AVEN DONALD WEBSTER | | 4100 |

ATTACHMENT I

REPORT OF A SELECTION BOARD TO RECOMMEND COMMANDERS IN THE
COMPETITIVE CATEGORY OF CHAPLAIN CORPS ON THE ACTIVE-DUTY LIST OF
THE NAVY FOR SELECTIVE EARLY RETIREMENT

OFFICE OF THE CHIEF OF NAVAL PERSONNEL

Forwarded, approval recommended.

_Secretary Dalton – Following this board proceeding and prior to report out CDR James Patrick Morgan submitted a voluntary request for retirement after receiving a call from his bishop to return to his parish. Recommend you officially remove his name from this list. Very respectfully, [signature] CNO —_

_____
Chief of Naval Personnel (Date)    12/20/95

OFFICE OF THE CHIEF OF NAVAL OPERATIONS

Forwarded, approval recommended.

_____
Chief of Naval Operations (Date)

OFFICE OF THE JUDGE ADVOCATE GENERAL

Forwarded, approval recommended.

_____
Judge Advocate General (Date)

OFFICE OF THE SECRETARY OF THE NAVY

Approved.

_____
Secretary of the Navy (Date)

00219

**ATTACHMENT I**



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:ks
Docket No. 04911-02
29 December 2003

From: Chairman, Board for Correction of Naval Records
To:   OJAG (ADMIN LAW) CODE-13  ATTN: LT MCCRACKEN;

Subj: REQUEST FOR COMMENTS AND RECOMMENDATION IN THE

CDR GEORGE P. BYRUM, CHC, USN RET, ▮▮▮▮▮▮▮▮

Ref:  (a) 10 U.S.C. 1552

Encl: (1) BCNR File
      (2) Service Record

1. Pursuant to reference (a), Subject requests a correction of
his naval record as indicated in enclosure (1).

2. In order to assist the Board in arriving at a fair and
equitable decision in this case, it is requested that your
comments and recommendation be furnished.

3. Regulations approved by the Secretary of the Navy state that
your comments and recommendation should be submitted within 60
days after receiving this request. It is further requested that
the enclosures be returned with your reply.

*M. Saunder*

By direction
FOr JONATHAN S. RUSKIN



**DEPARTMENT OF THE NAVY**
OFFICE OF THE JUDGE ADVOCATE GENERAL
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON NAVY YARD DC 20374–5066

IN REPLY REFER TO

1070
Ser 13/1BC11624.04
19 May 04

From: Deputy Assistant Judge Advocate General (Administrative Law)
To:   Chairman, Board for Correction of Naval Records

Subj: REQUEST FOR COMMENTS AND RECOMMENDATION ICO CDR GEORGE P. BYRUM, CHC, USN (RET)

Ref:  (a) Your ltr HD:kes Docket No 04911-02 of 29 Dec 03
      (b) PHONCON OJAG (Code 13) LT McCracken/ Chaplain
          Community Manager Ms. Berto of 27 Apr 04
      (c) PHONCON OJAG (Code 13) LT McCracken/OJAG (Code 14)
          LCDR Bart of 30 Apr 04, 3 May 04
      (d) PHONCON OJAG (Code 13) LT McCracken/OJAG (Code 14)
          LCDR Roper, LCDR Shanahan of 4 May 04

Encl: (1) Legal Analysis

1. This responds to your reference (a) request for our comments and recommendation in the case of Commander George P. Byrum, Chaplain Corps, U.S. Navy (Retired) (hereinafter Petitioner).

2. <u>Issues</u>

   a. Whether Navy personnel practices were improper and unfair to the Petitioner because at the time of the FY96 Selective Early Retirement Board (SERB), active-duty Reserve chaplain commanders (1) were too senior to be Reservists on active duty; (2) were retirement eligible; (3) were over maximum age limits; and (4) had been improperly recalled to active duty.

   b. Whether improper re-grading of minority candidates occurred during the FY96 SERB.

   c. Whether the board proceedings were improper because the board (1) failed to accurately consider the future potential service of Petitioner, and (2) improperly retained a retirement-eligible Reserve officer.

   d. Whether the board membership was improper because (1) the denomination of the Petitioner was not represented on the board while the denomination of other candidates for early

Subj:  REQUEST FOR COMMENTS AND RECOMMENDATION ICO CDR GEORGE P.
       BYRUM, CHC, USN (RET)

retirement was represented, and (2) a Reserve board member had
been illegally returned to active duty and was not, therefore,
inclined to see a problem with retaining other Reserve officers.

3.  Short answers

    a.  (1) No.  There is no prohibition against having senior
Reserve officers on the active duty list.  Nor is there a general
requirement to discharge Reservists before active duty officers.

        (2) No.  There is no regulation requiring Reservists to be
considered for involuntary retirement before regular officers.

        (3) No.  The maximum age for Reservists on the active-
status list is 67 years of age.  All officers before the FY96 SERB
were within age requirements.

        (4) No.  Regulations allow for the recall of officers with
previous extended active duty if needed to fulfill operational
requirements.

    b.  No.  The precept for the FY96 SERB did not instruct or
even permit members to re-grade minority officer records.

    c.  (1) No.  The precept instructions for the FY96 SERB
required board members to swear that their grading and analysis of
the retirement candidates would be fair and unbiased.  There is no
evidence suggesting the integrity of the board is in question.

        (2) No.  An officer eligible for retirement may not be
forced to retire except in the context of a disciplinary or
administration proceeding, SERB, or high-year tenure.  All
officers that meet the criteria for an involuntary retirement
board are considered on an equal footing with all other officers
before the board.  All officers who met eligibility criteria for
this board were properly considered.

    d.  (1) No.  Board members are statutorily required to be
chosen without reference to their denomination/faith group.  There
is no evidence suggesting the integrity of the board is in
question.

        (2) No.  See section a(4), above.

00255

Subj:  REQUEST FOR COMMENTS AND RECOMMENDATION ICO CDR GEORGE P.
       BYRUM, CHC, USN (RET)

4.  <u>Discussion</u>.  Petitioner raises the issues identified above
in his second petition to BCNR.  CDR Byrum is seeking to become
a named plaintiff in <u>Adair v. England</u>, 183 F. Supp. 2d 31
(D.D.C. 2002), and his issues are similar to those raised in
<u>Wilkins v. United States of America</u>, 279 F.3d 782 (9th Cir.
2002).  References (c) and (d) advise that if BCNR action
follows our advisory opinion, CDR Byrum's BCNR petition should
not affect, or be affected by, either case.  Enclosure (1)
provides a detailed legal analysis of the issues listed above.

5.  <u>Point of contact</u>.  My point of contact for this matter is
LT Tamara McCracken, JAGC, USN, at 703-604-8218, or E-Mail
<u>Tamara.McCracken@navy.mil</u>.

ERIC E. GEISER

00256

Legal Analysis

1.  Issues

a.  Whether Navy personnel practices were improper and unfair to the Petitioner because at the time of the FY96 Selective Early Retirement Board (SERB), active-duty Reserve chaplain commanders (1) were too senior to be Reservists on active duty; (2) were retirement eligible; (3) were over maximum age limits; and (4) had been improperly recalled to active duty.

b.  Whether improper re-grading of minority candidates occurred during the FY96 SERB.

c.  Whether the board proceedings were improper because the board (1) failed to accurately consider the future potential service of Petitioner, and (2) improperly retained a retirement-eligible Reserve officer.

d.  Whether the board membership was improper because (1) the denomination of the Petitioner was not represented on the board while the denomination of other candidates for early retirement was represented, and (2) a Reserve board member had been illegally returned to active duty and was not, therefore, inclined to see a problem with retaining other Reserve officers.

2.  Short answers

a.  (1) No.  There is no prohibition against having senior Reserve officers on the active duty list.  Nor is there a general requirement to discharge Reservists before active duty officers.

(2) No.  There is no regulation requiring Reservists to be considered for involuntary retirement before regular officers.

(3) No.  The maximum age for Reservists on the active-status list is 67 years of age.  All officers before the FY96 SERB were within age requirements.

(4) No.  Regulations allow for the recall of officers with previous extended active duty if needed to fulfill operational requirements.

b.  No.  The precept for the FY96 SERB did not instruct or even permit members to re-grade minority officer records.

c.  (1) No.  The precept instructions for the FY96 SERB required board members to swear that their grading and analysis of

00257

the retirement candidates would be fair and unbiased.  There is no evidence suggesting the integrity of the board is in question.

(2) No.  An officer eligible for retirement may not be forced to retire except in the context of a disciplinary or administrative proceeding, SERB, or high-year tenure.  All officers that meet the criteria for an involuntary retirement board are considered on an equal footing with all other officers before the board.  All officers who met eligibility criteria for this board were properly considered.

d.  (1) No.  Board members are statutorily required to be chosen without reference to their denomination/faith group.  There is no evidence suggesting the integrity of the board is in question.

(2) No.  See section a(4), above.

3.  Background

a.  Petitioner became a chaplain in the Navy in Aug 81 with 6 years of prior active service.  He was selected for involuntary early retirement as a commander in FY96.  He is currently seeking to join the lawsuit of Adair v. England, 183 F. Supp. 2d 31 (D.D.C. 2002), protesting alleged faith group/denominational discrimination in the Navy.

b.  This request is an amendment to and extension of Petitioner's original BCNR request of 28 May 02. The first request alleged that several eligible commanders senior to Petitioner on the lineal list were not considered by the SERB that selected Petitioner for involuntary retirement.  He further alleged that some faith groups/denominations were spared consideration before the SERB.  BCNR provided Petitioner with an advisory opinion from Code 13 which opined that all eligible officers were considered by the board.

c.  Petitioner submitted an amended BCNR petition on 8 Dec 03 concurring with the Code 13 advisory opinion, but raising new objections that regulations regarding Reserve recall and retention were not followed; that the selective early retirement board was unfair; that records of minorities candidates before the FY96 board were improperly re-graded; and that board membership did not appropriately reflect the faith group/denominations of the Chaplain Corps.  Each of these new allegations are discussed in turn below.

4.  Discussion.

    a.  Improriety of Navy Personnel Practices

        (1) Impropriety of recalling Reservists to active duty and retaining career grade Reservists on active duty.  Petitioner argues that at least 25 Chaplains were either improperly recalled or inappropriately retained on active duty at the time of the FY96 SERB.  Without their presence, he posits, the SERB would not have been necessary because the total number of Chaplains would have been reduced by that amount.  While it is true the overall number of Chaplains would have been reduced, the use of such "overall" Chaplain numbers is inappropriate in this case.  None of the 25 Chaplains Petitioner named were in the narrow segment of the Chaplain community that the Secretary of the Navy determined was over-manned.  Specifically, the Secretary targeted a group consisting of commanders with 19 or more years of service who were not on a promotion list for captain.[1]  Along with overall end strength, the Secretary of the Navy considered the number of officers in each paygrade and the relative seniority of such officers.  While not relevant given that none of the 25 officers were in the targeted portion of the Chaplain O-5 community, it should be noted, contrary to Petitioner's assertion, that the 25 officers Petitioner names were, as described below, all properly on active duty.  There is no requirement to discharge Reservists before Active Duty officers.[2]  To follow is an analysis of each regulation or instruction Petitioner cites as support for his assertion.

        (a) SECNAV Instruction (SECNAVINST) 1120.4A establishes regulations concerning the appointment of Regular and Reserve officers in the Chaplain Corps of the Navy.  Petitioner cites paragraph four of the instruction, which articulates a policy "to provide a **base** for an all-Regular career force." [emphasis added]  In this context the policy goal is having adequate officers on active duty to meet present needs, sufficient Reserves available for mobilization, and satisfaction of end-

---

[1] SECNAV WASHINGTON DC 252037Z 95 (ALNAV 05/95).

[2] Note 10 U.S.C. 12301(d), "[a]t any time, an authority designated by the Secretary concerned may order a member of a reserve component under his jurisdiction to active duty, or retain him on active duty, with the consent of that member."  This would legitimize each of the purportedly improper retentions on active duty cited by Petitioner, even in the absence of other authority.  PHONCON CNP (Bureau of Naval Personnel) Mr. Jim Morgan/OJAG (Code 13) LT Tamara McCracken of 29 Apr 04.

strength requirements regarding active-duty officers.  There is no prohibition against maintaining Reserve officers on the ADL.  The instruction provides, in relevant part,

> [r]equirements for officers on the active-duty list in career grades that cannot be met by promotion will be supplemented by voluntary recall to active duty of Chaplain Corps officers who have not served previously on extended active duty.... **requirements for officers on the active-duty list in career grades that cannot be met by the preceding sources will be supplemented by voluntary recall to active duty of Chaplain Corps officers who have served previously on active duty** and by interservice transfer of chaplains from other services.[3] [emphasis added]

(b) SECNAVINST 1210.5A establishes regulations concerning the transfer and redesignation of officers in the Navy. Petitioner cites to paragraph 4, which sets out a policy preference for an all-Regular career force.  This general preference does not, however, make the presence of career grade Reserve Chaplains on the ADL illegal.  This instruction provides a conduit for officers to transfer or redesignate between communities.  Specifically, the instruction provides that, "[r]eserve officers on the active-duty list in the grade of lieutenant commander, O-4, or above must be willing to accept a Regular appointment if tendered."[4]

(c) SECNAVINST 1811.3M does not, as Petitioner argues, make the presence of career grade Reserve officers on the ADL illegal.  In fact, this instruction applies only to voluntary retirements.  It does not address involuntary retirements. Specifically, the instruction provides that, "[a] Reserve officer on the active-duty list eligible for retirement under [10 U.S.C. 571] shall be notified that his or her services are no longer required as soon as authorized strength in the grade and specialty of the Reserve officer can be met with a Regular officer."[5]  As noted above, while authorized end strength needs may have been met in some portion of the Chaplain community, there is no evidence that the authorized strength needs of the Chaplain community had

---

[3] SECNAVINST 1120.4A(4)(b), (c).

[4] SECNAVINST 1210.5A(6)(f)(1).

[5] Chapter 571 of Title 10 deals with voluntary retirements only, defined therein as those with 20 or more years of creditable service.

been met with regular officers with respect to the particular year and grade identified by the Secretary of the Navy for this SERB. Different portions of a community may have disparate end strength needs. In any case, SECNAVINST 1811.3M, only invites an officer to submit a voluntary resignation request.[6] If the officer does not choose to do so than the recourse is to submit the officer's name to an involuntary separation board as was done in this case.

(d) Petitioner cites SECNAVINST 1920.6B, released 13 Dec 99. SECNAVINST 1920.6A Ch-2 was released 17 Mar 93 and was in effect during the FY96 SERB. Change 2 reflects the policy cited by Petitioner promoting an all-Regular active-duty career force, but goes on to say, in relevant part, "supplemented when necessary with Reserve officers to meet current authorized strength and special skill requirements."[7] Once on the ADL, Reserve officers have the same legal rights as Regular officers before an involuntary retirement board. The only grounds provided for in the instruction to release Reserve officers on the ADL at the paygrade of O-5 and below is if they twice fail of selection (FOS) for promotion.[8] All of the Chaplains named by Petitioner were O-5 or below but none had twice failed of selection. There was one Reservist eligible for consideration; he was properly on active duty, and was not selected by the SERB.[9]

(2) <u>Impropriety of Retaining Retirement-Eligible Active-Duty Reserve Chaplains.</u> Petitioner argues that the presence of a retirement-eligible Reserve Chaplain on active-duty at the time of the FY96 SERB was improper.[10] As noted above, SECNAVINST 1811.3M, cited by Petitioner in support of his argument, merely invites an officer to submit a voluntary resignation request. If the officer does not choose to do so then the recourse is to submit the

---

[6] "(8) Requests for voluntary retirement will normally be approved for officers serving on active duty in pay grades O-1 through O-6 with at least 20 years active service who fall into at least one of the following categories. . . . (3) Reserve officers eligible for retirement who have been advised by the CHNAVPERS or DC/S (M&RA) as provided in paragraph 4b that. . . . their continued service is no longer required." SECNAVINST 1811.3M.

[7] *Id* at (7)(a)(3).

[8] Officers above that paygrade have various time in grade restrictions. SECNAVINST 1920.6A Ch-2, Enclosure 3.

[9] Gary G. Simons, CDR, CHC, USNR, was properly on active duty at the time of the board. PHONCON OJAG (Code 13) LT McCracken/ Chaplain Community Manager Ms. Berto of 27 Apr 04.

[10] Gary G. Simons, CDR, CHC, USNR, was retirement eligible at the time of the board. PHONCON OJAG (Code 13) LT McCracken/ Chaplain Community Manager Ms. Berto of 27 Apr 04.

officer's name to an involuntary separation board.  That is, in fact, what happened in this case.  The officer in question was not selected.

(3) Impropriety of Retention Over-Age Active-Duty Reserve Chaplains.

(a) Petitioner argues that Federal law limits the maximum age of Reserve officers on active duty to age 60.  This is incorrect.  Section 14703 of 10 U.S.C. provides that, "[t]he Secretary of the Navy may, with the officer's consent, retain in an active status any reserve officer appointed in the. . . . Chaplain Corps. . . [not later than]. . . the date on which the officer becomes 67 years of age."[11]  The Chaplain identified by Petitioner was 60 years of age at the time of the FY96 SERB.[12]

(b) Petitioner also argues that Navy directives limit the maximum age of Reserve officers on active duty, citing SECNAVINST 1120.4A.  This is incorrect.  This instruction requires new Chaplain accessions to the Navy "be able to complete 20 years of active service by age 60."[13]  In other words, they must be able to finish their civilian schooling, military training, and any other prerequisites to active duty before beginning their active duty service before they turn 40 years of age.  This instruction does not require that they finish their service before 60 years of age, only that they come on to active duty at or below the maximum age.

(c) While Petitioner cites SECNAVINST 1920.7A (Continuation on Active Duty of Regular Commissioned Officers and Reserve Officers on the Reserve Active Status List in the Navy and Marine Corps), the controlling regulation at that time was 10

---

[11] Petitioner asserts that this statute applies only to Chaplains on the RASL, perhaps because it is contained in Chapter 1409 of 10 U.S.C., which is entitled, "Continuation on the RASL and Selective Early Removal."  However, note that while the sections before and after 10 U.S.C. § 14703 specifically refer to Reservists on the "active-status list", this section permits retention "in an active status any Reserve officer."  10 U.S.C. § 101(d)(4) defines "active status" as "the status of a member of a Reserve component who is not in the inactive Army National Guard or inactive Air National Guard, on an inactive status list, or in the Retired Reserve."  This includes Reservists on the ADL.  PHONCON CNP (Bureau of Naval Personel) Mr. Jim Morgan/OJAG (Code 13) LT Tamara McCracken of 29 Apr 04.

[12] Patrick Pearce Coyle, CDR, CHC, USNR, was born on 18 Apr 35. PHONCON OJAG (Code 13) LT McCracken/ Chaplain Community Manager Ms. Berto of 27 Apr 04.

[13] SECNAVINST 1120.4A(6)(b).

00262

U.S.C. 14703, discussed above.  SECNAVINST 1920.7A did not become effective until 12 Feb 98.[14]

    (4) Impropriety of Recalling Over-Grade Reserve Chaplains to Active Duty.

    (a) Citing to SECNAVINST 1120.4A, Petitioner alleges that 5 Chaplains were illegally recalled to active duty above the grade of lieutenant following extended prior active duty.  Petitioner is misreading the instruction.  The instruction provides that officers with previous extended active duty may be recalled to active duty if needed to fulfill service requirements.[15]

    (b) Petitioner also cites to MILPERSMAN 1320-150 as support for this proposition.  It does not support his argument.  This regulation provides that Reservists above the grade of lieutenant may apply for recall to active duty when there are two years left before they will next be considered for promotion, and that an officer may ask for a date of rank adjustment to meet this requirement.[16]  If the request for a date of rank adjustment is not granted, the officer may still lawfully come back onto active duty.[17]  The goal of this instruction is to provide recalled officers with an adequate opportunity to become competitive for promotion.  If the five Chaplains named by Petitioner did not to avail themselves of its protections, they would be disadvantaged to Petitioner's advantage.  But they could still be lawfully recalled to active duty notwithstanding non-compliance with the two-year rule cited above.

    b. Impropriety of Re-grading Fitness Reports of Minority Candidates before the Selected Early Retirement Board.  The practice of re-grading involves taking the preliminary results of the selection board, and re-grading minority candidates where there is a disparity between the selection rates of minority and non-minority candidates.  Petitioner is incorrect in his contention that minority officer fitness reports were re-graded at

---

[14] SECNAVINST 1920.7 Ch-1 (Continuation on Active Duty of Regular Commissioned Officers in the Navy and Marine Corps) was enacted 6 Jun 84 and was in effect at the time of the FY96 SERB but does not discuss Reserve officers.

[15] SECNAVINST 1120.4A(4)(c).

[16] MILPERSMAN 1320-150(2)(a)(1). PHONCON OJAG (Code 13) LT McCracken/ BUPERS (Pers-48C) ADSW and Reserve Officer Recall Program Manager Mr. James Brown of 17 May 04.

[17] MILPERSMAN 1320-150(2)(a)(1). PHONCON OJAG (Code 13) LT McCracken/ BUPERS (Pers-48C) Lead for Post-Board Matters Mr. Dave Lanham of 18 May 04.

00263

the FY96 SERB.  While in other selection boards re-grading has been used in an attempt to protect minority officers from the effects of possible past racial prejudice, this mechanism was not used in this case.

    c.  <u>Improper Judgments by Board Members for the FY96 Selected Early Retirement Board</u>

    (1) Petitioner argues that the board proceedings were unfair because the board failed to accurately consider the future potential service of Petitioner.  The precept instructions for the FY96 SERB specifically required board members to consider the potential future service of every service member before the board. All board members signed the board report indicating that they followed this instruction.  Petitioner has offered no evidence to "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." <u>Sanders v. United States</u>, 594 F.2d 804 (1979); see also <u>Bockoven v. United States</u>, [Bockoven v. Marsh] 727 F.2d 1558 (Fed. Cir.), <em>cert. denied</em> 469 U.S. 880 (1984).

    (2) Petitioner argues that board proceedings were also unfair because members improperly retained a retirement-eligible Reserve officer.  As discussed above, however, SECNAVINST 1811.3M only invites an officer to submit a voluntary resignation request. Petitioner suggests that all officers eligible for voluntary retirement should have been involuntarily retired before the Secretary turned to the prospect of a SERB proceeding.  This is a misreading of SECNAVINST 1811.3M.  If the officer does not choose to voluntarily retire the recourse is to submit the officer's name to an involuntary separation board.  The dictates of SECNAVINST 1811.3M were fully satisfied.

    d.  <u>Improper selection of Board Members for the FY96 Selected Early Retirement Board</u>

    1.  Petitioner argues that the faith group/denomination of board members was unfair.  SECNAV Instruction 1401.3 governs the membership composition of SERB boards and does not require one member from each faith group/denomination of the Chaplain Corps. Additionally, the selection of board memberships cannot, by statute, consider the faith group/denomination of the prospective member.  There is no evidence suggesting the integrity of the board is in question.  See, <u>Sanders</u>, supra.

00264

2.  Petitioner argues that a board member was recalled to active duty improperly.  This is incorrect.  See section a(4), above.

4.  Conclusion.  All officers before the board, and all officers on the board, were properly on active duty.  There was no re-grading of minority candidates, and the membership of the board was properly constituted.  Petitioner's request for BCNR redress should be denied.

00265



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:kes
Docket No. 04911-02
25 May 2004

CDR GEORGE P BYRUM USN
PO BOX 30309
WINSTON SALEM NC 27130

Dear Commander Byrum:

This is in reference to your application for correction of your
naval record.

Your case has been assigned to the Board's Performance Section.
All correspondence pertaining to your case should be sent to the
attention of this section.

The Board has received an advisory opinion, a copy of which is
enclosed. The views set forth in this opinion are those of the
office that submitted it, and are not binding on the Board or
its reviewing authority. If you wish to respond to the advisory
opinion or submit documentary material in support of your
application, it is requested that you do so within 30 days of
the date of this letter. Your response should be sent to the
Board and not to the official who furnished the advisory
opinion.

If you are unable to respond within the 30-day period, you may
request an extension of time. In your request, please indicate
when the Board may expect to receive your response. If no
response or request for an extension of time is received within
the 30-day period, your case will be classified as being ready
for review by the Board, and will be decided on the evidence of
record as soon as the Board's crowded docket of cases permits.

As a general rule, the Board will not decide a case prior to the
expiration of the 30-day period unless it has received the
applicant's response to the advisory opinion. However, an
exception may be made if a case warrants expeditious action.

The most common example is when an applicant who is seeking removal of a fitness report is also scheduled to be considered for promotion within the 30-day period. Under these circumstances, the Board may, in its discretion, decide the case before the 30-day period expires and without waiting for the applicant's response to the advisory opinion. Should the case be denied, the Board will treat the applicant's response as a request for reconsideration.

Sincerely,

JONATHAN S. RUSKIN
For    Head, Performance Section

**Enclosure**
**OJAG memo dtd 19 May 04 w/encls**

CDR George P. Byrum, CHC, USN (Ret.)
P O Box 30309
Winston-Salem, NC 27130
(336) 785-4523
byrumjg@bellsouth.net

July 17, 2004

From:  CDR George P. Byrum, CHC, USN, (Ret)
To:    Head, Performance Section, Board for Correction of Naval Records

Subj:  Submission of My Reply ico Docket No. 04911-02 and Request to Appear

Ref:   (a) Your letter HD:kes of 25 May 2004
       (b) Phone conversation between Case Manager and Petitioner on 7 June 04

Encl:  (1) Reply to OJAG Advisory Opinion ico Docket No. 04911-02

1.  Reference (a) granted me permission to reply to the OJAG Advisory Opinion regarding my amended petition within 30 days. Reference (b) granted me an extension due to the complexity of the Advisory Opinion. I am herein submitting my reply with appreciation for your assistance.

2.  I respectfully request to appear with my attorney before the BCNR three-member panel. Due to the obfuscatory nature of the OJAG Advisory Opinion, our presence is required to provide further clarification without which there cannot be a favorable resolution of my petition.

3.  Thank you for your consideration of this request.

G. P. BYRUM

AUG 2 7 2003

PETITIONER'S REPLY TO OJAG ADVISORY OPINION
ICO DOCKET NO. 04911-02

## SPECIAL REQUEST

**Normally one would expect the BCNR board members to accept the Advisory
Opinion as authoritative and expert. I most respectfully request that an exception
be made in this case. This OJAG Advisory Opinion is demonstrably unworthy of
the imprimatur of the Office of the Judge Advocate General of the United States
Navy.**

Some of the Opinion's major flaws are:

1. OJAG erroneously treated the issue of a Reserve officer on the Active Duty List in a
career grade as a "preference"[1]. The All-Regular Career Officer Force requirement was
mandated by Congress in Public Law 96-513, popularly named DOPMA (Defense
Officer Personnel Management Act)[2]. Congress' All-Regular requirement was
implemented in the Navy through the Secretary's directives requiring conformity to his
attendant All-Regular Career Officer Corps Policy. Therefore, *compliance is mandatory*.

2. Not one of the two dozen named illegal recalls or retentions met any needs of the
service required to qualify to be an exception to the regulations. *OJAG did not even
attempt to demonstrate that a single complained-of chaplain commander qualified.*

3. OJAG disregarded the Secretary of the Navy's directives which implemented the
Congressional age limit of 60 for Reserve officers on the Active Duty List and cited,
instead, to an inapplicable section of Title 10. OJAG did not understand that *personnel
actions are governed by the Secretary's directives and not by his subordinates' individual
interpretations of Title 10*. All Secretarial directives for Reserve officers on the Active
Duty List specify 60 as the age limit.

4. The Opinion is filled with factual errors and glaring misinterpretations of regulations.

If the board will bear with me, I will show as concisely as possible that OJAG's
Conclusion is false in its entirety.

## BACKGROUND

My original petition was based on my mistaken[3] assumption that the Chaplain Corps was
administered in compliance with military directives and Congressional law. Several of
my chaplain commander seniors were not considered by the 96 Chaplain Commander
SERB (hereafter 96 SERB), so I thought an error had been committed and filed my
petition. I have since learned that these and several other chaplain commanders were
illegally accessed and retained, ostensibly because they either were the favored
denominations of the Chaplain Corps leadership or were minorities. Consequently,
several of my seniors did not have active duty experience commensurate with their rank

ENCLOSURE (1)  Page 1 of 4

and were not 96 SERB board-eligible. Even though their illegitimate presence on active duty caused the 96 SERB, they were not removed.

My amended petition is based on 4 violations by the 96 SERB, which unfairly and illegally selected me for involuntary early retirement. I will reply to OJAG's Opinion under these headings:
1. The 96 SERB purpose was religiously prejudiced.
2. The 96 SERB precept was racially prejudiced.
3. The 96 SERB board membership policies were religiously prejudiced.
4. The 96 SERB board proceedings violated the Secretary's directions and directives.

REPLY

## 1. The 96 SERB purpose was religiously prejudiced.

a. The 96 SERB was occasioned solely because of denominational favoritism and the attendant refusal to comply with the regulations to remove illegally-serving Liturgical chaplain commanders. OJAG addressed how the SERB was conducted, but not why. OJAG simply cited the 96 SERB eligibility criteria, and erroneously inferred that was the only category of chaplain commanders who needed to be reduced in number[4].

b. OJAG attempted to justify illegal accessions and retentions in general by deeming it legitimate for subordinates to violate the Secretary's directives and policies[5]. The fact that the Secretary has legal authority to recall and to retain does not justify, or "legitimize", his subordinates violating his directives governing those recalls and retentions.

c. My petition named specific chaplain commanders who were serving illegally and cited specific directives and federal statutes which were violated. These directives and statutes each have exception clauses for needs of the service, but *OJAG did not attempt to identify any needs of the Navy served* by accessing or retaining even one of these two dozen chaplains on active duty contrary to regulations. Furthermore, there were no needs which could not be "met through promotion"[6].

d. OJAG erroneously attempted to justify retaining Reserve officers on the Active Duty List past the Congressional age limit of 60[7].

## 2. The 96 SERB precept was racially prejudiced.

a. In his precept to the 96 SERB, the Secretary required the board members to reconsider uncompetitive grades of minorities. I characterized this requirement as "re-grading", and OJAG redefined it and said their type was not done[8]. This misses the point. *The Secretary required reconsideration* of any and all uncompetitive grades of minorities. As OJAG noted, the board members all signed that they had complied with the precept[9], and the precept required the subjective and arbitrary reconsideration of all uncompetitive

ENCLOSURE (1) Page 2 of 4

minority grades. This was unfair me, and it violated the Equal Opportunity regulations and laws which prohibit such favoritism.

**3. The 96 SERB board membership policies were religiously prejudiced.**

a. OJAG admitted that it is illegal to appoint board members on the basis of religious identity. By de facto policy[10] the Roman Catholic board member was appointed on the basis of religious identity. Apparently the United Methodist and the Baptist board members were also appointed on the basis of religious identity[11].

b. In addition, OJAG did not address the fact that it was an *easily avoidable conflict of interest* to have the 96 SERB board comprised with members of the denominations with the most candidates, i.e., United Methodist and Baptist.

**4. The 96 SERB board proceedings violated the Secretary's directions and directives.**

a. Violation of Congress' and the Secretary of the Navy's All-Regular Requirement.

(1). It is unconvincing that OJAG cited Ms. Berto as authoritative in her claim that the Reserve officer CDR Gary G. Simons was "serving properly"[12].

(2). CDR Simons[13] was a Reserve officer on the Active Duty List serving in a career grade in violation of the Congressional and Secretarial mandate for an All-Regular Career Officer Force. Regulations required CDR Simons to retire when he completed 20 years active duty, c. 1991, but he served past 2000. CDR Simons did not qualify to be an exception to the regulations, and OJAG did not claim that he did.

(3). The 96 SERB board members should have complied with the All-Regular mandate and selected CDR Simons for three reasons. He was (1) illegally a Reserve officer on the Active Duty List in a career grade, (2) illegally over 24 years of active duty, and (3) not qualified to be an exception to the applicable federal laws and regulations.

b. Violation of the Secretary of the Navy's precept requirement to retain candidates with the most potential.

(1). CDR Simons had no absolutely no potential for significant contributions to the Naval Service because regulations required his immediate separation, he was never promoted to captain, and he had less than 3 years to statutory separation for age[14]. The 96 SERB violated the precept by retaining him.

(2). OJAG claimed there was no evidence of irregularity[15] by the 96 SERB. The "presumption of regularity" is not the "imputation of regularity". The board's retention of multiple FOS (Failure of Selection) candidates and candidates approaching statutory retirement for age is prima facie evidence the board erred. Board members signed the

board report that they followed the precept, but that does not mean that they claimed they made no errors in deliberation or judgment.

## CONCLUSION

The 96 SERB was conducted contrary to law and basic fairness and should be vacated in its entirety. In the alternative, my record should be compared with the other selectees' to see if I should have been retained instead of the Reserve officer. If not, my record should be compared to those of the retained candidates who were illegally favored or who were improperly evaluated, and my retirement should be rescinded accordingly.

## ENDNOTES

1. OJAG Advisory Opinion, para 4.a.(1).(b).

2. See ATTACHMENT A.

3. See ATTACHMENT B.

4. OJAG Advisory Opinion, para 3.(c).(2).

5. OJAG Advisory Opinion, para 4. Footnote 2 to 4.a.(1).(a).

6. See ATTACHMENT C.

7. See ATTACHMENT D.

8. OJAG Advisory Opinion, para 4.b.

9. OJAG Advisory Opinion, para 4.c.(1).

10. See ATTACHMENT E.

11. See ATTACHMENT F.

12. OJAG Advisory Opinion 4. a.(1).(c).(2). See ATTACHMENT G.

13. See ATTACHMENT H.

14. Ibid.

15. OJAG Advisory Opinion, para 4.c.(1).

ENCLOSURE (1)  Page 4 of 4

****** FOR OFFI␣␣L USE ONLY - PRIVACY ACT␣␣TECTED ******

MEMORANDUM TO FILE

Docket No. 01519-03    *cmc*

Examiner: HD    Branch/Status: 1R-USN, RETIRED

Subj: CDR    Byrum, George P., ██████████

Personal appearance requested: ~~NO~~ YES (circled)    Reconsideration: YES
*of 1 Aug 96*

Action Requested: 28 38 96 (circled)    Request that his retirement be rescinded (name be removed from the FY 96 Commander Chaplain Corps SERB list which resulted in his release from active duty). He further requested that his record be considered with those who were selected by the FY-99 Active

In addition to Petitioner's application (DD-149) with any attachments and any related correspondence, the Board considered the following records:    Duty Captain Staff Selection Board and retro active promoted to captain and restored to active duty and serve thirty-seven years commissioned service

- [✓] Enlisted/Officer Service Record
- [ ] Examiner's Case Summary
- [ ] NDRB File
- [ ] Medical Record
- [✓] Advisory Opinion
- [✓] Other:

- [ ] Record of Court-Martial
- [ ] VA Records
- [ ] PEB Record *20 oct 03 w/encl und*

OJAGC ~~ltr~~ dtd 19 May 04 w/encl *memos*

*Counsel
Mr. Arthur A
Schulcz
2521 Drexel St
Vienna, VA 22 18*

Pt's ltr dtd 17 Jul 04 w/encl

Messrs. *KOMAN  MILLER + SWARENS*    *Bcnr file, docket
number 4911-02*

voted on *22 Jul 04*    to:

EXECUTIVE SESSION

- [ ] Grant personal appearance

- [ ] Grant relief
- [ ] Partial relief
- [X] Deny    JUL 2 2 2004

- [ ] Minority Vote: Mr/Ms _____    voted To _____

Comments: _____

_____

_____

- [ ] That Petitioner's naval record be corrected to show that on 1998/11/14 /or _____.

Petitioner was issued a honorable/general discharge by reason of misconduct/or _____ vice the discharge actually issued on that date.



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:hd
Docket No. 01519-03
23 July 2004

MR ARTHUR A SCHULCZ
2521 DREXEL STREET
VIENNA VA 22180

Dear Mr. Schulcz:

This is in reference to your interest, as counsel, in the case of Commander George P. Byrum, United States Navy (Retired).

Enclosed is a letter addressed to your client informing him that his application has been denied. It is requested that you transmit the denial letter to him, a copy of which is enclosed for your records.

It is regretted that a more favorable reply cannot be made.

Sincerely,

W. DEAN PFEIFFER
Executive Director

Enclosure



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:hd
Docket No. 01519-03
23 July 2004

CDR GEORGE P BYRUM CHC USN RET
PO BOX 30309
WINSTON SALEM  NC  27130

Dear Commander Byrum:

This is in reference to your letters dated 13 February and
8 December 2003 with enclosure, seeking reconsideration of your
previous application for correction of your naval record
pursuant to the provisions of title 10 of the United States
Code, section 1552.  Your previous case, docket number 4911-02,
was denied on 30 January 2003.

You request, in effect, that your retirement of 1 August 1996
be set aside.  You also added new requests to be promoted to
captain retroactively on the basis of selection by the Fiscal
Year (FY) 99 Active Duty Staff Captain Selection Board, and that
you be permitted to accrue 37 years of commissioned service.

A three-member panel of the Board for Correction of Naval
Records, sitting in executive session, reconsidered your case on
22 July 2004.  Your allegations of error and injustice were
reviewed in accordance with administrative regulations and
procedures applicable to the proceedings of this Board.
Documentary material considered by the Board consisted of your
letter, together with all material submitted in support thereof,
the Board's file on your prior case, your naval record and
applicable statutes, regulations and policies.  In addition, the
Board considered the advisory opinions furnished by the Office
of the Judge Advocate General dated 22 October 2003 and 19 May
2004, each with enclosure, copies of which are attached.  The
Board also considered your letter dated 17 July 2004 with
enclosure.

After careful and conscientious consideration of the entire
record, the Board found that the evidence submitted was
insufficient to establish the existence of probable material
error or injustice.  In this connection, the Board substantially

concurred with the comments contained in the advisory opinions.
The Board found nothing objectionable about the precept of the
FY 96 Selective Early Retirement Board (SERB), as it related to
minorities.  The Board found the precept did not mandate
preferential treatment for minorities, but merely encouraged
fair and equitable consideration of all officers.  The Board was
unable to find the FY 96 SERB was occasioned by denominational
favoritism, nor could it find SERB members were named on the
basis of religious identity.  The Board was unable to find that
SERB members of a given denomination had a conflict of interest
in considering officers of the same denomination.  Finally,
concerning your assertion, at Attachment H to the brief enclosed
with your letter of 17 July 2004, that Commander S--- was
illegally augmented from the Naval Reserve to the Regular Navy,
the Board noted that Attachment I to the brief enclosed with
your letter of 8 December 2003 shows this officer was a Naval
Reserve officer when he was considered and retained by the FY 96
SERB.  In view of the above, the Board again voted to deny
relief.  The names and votes of the members of the panel will be
furnished upon request.

It is regretted that the circumstances of your case are such
that favorable action cannot be taken.  You are entitled to have
the Board reconsider its decision upon submission of new and
material evidence or other matter not previously considered by
the Board.  In this regard, it is important to keep in mind that
a presumption of regularity attaches to all official records.
Consequently, when applying for a correction of an official
naval record, the burden is on the applicant to demonstrate the
existence of probable material error or injustice.

                              Sincerely,

                              W. DEAN PFEIFFER
                              Executive Director

Enclosure

Copy to:
Mr. Arthur A. Schulcz

**Deramous, Hank  CIV BCNR**

| | |
|---|---|
| **From:** | byrumjg@bellsouth.net |
| **Sent:** | Monday, August 02, 2004 12:13 PM |
| **To:** | Deramous, Hank  CIV BCNR |
| **Subject:** | Re: Reply for BCNR  Docket No. 04911-02 |

Dear Mr. Deramous,
As pertaining to our phone conversation in the past hour, I am writing to request the
voting results, and any, and all of the other information I am entitled to recieve related
to my case.  Thank you for your assistance.
Please acknowledge your receipt of this email soonest.
Sincerely,
GEORGE P. BYRUM, CDR, CHC, USN (RET)



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:hd
Docket No. 01519-03
5 August 2004

CDR GEORGE P BYRUM CHC USN RET
P O BOX 30309
WINSTON SALEM   NC 27130

Dear Commander Byrum:

Reference is made to your e-mail of 2 August 2004 requesting the names and votes of the members of this Board who considered your latest case, docket number 01519-03.

You are advised that on 22 July 2004, the following Board members voted unanimously to deny the relief you requested:

    Mr. David L. Koman
    Mr. Chad E. Miller
    Mr. William G. Swarens

It is hoped that this information will be of assistance.

Sincerely,

*Jonathan S. Ruskin*

JONATHAN S. RUSKIN
Head, Performance Section

Copy to:
Mr. Arthur A. Schulcz

CDR George P. Byrum, CHC, USN (Ret.)
PO Box 30309
Winston-Salem, NC 27130
byrumjg@bellsouth.net
336-785-4523

August 28, 2004

To:    Executive Director, Board for Correction of Naval Records

Ref:    (a)  Your letter HD:hd, Docket No. 01519-03, of 23 July 2004

Encl:    (1)  Supplement to Block 17 of my DD FORM 149 dtd 20020528

1.  The reference granted me permission to supplement my BCNR petition.  Therefore, I hereby respectfully submit my Supplement presenting new and material evidence not previously considered by the Board for their reconsideration of my petition.

2.  I want to express my earnest appreciation to the BCNR staff and Board members for all of their time, attention, and careful processing of my complex petition.   I also want to thank them for affording me this opportunity to provide additional information.

3.  Thank you for your assistance.

G. P. BYRUM

SEP 14 2004

Supplement to Block  DD FORM 149 ico CDR George P. B   n, CHC, USN (Ret.)

## SUPPLEMENT TO BCNR PETITION

### Supplement Outline

A.  Background and Introduction.
B.  Illegal governmental actions overcome the presumption of regularity.
C.  The Navy is required to follow its own regulations and federal laws.
D.  The Navy did not follow its own regulations for board membership.
E.  Illegal board membership renders a board and its actions null and void.
F.  The Navy did not follow its own regulations and congressional requirements for an All-Regular career-grade officer corps.
G.  The petitioner's SER was illegal arbitrary and capricious employment termination.
H.  The petitioner's boards were null and void, and his retirement was illegal.
I.  Requested remedies.

### A.  Background and Introduction

1.  I filed my petition 28 May 2002 and amended it 8 December 2003.  BCNR disapproved it on 24 July 2004, purportedly due, in part, to heavy reliance on OJAG's Advisory Opinion.

2.  Believing OJAG to be mistaken on two major points, my counsel and I did further research.  We found chaplain board membership policies to be irrefutably in violation of board membership regulations and policies.  We also studied the Legislative History of DOPMA, which was incorporated into Title 10, United States Code.  This History explains congressional intent regarding their requirement for an All-Regular career-grade officer corps.  It proves that OJAG is incorrect for three reasons regarding the chaplaincy's retention of Reserve officers on the Active Duty List (ADL) during a Reduction in Force (RIF).

3.  As shown below, the Navy has to follow its own regulations for board membership.  I have documented that the policies for Chaplain Corps board membership throughout the 1990's violated the applicable regulations.  This made the board composition illegal on my SER board and rendered that board null and void.  Consequently, my selection was null and void, and my attendant retirement was baseless and illegal.

4.  Also shown below, the captain selection boards that I missed while illegally retired were null and void, because they were illegally comprised.  This fact makes the special board regulations, SECNAVINST 1401.1 series, non-applicable.  The special board selection criteria involve comparisons with selectees and non-selectees.  Since the regularly scheduled boards were null and void, there were no selectees or non-selectees for comparisons.  This means that if the Secretary rescinds my retirement retroactively, my consideration for promotion to captain will have to be de novo.

### B.  Illegal governmental actions overcome the presumption of regularity.

1

Supplement to Block I    DD FORM 149 ico CDR George P. B___n, CHC, USN (Ret.)

1. Description of the Presumption of Regularity.  The presumption of regularity is:

> "…the strong, but rebuttable, presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." Sanders v. United States, 594 F.2d 804 (1979); see also Bockoven v. United States, [Bockoven v. Marsh] 727 F.2d 1558(Fed. Cir.), cert. *denied* 469 U.S. 880 (1984)."  Byrum Petition Legal Analysis, second page 7, section 4.c.

The presumption principle simply means that the burden of proof is on the non-government party to prove that proscribed governmental actions were done illegally, rather than on the government to prove its proscribed actions were done legally.

2.  To rebut the presumption that Navy officials did "discharge their duties correctly, lawfully, and in good faith" I must prove they violated the law.  I have done that below.

### C. The Navy is required to follow its own regulations and federal laws.

1.  Subordinates of the Secretary of the Navy are obviously required to obey his directives, and the Secretary himself must comply with his own directives.  As the Supreme Court explained:

> "The courts have long recognized that *agencies are bound by the terms of their own regulations. See, e.g., United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954); *Service v. Dulles,* 354 U.S. 363 (1957); *Lopez v. FAA,* 318 F.3d 242 (D.C. Cir. 2003). *This principle is as applicable to the Department of Defense and the armed services as to other agencies. Blassingame v. Secretary of the Navy,* 866 F.2d 556 (2d Cir. 1989); *Boddie v. Department of Navy,* 827 F.2d 1578 (Fed. Cir. 1987). Under this well-settled principle, the terms of the repeatedly published FMR… are legally binding on the agency."  (Emphases added). *Favreau v. U.S.,* Petition for a Writ of Certiorari, March 28, 2003, page 16. (Emphases added).

2.  It is a well-established legal precedent and a "self-evident proposition that the Government must obey its own laws".

> "It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that *agency action in contravention of applicable statutes and regulations is unlawful* . . . The military departments enjoy no immunity from this proscription . . . The logic of [the cases supporting this principle] derives from **the self-evident proposition that the Government must obey its own laws.**" (Emphases added). *Dilley v. Alexander,* 603 F.2d 914, 920 (D.C. Cir. 1979).

See also *Adkins v. United States,* 68 F.3d 1317, 1323 (Fed. Cir. 1995) "In cases in which procedural violations are alleged, the test or standards against which this

2

Supplement to Block 1   DD FORM 149 ico CDR George P. B___n, CHC, USN (Ret.)

court measures the military's conduct are inherent: they are *the applicable statutes and regulations*." (Emphasis added).

3. Even when the Secretary is not required to have a regulation, if he implements a directive, he must comply with it.

> "It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all . . . ." *Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988).

4. At the time of my boards, the Chaplain Corps was legally required to adhere to "the applicable statutes and regulations" for selection board membership and for an All-Regular career officer corps. As demonstrated below, it did not.

### D. The Navy did not follow it own regulations for board membership.

1. SECNAVINST 1401.3 of 1 December 1989 (still effective, with Change 1) was the governing directive for selection board membership of my SERB. As OJAG said in its Advisory Opinion:

> SECNAV Instruction 1401.3 governs the membership composition of SERB boards and does not require one member from each faith group/denomination of the Chaplain Corps. Additionally, the selection of board memberships cannot, by statute, consider the faith group/denomination of the prospective member.

Legal Analysis, section d.1.

2. The Center for Naval Analyses (CNA) is a federally funded research and development center serving the Department of the Navy and other defense agencies. At the behest of the Chief of Chaplains, CNA did a study entitled "Promotions in the Navy Chaplain Corps," dated 10 March 2000 (the "Study").

> The Navy Chief of Chaplains asked the Center for Naval Analyses (CNA) to help the Chaplain Corps examine its roles, missions, functions, and structure. While interviewing chaplains and line officers, we discovered that perceptions of bias in the promotion process are widespread.

Attachment A, page 1.

3. According to the study, throughout the period 1989-2000 the Chaplain Corps made faith group identity part of the board member selection process in violation of SECNAVINST 1401.3's mandate by reserving one promotion board membership for a Catholic chaplain.

> When we examined promotions of a smaller sample, those taking place after 1986, we found that there was no longer a meaningful differential. *This change*

3

Supplement to Block 1    DD FORM 149 ico CDR George P. B.    n, CHC, USN (Ret.)

*may be related to a change in compostion of promotion boards, from two Roman Catholic members to one.*

Attachment A, page 1. (Emphasis added).

The period under discussion began in 1986, when the CHC changed from its Two RC Board membership Policy due to injunction in the *Wilkins v. Lehman* litigation that challenged the policy, and the new policy was still the practice when the Study was published, 10 March 2000.

4. RADM Holderby, in his 6/18/98 testimony to the DODIG investigators who were investigating the FY 97 and 98 chaplain commander promotion boards (the "97-98 DODIG"), admitted that there was "…always a [Catholic] priest on the board." Attachment B, page 24, lines 17-23. In its Study, CNA verified this well-established Chaplain Corps policy of one Roman Catholic board member on each selection board (the "1 RC Policy") for the period 1986-2000. 1986 is when the San Diego District Court issued a Preliminary Injunction in Wilkins v. Lehman, because the Navy's policy of seating two Roman Catholic chaplains on every selection board appeared unconstitutional. The new policy was still in operation in March 2000, when CNA recommended the Chaplain Corps at least consider complying with SECNAVINST 1401.3:

> The Navy may want to adopt the policy of the Army and Air Force: their chaplain boards include only one chaplain, and the rest are line officers. *At the very least, the Chaplain Corps should consider selecting members of promotion boards without regard to faith group, as mandated in SECNAV Instruction 1401.3.*

Attachment A, page 2. (Emphasis added).

5. The 1 RC Policy violated three SECNAVINST 1401.3 prohibitions.

a. Religious affiliation cannot be used to exclude an officer from board membership.

"Exclusion from board membership by reason of gender, race, ethnic origin, or *religious affiliation* is prohibited." (Emphasis added). Page 3, section 4.a.

It is obvious that reserving one board membership for a chaplain who is Roman Catholic in religious affiliation necessarily excludes all chaplains of all other religious denominations from that board membership by reason of their religious affiliation not being Roman Catholic. This prohibition made the 1 RC Policy illegal for my boards.

b. The board member selection process cannot be used to sponsor any single interest.

4

Supplement to Block 1__ JD FORM 149 ico CDR George P. B__ ..h, CHC, USN (Ret.)

"Guidance on selection board representation in this instruction is **not to be used to sponsor any single interest**, but is to be used to enhance the knowledge, experience and understanding of each board as a whole." (Emphasis added). Page 3, section 5.

SECNAVINST 1401.3 requires one line officer member and all chaplains for the remaining members. Section 1.c.(1). This guidance to use chaplains cannot be used to sponsor any single interest, such as the Roman Catholic religion. Since the 1 RC Policy ensured that a Roman Catholic chaplain will represent Roman Catholic interests in the board process, the policy violated the sponsorship prohibition. The sponsorship prohibition of SECNAVINST 1401.3 made the 1 RC Policy illegal for my boards.

c. Religious affiliation cannot be a criterion for promotion board membership.

"Chaplain Corps board members shall be nominated **without regard to religious affiliation**." (Emphasis added). Section 1.c.(1).(e).

Because the 1 RC Policy required the nomination of a chaplain affiliated with the Roman Catholic denomination, it violated this religious affiliation criterion prohibition. This prohibition made the 1 RC Policy illegal for my SERB. This was not harmless error as shown by the evidence collected by and relating to the 97-98 DODIG, which documented that Catholic chaplains with inferior records were selected for promotion while Protestants with excellent records were not. For example, CAPT J. Stafford, the Minority Affairs Officer who reviewed the records of those selected by the challenged boards, told the DODIG that the records of the priests were really bad, to include consistent violations of Navy body fat standards and a DUI in one Catholic chaplain's already poor record. 6/2/98 DODIG Interview, pages 11 ("There were Catholics [selectees] who had really bad records."); 14-16 (DUI and bad fitness reports):18-24.

6. In sum, the Chaplain Corps' selection board membership policies for my boards violated the mandates of SECNAVINST 1401.3 and were illegal.

**E. Illegal board membership renders a board and its actions null and void.**

1. There is a crucial distinction between a legally-composed board doing an illegal procedure and an illegally-composed board doing a legal procedure.

2. In *Christian et al v. U.S.*, a legally-composed board illegally gave special consideration to minorities. There the Federal Circuit found that the "harmless error" test was appropriate to determine whether there was injury, in contrast to *Dilley* and *Doyle*, where the boards were illegally-composed by omitting a mandatory reservist member. The *Dilley* and *Doyle* boards were null and void, as recognized by the United States in opposing the *Christian* plaintiffs' Petition for *Certiorari*.

In *Dilley* and *Doyle*, however, the promotion boards were unlawfully constituted because they did not contain the statutorily-required minimum number of reserve

5

officers. Because the separations in those cases were conducted by a body without statutory authority, the courts concluded that it was as if the separations had never occurred.

Attachment D, page 11, section c.

3. In sum, the illegal board composition of my SER board rendered it null and void.

### F. The Navy did not follow its own regulations and congressional requirements for an All-Regular career-grade officer corps.

1. Congress intended that the All-Regular career-grade officer corps mandate would end the "anomaly" of the career active-duty reservist. Career officers must augment into the Regular Navy by their 11th year or upon promotion to lieutenant commander. See Attachment C, pages 6343, 6355, and 6356.

2. Any legitimate need for exceptions to Congress' All-Regular mandate must be obtained through the annual process of amending DOPMA. The Chaplain Corps did not do this.

3. In sum, the Chaplain Corps' wholesale violation of regulations and DOPMA in retaining a score of unnecessary 4105 commanders on the ADL was illegal mismanagement, and it was religious prejudice against me.

### G. My SER was illegal arbitrary and capricious employment termination.

1. I was grandfathered by the provisions DOPMA. I had a normal career expectation of 28 years active-duty commissioned service as O5 and 30 years as O6 unless SERBed. See Attachment B, page 6357.
   - I was not SERB-eligible unless I twice failed of selection for promotion to captain.
   - I could be considered for SER only once per 5 years.

2. Reserve officers on indefinite extension have no active-duty expectations, except safe harbor at 18 years active-duty service. Reserves normally go home first in RIFs.

> Specifically the reservist on active duty has no expectation of minimum time in grade prior to retirement or separation and may be released at any time subject to the needs of the service. When there are reductions in force, particularly at the time the strengths of the services are being reduced following a war, it is necessary to reduce the number of officers in various grades; and the reductions fall heavily upon reserve officers.... Since reserve officers have no such expectation, in times of reduction in force, reserve officers in these senior grades may be released with anywhere from 10 to 18 years of service and are, thus, required to leave active duty short of earning immediate retirement.

Supplement to Block 1   DD FORM 149 ico CDR George P. B    n, CHC, USN (Ret.)

Attachment C, page 6343.

3. In 1990 Congress enhanced the authority for SER through 10 USC § 638a. This action abridged my grandfathered rights.
- My normal career expectations (28-30 years) were eliminated.
- I was SERB-eligible with no failures of selection to captain.
- I was considered by the FY95 SERB and then selected by the FY96 SERB with no five year hiatus.

4. Implied contract and tenure. Military necessity would have been a legitimate reason for Congress, through the emergency SERB processes, to violate my DOPMA contract and tenure rights to have expectations and opportunity for a normal career. However, until all of the unnecessary 4105 commanders with no tenured rights to career expectations were sent home in the RIF, there was no military necessity, or necessity of any kind, to abridge my grandfathered rights.

5. In sum, the Chaplain Corps' refusal to comply with federal law and military regulations rendered my SERB illegal, because the process violated the Administrative Procedures Act prohibition of arbitrary and capricious termination of employment.

**H. The petitioner's boards were null and void, and his retirement was illegal.**

1. Because my SER Board membership was illegally composed in violation of SECNAVINST 1401.3, see D. above, its results are null and void.

2. The violation of my contractual and tenure rights as a Regular officer, while a score of unnecessary 4105 commanders with no such rights were illegally on the ADL during a RIF, rendered my SERB arbitrary, capricious, and illegal.

**I. Requested Remedies.**

1. The requested remedies of my amended petition are incorporated herein.

2. I most respectfully request that the Secretary vacate my SER board in its entirety, that I be retroactively returned to active duty, that I be considered for captain de novo, and that my record, pay and allowances be corrected accordingly.

3. Because both the 96 SERB and the FY98 and subsequent chaplain captain promotion boards were illegally comprised, and all of their actions were null and void, there are no valid selectees or nonselectees with which to compare me. Consequently, the selection criteria of SECNAVINST 1401.1 series "Special Promotion Selection Boards..." are not applicable. My captain board(s) must be conducted de novo, commencing with the first board for which I was eligible, the FY98 chaplain captain promotion selection board.

7

OPT
OPS 38/46 #
p-recon
AUG 31 2004

**REFERENDUM**

hd

Byrum, George P.

*07048-04*

Subject's Name:

Byrum _____ George _____ P. _____
Last                First                MI    Suffix

☒ REQUEST FOR RECONSIDERATION  079  28 AUG 04

☒ Approved: _Jonnahn_ _31 AUG 04_

☐ Disapproved: _____ _____

_____ _____
Signature      Date

(336) 785-4523

☐ ADMINISTRATIVE RE-OPEN

☐ Approved: _____ _____
Signature      Date

COMMENTS: TWO NEW ISSUES: ① ILLEGAL POLICY
RE BD MBRSHIP  ② IMPROPER RETENTION
OF RET OFFICERS ON ACTIVE DUTY DURING RIF
NEED NEW AO FROM OTJAG (ADMIN LAW)

_____ _____

**NOTE:** Please deliver to
OIS Section with "closed"
BCNR file

NEW Docket No.

7048-04

(OIS/11 1Jul86)

00416



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:kes
Docket No. 07048-04
4 October 2004

From: Chairman, Board for Correction of Naval Records
To:   OJAG (ADMIN LAW) Code-13

Subj: REQUEST FOR COMMENT AND RECOMMENDATION IN THE CASE OF
      CDR GEORGE F. BYRUM, USN, RETIRED, ▓▓▓▓▓▓▓▓

Ref:  (a) 10 U.S.C. 1552

Encl: (1) BCNR File

1.  Pursuant to reference (a), subject requests a correction of
his naval record as indicated in enclosure (1).

2.  In order to assist the Board in arriving at a fair and
equitable decision in this case, it is requested that your
comments and recommendation be furnished.

3.  It is further requested that the enclosure be returned with
your reply.

*Jonathan S. Ruskin*

JONATHAN S. RUSKIN
By direction

NOTE:

*Pls. read* NOTE *on the* CARD *of the* BCNR FILE



**DEPARTMENT OF THE NAVY**
OFFICE OF THE JUDGE ADVOCATE GENERAL
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON NAVY YARD DC 20374–5066

IN REPLY REFER TO

1070
Ser 13/1BC12547.04
15 Dec 04

From:   Deputy Assistant Judge Advocate General (Administrative Law)
To:     Chairman, Board for Correction of Naval Records

Subj:   REQUEST FOR COMMENTS AND RECOMMENDATION ICO CDR GEORGE P. BYRUM, CHC, USN (RET.)

Ref:    (a) Your ltr HD:kes Docket No 07048 of 4 Oct 04

Encl:   (1) Legal Analysis

1. This responds to your reference (a) request for our comments and recommendation in the case of Commander George P. Byrum, Chaplain Corps, U.S. Navy (Retired) (Petitioner).

2. <u>Issues</u>

   a. Whether the board members for the FY96 Selective Early Retirement Board (SERB) were improperly selected based on religious affiliation.

   b. Whether 10 U.S.C. § 638 was the appropriate statute to determine Petitioner's eligibility for the FY96 SERB under a "grandfather" theory, despite the rules for eligibility being modified by 10 U.S.C. § 638a.

3. <u>Short answers</u>

   a. No. Although the regulatory guidance provides that Chaplain Corps board members shall be nominated without regard to religious affiliation, Petitioner has not provided evidence to support his claim that board members were selected based on their religious affiliation.

   b. No. Because the criteria for SERB eligibility were modified by 10 U.S.C. § 638a without a "grandfather" provision, Petitioner's eligibility for the FY96 SERB was lawfully determined pursuant to 10 U.S.C § 638a.

4. <u>Discussion</u>. Petitioner raises the issues identified above in a supplement to his petition to BCNR. At the time he was seeking to become a named plaintiff in <u>Adair v. England</u>, 183 F. Supp. 2d 31 (D.D.C. 2002). To date he has not been named a plaintiff in that case. Enclosure (1) provides a detailed legal analysis of the issues.

5. <u>Point of contact</u>. My point of contact for this matter is Captain Martin E. Adams, USMC, at 703-604-8219 or E-Mail Martin.Adams@navy.mil.

B. B. CLANCY
Acting

00418

Legal Analysis

1.  Issues

a.  Whether the board members for the FY96 Selective Early
Retirement Board (SERB) were improperly selected based on
religious affiliation.

b.  Whether 10 U.S.C. § 638 was the appropriate statute to
determine Petitioner's eligibility for the FY96 SERB under a
"grandfather" theory, despite the rules for eligibility being
modified by 10 U.S.C. § 638a.

2.  Short answers

a.  No.  Although the regulatory guidance provides that
Chaplain Corps board members shall be nominated without regard
to religious affiliation, Petitioner has not provided evidence
to support his claim that board members were selected based on
their religious affiliation.

b.  No.  Because the criteria for SERB eligibility was
modified by 10 U.S.C. § 638a without a "grandfather" provision,
Petitioner's eligibility for the FY96 SERB was lawfully
determined pursuant to 10 U.S.C § 638a.

3.  Background.  Petitioner joined the Chaplain Corps in Aug 81
after having served for six years on active duty.  He was
selected for involuntary early retirement as a commander in
FY96.  At the time of his original BCNR petition, he was seeking
to join the lawsuit of Adair v. England, 183 F. Supp 2d 31
(D.D.C. 2002), protesting alleged faith group/denominational
discrimination in the Navy.  To date he has not joined this
lawsuit.  The petition at hand is a second amendment to, and an
extension of, Petitioner's original BCNR request of 28 May 02.
In this 28 May 02 BCNR request, Petitioner alleged that the SERB
that selected Petitioner for involuntary retirement did not
consider several eligible commanders senior to Petitioner on the
lineal list and did not consider some faith
groups/denominations.  On 8 Dec 03, Petitioner submitted an
amended BNCR petition raising new objections that Reserve recall
retention policies were not followed; that records of minority
candidates before the FY96 SERB were improperly regarded; and
that board membership did not appropriately reflect the faith
group dominations.

Enclosure (1)

4.  Discussion.  In his most recent amendment of 28 Aug 04, Petitioner alleges that the FY96 SERB membership that selected him for early retirement was improper because members were selected based on religious affiliation, contrary to the regulatory guidance.  Petitioner also alleges that the eligibility criteria of 10 U.S.C. § 638a should not have been applied to determine his eligibility for the FY96 SERB because he was "grandfathered" by the Defense Officer Personnel Management Act (DOPMA) as codified by 10 U.S.C. § 638.  As a relief, he requests that the Secretary of the Navy vacate the FY96 SERB, that he be returned to active duty, and that he be considered de-novo for promotion to captain.[1]

a.  Petitioner does not provide evidence that that FY96 SERB board members were improperly selected based on religious affiliation.  Regulatory guidance provides that Chaplain Corps board members shall be nominated without regard to religious affiliation.[2]  Petitioner alleges that the members for the FY96 SERB were selected based on religious affiliation in violation of the regulatory guidance.  In support of his assertion, he notes that there was a policy in effect, as articulated in a Center for Naval Analyses (CNA) study of 1 Mar 00, that reserved one position on the board for a Roman Catholic chaplain.[3]  A careful review of the cited CNA study notes only that a Roman Catholic was on the referenced boards not that he was assigned as a matter of policy or preference.  Petitioner assumes that the presence of a Roman Catholic member is dispositive of an underlying policy.  The latter does not follow the former. Aside from this spurious logic, Petitioner does not provide any other

---

[1] Petitioner believes that a special selection board is not an appropriate remedy because the FY97 and FY98 USN Captain Staff (Chaplain Corps) promotion selection boards were illegally comprised.

[2] SECNAVINST 1401.3, CH-1 (8 Aug 91).

[3] The CNA study is a draft and is not ready for release.  The CNA study does not provide "clear and solid" evidence that such a policy was in effect.  To the contrary, the proposition that one Roman Catholic Chaplain was required to serve on promotion boards as a matter of policy was derived from a dissertation written in 1992 by a doctoral student at the United States International University.  "A Study of Faith Group Affiliation and Promotions to Captain and Commander in the U.S. Navy Chaplain Corps" was written by Mr. Stanley H. McCreary to fulfill the requirements for a Doctor of Philosophy in Psychology.  Part of the dissertation addressed the 12 Feb 86 preliminary injunction issued by the United states District Court for the Southern District of California in Wilkins v. Lehman, in which the Court enjoined the Navy from separating LT Wilkins who alleged that the Navy policy requiring two Roman Catholic members on promotion boards violated the Establishments Clause of the First Amendment of the Constitution.  In its order, the Court recommended that the Navy adopt the practice of the Army and the Air Force, by which chaplain promotion selection boards are composed mainly of line officers.

evidence that such a policy was in effect at the time in question.

b. <u>Petitioner's eligibility for the FY96 SERB was properly determined under 10 U.S.C. § 638a.</u>  Section 638 of title 10, U.S. Code, provided that an SERB can consider a Navy commander who has twice failed of selection[4] and that Navy officers in a grade below rear admiral (lower half) may not be considered by an SERB more than once in any five-year period.[5]  Section 638a of title 10, U.S. Code, modified the 10 U.S.C. § 638 eligibility criteria for SERBs by providing that an SERB can consider a Navy commander who has failed of selection once and that Navy officers can be considered by an SERB more than once in any five-year period.  No grandfather provision under the statutory language or the DOPMA was provided.  Petitioner asserts that the criteria in 10 U.S.C. § 638 should have been used to determine his eligibility for the FY96 SERB and that he was grandfathered by the DOPMA.  Despite his allegations, Petitioner does not cite any legal authority for his belief that he was "grandfathered" by 10 U.S.C. § 638.  Since 10 U.S.C. § 638a modified 10 U.S.C. § 638 and did not provide any "grandfather" provision, the FY96 SERB properly deemed Petitioner eligible for SERB consideration.

4. <u>Conclusion.</u>  Because Petitioner has not provided sufficient evidence to support his claim that board members were selected based on their religious affiliation and because the criteria for SERB eligibility was properly modified by 10 U.S.C. §638a without a "grandfather" provision, Petitioner's request for BCNR relief should be denied.

---

[4] 10 U.S.C. § 638(a)(1)(A).

[5] 10 U.S.C. § 638(c).

3



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:kes
Docket No. 01519-03
21 December 2004

CDR GEORGE P BYRUM USN RET
P O BOX 30309
WINSTON SALEM NC 27130

Dear Commander Byrum:

This is in reference to your application for correction of your
naval record.

Your case has been assigned to the Board's Performance Section.
All correspondence pertaining to your case should be sent to the
attention of this section.

The Board has received an advisory opinion, a copy of which is
enclosed. The views set forth in this opinion are those of the
office that submitted it, and are not binding on the Board or
its reviewing authority. If you wish to respond to the advisory
opinion or submit documentary material in support of your
application, it is requested that you do so within 30 days of
the date of this letter. Your response should be sent to the
Board and not to the official who furnished the advisory
opinion.

If you are unable to respond within the 30-day period, you may
request an extension of time. In your request, please indicate
when the Board may expect to receive your response. If no
response or request for an extension of time is received within
the 30-day period, your case will be classified as being ready
for review by the Board, and will be decided on the evidence of
record as soon as the Board's crowded docket of cases permits.

As a general rule, the Board will not decide a case prior to the
expiration of the 30-day period unless it has received the
applicant's response to the advisory opinion. However, an

exception may be made if a case warrants expeditious action. The most common example is when an applicant who is seeking removal of a fitness report is also scheduled to be considered for promotion within the 30-day period.  Under these circumstances, the Board may, in its discretion, decide the case before the 30-day period expires and without waiting for the applicant's response to the advisory opinion.  Should the case be denied, the Board will treat the applicant's response as a request for reconsideration.

                              Sincerely,

                              JONATHAN S. RUSKIN
                              Head, Performance Section

Enclosure
OJAG memo dtd 15 Dec 04

CDR George P. Byrum, CHC, USN (Ret.)
P O Box 30309
Winston-Salem, NC 27130
(336) 785-4523
byrumjg@bellsouth.net

February 22, 2005

From:   CDR George P. Byrum, CHC, USN (Ret)
To:     Head, Performance Section, Board for Correction of Naval Records

Subj:   Submission of My Reply ico Docket No. 01519-03

Encl:   (1) Petitioner's Reply To OJAG Advisory Opinion Re Supplement ICO Docket
No. 01519-03

1. The subject enclosure is provided for the Board. I respectfully request to appear
before the BCNR three-member panel. Due to the obfuscatory nature of the OJAG
Advisory Opinion, my presence may be required to provide further evidence and
clarification to ensure a favorable resolution.

2. Thank you for your consideration of this request.

G. P. BYRUM

## PETITIONER'S REPLY TO OJAG ADVISORY OPINION RE SUPPLEMENT ICO
## DOCKET NO. 01519-03

### INTRODUCTION

1. My Supplement addresses two issues: (1) My FY96 SERB was <u>illegally-composed</u>, and (2) Congressional intent and stated Navy policy required an <u>All-Regular career force.</u>

> Believing OJAG to be mistaken on two major points, my counsel and I did further research. We found chaplain board membership policies to be irrefutably in violation of <u>board membership</u> regulations and policies. We also studied the Legislative History of DOPMA, which was incorporated into Title 10, United States Code. This History explains congressional intent regarding their requirement for an <u>All-Regular</u> career-grade officer corps. It proves that OJAG is incorrect for three reasons regarding the chaplaincy's retention of Reserve officers on the Active Duty List (ADL) during a Reduction in Force (RIF). (Emphases added). My Supplement ¶ 2.

2. OJAG admitted that consideration of religious affiliation in selecting board membership is illegal.

> "Additionally, the selection of board memberships cannot, by statute, consider the faith group/denomination of the prospective member." OJAG advisory opinion of 19 May 04, Page 7, ¶ d.1.

However, the 15 December 2004 OJAG advisory opinion stated that I did not provide evidence that my SERB was composed by religious affiliation.

> "Although the regulatory guidance provides that Chaplain Corps board members shall be nominated without regard to religious affiliation, Petitioner has not provided evidence to support his claim that board members were selected based on their religious affiliation." Legal Analysis, ¶ 2.a.

Therefore, I am providing said evidence under the three headings BOARD COMPOSITION BY THE ONE ROMAN CATHOLIC CHAPLAIN POLICY, BOARD COMPOSITION BY FAITH GROUP CLUSTER and BOARD COMPOSITION BY CANDIDATE DENOMINATION.

3. <u>OJAG tacitly conceded that an All-Regular career force is mandatory</u>. By not commenting on the fact that an All-Regular career force is mandatory, OJAG concedes that the reservist CDR Simons should not have been retained by my SERB and that my SERB was, in fact, completely unnecessary. To ensure the issue is clear, and for the convenience of the Board, I am restating it under AN ALL-REGULAR CAREER FORCE IS MANDATORY.

### BOARD COMPOSITION BY THE ONE ROMAN CATHOLIC CHAPLAIN POLICY

4. Exhibit A shows the board members of 73 promotion boards from 1977 to 2002. Exhibit B shows the board members of the FY 95 and FY96 chaplain commander SER boards. All 75 boards each had at least one Roman Catholic chaplain member.

5. The Navy provided the 73 promotion board precepts in a federal court case and said 3 others in the timeframe could not be located. I sought the three missing precepts through a FOIA

1

request to Mr. David German, and he said they are still missing. The board-member names were excerpted from the board precepts, and the denominations were obtained from the Index to the History of the Chaplain Corps, Volume X, at Exhibit C. (If the Board wishes the complete documents, I will provide them). Every one of the 73 promotion boards in Exhibit A had from one to three Roman Catholic chaplain board members. The chances of the 73 boards each having a Catholic member by a "faith neutral" process is 1 in 16 million! Exhibit D, ¶ 4.

6. CAPT Stephen B. Rock was the Chaplain Detailer May 1994 – May 1996. See Exhibit E, page 8, lines 13-17. In his two year tenure he was responsible for nominating the chaplain members of the FY95 SER board and of my FY96 SER board. See Exhibit E, page 48 , lines 14-19. CAPT Rock explained that his responsibilities in choosing chaplains board members entailed choosing a Roman Catholic chaplain - as well as a liturgical chaplain and a non-liturgical chaplain - for each board.[1]

> Then I had to make sure that there was a Catholic priest on board. Then I had to make sure that there was going to be, again, a liturgical chaplain, a nonliturgical chaplain. Exhibit E, page 50, lines 9-12.

CAPT Rock said he put a Roman Catholic chaplain on every board.

> Q. So you said you had to make sure there was a Roman Catholic on the board?
> A. Yes.
> Q. There was always a Roman Catholic on every board?
> A. Yes. *Id*, page 55, lines 1-6.

7. CAPT Rock said the chaplain admiral which was not going to serve as the Board President would approve the chaplain members Rock nominated for that board.

> He [RADM Muchow] says if I'm going to be sitting on the board, I don't want to know who the other members of the board are. So if I'm going to be president of this particular board, I want you to bring the list in to Chaplain Holderby and have him go over it and make sure it's got the spread and all this stuff. If he's going to be on the board, then I want to be the one to look at the list. *Id*, page 52, lines 16-23.

RADM Muchow was President of my SER board. See Exhibit B. This means that RADM Holderby approved the chaplain members for my FY96 SER board. He adhered to the requirement to have a Roman Catholic chaplain on every board. He testified to DODIG investigators that he tried "to have at least one priest on every Board" and that there was "...always a [Catholic] priest on the board."

> Q [By DODIG] Okay. Do you try to have at least one priest on every Board?
> A [By RADM Holderby] Yes.
> Q Okay.
> A We do.
> Q Because there would probably be people - -
> A Always a priest on the Board.
> Q Right. Okay. That kind of raises the issue of *Wilkins v. Layman* [sic]. Are you familiar with that injunction...? June 18, 1998 DODIG Preliminary Inquiry, page 24, lines 15-25.

---

[1] The FY91-FY94 Chaplain Captain SER boards also conducted the respective Commander SER Boards. See Exhibit F, ¶ 4.b. These boards were composed of four line admirals and one chaplain admiral. Because no Roman Catholic chaplain admiral was on the active duty list throughout the reduction in force, these boards did not have the standard Roman Catholic member.

2                                           Docket No. 01519-03

8. Therefore, CAPT Rock chose and RADM Holderby approved the Roman Catholic member of my SER board based on his religious affiliation being Roman Catholic. This violated the SECNAVINST 1401.3 religious affiliation prohibition, and it rendered my board illegally-composed.

9. In sum, the documented pattern and practice of Exhibits A and B irrefutably demonstrate a de facto Chaplain Corps policy of assigning a Roman Catholic chaplain to every board possible. In addition, the sworn statements of CAPT Rock and of RADM Holderby confirm that both men had to assign a Roman Catholic chaplain to my SER board on the basis of religious affiliation. Therefore, my SER board was undeniably composed in violation of the SECNAVINST 1401.3 religious affiliation prohibition. My SER board was thereby an illegally-composed nullity and my selection should be voided accordingly.

## BOARD COMPOSITION BY FAITH GROUP CLUSTER

10. In 1987 Chief of Chaplains RADM McNamara described the practice that replaced the two Roman Catholic chaplain board members policy the federal court deemed illegal in 1986. The new procedure was assigning board members by Faith Group Cluster identity. Exhibit G, Tab A, third page, third ¶. Every chaplain selection board from 1987 to 2001 had a chaplain from the three Faith Group Clusters: Roman Catholic, Liturgical Protestant, and Non-Liturgical Protestant. See Exhibits A and B. This configuration by religious affiliation was deliberate.

> Every person on earth, all six billion of them, could have drawn a sample Chaplain Corps Promotion Panel once a month, for every month, from 1977 to 2002 years and not one of the would, in all "statistical likelihood", have picked a sample with 73 consecutive Promotion Panels with at least one Catholic and at least one Liturgical on EVERY Board. The Navy's actual result could not have happened by chance! Exhibit D ¶ 18.

11. CAPT Rock, the Chaplain Corps Detailer responsible for choosing the chaplain board members of my FY96 SERB testified that he was required to have "a Catholic, a Liturgical, and a Non-Liturgical" on each board.

> Then I had to make sure that there was a Catholic priest on board. Then I had to make sure that there was going to be, again, a liturgical chaplain, a nonliturgical chaplain. Rock Deposition , page 50, lines 9-12.

Faith Group Cluster identity is a classification of religious affiliation. CAPT Rock's testimony, the cited statistics, and my board composition shown in Exhibit B prove that my FY96 SER board chaplain members were assigned by Faith Group Cluster identity. Therefore, this procedure violated SECNAVINST 1401.3 and rendered my FY96 SERB an illegally-composed nullity.

## BOARD COMPOSITION BY DENOMINATIONS OF CANDIDATES

12. CAPT Rock also indicated that he chose chaplain board members on the bases of the classifications of the candidates. He chose board members on the basis of candidates being classified as reservists. He also chose board members on the basis of the denominational identities of the candidates.

3                                          Docket No. 01519-03

If there was a reservist eligible for promotion, I had to make sure that there was a reservist on the board. If there was a rabbi, I had to make sure there was a rabbi on the board. If there was an orthodox priest, if there was a senior orthodox priest -- now, the orthodox priest, I'm hazy on that one so -- that's not an actual fact. It could -- I suspect it was, but I just don't remember that particular one. Rock Deposition, page 49, lines 14-22. The two denominations with the most candidates on my FY96 SER board were Methodists (5) candidates and Baptist (7). See Exhibit H. The three chaplain board members other than the President were Methodist, Baptist and, of course, Roman Catholic.

13. Rather than avoiding the conflict of interest inherent in denominational representatives considering their own kind for retention or retirement, my board members were chosen by the number of candidates of their denominations. This was illegal nomination on the basis of religious affiliation, and it rendered my board illegally-composed.

## AN ALL-REGULAR CAREER FORCE IS MANDATORY

14. In its latest advisory opinion, OJAG conceded the All-Regular career force issue and did not even address it. It is, therefore, undisputed that my FY96 SERB was convened arbitrarily for the purpose of illegally retaining a score of reservist commander chaplains of Catholic and Liturgical faith groups. It is also conceded that the retirement-eligible reservist CDR Simons should have been removed from the active duty list and I should have been retained.

15. In my Supplement, I explained that the congressional mandate for the All-Regular career-grade officer corps is stated in the Legislative History of DOPMA. I also explained that if the Chaplain Corps had followed the Secretary's All-Regular Policy which implemented the congressional requirement, there would have been a shortfall of chaplain active duty chaplain commanders, and my FY96 SERB would not have been conducted.

> **F. The Navy did not follow its own regulations and congressional requirements for an All-Regular career-grade officer corps.**
> 1. Congress intended that the All-Regular career-grade officer corps mandate would end the "anomaly" of the career active-duty reservist. Career officers must augment into the Regular Navy by their 11th year or upon promotion to lieutenant commander. See Exhibit D, pages 6343, 6355, and 6356.
> 2. Any legitimate need for exceptions to Congress' All-Regular mandate must be obtained through the annual process of amending DOPMA. The Chaplain Corps did not do this.
> 3. In sum, the Chaplain Corps' wholesale violation of regulations and DOPMA in retaining a score of unnecessary 4105 commanders on the ADL was illegal mismanagement, and it was religious prejudice against me. Supplement ¶ ¶ F.1-3.

16. OJAG never addressed the All-Regular issue. Since OJAG did not even attempt to refute my proof that my FY96 SERB was convened for an illegal purpose, OJAG tacitly conceded that my retirement was unnecessary. I doubt that I did not make the All-Regular issue clear. But to ensure clarity and for the convenience of the Board, I have provided a fuller explanation of the issue at Exhibit I.

4                                                                      Docket No. 01519-03

17. OJAG did respond to my discussion of the implicit contract between Congress and career-grade Regular officers. OJAG replied irrelevantly by identifying the statute governing SER boards during the Reduction In Force. While I agree with their identification of the relevant statute, it has nothing to do with the fact that my SERB was needless and was convened for illegal purposes and that I should have been retained instead of CDR Simons.

## CONCLUSION

18. The evidence I am submitting herein proves that my FY96 SERB was illegally-composed by the CHC practices of nominating chaplain candidates for board membership on the basis of the chaplain's religious affiliation. CAPT Rock and RADM Holderby picked the chaplain members of my FY96 SER board on the bases of their religious affiliations conforming to the One Roman Catholic Policy, to the Faith Group Cluster Scheme and to the Denominations of Candidates. These violations of the SECNAVINST 1401.3 religious affiliation prohibition rendered my board null and my board-selected retirement void.

19. OJAG tacitly conceded that my SER board was conducted because of the CHC violation of the All-Regular Career Force statutes and regulations. This rendered my board-selected retirement arbitrary, capricious and contrary to law.

20. Therefore, I most respectfully request that the Board grant my petition to rescind my board-selected retirement and remedy the attendant injuries.

5                            Docket No. 01519-03

****** FOR OFFICIAL USE ONLY - PRIVACY ACT PROTECTED ******

MEMORANDUM TO FILE

Docket No. 07048-04

Examiner: HD    Branch/Status 1R-USN, RETIRED

Subj: CDR    Byrum, George P., ████████

Personal appearance requested: NO    Reconsideration: YES

Action Requested:    38    (50) (46) Request vacate his Selective Early Retirement
Board entirely; that he be retroactively returned to
active duty and be considered for captain de novo
~~because of illegal policy re Board membership and~~
~~improper retention of reserve officers on active~~
In addition to Petitioner's application (DD-149) with any attachments and any related correspondence.
the Board considered the following records: ~~duty during reduction in force (RIF)~~

[✓] Enlisted/Officer Service Record

[ ] Examiner's Case Summary

[ ] NDRB File                    [ ] Record of Court-Martial

[ ] Medical Record               [ ] VA Records      [ ] PEB Record
                                 (Code 13)
[✓] Advisory Opinion             OJAG ltr dtd 15 Dec 05 w/encl

[✓] Other: _____

Ms.
Messrs. Notziger and    Pt's ltr dtd 22 Feb 05 w/encl
                        Previous cases; docket no. 9519-03
Messrs Pfeiffer and Washington

                                 EXECUTIVE SESSION

voted on 31 MAR 05 to:           [ ] Grant relief
                                                        MAR 3 1 2005
                                 [ ] Partial relief

[ ] Grant personal appearance    [X] Deny

[ ] Minority Vote: Mr/Ms_____ voted To _____

Comments:_____

_____

_____

[ ] That Petitioner's naval record be corrected to show that on 1975/04/10 /or_____.

Petitioner was issued a honorable/general discharge by reason of misconduct/or _____
vice the discharge actually issued on that date.

00651



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:hd
Docket No. 07048-04
31 March 2005

CDR GEORGE P BYRUM CHC USN RET
PO BOX 30309
WINSTON SALEM NC 27130

Dear Commander Byrum:

This is in reference to your letter dated 28 August 2004 with
enclosure, seeking reconsideration of your previous application
for correction of your naval record pursuant to the provisions
of title 10 of the United States Code, section 1552.  Your
previous case, docket number 01519-03, was denied on 22 July
2004.

You request, in effect, that your selective early retirement
board proceedings and retirement of 1 August 1996 be vacated;
that you be retroactively restored to active duty; and that you
be considered de novo for promotion to captain.

A three-member panel of the Board for Correction of Naval
Records, sitting in executive session, reconsidered your case on
31 March 2005.  Your allegations of error and injustice were
reviewed in accordance with administrative regulations and
procedures applicable to the proceedings of this Board.
Documentary material considered by the Board consisted of your
letter, together with all material submitted in support thereof,
the Board's file on your prior case, your naval record and
applicable statutes, regulations and policies.  In addition, the
Board considered the advisory opinion furnished by the Office of
the Judge Advocate General dated 15 December 2004 with
enclosure, a copy of which is attached.

After careful and conscientious consideration of the entire
record, the Board found that the evidence submitted was
insufficient to establish the existence of probable material
error or injustice.  In this connection, the Board substantially
concurred with the comments contained in the advisory opinion.

Accordingly, the Board again voted to deny relief. The names and votes of the members of the panel will be furnished upon request.

It is regretted that the circumstances of your case are such that favorable action cannot be taken. You are entitled to have the Board reconsider its decision upon submission of new and material evidence or other matter not previously considered by the Board. In this regard, it is important to keep in mind that a presumption of regularity attaches to all official records. Consequently, when applying for a correction of an official naval record, the burden is on the applicant to demonstrate the existence of probable material error or injustice.

Sincerely,

W. DEAN PFEIFFER
Executive Director

Enclosure



**FELDESMAN**

**TUCKER**

**LEIFER**

**FIDELL LLP**

EUGENE R. FIDELL
efidell@feldesmantucker.com

May 2, 2006

**Privileged—Settlement Communication**

Captain Lawson Almand, JAGC, USN
Director, General Litigation Division (Code 14)
Office of the Judge Advocate General of the Navy
1322 Patterson Avenue, S.E., Suite 3000
Washington Navy Yard, DC 20374-5066

Re: *Commander George P. Byrum, CHC, USN (Ret)*

Dear Captain Almand:

Chaplain George P. Byrum has asked us to represent him in an action for judicial review of the BCNR's decision in the above case. Reviewing the file, it seemed to me that this was a case in which a pre-litigation letter made more sense than proceeding directly to court.

Chaplain Byrum advanced a variety of arguments before the BCNR. As can happen, this tended to mask some very substantial and meritorious issues. I am enclosing copies of the BCNR's decisions of January 30, 2003 (Dkt. No. 4911-02), July 23, 2004 (Dkt. No. 1519-03), and March 31, 2005 (Dkt. No. 7048-04) for your convenience.

Chaplain Byrum was considered by the FY96 Chaplain Corps SERB that met in November 1995. That board functioned under a November 7, 1995 precept. The accompanying Supplemental Guidance included several provisions relating to equal opportunity that go beyond the permissible. The precept and Supplemental Guidance are also enclosed.

The Supplemental Guidance unmistakably places a "thumb on the scale" by stating that "[a]ggressive commitment to equal opportunity is critical." This is not subtle, and it represents reverse discrimination that inures to the detriment of white officers such as Chaplain Byrum. The rest of ¶ 3 continues this theme.

Paragraph 3a refers to assignment patterns—"recruiting, equal opportunity and specific billets requiring minorities"—that have no meaningful application in the case of Chaplain Corps officers. The provision is also improper because board members would have no way of knowing whether the minority officers had in fact served in such assignments *involuntarily*.

The "late bloomer" theory imposed on the board members by ¶ 3b affords an unjustified across-the-board benefit on minority officers by effectively telling board members they may

FELDESMAN TUCKER LEIFER FIDELL LLP

Captain Lawson Almand, JAGC, USN
Director, General Litigation Division (Code 14)
Office of the Judge Advocate General of the Navy
May 2, 2006
Page 2

discount fitness reports earned while such officers served in the first three pay grades. Non-minority officers may also be "late bloomers" for cultural and socio-economic reasons (*e.g.*, rural roots, poverty, foreign birth, and/or limited educational opportunities), but the Supplemental Guidance nowhere recognizes this.

Finally, ¶ 3c is improper because (a) it rests on the notion that a study completed seven years earlier, with no indication that the earlier conditions were applicable to the officers being considered by the FY96 SERB, and (b) encourages board members to discount the fitness reports of the minority Chaplains under consideration in the absence of any evidence that the claimed historical disparity asserted actually applied to those officers.

The practical effect of ¶ 3 was to afford minority personnel a preference in the board's decisional process based on generic assertions about the treatment of minority personnel, rather than focusing on the records of the individual minority officers. Taken as a whole, ¶ 3 violates the equal protection component of Fifth Amendment due process. The Supplemental Instructions do not withstand strict scrutiny, which is the pertinent test.

I understand that a number of cases have arisen involving these instructions. You would know better than I how the Navy has responded, but I would like to ask that you review this case and advise me whether the Navy would be disposed to deem Chaplain Byrum to have remained on active duty through the date of mandatory retirement by reason of age and to refer his record to a Special Selection Board to consider him for promotion to Captain.

This letter is in the nature of an offer of settlement, and not to be included in any administrative record or otherwise offered in evidence in any legal proceeding.

I look forward to hearing from you.

Very respectfully,

*Eugene R. Fidell*

Eugene R. Fidell

Enclosures

cc(w/o encls): Rev. George P. Byrum



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:kes
Docket No. 07048-04
10 May 2006

From:  Chairman, Board for Correction of Naval Records
To:    OJAG -14 (ATTN: CDR LEARY)

Subj:  REQUEST FOR COMMENT AND RECOMMENDATION IN THE CASE OF
       CDR GEORGE P. BYRUM, USN, RET, ▓▓▓▓▓▓▓▓;

Ref:   (a) 10 U.S.C. 1552

Encl:  (1) BCNR File

1.  Pursuant to reference (a), subject requests a correction of
his naval record as indicated in enclosure (1).

2.  In order to assist the Board in arriving at a fair and
equitable decision in this case, it is requested that your
comments and recommendation be furnished.

3.  It is further requested that the enclosure be returned with
your reply.

8218
4

JONATHAN S. RUSKIN
By direction



**DEPARTMENT OF THE NAVY**
OFFICE OF THE ASSISTANT SECRETARY
(MANPOWER AND RESERVE AFFAIRS)
1000 NAVY PENTAGON
WASHINGTON DC 20350-1000

August 11, 2006

MEMORANDUM FOR CHAIRMAN, BOARD FOR CORRECTION OF NAVAL RECORDS

SUBJECT: REVIEW OF PETITION – CDR G. P. Byrum, CHC, USN, (RET)

Encl: (1) Correspondence from Mr. Fidell of May 2, 2006

    The enclosure seeks reconsideration of the decision by the
BCNR to deny Commander Byrum's petition to set-aside the action
taken by the Fiscal Year 1996 Selective Early Retirement Board
(SERB), restore him to active duty, and consideration for
promotion to the grade of captain.  The correspondence was
forwarded to me for review and response.

    I have reviewed the information provided and determined
that additional consideration of Commander Byrum's petition is
appropriate.  More specifically, a new panel should be
expeditiously convened to evaluate the language contained in the
SERB precept and the effect, if any, it had on the Petitioner.
In evaluating this petition, please seek an advisory opinion
from the Office of the Judge Advocate General (Code 13) and
provide Petitioner's counsel an opportunity to comment on any
opinion received.  Finally, please forward the Board's
recommendation to me for final action.

ROBERT T. CALI
Assistant General Counsel
(Manpower and Reserve Affairs)

00670

## REFERENDUM

Affix

Byrum, George P.

*07392-06*

Subject's Name:

BYRUM          GEORGE     -     P
Last                First               MI    Suffix

AUG 2 2006    ☒ REQUEST FOR RECONSIDERATION

AUG 2 2006    ☒ Approved:    _Jonathan S Snow 21A06-06_

☐ Disapproved:    _____  _____

_____  _____
Signature            Date

☐ ADMINISTRATIVE RE-OPEN

☐ Approved:    _____  _____
Signature            Date

COMMENTS: _DIRECTED BY AGR (M&RA) MEMO OF 11AUG06_

_____

_____

_____

_____

NOTE: Please deliver to            NEW Docket No.
OIS Section with "closed"
BCNR file

(OIS/11 1Jul86)

00671



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:hd
Docket No. 07392-06
22 August 2006

From:  Chairman, Board for Correction of Naval Records
To:    OJAG (ADMIN LAW) Code-13

Subj:  REQUEST FOR COMMENT AND RECOMMENDATION IN THE CASE OF
       CDR GEORGE P. BYRUM, USN, RETIRED, ███████████

Ref:   (a) 10 U.S.C. 1552

Encl:  (1) BCNR File

1.  Pursuant to reference (a), subject requests a correction of his
naval record as indicated in enclosure (1).

2.  In order to assist the Board in arriving at a fair and equitable
decision in this case, it is requested that your comments and
recommendation be furnished, in accordance with the Assistant General
Counsel (Manpower and Reserve Affairs) memorandum of 11 August 2006,
with enclosure.

3.  It is further requested that the enclosure be returned with your
reply.

*Jonathan S. Ruskin*

JONATHAN S. RUSKIN

---

**GENERAL RECEIPT**
OPNAV 4430/1 (9-71)

TO: OJAG (ADMIN LAW) BLDG. WNY ROOM Ste 3000

| FROM BCNR | BLDG. FOB#2 ARLEX | ROOM 2432 |
|---|---|---|
| CLASSIFICATION (Indicate if classified) | REQUISITION NO. | DATE | TIME |

| DESCRIPTION OF MATERIAL | NUMBER | QUANTITY |
|---|---|---|
| CDR Byrum, George | | |
| ENCL: BCNR Crn File | | |

| RECEIVED BY (Signature and title) X | DATE 8/22/06 | TIME 10:30 |
| MESSENGER (Signature) X | DATE | TIME |

00673



**DEPARTMENT OF THE NAVY**
OFFICE OF THE JUDGE ADVOCATE GENERAL
WASHINGTON NAVY YARD
1322 PATTERSON AVENUE SE  SUITE 3000
WASHINGTON  DC  20374-5066

IN REPLY REFER TO

1070
Ser 13/1BC11923.06
16 Nov 06

From:  Deputy Assistant Judge Advocate General (Administrative Law)
To:    Chairman, Board for Correction of Naval Records

Subj:  REQUEST FOR COMMENTS AND RECOMMENDATION IN THE CASE OF CDR
       GEORGE P. BYRUM, CHC, USN (RET)

Ref:   (a) BCNR ltr HD:hd Docket No 07392-06 of 22 Aug 06

Encl:  (1) Legal Analysis

1.  This responds to reference (a), your request for our comments
and recommendation in the case of CDR George P. Byrum, CHC, USN
(Ret.) (Petitioner).

2.  <u>Issues</u>

    a.  Whether the language in paragraph three of the Fiscal Year
1996 Selective Early Retirement Board (SERB) precept provided an
unconstitutional instruction which gave special consideration to
minorities in violation of the equal protection component of Fifth
Amendment due process.

    b.  Whether Petitioner's selection by the SERB was wrongful.

    c.  Whether Petitioner is entitled to reinstatement and back
pay.

    d.  Whether Petitioner is entitled to have a Fiscal Year 1999
Active Duty Captain Staff Special Selection Board (FY99 SSB)
consider him for promotion to captain.

3.  <u>Short answers</u>

    a.  No.  The equal opportunity language in the SERB precept
and the action of the SERB were in compliance with all applicable
laws and regulations.

    b.  No.  Petitioner provides no evidence that the language in
paragraph three caused his selection for involuntary retirement.

Subj:  REQUEST FOR COMMENTS AND RECOMMENDATION IN THE CASE OF CDR
       GEORGE P. BYRUM, CHC, USN (RET), ███████████████

    c.  No.  The selection of Petitioner for early retirement was
proper.

    d.  No.  Petitioner was properly selected for early retirement
by the SERB and has presented no additional evidence to warrant
reconsideration of previous BCNR decisions denying relief.

4.  Discussion.  Through counsel, Petitioner raises the central
issues identified above.  Enclosure (1) provides a detailed legal
analysis of the issues.

5.  Point of contact.  My point of contact for this matter is
LCDR DeAndrea Fuller, JAGC, USN, at 703-604-8202.


                              R. W. COREY

Legal Analysis

1. Issues.

    a.  Whether the language in paragraph three of the Fiscal Year 1996 Selective Early Retirement Board (SERB) precept provided an unconstitutional instruction which gave special consideration to minorities in violation of the equal protection component of Fifth Amendment due process.

    b.  Whether Petitioner's selection by the SERB was wrongful.

    c.  Whether Petitioner is entitled to reinstatement and back pay.

    d.  Whether Petitioner is entitled to have a Fiscal Year 1999 Active Duty Captain Staff Special Selection Board (FY99 SSB) consider him for promotion to captain.

2. Short answers.

    a.  No.  The equal opportunity language in the SERB precept and the action of the SERB were in compliance with all applicable laws and regulations.

    b.  No.  Petitioner provides no evidence that the language in paragraph three caused his selection for involuntary retirement.

    c.  No.  The selection of Petitioner for early retirement was proper.

    d.  No.  Petitioner was properly selected for early retirement by the SERB and has presented no additional evidence to warrant reconsideration of previous BCNR decisions denying relief.

3. Background.

    a.  Title 10, US Code, § 638a authorized the Secretary of the Navy (SECNAV), during the period beginning on October 1, 1990, and ending on December 31, 2001, to consider regular officers on the active duty list for Selective Early Retirement (SER) by a selection board convened under title 10, U.S. Code, § 611(b).  The precept authorized the SERB to consider in-zone regular and reserve commanders who were either within two years of retirement eligibility or were eligible for retirement.  The SERB did not consider officers who were on a promotion list, officers approved for voluntary retirement, or officers who were to be involuntarily retired during FY96 or FY97.  The SERB considered 24 chaplains.  The precept required the SERB to select seven Chaplain Commanders for SER.  The senior officer in zone for the Chaplain Commander SERB had a date of rank of July 1, 1980.  The junior officer in zone had a date of rank of July 1, 1994.  Petitioner became a chaplain in the Navy in August 1981 with six years of prior active service.  He was considered and selected by the SERB that convened on November 30, 1995.  The Judge Advocate General of the Navy determined the SERB precept was

legally unobjectionable and signed it on November 8, 1995.  On December 21, 1995, the Judge Advocate General of the Navy indicated with his signature the SERB report was legally unobjectionable.  The Secretary of the Navy approved the SERB report on January 2, 1996.

b.  On May 28, 2002, Petitioner submitted a BCNR request (docket number 04911-02), stating "1.  I should not have been subject to SERB action and I should still be on active duty.  2.  I believe my record should have been considered by the FY99 SSB."  In support of his allegations of error, Petitioner submitted his DD 214, the FY96 SERB, copies of title 10, § 638a, a pertinent section of the lineal listing from the 1996 Chaplain Corps Program Support Guide, and ALNAV 045/98.

c.  BCNR forwarded Petitioner's request to Navy Personnel Command (NPC) for an advisory opinion.  On October 10, 2002, NPC Assistant Legal Counsel (Pers-0612) opined that the Petitioner met the SER criteria prescribed by title 10, § 638 and § 638a and CNO FY98 SER Plan Memo to SECNAV, dated April 3, 2002 and was properly considered by the SERB.  On December 6, 2002, Director, Active and Reserve Officer Career Progression Division (Pers-80) also provided an advisory opinion, stating Petitioner was properly considered by the SERB.

d.  On January 6, 2003, Petitioner responded to the advisory opinions, contending SECNAV and the SERB failed to comply with the SERB precept because officers senior to Petitioner were eligible, but not considered for the SERB.  He also included an excerpt of paragraph three of the precept Supplemental Guidance, ". . . the Navy is dedicated to equality of treatment for all personnel without regard to . . . creed . . . Aggressive commitment to equal opportunity is critical."  Petitioner alleged "none of the eligible officers of the same denomination/creed/faith group as the Chief of Chaplains (LMS), Deputy Chief of Chaplains (ELCA), or Chaplain Corps Detailer (RC) had their records presented before the SERB", even though some "have chronic weight problems and substandard performance."  In support of his response, Petitioner provided copies of title 10, U.S. Code, § 611, § 638, and § 638a, the SERB precept and eligibles list, biographical data, the Chaplain Commander lineal listing, and a January 14, 2002 news article on religious affiliation discrimination lawsuits brought by Navy chaplains.

e.  On January 30, 2003, a three-member panel of the BCNR denied relief.  In a letter dated February 1, 2003, BCNR notified Petitioner that it substantially concurred with the comments contained in the advisory opinions furnished by Navy Personnel Command.

f.  On February 13, 2003, Petitioner sought reconsideration of his previous BCNR application (docket number 4911-02), requesting his retirement of August 1, 1996 be set aside, promotion to Captain retroactively on the basis of selection by the FY99 SERB, and he be permitted to accrue 37 years of commissioned service.  On July 2, 2003, BCNR forwarded the request to Office of the Judge Advocate General (Administrative Law), OJAG (Code 13), for an advisory opinion.  At the time of his BCNR request, Petitioner was seeking to join the lawsuit of

Adair v. England, 183 F. Supp. 2d 31 (D.D.C. 2002)[1]. OJAG (Code 13)
provided an advisory opinion dated October 22, 2003, addressing the
following issues raised by the petition:

    (1)  Whether Petitioner's selection by the FY96 SERB was wrongful
because chaplains senior to him on the lineal list were allegedly
excluded from consideration;

    (2)  Whether some chaplains, including some with weight problems
and substandard performance issues, were excluded from consideration for
SER based on their faith group/denomination;

    (3)  Whether Petitioner should be granted an FY99 USN SSB for
promotion to Captain, the year he would have been in zone for
consideration had he not been selected for SER.

    g.  The OJAG (Code 13) advisory opinion recommended denial of
Petitioner's request for BCNR redress.  The eligibility for the SERB was
based on years of service, not lineal number.  Because of his six years
of active service prior to joining the Chaplain Corps, Petitioner had the
requisite 19 years of service for SER before several officers senior to
him on the lineal list.  There was no evidence of discrimination based on
faith group/denomination.  Because his retirement was not improper,
Petitioner was not eligible for an SSB.

    h.  On December 8, 2003, Petitioner submitted an amended BCNR
petition, raising new objections, including a claim of racial bias.  On
December 29, 2003, BCNR forwarded the request to OJAG (Code 13) for an
advisory opinion.  OJAG addressed the following issues in Petitioner's
amended BCNR request:

    (1)  Whether Navy personnel practices were improper and unfair to
the Petitioner because at the time of the FY96 SERB, active-duty Reserve
Chaplain Commanders were too senior to be Reservists on active duty; were
retirement eligible; were over maximum age limits; and had been
improperly recalled to active duty.

    (2)  Whether improper re-grading of minority candidates occurred
during the FY96 SERB.

    (3)  Whether the board proceedings were improper because the
Board, failed to accurately consider the future potential service of
Petitioner, and, improperly retained a retirement-eligible Reserve
officer.

    (4)  Whether the board membership was improper because, the
denomination of the Petitioner was not represented on the board while the
denominations of other candidates for early retirement were represented,
and, a Reserve board member had been illegally returned to active duty

---

[1] In Adair, Navy chaplains alleged faith group/denominational discrimination in the Navy.

and was not, therefore, inclined to see a problem with retaining other Reserve officers.

i. On 19 May 2004, OJAG (Code 13) recommended denial stating there is no prohibition against having senior Reserve officers on the active duty list, nor is there a requirement to discharge or involuntarily retire Reservists before active duty officers. All officers before the FY96 SERB were within the maximum age of 67 for Reservists on the active-status list. Regulations allow for the recall of officers with previous extended active duty to fulfill mission requirements.[2] There was no re-grading of minority officer fitness reports. SECNAVINST 1401.3 does not require each faith group/denomination to be represented on the SERB, and faith group/denomination of eligibles cannot be considered when selecting officers for early retirement. Petitioner provided no evidence to "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." Sanders v. United States, 594 F.2d 804 (1979); see also Bockoven v. United States, [Bockoven v. Marsh] 727 F.2d 1558 (Fed. Circ.), cert. denied 469 U.S. 880 (1984). Petitioner responded to the OJAG (Code 13) advisory opinion in a letter dated July 17, 2004, reaffirming his previous claims, and alleging the reconsideration of minorities was "unfair to me, and it violated the Equal Opportunity regulations and laws which prohibit such favoritism."

j. On July 22, 2004, a three-member panel again reconsidered Petitioner's case, including his letter of December 8, 2003, supporting documentation, his previous case file, naval record, applicable statutes, regulations, policies, advisory opinions furnished by OJAG dated October 22, 2003 and May 19, 2004, and Petitioner's July 17, 2004 response to the OJAG (Code 13) advisory opinion. BCNR again denied relief, concurring with the advisory opinions. Relevant to Petitioner's present BCNR request, on July 22, 2004,

> The Board found nothing objectionable about the precept of the FY96 [SERB], as it related to minorities. The Board found the precept did not mandate preferential treatment for minorities, but merely encouraged fair and equitable consideration of all officers.

k. On December 15, 2004, OJAG (Code 13) responded to BCNR's request for comments and recommendation regarding two issues raised by Petitioner's August 28, 2004 supplement to his BCNR petition:

(1) Whether the board members for the SERB were improperly selected based on religious affiliation.

---

[2] SECNAVINST 1120.4A establishes regulations concerning the appointment of Regular and Reserve officers in the Chaplain Corps of the Navy. SECNAVINST 1210.5A establishes regulations concerning the transfer and redesignation of officers in the Navy. SECNAVINST 1811.3M addresses Active Duty Navy and Marine Corps members' voluntary retirement and transfer to the Fleet Reserve.

(2)  Whether title 10, U.S. Code, § 638 was the appropriate statute to determine Petitioner's eligibility for the SERB under a "grandfather" theory, despite the rules for eligibility being modified by title 10, U.S. Code, § 638a.

OJAG (Code 13) recommended denial of the BCNR petition, noting the lack of evidence and that regulatory guidance does not permit Chaplain Corps board members to nominate based upon religious affiliation. Petitioner provided no evidence to support his claim that the members were selected based on religious affiliation.  Also, the criteria for SERB eligibility were properly modified by title 10, U.S. Code, § 638a without a "grandfather" provision.  The opinion also noted Petitioner was not named a plaintiff in Adair v. England, 183 F. Supp. 2d 31 (D.D.C. 2002).  On February 22, 2005, Petitioner submitted a reply to the OJAG advisory opinion, providing documents in support his allegation of faith-based chaplain selection board membership.

1.  In his current BCNR request, Petitioner alleges the language in the precept resulted in reverse discrimination and requests the Navy consider him to have remained on active duty through the date of mandatory retirement by reason of age.  Petitioner further requests his record be referred to an SSB for consideration for promotion to Captain. On August 11, 2006, Assistant General Counsel (Manpower and Reserve Affairs) recommended that a new BCNR panel be expeditiously convened to evaluate the language contained in the SERB precept and the effect, if any, it had on the Petitioner.  On August 22, 2006, BCNR forwarded Petitioner's BCNR request to OJAG (Code 13) for an advisory opinion.

4.  Discussion

a.  Petitioner alleges paragraph three of the Supplemental Guidance to SERB precept included unconstitutional language that detrimentally affected Petitioner.  Specifically, language regarding "'aggressive commitment to equal opportunity is critical'. . . represents reverse discrimination that inures to the detriment of white officers such as Chaplain Byrum."  He further argues the precept's language regarding involuntary detailing of minorities outside their primary specialty and the findings of the 1988 CNO Study Group Report on Equal Opportunity in the Navy regarding possible discrimination in minorities' fitness reports unjustifiably benefited minorities.  He contends the guidance encouraged the SERB to discount fitness reports of minority Chaplains under consideration by the SERB in the absence of evidence that the detailing and disparate assessments in minority fitness reports actually applied to the minority officers before the SERB.  Petitioner stated,

> The practical effect of paragraph three was to afford minority personnel a preference in the board's decisional process based on generic assertions about the treatment of minority personnel, rather than focusing on the records of the individual minority officers.  Taken as a whole, paragraph three violates the equal protection component of Fifth

Amendment due process.  The supplemental instructions do not withstand strict scrutiny, which is the pertinent test.

Petitioner requests the BCNR:  deem him to have remained on active duty until he reaches mandatory retirement age and to grant an FY99 SSB to consider him for promotion to captain.

b.  After final adjudication, reconsideration should be granted only upon presentation by the applicant of new and material evidence or other matter not previously considered by the Board.  New evidence is defined as evidence not previously considered by the Board and not reasonably available to the applicant at the time of the previous application. Evidence is material if it is likely to have a substantial effect on the outcome.  Petitioner's counsel succinctly reiterates Petitioner's previous argument that the language of the precept authorized the SERB to grant unjustifiable preferential treatment to minorities.  In support of this claim, Petitioner specifically references paragraph three of the Supplemental Guidance the precept.  This allegation is the sole basis of his current petition.  A similar argument posed by Petitioner on December 8, 2003 regarding re-grading of minority records.  In response to the OJAG (Code 13) opinion that re-grading of minority records did not occur, on July 17, 2004 Petitioner replied "the precept required the subjective and arbitrary reconsideration of all uncompetitive minority grades.  This was unfair to me, and it violated the Equal Opportunity regulations and laws which prohibit such favoritism."  This complaint was considered by BCNR on January 30, 2004 when it "found the precept did not mandate preferential treatment for minorities, but merely encouraged fair and equitable consideration of all officers."  Further, on November 8, 1995, the Judge Advocate General of the Navy determined the SERB precept was legally unobjectionable.  On December 21, 1995, Judge Advocate General of the Navy indicated with his signature, the legal sufficiency of the SERB report which listed Petitioner as one of the seven chaplains selected for early retirement.  Petitioner provides no new and material evidence to support his allegation of error or injustice in the actions and recommendations of the SERB.  Because Petitioner was properly selected for involuntary retirement, reinstatement, back pay, and an FY99 SSB are inappropriate.

5.  <u>Conclusion</u>.  Title 10, U. S. Code, section 1552 authorizes SECNAV to correct an error or remove an injustice with respect to a military record. The burden is on Petitioner to demonstrate the existence of probable material error or injustice.  Petitioner contends he was selected by the SERB because the SERB acted contrary to law.  His sole evidence is the language in the Supplemental Guidance of the SERB precept, which he contends gave special consideration to minorities.  Careful review of the evidence, facts, and circumstances in this case resulted in prior BCNR findings that no material unfairness occurred with respect to Petitioner's selection for involuntary retirement by the SERB. Petitioner presents no new and material evidence or other matter not previously considered by BCNR.  Therefore, reconsideration is unwarranted.

6.  <u>Recommendation</u>.  Petitioner's request should be denied.



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:kes
Docket No. 07392-06
20 November 2006

ME EUGENE R FIDELL
2001 L STREET NW
2ND FLOOR
WASHINGTON DC 20036-4910

Dear Mr. Fidell:

This is in reference to the application of your client, CDR George
P. Byrum, USN, RETIRED, for correction of his naval record.

The case has been assigned to the Board's Performance Section. All
correspondence pertaining to the case should be sent to the attention
of this section.

The Board has received an advisory opinion, a copy of which is enclosed.
The views set forth in this opinion are those of the office that submitted
it, and are not binding on the Board or its reviewing authority. If
you wish to respond to the advisory opinion or submit documentary
material in support of your client's application, it is requested that
you do so within 30 days of the date of this letter. Your response
should be sent to the Board and not to the official who furnished the
advisory opinion.

If you are unable to respond within the 30-day period, you may request
an extension of time. In your request, please indicate when the Board
may expect to receive your response. If no response or request for
an extension of time is received within the 30-day period, the case
will be classified as being ready for review by the Board, and will
be decided on the evidence of record as soon as the Board's crowded
docket of cases permits.

As a general rule, the Board will not decide a case prior to the expiration
of the 30-day period unless it has received the applicant's response
to the advisory opinion. However, an exception may be made if a case
warrants expeditious action.

The most common example is when an applicant who is seeking removal of a fitness report is also scheduled to be considered for promotion within the 30-day period. Under these circumstances, the Board may, in its discretion, decide the case before the 30-day period expires and without waiting for the applicant's response to the advisory opinion. Should the case be denied, the Board will treat the applicant's response as a request for reconsideration.

Sincerely,

For      JONATHAN S. RUSKIN
         Head, Performance Section

Enclosure
OJAG CODE-13 memo dtd 16 Nov 06 w/encls



WASHINGTON | VIRGINIA | MARYLAN

## FELDESMAN
## TUCKER
## LEIFER
## FIDELLLLP

EUGENE R. FIDELL
efidell@feldesmantucker.com

December 5, 2006

**ADVANCE COPY BY FAX & E-MAIL**

Mr. Jonathan S. Ruskin
Board for Correction of Naval Records
2 Navy Annex
Washington, DC 20370-5100

Re: *George P. Byrum, Dkt. No. 7392-06*

Dear Mr. Ruskin:

Thank you for sending me the advisory opinion from the Administrative Law Division of the Office of the Judge Advocate General.

Contrary to the advisory opinion, we did not apply for reconsideration by the BCNR. Rather, we asked the General Litigation Division if the Navy "would be disposed to deem Chaplain Byrum to have remained on active duty through the date of mandatory retirement by reason of age and to refer his record to a Special Selection Board to consider him for promotion to Captain." The purpose of my May 2, 2006 letter to Captain Almand was to determine if the case could be settled or if it was going to be necessary to sue to overturn the BCNR's earlier decision. My letter was headed "Privileged—Settlement Communication" and stated: "This letter is in the nature of an offer of settlement, and not to be included in any administrative record or otherwise offered in evidence in any legal proceeding."

Since the Navy has elected to treat my letter as a request for reconsideration, however, please consider our position to be as set forth in my letter, and include it in the administrative record. If the General Counsel's Office wishes to consult me about settlement of this controversy, it is free to do so, but in light of the lengthy

2001 L Street, N.W. | Second Floor | Washington, D.C. 20036-4910 | (202) 466-8960 | Telefax (202) 202-8103 |

FELDESMAN TUCKER LEIFER FIDELL LLP

Mr. Jonathan S. Ruskin
December 5, 2006
Page 2


period this needless detour has consumed, it should do so no later than December 10.

Very respectfully,

*Eugene R. Fidell*

Eugene R. Fidell

cc: Robert T. Cali, Esq.

****** FOR OFFICIAL USE ONLY - PRIVACY ACT PROTECTED ******

MEMORANDUM TO FILE

Docket No. 07392-06      *CHC*

Examiner: HD   Branch/Status: 1R-USN, RETIRED

Subj: CDR      Byrum, George P., ▮▮▮▮▮

Personal appearance requested: NO

Reconsideration:
*and retirement of 1 Aug 96*

Action Requested:   38   50   Request vacate his Selective Early Retirement Board entirely; that he be retroactively returned to active duty and be considered for captain.
NEW REQUEST:   That he ~~have remained~~ on active duty *reviewed prev.*

In addition to Petitioner's application (DD-149) with any attachments and any related correspondence, the Board considered the following records: through the date of mandatory retirement by reason of age and to refer his record to a Special Selection Board for ~~Captain~~ FY 99 Staff Capt Sel B.

- [ ] Enlisted/Officer Service Record
- [ ] Examiner's Case Summary
- [ ] NDRB File
- [ ] Medical Record
- [x] Advisory Opinion
- [x] Other:
- [ ] Record of Court-Martial
- [ ] VA Records *(Col. in B)* [ ] PEB Record

OJAG ltr dtd 16 Nov 06 w/encl

*BCNR files, docket nos 7048-04, and 1513-03 and 4911-02*

BOYD &
Messrs. DAWSON ~~▮▮▮▮▮▮▮▮▮▮~~          Pt's counsel ltr dtd 5 Dec 06

voted on *7 DEC 06* to:

- [ ] Grant personal appearance

EXECUTIVE SESSION

- [ ] Grant relief
- [ ] Partial relief  *DEC - 8 2006*
- [x] Deny

- [x] Minority Vote: Mr/▮▮  *PIETRICH*  voted To  *OBTAIN NEW AO*

Comments: *FROM OJAG BEFORE DECIDING CASE (GIVE COUNSEL CHANCE TO COMMENT?)*

- [ ] That Petitioner's naval record be corrected to show that on 2004/02/24 /or _____

Petitioner was issued a honorable/general discharge by reason of misconduct/or _____ vice the discharge actually issued on that date.



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:jsr
Docket No. 07392-06
11 December 2006

MR EUGENE R FIDELL
FELDESMAN TUCKER LEIFER FIDELL LLP
2001 L ST NW 2D FLOOR
WASHINGTON DC 20036-4910

Dear Mr. Fidell:

As set forth in the attached report, a three-member panel of the Board,
sitting in executive session, again voted to deny relief in the case
of your client, Commander George P. Byrum, CHC, USN (Retired), and
the Assistant General Counsel (Manpower and Reserve Affairs) approved
the Board's decision.

You are advised that further reconsideration of your client's case
will be granted only upon the presentation of new and material evidence
or other matter not previously considered by the Board.

It is regretted that a more favorable reply cannot be made.

Sincerely,

W. DEAN PFEIFFER
Executive Director

Enclosure



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:hd
Docket No. 07392-06
8 December 2006

From: Chairman, Board for Correction of Naval Records
To:   Secretary of the Navy

Subj: CDR GEORGE P. BYRUM, USN, RET, ▓▓▓▓▓▓/4103;
      REVIEW OF NAVAL RECORD (PARTIAL RECONSIDERATION)

Ref:  (a) 10 U.S.C. 1552

Encl: (1) BCNR files, docket numbers 4911-02, 1519-03,
          and 7048-04 (Subject's prior cases)
      (2) AGC(M&RA) memo dtd 11 Aug 06 w/enclosure
      (3) OJAG (Code 13) ltr dtd 16 Nov 06 w/enclosure
      (4) Subject's counsel's ltr dtd 5 Dec 06

1.  Pursuant to the provisions of reference (a), Subject, hereinafter
referred to as Petitioner, filed written application (docket number
7048-04), at enclosure (1), which this Board denied on 31 March 2005
(his previous applications, docket numbers 4911-02 and 1519-03, were
denied on 30 January 2003 and 22 July 2004, respectively). Petitioner
again requests his selective early retirement board (SERB) proceedings
and retirement of 1 August 1996 be vacated. He now also requests that
he be deemed to have remained on active duty through the date of mandatory
retirement by reason of age and that he be considered by a special
selection board for the Fiscal Year 99 Staff Captain Selection Board.
The Assistant General Counsel (AGC) (Manpower and Reserve Affairs)
has issued the memorandum at enclosure (2), directing that a new panel
of the Board reconsider Petitioner's case. This memorandum directed
that the Board evaluate the language in the SERB precept and the effect,
if any, it had on Petitioner. The memorandum specifically directed
that the Board seek an advisory opinion from the Office of the Judge
Advocate General (OJAG) (Code 13), provide Petitioner's counsel a
chance to comment on any opinion received, and forward the Board's
recommendation to the AGC for final action.

2.  An entirely new panel of the Board, consisting of Messrs. Boyd,
Dawson and Dietrich, reviewed Petitioner's allegations of error and
injustice on 7 December 2006. Pursuant to the Board's regulations,
the majority, Messrs. Boyd and Dawson, determined that relief should
be denied. The minority, Mr. Dietrich, concluded more information
should be obtained, as indicated below. Documentary material

considered by the Board consisted of the enclosures, naval records, and applicable statutes, regulations and policies.

3. The Board, having reviewed all the facts of record pertaining to Petitioner's allegations of error and injustice, finds as follows:

a. Before applying to this Board, Petitioner exhausted all administrative remedies which were available under existing law and regulations within the Department of the Navy.

b. Although it appears that Petitioner's original application was not filed in a timely manner, the Board determined it was in the interest of justice to waive the statute of limitations and review the application on its merits. The Board considers it to be in the interest of justice to consider his current request on its merits as well.

c. In correspondence attached as enclosure (3), the OJAG (Code 13) commented to the effect that the language in the SERB precept complied with all applicable law and regulations, that Petitioner provides no evidence that the language caused his selection for retirement, and that none of the relief requested is warranted.

d. Enclosure (4) is Petitioner's counsel's reply to the OJAG opinion, stating his position is as expressed in the enclosure to the AGC memorandum at enclosure (2).

MAJORITY CONCLUSION:

Upon review and consideration of all the evidence of record, and in concurrence with the advisory opinion at enclosure (2), the majority finds that relief should be denied. The majority notes no statistics have been presented to show that the precept language disadvantaged Petitioner. In view of the above, the majority's recommendation is as follows:

MAJORITY RECOMMENDATION:

a. That relief be denied.

MINORITY CONCLUSION:

The minority feels that the advisory opinion at enclosure (2) does not adequately deal with the issues the AGC directed the Board to address, in that it does not analyze the language of the precept in light of applicable case law, nor does it analyze statistical data relevant to the effect the language had on Petitioner. Accordingly, the minority's recommendation is as follows:

MINORITY RECOMMENDATION:

a.    That the case be returned to OJAG (Code 13) for detailed analysis of the issues raised in the AGC memorandum of 11 August 2006; that the Board reconsider the case in light of the additional information, after having given Petitioner's counsel a chance to comment on it; and that the Board's recommendation be forwarded to the AGC for final action.

4.  It is certified that a quorum was present at the Board's review and deliberations, and that the foregoing is a true and complete record of the Board's proceedings in the above-entitled matter.

ROBERT D. ZSALMAN                    JONATHAN S. RUSKIN
Recorder                             Acting Recorder

5.  The foregoing report of the Board is submitted for your review and action.

W. DEAN PFEIFFER

MAJORITY REPORT
Reviewed and approved: _____

12-11-06

Robert T. Cali
Assistant General Counsel
Manpower and Reserve Affairs)

MINORITY REPORT
Reviewed and approved: _____

3            00693



**DEPARTMENT OF THE NAVY**
OFFICE OF THE ASSISTANT SECRETARY
(MANPOWER AND RESERVE AFFAIRS)
1000 NAVY PENTAGON
WASHINGTON DC 20350-1000

August 11, 2006

MEMORANDUM FOR CHAIRMAN, BOARD FOR CORRECTION OF NAVAL RECORDS

SUBJECT: REVIEW OF PETITION – CDR G. P. Byrum, CHC, USN, (RET)

Encl:  (1) Correspondence from Mr. Fidell of May 2, 2006

    The enclosure seeks reconsideration of the decision by the BCNR to deny Commander Byrum's petition to set-aside the action taken by the Fiscal Year 1996 Selective Early Retirement Board (SERB), restore him to active duty, and consideration for promotion to the grade of captain.  The correspondence was forwarded to me for review and response.

    I have reviewed the information provided and determined that additional consideration of Commander Byrum's petition is appropriate.  More specifically, a new panel should be expeditiously convened to evaluate the language contained in the SERB precept and the effect, if any, it had on the Petitioner. In evaluating this petition, please seek an advisory opinion from the Office of the Judge Advocate General (Code 13) and provide Petitioner's counsel an opportunity to comment on any opinion received.  Finally, please forward the Board's recommendation to me for final action.

ROBERT T. CALI
Assistant General Counsel
(Manpower and Reserve Affairs)

WASHINGTON | VIRGINIA | MARYLAN

**F|T|L|F**

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

EUGENE R. FIDELL
efidell@feldesmantucker.com

December 5, 2006

**ADVANCE COPY BY FAX & E-MAIL**

Mr. Jonathan S. Ruskin
Board for Correction of Naval Records
2 Navy Annex
Washington, DC 20370-5100

Re: *George P. Byrum, Dkt. No. 7392-06*

Dear Mr. Ruskin:

Thank you for sending me the advisory opinion from the Administrative Law Division of the Office of the Judge Advocate General.

Contrary to the advisory opinion, we did not apply for reconsideration by the BCNR. Rather, we asked the General Litigation Division if the Navy "would be disposed to deem Chaplain Byrum to have remained on active duty through the date of mandatory retirement by reason of age and to refer his record to a Special Selection Board to consider him for promotion to Captain." The purpose of my May 2, 2006 letter to Captain Almand was to determine if the case could be settled or if it was going to be necessary to sue to overturn the BCNR's earlier decision. My letter was headed "Privileged—Settlement Communication" and stated: "This letter is in the nature of an offer of settlement, and not to be included in any administrative record or otherwise offered in evidence in any legal proceeding."

Since the Navy has elected to treat my letter as a request for reconsideration, however, please consider our position to be as set forth in my letter, and include it in the administrative record. If the General Counsel's Office wishes to consult me about settlement of this controversy, it is free to do so, but in light of the lengthy

00720



**DEPARTMENT OF THE NAVY** OFFICE OF THE SECRETARY

WASHINGTON. D.C. 20350-1000

7 NOV 1995

From: Secretary of the Navy
To:   RADM Donald K. Muchow, CHC, USN, 4100

Subj: PRECEPT CONVENING A FY-96 SELECTION BOARD TO CONSIDER
      COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE EARLY
      RETIREMENT

Encl: (1) Board Membership
      (2) Supplemental Guidance

L.   The selection board, consisting of yourself as president
and the officers listed in enclosure (1) is ordered to convene
at the Navy Department, Washington, D.C., at 0900 on 29
November 1995 or as soon thereafter as may be practicable.

t Each fiscal year a number of commanders retire from the Navy
as a result of approved voluntary retirements or involuntary
retirements based on length of service. However, the Navy is
currently faced with the need to increase the number of
retirements of commanders during this fiscal year beyond the
number of approved voluntary and involuntary retirements, and
thus this selective early retirement board is being convened.
The function of the board is to recommend for selective early
retirement regular and reserve commanders on the active-duty
list, in the Chaplain Corps community whose early retirement,
in the opinion of the majority of the board, is in the best
interest of the Navy.

3.   10 USC §638 and §638a provide that regular or reserve
officers may be considered for early retirement by a selection
board convened pursuant to 10 USC §611 (bI .Those statutes
permit consideration for selective early retirement of
commanders who are within two years of retirement eligibility
or eligible for retirement.

4.   The records and names of all eligible officers determined
as of the date the board convenes will be furnished to the
board by the Chief of Naval Personnel. The board will carefully
consider the case of every officer whose name is furnished to
it. Under 10 USC §638(e) (2) (B), officers with approved
voluntary retirements, or officers with involuntary retirement
dates in FY-96 or FY-97, may not be considered. No officer
whose name is on a promotion list may be considered for early
retirement.

Subj: PRECEPT CONVENING THE FY-SE SELECTION BOARD TO RECOMMEND COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE EARLY RETIREMENT

5. The major criterion for the Navy's success is its ability to conduct prompt and sustained combat operations. A balance of skills among the Navy's leaders is the key to maintaining this ability. Excellence in operational environments and during arduous, demanding deployments is an important measure of the qualities the Navy requires. Officers may also have demonstrated leadership, skill, integrity and resourcefulness in other difficult and challenging joint and in-service assignments. Just as you must carefully consider positive outstanding performance, you must carefully consider documented incidents of misconduct, and substandard performance, which are included in an officer's official service record, in determining those officers who are best qualified for retention. You must ensure the officers retained possess the qualities to excel in positions of responsibility and authority appropriate to their grade. You must consider each officer's potential for future contributions in both traditional and more specialized assignments and retain those who have the highest potential for significant further service. For those eligible officers who are recommended for retention and who have received disciplinary action or whose privileged information record (Fiche 5) contains matters relating to conduct or performance of duty, each board member shall personally\review the information contained therein, prior to the final board decision. Finally, when determining whom to retain, you should also give consideration to the resources expended by the Navy in preparing officers for particular assignments, and the needs of the Navy in managing billets with long training pipelines.

6. The total number of officers that may be recommended will be exactly the number set forth below. This number may riot exceed 30 percent of the in-zone eligible officers as of the date the board convened. The board will recommend no more than or less than the number provided below:

| GRADE | COMPETITIVE CATEGORY | NUMBER TO SELECT |
|-------|----------------------|------------------|
| COMMANDER | CHAPLAIN CORE'S | 7 |

7. The board will consider only those official records provided by the Chief of Naval Personnel as well as written communications from eligible officers. Requests for additional information can only be approved by the Secretary

2

ATTACHMENT I

Subj:   PRECEPT CONVENING THE FY-96 SELECTION BOARD TO RECOMMEND
        COMMANDERS, CHAPLAIN CORPS FOR SELECTIVE EARLY RETIREMENT

of the Navy. No board member, recorder, assistant recorder, or
person acting on their behalf may communicate with an eligible
officer, reporting senior, or other person to solicit information,
favorable or unfavorable, about an eligible officer. The Chief of
Naval Personnel may authorize communications as necessary to
ensure the official records are complete.

8.   The report of the board, prepared per parayraphs 9g and
10 of the supplemental guidance (enclosure (2)) will be forwarded
to the Secretary of the Navy via, first, the Chief of Naval
Personnel; sedond, the Chief of Naval Operations; and finally, the
Judge Advocate General of the Navy for legal review.

9.   nclosure (2) provides the oaths to be administered and
supplemental guidance.


                                    JOHN H. DALTON
                                    Secretary of the Navy


                                    3


                                                    **ATTACHMENT I**

00705

RADM Timothy R Beard, USN,
CAPT Charles S. Bourke, Jr., CHC, USNR
CAPT Leroy Gilbert, CHC,
CAPT Ivan 8. Burnett,

USN,
CRC, USN,

2. CDR Eileen Ohickey, CHC,                                               USM, will act
as recorder. LCDR Peter W.                                            McGeory, CHC,
USN will act as assistant recorder. The recorder or assistant recorder
will be present during all board deliberations.

3. CAPT Judith A. Holden, USN; CDR Ann C. .USN;
LCDR Rufus S. Abernethy, USN; LT Kevin J. Couch, USN; LT
Christel E. Brown, USNR; LT Roger ft. Garretson, USN; LT
Billy W. Castleberry, USN; LT Robert C. Moore, USN; ENS
Scott E. Arrnentrout, USN; ENS Anthony S. Kelly, USNR; ENS
Carl E. Smit, USN; CWO3 Billy J. Abrarms, USN; CWO3 Stephen
A. Morton, USN; DPC Donald E. Reese, USN; DPC James L. Cole,
USN; YNC JohnM. Smith, USN; YN1 Derek C. Roberts, USN; YN1
Susan C. Ferretti, USNR; ATi Philip T. Esposito, USN; AO1
Brian D. MacMillan, USNR; DP1 Angel T. Romexo, USNR; DP2
Clifford P. Fetner, USN; and PN2 William R. Williams, USNR;
are designated to serve as projectionists and administrative
support personnel for this board.

Enclosure (1)

ATTACHMENT I

1.    Board Members:

1. The following oath or affirmation will be administered to the recorder and assistant recorders by the president of the board:

"You, and each of you, do solemnly swear (or affirm) you will keep a true record of the proceedings of this board, and you will not divulge the proceedings of this board except as authorized or required by the Secretary of the Navy or higher authority. so help you God."

The following oath or affirmation will then be administered by the recorder to the members of the board:

"You, and each of you, do solemnly swear (or affirm) you will perform your duties as a member of this board without prejudice or partiality, having in view both the special fitness of officers and the efficiency of the Naval service, and you will not divulge the proceedings of this board except as authorized or required by the Secretary of the Navy or higher authority. So help you God."

The following oath or affirmation will then be administered by the recorder to the projectionists and other support personnel:

"You, and each of you, do solemnly swear (or affirm) you will not divulge the proceedings of this board except as authorized or required by the Secretary of the Navy or higher authority. So help y.pu God."

2. Due to historic statutory restrictions on the assignment of women in Navy, the records of female officers before the board may show a career pattern different from that of their male counterparts. Such restrictions on duty assignments, which in the past have foreclosed to women opportunities for operational and command assignments available to men, cannot be allowed to prejudice the selection of women for retention. Therefore, in determining a woman's qualification for retention, duty performed by a female officer, whose past assignability was constrained by law or policy, will be given weight equal to duty performed by a male officer not so constrained which is equally well performed. In making your determination of those female officers who are best suited for retention, emphasis will be placed on her actual performance in assignments rather than her pattern of assignm6xts as compared to male officers.

3. The Department of the Navy is dedicated to equality of treatment for all personnel without regard to race, creed, color, sex, or national origin. Aggressive commitment to equal opportunity is critical.

Enclosure (2)

**ATTACHMENT I**

## SUPPLEMENTAL GUIDANCE

a.  Many minority officers have been assigned involunrariiv outside the traditional career development patterns, i.e., recruiting, equal opportunity and specific billets requiring minorities. These assignments though beneficial to the interests of Navy, have resulted in those officers having career patterns different from officers who have been able to serve in their primary or warfare specialties. In making your determination of those officers who are best suited for retention, you must view such assignments as having the same value as assignments within the primary or warfare specialty.

b.  The 1988 CNO Study Group Renort on Equal Opportunity in Navy, which is available to you, noted that minority officers who, prior to entering Navy, had limited interaction with a predominately majority environment, may take a longer time to adjust and perform to the' level of their contemporaries. This may result in initially lower fitness reports at the junior.officer level (through 0-3) ahd a higher percentage of "late bloomers" than their majority counterparts. You must consider this when evaluating a minority officer.

c.  In evaluating the records of eligible officers, you should be aware that past discrimination may have operated to the disadvantage of minority officers. Such discrimination may have manifested itself in comparatively lower fitness reports. Equivalent performance by a minority officer and a non-minority officer may not have resulted in equivalent fitness reports. You must consider this when evaluating minority officers.

4. Our ability to operate effectively with the other Services is vital to our warfighting capability. To foster this ability, a number of officers are assigned to joint military training and education and to duties with other Services and to joint staffs. Board members will give appropriate consideration to the performance of officers who are serving or have served in such assignments.

a.  To meet statutory requirements, as well as to ensure our ability to conduct joint operations, Navy is firmly committed to placing as many officers as possible in joint duty assignments. These assignments, critical for the future success of Navy, may have resulted in a career pattern different from officers who have served exclusively in their primary or warfare specialty:. In making your determination of those officers who are best suited for retention, you must view joint duty assignments as having the same value as assignments within the primary or warfare specialty.

b.  Navy's.ability to meet future joint operations requirements depends, in part, on senior officers who have served or are serving in joint duty assignments. Experience in a joint duty billet is a factor for you to consider in determining which officers are best qualified for retention.

**ATTACHMENT I**

## SUPPLEMENTAL GUIDANCE

inclusion in an officer's military personnel record. You may not discuss or disclose the opinion of any person not a member of the board concerning an officer being considered unless that opinion is contained in material provided to the board.

d. I am the only person who may appear in person to address you on any matter. All communications with this board, other than those that are clearly administrative, must be in writing, given to each of you and made part of the board's record. I have designated in writing those persons authorized to provide routine administrative information to you.

e. Before the report of theselection board is signed, the recommendations may be disclosed only to members of the board, recorders and those administrative support personnel I have designated in writing. After you sign the board report, only the recommendations of the board may be disclosed. Except as authorized by law or regulation the proceedings of the board may not be disclosed to any person not a board member or board recorder.

f. If at any time you believe that you cannot in good conscience perform your duties as a member of this board without prejudice or partiality, you have a duty to request relief by me from this duty. I will honor any such request. If, as a board member or recorder, you believe the integrity of the board's proceedings has been affected by improper influence of military or civilian authority, misconduct by the board president or a member, or any other reason, to believe someone is exerting or attempting to exert inappropriate influence over the board or its proceedings, you have a duty to request from me or the Secretary of Defense relief from your obligation not to disclose board proceedings and, upon receiving it, to report the basis for your belief.

g. Upon the completion of board's deliberations, you will, as a minimum, certify in your report to me that:

(1) To the best of your knowledge, the board complied with all instructions contained in the precept, and, as appropriate, other letters of guidance or instruction provided by me.

(2) That you were not subject to or aware of any censhre, reprimand, or admonishment about the recommendations of the board or the exercise of any lawful function within the authorized discretion of the board;

(3) That you were not subject to or aware of any attempt to coerce or influence improperly any action in the formulation of the board's recommendations;

(4) That you were not party to or aware of any attempt at unauthorized communications;

ATTACHMENT I

ATTACHMENT I

SUPPLEMENTAL GUIDANCE

S. A Selective Early Retirement Board is prohibited from considering the marital status of a member or the employment, education, or volunteer service of a spouse.

6. Many officers have special or advanced education (i.e., foreign language training, PhD., Masters degrees, etc.) and subspecialties of substantial value to Navy. In determining an officer's fitness for retention, selection boards shall give weight to duty in subspecialty billets, equal to that given to other duty, equally well performed. Proven expertise in training, education, recruiting, politico-military affairs and other subspecialties is a vital ingredient of the Navy's officer corps.

7. The official military personnel records provided to the board may include medical documents relevant to an officer's physical qualifications. If the board desires clarification of any such document, then the board president should reduce the board's questions to writing and forward them to me. I will provide such clarification as may be appropriate.

8. The senior member of the board has been appointed as president and will perform prescribed administrative duties. board president has no authority to constrain the board from recommending those officers whose retirements are determined to be in the best interest of Navy as specified by the Secretary. The board president will ensure that paragraph 9 of this enclosure is read to each board member, recorder and administrative support person on the convening date of the board or on the date of assignment to the board, whichever is later.

9. The following instructions concerning communications and information apply to board proceedings:

   a.  Each of you (president, members, recorders, and administrative support personnel) is responsible to maintain the integrity and independence of this selection board, and to foster careful consideration, without prejudice or partiality, of all eligible officers.

   b.  You must pay particularly close attention to the rules governing communications with and among other board members, the information authorized to be furnished to you, and the procedures you should follow if you believe that the integrity of this selection board has been improperly affected.

   c.  You are to base your recommendations on the material in each officer's military record, any information I have provided to the board, and any information communicated to you by individual eligible officers under regulations I have issued. In your deliberations, you may discuss your own personal knowledge and evaluation of the professional qualifications of eligible officers to the extent that such matters are not precluded by law or service regulation front consideration by a selection board or


ATTACHMENT I


ATTACHMENT I

SUPPLEMENTAL GUIDANCE

     (5)  That, to the best of your knowledge, the board carefully considered the records of each officer whose name was furnished to the board; and c

     (6)  That selections of the officers recommended for retirement from among those officers considered are, in the opinion of the majority of the members of the board, in the best interest of Navy.

10. The written report of the board will be signed by the board president, the board members and board recorders, and will contain a list of the names of the officers it recommends for retirement, with the certification described in paragraph 9g.

11. The record of the board's proceedings will be compiled by the recorders and administrative support staff and will contain at a minimum:

    a.  Convening notice.

    b.  A list of all officers considered for early retirement.

    c.  A list of all officers recommended for early retirement.

    d.  Precept.

ATTACHMENT I

Subj:  REQUEST FOR COMMENTS AND RECOMMENDATION ICO CDR GEORGE P.
       BYRUM, CHC, USN (RET)

4.  <u>Discussion</u>.  Petitioner raises the issues identified above
in his second petition to BCNR.  CDR Byrum is seeking to become
a named plaintiff in <u>Adair v. England</u>, 183 F. Supp. 2d 31
(D.D.C. 2002), and his issues are similar to those raised in
<u>Wilkins v. United States of America</u>, 279 F.3d 782 (9th Cir.
2002).  References (c) and (d) advise that if BCNR action
follows our advisory opinion, CDR Byrum's BCNR petition should
not affect, or be affected by, either case.  Enclosure (1)
provides a detailed legal analysis of the issues listed above.

5.  <u>Point of contact</u>.  My point of contact for this matter is
LT Tamara McCracken, JAGC, USN, at 703-604-8218, or E-Mail
<u>Tamara.McCracken@navy.mil</u>.

                              ERIC E. GEISER



**DEPARTMENT OF THE NAVY**
OFFICE OF THE JUDGE ADVOCATE GENERAL
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON NAVY YARD DC 20374-5066

IN REPLY REFER TO

1070
Ser 13/1BC11624.04
19 May 04

From:   Deputy Assistant Judge Advocate General (Administrative Law)
To:     Chairman, Board for Correction of Naval Records

Subj:   REQUEST FOR COMMENTS AND RECOMMENDATION ICO CDR GEORGE P.
        BYRUM, CHC, USN (RET)

Ref:    (a) Your ltr HD:kes Docket No 04911-02 of 29 Dec 03
        (b) PHONCON OJAG (Code 13) LT McCracken/ Chaplain
            Community Manager Ms. Berto of 27 Apr 04
        (c) PHONCON OJAG (Code 13) LT McCracken/OJAG (Code 14)
            LCDR Bart of 30 Apr 04, 3 May 04
        (d) PHONCON OJAG (Code 13) LT McCracken/OJAG (Code 14)
            LCDR Roper, LCDR Shanahan of 4 May 04

Encl:   (1) Legal Analysis

1.  This responds to your reference (a) request for our comments
and recommendation in the case of Commander George P. Byrum,
Chaplain Corps, U.S. Navy (Retired) (hereinafter Petitioner).

2.  <u>Issues</u>

     a.  Whether Navy personnel practices were improper and unfair
to the Petitioner because at the time of the FY96 Selective Early
Retirement Board (SERB), active-duty Reserve chaplain commanders
(1) were too senior to be Reservists on active duty; (2) were
retirement eligible; (3) were over maximum age limits; and (4) had
been improperly recalled to active duty.

     b.  Whether improper re-grading of minority candidates
occurred during the FY96 SERB.

     c.  Whether the board proceedings were improper because the
board (1) failed to accurately consider the future potential
service of Petitioner, and (2) improperly retained a retirement-
eligible Reserve officer.

     d.  Whether the board membership was improper because (1)
the denomination of the Petitioner was not represented on the
board while the denomination of other candidates for early



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

HD:hd
Docket No. 01519-03
23 July 2004

CDR GEORGE P BYRUM CHC USN RET
PO BOX 30309
WINSTON SALEM  NC  27130

Dear Commander Byrum:

This is in reference to your letters dated 13 February and 8 December 2003 with enclosure, seeking reconsideration of your previous application for correction of your naval record pursuant to the provisions of title 10 of the United States Code, section 1552.  Your previous case, docket number 4911-02, was denied on 30 January 2003.

Your request, in effect, that your retirement of 1 August 1996 be set aside.  You also added new requests to be promoted to captain retroactively on the basis of selection by the Fiscal Year (FY) 99 Active Duty Staff Captain Selection Board, and that you be permitted to accrue 37 years of commissioned service.

A three-member panel of the Board for Correction of Naval Records, sitting in executive session, reconsidered your case on 22 July 2004.  Your allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of this Board. Documentary material considered by the Board consisted of your letter, together with all material submitted in support thereof, the Board's file on your prior case, your naval record and applicable statutes, regulations and policies.  In addition, the Board considered the advisory opinions furnished by the Office of the Judge Advocate General dated 22 October 2003 and 19 May 2004, each with enclosure, copies of which are attached.  The Board also considered your letter dated 17 July 2004 with enclosure.

After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice.  In this connection, the Board substantially

concurred with the comments contained in the advisory opinions. The Board found nothing objectionable about the precept of the FY 96 Selective Early Retirement Board (SERB), as it related to minorities.   The Board found the precept did not mandate preferential treatment for minorities, but merely encouraged fair and equitable consideration of all officers.   The Board was unable to find the FY 96 SERB was occasioned by denominational favoritism, nor could it find SERB members were named on the basis of religious identity.   The Board was unable to find that SERB members of a given denomination had a conflict of interest in considering officers of the same denomination.   Finally, concerning your assertion, at Attachment H to the brief enclosed with your letter of 17 July 2004, that Commander S--- was illegally augmented from the Naval Reserve to the Regular Navy, the Board noted that Attachment I to the brief enclosed with your letter of 8 December 2003 shows this officer was a Naval Reserve officer when he was considered and retained by the FY 96 SERB.   In view of the above, the Board again voted to deny relief.   The names and votes of the members of the panel will be furnished upon request.

It is regretted that the circumstances of your case are such that favorable action cannot be taken.   You are entitled to have the Board reconsider its decision upon submission of new and material evidence or other matter not previously considered by the Board.   In this regard, it is important to keep in mind that a presumption of regularity attaches to all official records. Consequently, when applying for a correction of an official naval record, the burden is on the applicant to demonstrate the existence of probable material error or injustice.

Sincerely,

W. DEAN PFEIFFER
Executive Director

Enclosure

Copy to:
Mr. Arthur A. Schulcz

00901