# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rev. GEORGE P. BYRUM, )<br><br>Plaintiff, )<br><br>v. )<br><br>DONALD C. WINTER )<br>In his Official Capacity as Secretary, )<br>DEPARTMENT OF THE NAVY, )<br><br>Defendant. ) | Civil Action No. 06-02102 (RJL) |

## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant Donald C. Winter, in his official capacity as Secretary of the Department of the Navy, by and through counsel, hereby respectfully moves for summary judgment pursuant to Fed. R. Civ. P. 56. As set forth herein, with respect to the grounds entitling defendant to judgment, there is no genuine issue of material fact in dispute, and defendant is entitled to judgment as a matter of law. In support of this motion, defendant respectfully refers the Court to the accompanying Memorandum of Points and Authorities and Statement of Material Facts, together with the Administrative Record that has been previously filed with the Court.


Dated: February 22, 2008          Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director

**/s/ Kathryn L. Wyer**
KATHRYN L. WYER
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, D.C.  20530
Telephone: (202) 616-8475 / Fax: (202) 616-8202
kathryn.wyer@usdoj.gov
*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Rev. GEORGE P. BYRUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-02102 (RJL) |
| | ) | |
| DONALD C. WINTER | ) | |
| In his Official Capacity as Secretary, | ) | |
| DEPARTMENT OF THE NAVY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iv

PRELIMINARY STATEMENT ...........................................................................1

BACKGROUND ...................................................................................................4

ARGUMENT .........................................................................................................7

I.      THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIM ..............7

      A.      Plaintiff's Challenge Is Barred Because He Has Failed To Exhaust
            The Special Board Prerequisite Set Forth In 10 U.S.C. § 1558(f) ..............7

      B.      Any Facial Constitutional Challenge To The 1996 Equal
            Opportunity Instruction Is Barred By The Statute Of Limitations ..............8

II.     IF THE COURT PROCEEDS TO REVIEW THE BCNR DECISION,
       ITS STANDARD OF REVIEW IS DEFERENTIAL AND LIMITED TO
       THE ADMINISTRATIVE RECORD ..................................................................11

      A.      "Unusual Deference" Is Owed To Decisions Of The Navy's Board
            For Correction of Naval Records ...............................................................11

      B.      In The APA Context, Summary Judgment Is Appropriate Where
            The Agency's Decision Is Supported By The Administrative Record .......13

III.    THE BCNR'S DENIAL OF PLAINTIFF'S PETITIONS IS IN ACCORD
       WITH APPLICABLE STANDARDS AND SHOULD THEREFORE BE
       UPHELD ..............................................................................................................14

      A.      Judicial Review Of A BCNR Decision Should Not Reach The Merits
            Of The Underlying Selection Decision ......................................................14

      B.      The BCNR Adhered To The Standards That Govern Its
            Decisionmaking Process By Placing The Burden On Plaintiff To
            Submit Evidence Of Material Error Or Injustice ..........................................17

            1.     December 8, 2003, Petition For Reconsideration ..............................18

            2.     May 2, 2006 Petition For Reconsideration .........................................19

C.    The BCNR Did Not Act "Contrary To Law" By Failing To "Hold" The
1996 Instruction Facially Unconstitutional .................................................22

D.    Any Relevant Evidence That Could Have Supported Plaintiff's
Challenge Was Well Within His Control ...................................................25

IV.    EVEN IF THIS COURT REVERSES THE BCNR'S DECISION, PLAINTIFF
IS NOT ENTITLED TO THE RELIEF HE REQUESTS .....................................28

A.    If The Court Holds That The 2006 BCNR Panel Improperly Failed
To Consider Plaintiff's Claim Or Applied The Wrong Legal Standard
In Addressing Plaintiff's Petition, The Court Should Remand To The
BCNR For Further Consideration ..............................................................28

B.    Ultimately, Even If The 1996 SERB Equal Opportunity Instruction
Were Held Facially Unconstitutional, Plaintiff's Entitlement To Any
Further Remedy Must Be Determined By The Secretary .........................30

V.    THE FACT THAT THE ONLY RELIEF THAT MIGHT ULTIMATELY
BE AVAILABLE TO PLAINTIFF IS MONETARY BARS THIS CASE
UNDER THE DOCTRINE OF SOVEREIGN IMMUNITY ...............................34

CONCLUSION ..........................................................................................................37

# TABLE OF AUTHORITIES

## CASES

\*<u>Adair v. England</u>, 183 F. Supp. 2d 31 (D.D.C. 2002) .................................................................10, 23

<u>Andrews v. United States</u>, 6 Cl. Ct. 204 (1984) ..........................................................30

<u>Avocados Plus Inc. v. Veneman</u>, 370 F.3d 1243 (D.C. Cir. 2004) .........................................7

<u>Bangura v. Hansen</u>, 434 F.3d 487 (6th Cir. 2006) ........................................................34

<u>Berkley v. United States</u>, 48 Fed. Cl. 361 (2000), <u>rev'd</u> 287 F.3d 1076 ...............................9

<u>Berkley v. United States</u>, 59 Fed. Cl. 675 (2004) .........................................................9

<u>Bittner v. Secretary of Defense</u>, 625 F. Supp. 1022 (D.D.C. 1985) ..................................15

<u>Bowen v. Massachusetts</u>, 487 U.S. 879 (1988) ...........................................................34

<u>Bowen v. Mich. Acad. of Family Physicians</u>, 476 U.S. 667 (1986) ....................................7

\*<u>Bublitz v. Brownlee</u>, 309 F. Supp. 2d 1 (D.D.C. 2004) .................................................36

<u>Califano v. Sanders</u>, 430 U.S. 99 (1977) .................................................................23

<u>Camp v. Pitts</u>, 411 U.S. 138 (1973) .......................................................................14

<u>Carlisle v. United States</u>, 66 Fed. Cl. 627 (2005) .......................................................12

<u>Christensen v. United States</u>, 60 Fed. Cl. 19 (2004) ..................................................9, 31

<u>Christian v. United States</u>, 337 F.3d 1338 (Fed. Cir. 2003) ............................4, 18, 19, 31

<u>Christian v. United States</u>, 46 Fed. Cl. 793 (2000), <u>rev'd in part</u>, 337 F.3d 1338 (Fed. Cir. 2003) ...9

<u>Coit Independence Joint Venture v. FSLIC</u>, 489 U.S. 561 (1989) ....................................7

<u>Cone v. Caldera</u>, 223 F.3d 789 (D.C. Cir. 2000) .........................................................11

<u>County of Los Angeles v. Shalala</u>, 192 F.3d 1005 (D.C. Cir. 1999) .................................29

<u>Dodson v. United States</u>, 988 F.2d 1199 (Fed. Cir. 1993) ..........................................12, 13

Dynalantic Corp. v. U.S. Dep't of Defense, 503 F. Supp. 2d 262 (D.D.C. 2007) ........................29

Fla. Power & Light Co. v. Lorion, 470 U.S. 729 (1985) ......................................................29

*Frizelle v. Slater, 111 F.3d 172 (D.C. Cir. 1997) ...............................................14, 17, 25, 28, 29

Grutter v. Bollinger, 539 U.S. 306 (2003) ......................................................................22

Handy v. Shaw, Bradford, Veilleux & Roth, 325 F.3d 346 (D.C. Cir. 2003) ....................................6

Holley v. United States, 124 F.3d 1462 (Fed. Cir. 1997) ........................................................35

Hurick v. Lehman, 782 F.2d 984 (Fed. Cir. 1986) ..............................................................10

ICC v. Brotherhood of Locomotive Eng'rs, 482 U.S. 270 (1987) ...............................................21

*Kidwell v. Dep't of the Army, 56 F.3d 279 (D.C. Cir. 1995) ..............................................35, 36

Kindred v. United States, 41 Fed. Cl. 106 (1998) ..............................................................35

*Kreis v. Sec'y of Air Force, 866 F.2d 1508 (D.C. Cir. 1989) ...........................................11, 12, 16

Kreis v. Sec'y of Air Force, 406 F.3d 684 (D.C. Cir. 2005) ....................................................28

Lebrun v. England, 212 F. Supp. 2d 5 (D.D.C. 2002) .......................................................16, 30

Levant v. Roche, 384 F. Supp. 2d 262 (D.D.C. 2005) ...........................................................16

Long v. U.S. Dep't of Defense, 616 F. Supp. 1280 (D.C.N.Y. 1985) ...........................................10

Martinez v. United States, 333 F.3d 1295 (Fed. Cir. 2003) (en banc) .............................................35

McDougall v. Widnall, 20 F. Supp. 2d 78 (D.D.C. 1998) ..............................................12, 13, 14

Miller v. Dep't of Navy, 476 F.3d 936 (D.C. Cir. 2007) ..........................................................8

Mitchell v. United States, 930 F.2d 893 (Fed. Cir. 1991) .........................................................35

Mosley v. Sec'y of Navy, 522 F. Supp. 1165 (D.C. Pa. 1981) ....................................................30

Mueller v. Winter, 485 F.3d 1191 (D.C. Cir. 2007) ..............................................................8

Musengo v. White, 286 F.3d 535 (D.C. Cir. 2002) ...........................................................11, 17

Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,
    453 F. Supp. 2d 116 (D.D.C. 2006) ........................................................13

Nat'l Coal. to Save Our Mall v. Norton, 269 F.3d 1092 (D.C. Cir. 2001) .........................................7

N.C. Fisheries Ass'n, Inc. v. Gutierrez, 518 F. Supp. 2d 62 (D.D.C. 2007) .....................................13

*Nihiser v. White, 211 F. Supp. 2d 125 (D.D.C. 2002) ............................................................15, 16

Orloff v. Willoughby, 345 U.S. 83 (1953) ............................................................11

Pacyna v. Marsh, 617 F. Supp. 101 (W.D.N.Y. 1984),
    aff'd mem., 751 F.2d 374 (2d Cir.1984) ............................................................10

Piersall v. Winter, 435 F.3d 319 (D.C. Cir. 2006) ............................................................11

*Porter v. United States, 163 F.3d 1304 (Fed. Cir. 1998) ............................................................33

Richards v. INS, 554 F.2d 1173 (D.C. Cir. 1977) ............................................................13

*Richey v. United States, 322 F.3d 1317 (Fed. Cir. 2003) ............................................................32

*Ricks v. United States, 65 Fed. Cl. 826 (2005) ............................................................31

Roberts v. Green, No. 05-2430, 2007 WL 4547586 (D.D.C. Dec. 27, 2007) .....................................22

Roberts v. Harvey, 441 F. Supp. 2d 111 (D.D.C. 2006) ............................................................28

Roth v. United States, 378 F.3d 1371 (Fed. Cir. 2004) ............................................................35

Saunders v. Caldera, 193 F. Supp. 2d 1 (D.D.C. 2001) ............................................................9

Saunders v. White, 191 F. Supp. 2d 95 (D.D.C. 2002) ............................................4, 18, 19, 21, 31

Schoenbohm v. FCC, 204 F.3d 243 (D.C. Cir. 2000) ............................................................22

Stanton v. Dist. of Columbia Court of Appeals, 127 F.3d 72 (D.C. Cir. 1997) .............................6

*Suburban Mortgage Assocs., Inc. v. HUD, 480 F.3d 1116 (Fed. Cir. 2007) .........................35, 36

Tootle v. Sec'y of the Navy, 446 F.3d 167 (D.C. Cir. 2006) ............................................................35

*Transohio Savings Bank v. OTS, 967 F.2d 598 (D.C. Cir. 1993) ............................................34

Watson v. Ark. Nat'l Guard, 886 F.2d 1004 (8th Cir. 1989) ........................................................23

White v. Sec'y of the Army, 629 F. Supp. 64 (D.D.C. 1984) ........................................................10

Wilkins v. United States, 279 F.3d 782 (9th Cir. 2002) ...............................................................23

Wisotsky v. United States, 69 Fed. Cl. 299 (2006) ..................................................................12, 13

Wronke v. Marsh, 787 F.2d 1569 (Fed. Cir. 1986) .................................................................12, 13

## STATUTES

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 ........................................7, 11, 13, 34

5 U.S.C. § 706 ..............................................................................................................................22

10 U.S.C. § 628 ....................................................................................................................8, 9, 32

10 U.S.C. § 633 ............................................................................................................................33

10 U.S.C. § 634 ............................................................................................................................34

10 U.S.C. § 1552 ................................................................................................................8, 11, 12

10 U.S.C. § 1558 ..........................................................2, 3, 7, 8, 9, 11, 15, 31, 32, 33

28 U.S.C. § 1331 ..........................................................................................................................35

Tucker Act, 28 U.S.C. § 1491 ......................................................................................................35

28 U.S.C. § 2401(a) ...............................................................................................................9, 10

28 U.S.C. § 2501 ............................................................................................................................9

## REGULATIONS

32 C.F.R. § 723.2 ........................................................................................................................24

32 C.F.R. § 723.3 ....................................................................................................................17, 20

32 C.F.R. § 723.6 ....................................................................................................................23, 24

32 C.F.R. § 723.9 ................................................................................................................6, 18, 20

## PRELIMINARY STATEMENT

Plaintiff, a white Navy chaplain who was selected for early retirement and left active service on August 1, 1996, seeks to "overturn" an equal opportunity instruction that is no longer in effect, but appeared in the precept that governed his selective early retirement board ("SERB") over twelve years ago. According to plaintiff, the instruction required the SERB to give preferential treatment to minorities in violation of the equal protection component of the Fifth Amendment. Having failed to bring a facial challenge to the language of the instruction within the six-year statute of limitations period, he seeks to revive his stale claim via a petition filed with the Navy's Board for Correction of Naval Records ("BCNR"). However, under the deferential standard governing judicial review of BCNR decisions, plaintiff's failure to meet the evidentiary burden imposed by Navy regulations is fatal to his claim.

Plaintiff's equal protection argument is only one of a variety of different theories he has raised in both administrative and judicial proceedings attempting to reverse his early retirement. Indeed, plaintiff continues to pursue his claim of religious discrimination in a related case before another member of this court. After conceding that the argument raised in his initial application before the BCNR was meritless, plaintiff first raised a question regarding the equal opportunity instruction in December 2003, over seven years after his retirement, in a petition to reconsider his initial application. The BCNR rejected this along with all of plaintiff's other claims, but in 2006 – four years after plaintiff's initial BCNR application and ten years after plaintiff's retirement – plaintiff's counsel submitted a letter claiming that the 1996 instruction was facially unconstitutional and rendered plaintiff's selection invalid. This case concerns plaintiff's challenge to the BCNR's response to that letter, which the BCNR treated as another petition for

- 1 -

reconsideration and denied because plaintiff failed to submit any new evidence of material error or injustice.

As an initial matter, plaintiff's claim is unreviewable because he has failed to request that the Secretary convene a special board that would consider his selection anew and remedy any alleged error in the original SERB. In 10 U.S.C. § 1558(f), Congress clearly stated that the Secretary must either convene or a deny a special board before a court may review any SERB action or recommendation. Plaintiff cannot evade that exhaustion requirement by mounting a collateral attack on the SERB decision through an appeal of a BCNR decision. Moreover, plaintiff's efforts to repackage this case as a facial constitutional challenge – despite the untimeliness of such a challenge – should be rejected.

To the extent plaintiff's claim is reviewable at all, the issue here is whether the BCNR's conclusion that plaintiff's petition should be denied for failure to submit new evidence of material error or injustice is supported by the administrative record. In considering this case, this Court must review not the original SERB decision but the BCNR's decision, and it must do so under the "unusually deferential" standard that applies in the military context. This review should lead the Court to hold that the BCNR's decision was not arbitrary or contrary to law because plaintiff failed to meet the evidentiary burden that the BCNR's decisionmaking process places on an applicant. The relevant evidence in this case was well within plaintiff's control. Yet plaintiff submitted nothing to suggest that the "special factors" that, he claims, were inappropriately applied only to minorities would have affected the evaluation of his own record if they were applied to him.

The applicable standard does not permit a de novo facial constitutional analysis of a ten-

year-old instruction.  Plaintiff errs in arguing that a military correction board is obligated to apply the same standards a court would apply to a timely facial constitutional claim.  A correction board's concern is with remedying material error in a specific case, not in making abstract pronouncements on the facial validity of military policies.  The fact that Navy regulations place the burden on a BCNR applicant to submit evidence as a prerequisite to further consideration is consistent with the BCNR's function.  Under the posture of this case, therefore, the constitutional issue that plaintiff seeks to raise should not be reached, and the BCNR's refusal to address it should be upheld.

If the Court nevertheless concludes that the BCNR's decision should be set aside, it should remand to the Secretary for further proceedings.  A holding that the BCNR improperly failed to consider plaintiff's challenge or that it applied the wrong standard should lead the Court to remand so that the BCNR may properly consider plaintiff's argument or apply the correct standard.  Even if the 1996 instruction were determined to be facially invalid, the ultimate question of whether plaintiff's selection should be overturned would remain open.  Plaintiff's requested remedies – which include reinstatement and consideration for a promotion – are unavailable without some further determination by the Secretary that his selection for early retirement was invalid.  The Secretary should be allowed to determine the appropriate process for resolving that ultimate issue.  One option that is certainly within the Secretary's discretion is the convening of a special board pursuant to 10 U.S.C. § 1558 to consider plaintiff's selection anew.

Ultimately, the Court should recognize that plaintiff cannot return to active duty in any event because if his 1996 SERB selection were removed from his record, resulting in his constructive reinstatement as of the date of his retirement, he would have exceeded the maximum

- 3 -

number of years in service. Accordingly, the only possible impact of an outcome favorable to plaintiff is financial, in the form of back pay for those additional years of constructive service. For this reason, defendant respectfully renews his prior argument that this action properly belongs in the Court of Federal Claims.

## **BACKGROUND**

On August 1, 1996, plaintiff retired from service in the Navy Chaplain Corps at the rank of commander after he was selected for early retirement by the Fiscal Year ("FY") 1996 SERB. AR 2, 8. Plaintiff first sought to overturn this decision nearly six years later, on May 29, 2002, when he applied to the BCNR for correction of his record, alleging that the SERB had failed to consider some officers who should also have been deemed eligible for selective early retirement. AR 2. The BCNR rejected this application, explaining that plaintiff's understanding of the eligibility criteria was incorrect. AR 113. Plaintiff then petitioned the BCNR for reconsideration. AR 136.

On December 8, 2003, during the course of this petition, plaintiff acknowledged his error, but raised a number of new issues in what he called an "amended application." Among other things, he argued that the equal opportunity instruction that appeared in the 1996 SERB's governing precept favored minorities in the SERB's selection process. AR 181-85. Specifically, plaintiff claimed that the provision "required re-grading minorities' records." AR 184. Citing Christian v. United States, 337 F.3d 1338 (Fed. Cir. 2003), and Saunders v. White, 191 F. Supp. 2d 95 (D.D.C. 2002), plaintiff noted that "[r]e-grading requirements have consistently been ruled unconstitutional by federal courts" and argued that his record should be compared to those of any minority servicemembers who might have been considered but not selected in order to determine

- 4 -

whether he had been injured by the allegedly flawed provision. AR 184-85. The BCNR added plaintiff's new issues to the open petition for reconsideration and requested a new advisory opinion from the Navy's Office of the Judge Advocate General ("OJAG"). AR 253, 290.

OJAG concluded that the language in the 1996 instruction did not direct, or even allow, the practice of "re-grading," which it identified as involving "taking the preliminary results of the selection board, and re-grading minority candidates where there is a disparity between the selection rates of minority and non-minority candidates." AR 257, 263. OJAG also specifically stated that re-grading "was not used" by the SERB that selected plaintiff. AR 264. Plaintiff contested this statement, arguing that the equal opportunity instruction was unfair to him because it "required the subjective and arbitrary reconsideration of all uncompetitive minority grades." AR 272-73. However, the BCNR concluded that the evidence that plaintiff had submitted "was insufficient to establish the existence of probably material error or injustice." AR 292.

On August 28, 2004, plaintiff filed a second petition for reconsideration with the BCNR, but he did not address the equal opportunity provision in that petition. AR 297-304. Over a year after the second petition was denied, however, on May 2, 2006, plaintiff's counsel submitted a letter that the Navy treated as a third petition for reconsideration and that again referenced the equal opportunity instruction, claiming that it violated the equal protection component of the Fifth Amendment. AR 654-55. This letter cited no case law or other support for its allegations, nor was any additional evidentiary material submitted. The Assistant General Counsel (Manpower and Reserve Affairs) ("AGC") directed that a new BCNR panel be convened and initially instructed that the panel "evaluate the language contained in the SERB precept and the effect, if any, it had on the Petitioner." AR 670. However, an OJAG advisory opinion

- 5 -

addressing the new petition cited Navy regulations that instruct the BCNR to consider petitions

for reconsideration only "'upon presentation by the applicant of new and material evidence or

other matter not previously considered by the [BCNR].'" AR 681 (quoting 32 C.F.R. § 723.9).

OJAG concluded that plaintiff's current allegation of illegal reverse race discrimination was

substantially similar to his previous argument on that issue, and that plaintiff had failed to submit

any new and material evidence in support of his claim.  AR 681.

Though plaintiff's counsel was sent a copy of the OJAG opinion and invited to respond,

he declined to provide any further evidence or response, other than to state that his position was

"as set forth in [his previous] letter."  AR 686.  A majority of the BCNR panel then voted to deny

plaintiff's petition for failure to present sufficient evidence.  AR 692.  The dissenting member

did not address the substance of plaintiff's claim but argued that the majority had failed to follow

the AGC's initial direction.  AR 693.  The AGC himself, however, after reviewing the BCNR's

report and the OJAG opinion, approved the majority decision.  AR 693.  Plaintiff filed his

Complaint in this case on December 11, 2006.[1]

---

[1]Defendant has previously filed a notice of related case, pointing out that, concurrent with
this action, plaintiff is seeking the same relief he seeks here, also based on a claim that his
selective early retirement was invalid, in Gibson v. U.S. Navy, Civ. No. 06-1696 (D.D.C.).  On
June 18, 2007, Gibson was consolidated with the ongoing Adair v. Winter, Civ. No. 00-566,
litigation and incorporated into Miscellaneous Case No. 07-269, under the name In re: Navy
Chaplaincy.  Plaintiff appears as a named plaintiff on the docket in that case, which is currently
on interlocutory appeal.  If that case is resolved, plaintiff's claims relating to his 1996 SERB
selection will be barred by res judicata.  See Stanton v. Dist. of Columbia Court of Appeals, 127
F.3d 72, 78 (D.C. Cir. 1997).  Indeed, as defendant has argued, the potential for inconsistency
resulting from two separate actions, one considering a claim that a Navy decision was the result
of religious discrimination and the other considering a claim that the same decision was the result
of reverse race discrimination, warrants dismissal of this case.  Handy v. Shaw, Bradford,
Veilleux & Roth, 325 F.3d 346, 349 (D.C. Cir. 2003).

# ARGUMENT

## I.    THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIM

### A.    Plaintiff's Challenge Is Barred Because He Has Failed To Exhaust The Special Board Prerequisite Set Forth In 10 U.S.C. § 1558(f)

In 10 U.S.C. § 1558(f)(1), Congress precluded judicial review of "an action or recommendation of a selection board" unless one of two conditions are first met. Either the action or recommendation must "first be[] considered by a special board" convened under § 1558, or the Secretary must have "denied the convening of such a board for such consideration." 10 U.S.C. § 1558(f)(1). A clear statutory bar on jurisdiction overcomes the general presumption of review of agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 673 (1986) (explaining that the presumption "may be overcome by, *inter alia*, specific language . . . that is a reliable indicator of congressional intent" (internal quotation omitted)); Nat'l Coal. to Save Our Mall v. Norton, 269 F.3d 1092, 1095 (D.C. Cir. 2001) (holding that statutory language barring judicial review did just that). Congress' conditioning of jurisdiction on compliance with a statutory exhaustion requirement must similarly be given effect. Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 579 (1989) ("[E]xhaustion of administrative remedies is required where Congress imposes an exhaustion requirement by statute."); Avocados Plus Inc. v. Veneman, 370 F.3d 1243, 1247 (D.C. Cir. 2004) (recognizing statutory conditioning of judicial review on exhaustion as a jurisidictional bar).[2]

_____

[2]Even if the Court disagrees that the exhaustion requirement of 10 U.S.C. § 1558(f)(1) is jurisdictional, defendant would be entitled to summary judgment on the basis that plaintiff failed to satisfy this requirement.

Here, plaintiff never requested a special board, nor was any BCNR panel that considered plaintiff's various submissions ever designated as a special board.  Cf. Mueller v. Winter, 485 F.3d 1191, 1195 (D.C. Cir. 2007) (describing the plaintiff's application for correction of his military record and his request to the Secretary to convene a special selection board under 10 U.S.C. § 628, the provision that parallels § 1558 in the promotion board context, as two separate processes); Miller v. Dep't of Navy, 476 F.3d 936, 938 (D.C. Cir. 2007) (reviewing the Secretary's decision not to convene a special selection board under § 628).  Any such request or designation would appear in the administrative record, so its absence from the record is conclusive on that point.

The jurisdictional bar extends to review of a BCNR decision where the underlying claim relates to an action or recommendation of a selection board.  While § 1558(g) preserves "the authority of the Secretary . . . to correct a military record under [10 U.S.C. §] 1552," the two subsections of the statute (§ 1558(f) and (g)) read together indicate that Congress did not intend to allow judicial review of selection board decisions unless the exhaustion requirement in § 1558(f) has been met.  Thus, this Court lacks jurisdiction to consider any challenge to plaintiff's selection by the 1996 SERB, including a collateral attack to his selection through the BCNR records correction process.  To hold otherwise would allow any servicemember an easy means of circumventing the § 1558(f) exhaustion requirement by applying for correction of his military record instead of requesting a special board.

**B.    Any Facial Constitutional Challenge To The 1996 Equal Opportunity Instruction Is Barred By The Statute Of Limitations**

Even if plaintiff's claim were not barred under 10 U.S.C. § 1558, he would be unable to

raise a facial constitutional challenge to the 1996 equal opportunity instruction because the

statute of limitations on such a challenge has long since run.[3]  Thus, despite plaintiff's efforts to

package it as such, this case does not present a facial constitutional challenge.  Assuming § 1558

did not apply, the fact is that plaintiff could have brought a facial constitutional challenge to the

1996 SERB precept's equal opportunity instruction by filing a claim in court within the six-year

statute of limitations set forth in 28 U.S.C. § 2401(a), or, if the claim was brought in the Court of

Federal Claims, 28 U.S.C. § 2501.  The only judicial decisions that have addressed the

constitutionality of other such instructions have done so in response to a direct facial challenge.[4]

Here, any direct challenge plaintiff might have brought to his SERB selection based on

the alleged unconstitutionality of the 1996 precept accrued, at the latest, at the time of his

_____

[3]Section 1558 indicates elsewhere that facial challenges to "the validity of any law, regulation, or policy relating to selection boards" are not subject to the exhaustion requirement set forth in § 1558(f)(1).  10 U.S.C. § 1558(g).  Here, however, the basis for plaintiff's standing to challenge the facial validity of the 1996 SERB precept derives from his selection by the 1996 SERB, and his selection is what he seeks, through this action, to overturn.  Thus, the exhaustion requirement must apply.  See Christensen v. United States, 60 Fed. Cl. 19, 24 (2004) (recognizing that § 1558 would have applied in a case involving an allegedly unconstitutional Air Force instruction if the statute had been in effect at the time plaintiffs filed their claim); Berkley v. United States, 59 Fed. Cl. 675 (2004) (applying 10 U.S.C. § 628, the promotion-board equivalent to § 1558, where plaintiffs challenged the constitutionality of an Air Force instruction). In any case, as discussed below, to the extent plaintiff could have brought a facial challenge either before or after his selection, the statute of limitations has now run.

[4]See, e.g., Saunders v. Caldera, 193 F. Supp. 2d 1, 5-6 & n.4 (D.D.C. 2001) (explaining that plaintiff's challenge to the equal opportunity instruction in a promotion board precept was brought directly in court in addition to a separate challenge to a correction board decision); Berkley v. United States, 48 Fed. Cl. 361 (2000), rev'd 287 F.3d 1076 (considering the facial constitutionality of FY93 Air Force instruction on direct review); Christian v. United States, 46 Fed. Cl. 793, 799 (2000) (indicating that the issues before the court included both a challenge to a correction board decision and a direct challenge to the constitutionality of a 1992 equal opportunity instruction, where the complaint was filed in 1997), rev'd in part, 337 F.3d 1338 (Fed. Cir. 2003).

- 9 -

retirement on August 1, 1996, and is now barred by the six-year statute of limitations set forth in

28 U.S.C. § 2401(a).  This six-year limitations period has not been tolled by plaintiff's attempt to

seek relief from the BCNR, which in this context has been held to be a permissive rather than a

mandatory step.  See White v. Sec'y of the Army, 629 F. Supp. 64, 67 (D.D.C. 1984) (holding

the statute of limitations was not tolled on a servicemember's direct challenge to his discharge by

his pursuit of an administrative remedy through the Army's records correction board because

"nothing prevented plaintiff from resorting to this Court immediately after his discharge"); see

also Hurick v. Lehman, 782 F.2d 984, 987 (Fed. Cir. 1986) (observing that "resort to a

Correction Board is a permissive (rather than a mandatory) step, which does not suspend the

running of the statute"); Long v. U.S. Dep't of Defense, 616 F. Supp. 1280, 1284 (D.C.N.Y.

1985) (holding plaintiff's claim barred and observing that "[a]llowing this case to proceed would

render § 2401(a) meaningless and would permit such suits to be filed any time a plaintiff obtains

review or reconsideration by a military correction board"); Pacyna v. Marsh, 617 F. Supp. 101,

103 (W.D.N.Y. 1984) (rejecting the notion that a servicemember has "the power to avoid the

jurisdictional bar every time he submit[s] an application which [i]s considered by the corrections

[b]oard", aff'd mem., 751 F.2d 374 (2d Cir.1984).  Indeed, in the case with which plaintiff's

other ongoing litigation is now consolidated, a member of this court held that servicemembers

bringing constitutional challenges to Navy policies need not seek relief before the BCNR before

bringing their action in court.  Adair v. England, 183 F. Supp. 2d 31, 55 (D.D.C. 2002) (J.

Urbina).

## II.    IF THE COURT PROCEEDS TO REVIEW THE BCNR DECISION, ITS STANDARD OF REVIEW IS DEFERENTIAL AND LIMITED TO THE ADMINISTRATIVE RECORD[5]

### A.    "Unusual Deference" Is Owed To Decisions Of The Navy's Board For Correction of Naval Records

Judicial review of military actions must attend closely to the proper standard of review. Here, plaintiff improperly seeks to apply standards that are appropriate to a facial constitutional challenge but not to a challenge to an administrative board decision subject to deferential review under the APA, 5 U.S.C. §§ 701-706.  A court's review of a military correction board proceeding that takes place pursuant to 10 U.S.C. § 1552 is conducted under an APA standard that  is "unusually deferential."  Musengo v. White, 286 F.3d 535, 538 (D.C. Cir. 2002) (recognizing that a court must review a decision of a military correction board "under an 'unusually deferential application of the "arbitrary or capricious" standard' of the APA" (quoting Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989)); accord Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000).  This deference is based in part on the well-considered principle that "'judges are not given the task of running the military.'"  Piersall v. Winter, 435 F.3d 319, 322 (D.C. Cir. 2006) (quoting Kreis, 866 F.2d at 1511); cf. Orloff v. Willoughby, 345 U.S. 83, 93 (1953).  Courts have recognized that if they were to "become a forum for appeals by every soldier dissatisfied with his or her ratings," this role "would destabilize military command and take the judiciary far afield of its area of competence."  Cone, 223 F.3d at 793.

Moreover, the statutory language of § 1552 itself calls for unusual deference.  It provides

---

[5]The following analysis assumes that the Court has held that 10 U.S.C. § 1558 does not apply to this action.  As discussed above, the Court should hold that § 1558 does apply and that this action is accordingly barred.

- 11 -

that the Secretary "<u>may</u> correct any military record . . . <u>when the Secretary considers it necessary</u> to correct an error or remove an injustice," 10 U.S.C. § 1552(a)(1) (emphasis added), and that any corrections "shall be made under procedures established <u>by the Secretary</u>," <u>id.</u> § 1552(a)(3) (emphasis added).  <u>See Kreis</u>, 866 F.2d at 1514 ("It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act '*when he considers it necessary* to correct an error or remove an injustice' than it is if he is required to act whenever a <u>court</u> determines that certain objective conditions are met." (citation omitted) (second emphasis added)).  In sum, "a plethora of authority mandates judicial deference to military decisions, including those rendered by the corrections boards."  <u>Carlisle v. United States</u>, 66 Fed. Cl. 627, 631 (2005).

Under this deferential standard, "[t]he plaintiff bears the burden of showing that the [correction board's] action was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations."  <u>Wisotsky v. United States</u>, 69 Fed. Cl. 299, 304 (2006) (internal quotation omitted) (citing <u>Wronke v. Marsh</u>, 787 F.2d 1569, 1576 (Fed. Cir. 1986)).  This burden is high; the plaintiff "must overcome the presumption that [correction board members], like other public officers, discharge their duties correctly, lawfully, and in good faith," and a court may not "substitute its own judgment for the board's if reasonable minds could reach differing resolutions of a disputed fact."  <u>Dodson v. United States</u>, 988 F.2d 1199, 1204-05 (Fed. Cir. 1993) (internal quotation omitted); <u>see McDougall v. Widnall</u>, 20 F. Supp. 2d 78, 82 (D.D.C. 1998) (recognizing that the officers of a correction board "are presumed to have discharged their duties lawfully and in good faith").

"To prevail under the arbitrary and capricious standard, [a] plaintiff must demonstrate that evidence was ignored or unreasonably construed, or that designated duties were not

performed by the [correction board]." <u>Wisotsky</u>, 69 Fed. Cl. at 304 (internal quotation omitted).

The board's decision "may [also] be reviewed for failure to correct plain legal error committed

by the military." <u>Dodson</u>, 988 F.2d at 1204. "Such legal error includes the military's violation of

statute, or regulation, or published mandatory procedure, or unauthorized act." <u>Id.</u> (internal

quotation omitted). In any case, a court's review of a correction board decision must, in turn,

take into account the correction board's duty to impose the burden on applicants seeking record

corrections to "show[] by cogent and clearly convincing evidence that the military decision

[being challenged] was the product of a material legal error or injustice." <u>McDougall</u>, 20 F.

Supp. 2d at 82 (citing <u>Wronke</u>, 787 F.2d at 1576).

      **B.      In The APA Context, Summary Judgment Is Appropriate Where The**
                  **Agency's Decision Is Supported By The Administrative Record**

      The current posture of this case involves cross-motions for summary judgment, which, in

general, "is appropriate when the pleadings and the record demonstrate that 'there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of

law.'" <u>Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs</u>, 453 F. Supp. 2d 116, 122

(D.D.C. 2006) (quoting Fed. R. Civ. P. 56(c)). In a context where the Court is reviewing an

agency action under the APA, 5 U.S.C. §§ 701-706, summary judgment "serves as the

mechanism for deciding, as a matter of law, whether the agency action is supported by the

administrative record and otherwise consistent with the APA standard of review." <u>N.C. Fisheries</u>

<u>Ass'n, Inc. v. Gutierrez</u>, 518 F. Supp. 2d 62, 79 (D.D.C. 2007) (citing <u>Richards v. INS</u>, 554 F.2d

1173, 1177 & n.28 (D.C. Cir. 1977)). The Court's role in that context is not to resolve factual

issues but to "determine whether or not as a matter of law the evidence in the administrative

- 13 -

record permitted the agency to make the decision it did."  Id. (internal quotation omitted); see also McDougall, 20 F. Supp. 2d at 82 (explaining that a court "must review the decision of [a military correction board] through an examination of the administrative record of the proceedings before the [correction board], rather than a de novo review of [a] [p]laintiff's claims"  (citing Camp v. Pitts, 411 U.S. 138, 142 (1973))).

## III.    THE BCNR'S DENIAL OF PLAINTIFF'S PETITIONS IS IN ACCORD WITH APPLICABLE STANDARDS AND SHOULD THEREFORE BE UPHELD

### A.    Judicial Review Of A BCNR Decision Should Not Reach The Merits Of The Underlying Selection Decision

Plaintiff purports to argue that the BCNR's denial of relief was "contrary to law" because the 1996 SERB precept "was facially unconstitutional."  Pl. Mem. at 15-16.  He states that "[n]othing in the [administrative record] explains why the Secretary rejected that attack."  Id. at 15.  However, in putting forth his argument, plaintiff – to the extent he mentions them at all – glosses over and misconstrues the standards that govern BCNR decisionmaking.[6]  As discussed in detail below, the BCNR's decision can easily be explained by the fact that BCNR proceedings are governed by Navy regulations that place the burden on petitioners to submit the required

---

[6]Plaintiff cites Frizelle v. Slater, 111 F.3d 172, 179 (D.C. Cir. 1997), for the proposition that "once an error is shown," the government has the burden of proving that "the same outcome would have occurred . . . in any event."  Pl. Mem. at 15.  However, Frizelle actually makes clear that the burden of showing, first, that there was legal error, and, second, that this legal error had a prejudicial impact on the officer's record (something that is well within an officer's control), rests with the officer seeking correction of his record, not with the government.  Frizelle, 111 F.3d at 179 (the burden of showing "whether the officer's record appears worse than it would in the absence of the errors . . . rests with the officer").  Only after an officer meets his burden in making both showings must the government reach the question of "whether it is unlikely that the officer would have been [retained] in any event."  Id.  As discussed below, the BCNR applied the proper standards in evaluating plaintiff's claims, and denied these claims because plaintiff failed to meet his burden.

evidence, and plaintiff failed to meet this burden. Plaintiff's refusal to acknowledge this assignment of burdens in the BCNR context reveals that, in essence, he seeks to mount a direct challenge to the precept language itself. As discussed above, this Court lacks jurisdiction to consider that claim.

Moreover, the statutory and regulatory scheme for BCNR review, described above, shows clearly the already well-established principle that a court's review of a correction board decision regarding a servicemember's separation does not entail a review of the original separation. Bittner v. Secretary of Defense, 625 F. Supp. 1022, 1029 (D.D.C. 1985) (explaining that the court in this context "does not and cannot review the actual [separation] of . . . plaintiffs, but only the review boards' decisions"). The distinction between direct review of a selection board decision and review of a correction board decision was recognized by a member of this court in Nihiser v. White, 211 F. Supp. 2d 125 (D.D.C. 2002) (J. Lamberth), where the plaintiff challenged the validity of a 1992 equal opportunity instruction more than six years after his involuntary separation. As in this case, he did so by filing an application for correction of his record with the military correction board, and a later petition for reconsideration.[7] Id. at 127. In Nihiser, the petition for reconsideration had been filed over six years after the initial correction board decision, and the court held that the petition did not toll the statute of limitations on the plaintiff's challenge to the correction board decision. Id. at 130. However, the court also noted in a footnote that even if the correction board decision were reviewable, the court "would easily uphold it," considering the "quite limited" review that a court would conduct of a correction

---

[7]In Nihiser, the exhaustion requirement of 10 U.S.C. § 1558 did not apply because the statute had not yet gone into effect. See 10 U.S.C. § 1558 Note (noting section would be applicable "to any proceeding pending on or after Dec. 28, 2001").

board proceeding.  Id. at 130 n.1.  This observation was made even while recognizing that "the law of affirmative action [had] changed substantially" since the 1992 equal opportunity instruction was developed.  Id. at 131.  Clearly, the court in Nihiser did not contemplate a facial constitutional analysis of the 1992 instruction where it would be reviewing a correction board decision rather than responding to a direct challenge to the involuntary separation.[8]  That approach is consistent with the significant interest in repose, represented by the applicable statute of limitations, in the military context.[9]

Under the review standards articulated above, the Court's role here is appropriately limited to a determination of whether the BCNR's decisionmaking process was flawed.  Cf. Levant v. Roche, 384 F. Supp. 2d 262, 267 (D.D.C. 2005) (recognizing that judicial review of a correction board decision "requires the Court 'to determine only whether the . . . decision making process [of the Secretary, acting through the correction board,] was deficient, not whether [its] decision was correct'" (emphasis added) (quoting Kreis, 866 F.2d at 1511)); Lebrun v. England,

---

[8]Four months before issuing the decision in Nihiser, the same judge, Judge Lamberth, had held, in Saunders, that the 1996 and 1997 equal opportunity instructions used by the Army – which involved a "review and revote" procedure that is absent here – were unconstitutional.  That decision was made on direct review of the promotion board proceedings where the instructions were in effect, thus demonstrating the significant distinction between direct review of a promotion or selection board proceeding, on the one hand, and review of a correction board's consideration of an application to remove a failure-to-promote or a selection decision from a servicemember's record, on the other, which reflects "the repose envisioned by the six year statute of limitations."  Nihiser, 211 F. Supp. 2d at 130 n.1.

[9]If plaintiff were to succeed in obtaining direct review of the SERB decision through this action, this holding would have significant repercussions.  Because military correction boards readily waive the time limitations for bringing issues before them, servicemembers seeking to bring direct challenges to military decisions in court past the statutory limitations period would need only first apply to the correction board – no matter how long after the original military action they seek to challenge – and thus revive their otherwise barred cause of action, even where, as here, they fail to submit any evidence to the board in support of their claim.

- 16 -

212 F. Supp. 2d 5, 15 (D.D.C. 2002) ("After a thorough review of the administrative record, including the BCNR majority and minority opinions and the Secretary's decision, and what process was due the plaintiff, the Court must grant the defendant's Motion for Summary Judgment because the defendant's <u>decision-making process</u> was not deficient in the face of the facts and circumstances of this case." (emphasis added)).  This is particularly true where the basis for the BCNR's decision was the plaintiff's failure to meet his burden of submitting evidence of "material error or injustice," imposed on him by Navy regulations.

> **B.      The BCNR Adhered To The Standards That Govern Its Decisionmaking Process By Placing The Burden On Plaintiff To Submit Evidence Of Material Error Or Injustice**

The BCNR properly implemented the decisionmaking process set forth in Navy regulations when it considered plaintiff's application for correction of his military record and his subsequent petitions for reconsideration.  The BCNR's decision should therefore be upheld.

Navy regulations require the BCNR to "rel[y] on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, [to] presume that they have properly discharged their official duties."  32 C.F.R. § 723.3(e)(2).  Applicants bear the burden of overcoming this presumption by "clear[] and convincing[]" evidence, <u>Musengo</u>, 286 F.3d at 538 (internal quotation omitted), and the BCNR "may deny an application . . . if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice."  32 C.F.R. § 723.3(e)(2).  As the D.C. Circuit has recognized, an applicant's burden includes showing both that legal error occurred and that the legal error had a prejudicial impact on the applicant's military record.  <u>Frizelle</u>, 111 F.3d at 179.

Here, plaintiff's initial application to the BCNR did not challenge the validity of the 1996

SERB precept language. Rather, plaintiff first raised this issue in his first petition for reconsideration. After an initial application has been rejected, Navy regulations state that "further consideration will be granted only upon presentation by the applicant of new and material evidence or other matter not previously considered by the [BCNR]." 32 C.F.R. § 723.9. This regulation provided the applicable standard the first time plaintiff raised a question concerning the SERB precept, and when plaintiff raised the question a second time, in the letter from his counsel, which the BCNR treated as plaintiff's third petition for reconsideration.

### 1. December 8, 2003, Petition For Reconsideration

As described above, when plaintiff originally questioned the fairness of the 1996 SERB precept, in his December 8, 2003, submission, he alleged that the equal opportunity instruction required regrading of minority candidates, and he cited specific judicial decisions – Christian v. United States, 46 Fed. Cl. 793 (2000), and Saunders v. White, 191 F. Supp. 2d 95 (D.D.C. 2002) – that had held regrading requirements unconstitutional. AR 184. In Christian, the Court of Federal Claims considered a facial constitutional challenge to a 1992 instruction in an Army SERB precept that set a "goal for th[e] board . . . to achieve a percent of minority . . . officers recommended for early retirement not greater than the rate for all officers in the zone of consideration"; instructed the board to "consider that past personal and institutional discrimination may have disadvantaged minority . . . officers"; instructed the board, after performing its initial evaluation, to "review and report the extent to which minority . . . officers were recommended at a rate greater than . . . non-minority officers"; and, where this occurred, to reevaluate the records of minority officers, again taking into account the possibility of past discrimination, and revote based on those reevaluations. Christian, 46 Fed. Cl. at 803. The court

held that this scheme violated the Fifth Amendment.  Id. at 814-15.

Similarly, in Saunders, a member of this court considered a facial challenge to the equal opportunity instruction in effect in the Army's 1996 and 1997 promotion boards that, the court found, like the instruction reviewed in Christian, set selection goals for minorities and required reconsideration when the initial selection did not meet those goals.  Saunders, 191 F. Supp. 2d at 121; see id. at 126 (noting that the provisions at issue in Christian and Saunders were nearly identical).  As in Christian, the court in Saunders held that the establishment of initial selection goals and the "review and revote procedure" violated the Fifth Amendment.  Id. at 124.

When presented with this claim and these citations, the BCNR requested an OJAG advisory opinion.  OJAG concluded that the equal opportunity instruction in the Navy's 1996 SERB precept did not require, or even permit, regrading, and that no regrading had occurred in the 1996 SERB that selected plaintiff.  AR 257, 263-64.  The BCNR based its resulting denial of plaintiff's petition on the fact that plaintiff had failed to present sufficient evidence to establish the existence of probable material error or injustice.  AR 292.  In the absence of such evidence, the BCNR had no reason to conclude other than as it did, that the precept "did not mandate preferential treatment for minorities, but merely encouraged fair and equitable consideration of all officers."  AR 293.  Indeed, the presumption of regularity that the BCNR is required to apply mandated that conclusion.

### 2.    May 2, 2006 Petition For Reconsideration

When plaintiff next raised the issue of the 1996 SERB precept's equal opportunity instruction, through his counsel's May 2, 2006, letter, he was admittedly unaware that the letter would be treated as a petition for reconsideration and did not submit any evidence for the BCNR

- 19 -

to review.  The lack of any new and material evidence in turn led OJAG – after identifying the

Fifth Amendment issue raised in the letter as essentially the same issue, in regard to the same

equal opportunity instruction, that plaintiff had raised before – to recommend denial of the

petition based on the evidentiary requirement set forth in 32 C.F.R. § 723.9.  AR 681 (concluding

that "reconsideration is unwarranted").

At that point, however, plaintiff was informed that the letter was  being considered as a

petition for reconsideration, and he was provided with a copy of OJAG's advisory opinion and

given an opportunity to respond.  AR 682-83.  Rather than submitting the evidence that would be

required to enable further BCNR consideration, plaintiff simply declined to provide any further

response.[10]  AR 686-87.

In its review of both the December 8, 2003, and the May 2, 2006, petitions, the BCNR

adhered to the standards that, by Navy regulation, govern its proceedings.  The BCNR is <u>required</u>

to accord official actions a presumption of propriety.  32 C.F.R. § 723.3(e)(2).  The BCNR is also

<u>required</u> to demand that those who seek to correct their records, or seek reconsideration of a

previous denial, submit sufficient evidence to demonstrate the existence of probable material

error or injustice.  <u>Id.</u>; <u>id.</u> § 723.9.  These requirements are set forth by regulation and therefore

represent a determination by the Secretary of the proper way to proceed with BCNR claims,

_____

[10]Plaintiff's memorandum entirely mischaracterizes the BCNR's decision as "reject[ing]"
plaintiff's constitutional challenge on the merits and states that the BCNR's conclusion that
plaintiff failed to submit the evidence required by Navy regulations was merely an "alternative
ground" for its decision.  Pl. Mem. at 15.  That is of course untrue, as is clear from the
administrative record.  <u>See</u> AR 681, 692-93.  Indeed, the dispute between the BCNR panel's
majority and minority components also had nothing to do with a disagreement over whether the
1996 SERB precept was constitutional or not; instead, it concerned whether the panel had
complied with the AGC's direction.  Since the AGC then approved the majority conclusion, that
dispute has no significance to the resolution of this case.  <u>See</u> AR 692-93.

which in turn reflects the Secretary's understanding of the proper function of the BCNR.

Where the BCNR adheres to its own standards for reviewing record correction applications and petitions for reconsideration, and presumes, in accord with those standards, that no material error or injustice occurred absent evidence to the contrary, its decision is not arbitrary, capricious, or illegal. In adhering to those standards in this case, the BCNR reasonably concluded that the evidence submitted by plaintiff – which, to the extent it can be considered to constitute "evidence" at all, consisted of two inapposite case citations – did not indicate a likelihood of material error or injustice in plaintiff's SERB selection. The Army precept that courts considered in Christian and Saunders required selection boards to set percentage goals for minority selection, and to reconsider minority candidates and revote if those goals were not met. Indeed, it was that reconsideration, or "regrading," requirement that plaintiff cited as objectionable in his December 8, 2003, submission. As the OJAG advisory opinion pointed out, however, the 1996 Navy precept imposed no such requirement. AR 93.

The May 2, 2006, letter from plaintiff's counsel argued that the 1996 Navy precept would not withstand strict scrutiny, which he called "the pertinent test." AR 655. But as explained above, the pertinent test for purposes of BCNR consideration is actually whether a petitioner has submitted sufficient evidence of material error or injustice. Here, where the BCNR determined that no new evidence had been provided and thus declined to consider the issue further, the only question before this Court is whether that decision – that plaintiff failed to provide new evidence – was arbitrary or capricious. See ICC v. Brotherhood of Locomotive Eng'rs, 482 U.S. 270, 279-80 (1987) (holding that an agency's decision not to reconsider an earlier decision is only reviewable to determine whether the refusal to reconsider is "arbitrary, capricious, [or] an abuse

- 21 -

of discretion'" (quoting 5 U.S.C. § 706(2)(A)); <u>Schoenbohm v. FCC</u>, 204 F.3d 243, 245 (D.C. Cir. 2000) ("Denial of a petition for reconsideration . . . is generally nonreviewable unless the request for reconsideration was based on new evidence or changed circumstances.").  Another member of this court has recently affirmed that a military corrections board is entitled to reject a petition for reconsideration where the petitioner fails to provide any evidence in support of his claim, even where the claim includes an allegation of race discrimination, because the applicable military regulations place the evidentiary burden on the petitioner.  <u>See</u> <u>Roberts v. Green</u>, No. 05-2430, 2007 WL 4547586, at *11 (D.D.C. Dec. 27, 2007) (J. Huvelle) ("Because plaintiff did not submit any new relevant evidence with his second or third requests for reconsideration, he was not entitled to have the [Army corrections board] review these requests under [Army] regulations.").  Here, the administrative record shows that the BCNR's decision should be upheld for the same reason.

### C.    The BCNR Did Not Act "Contrary To Law" By Failing To "Hold" The 1996 Instruction Facially Unconstitutional

Plaintiff cannot transform this action into the facial constitutional challenge he would like it to be simply by alleging that the BCNR's decision was "contrary to law."  The legal error that plaintiff alleges is evidently that the BCNR failed to "grappl[e] with the specifics of [his] constitutional claim," Pl. Mem. at 15, by applying the "strict" level of scrutiny that a <u>court</u> employs to determine whether statutory or regulatory language creating a suspect classification is unconstitutional on its face.  <u>Cf.</u> <u>Grutter v. Bollinger</u>, 539 U.S. 306, 326 (2003) ("We have held that all racial classifications imposed by government 'must be analyzed <u>by a reviewing court</u> under strict scrutiny.'" (quoting <u>Adarand Constructors, Inc. v. Pena</u>, 515 U.S. 200, 227 (1995))

(emphasis added)).

However, the BCNR is not a court.  It does not apply varying levels of scrutiny to statutory or regulatory language in the abstract in order to determine whether that language is unconstitutional "on its face."  That function is reserved for courts considering facial constitutional challenges.  It would be inconsistent with the BCNR's role, and the presumption of correctness that it must accord to military actions, to expect it to "hold" a precept facially unconstitutional where no court has ever reached that question with respect to the specific precept language at issue.  See Califano v. Sanders, 430 U.S. 99, 109 (1977) ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures . . . ."); Wilkins v. United States, 279 F.3d 782 (9th Cir. 2002) (recognizing the BCNR's lack of authority where "the essence of [the plaintiff]'s case is a broad constitutional challenge to the structure and policies of the military chaplaincy"); Watson v. Ark. Nat'l Guard, 886 F.2d 1004, 1010 (8th Cir. 1989) (recognizing that "courts are uniquely qualified" to review "the constitutionality of a regulation or statute of general applicability").  Rather, where, as here, the petitioning servicemember fails even to submit any evidence of possible prejudice, the BCNR is well within its authority to refuse to consider the matter further.  As the court in Adair recognized, the BCNR "is a clemency-oriented body with authority to 'correct an error or remove an injustice,' 10 U.S.C. § 1552(a), not to declare the law."  Adair, 183 F. Supp. 2d at 55 (internal quotation omitted).  The role of the BCNR is limited to the claim of the servicemember before it.

Plaintiff cites 32 C.F.R. § 723.6(a)(2) as providing authority for the BCNR to compel the Navy to mount a defense against plaintiff's facial constitutional challenge – in other words, to apply the burden-shifting framework that applies to facial challenges in court.  Pl. Mem. at 16.

- 23 -

However, § 723.6(a)(2) only provides such authority <u>after</u> the BCNR has decided that a petition warrants consideration based on the petitioner's submission of evidence. That provision allows the BCNR to require further information "[w]henever, <u>during the course of its review of an application</u>, it appears to the Board's satisfaction that the facts have not been fully and fairly disclosed by the records or by the testimony and other evidence before it." <u>See</u> 32 C.F.R. § 723.6(a)(2) (emphasis added). Again, it is not in the nature of BCNR review that it would spontaneously call on the Navy to defend a previously-approved policy in the absence of any indication that the particular applicant before it was harmed by that policy. 32 C.F.R. § 723.2(b) ("The Board is not an investigative body. Its function is to consider applications properly before it for the purpose of determining the existence of error or injustice . . . ."). The evidentiary burden that the governing standards place on BCNR applicants in effect relieves the BCNR of any need to consider the constitutionality of a provision in the abstract where an applicant fails to show that any error – if it occurred – was likely to be material. It is plaintiff, not the government, who inverts the applicable burden of proof by superimposing standards that govern judicial proceedings onto an administrative board.

As explained above, the BCNR adhered to the standards set forth in the regulations that govern BCNR review by rejecting plaintiff's last petition for reconsideration because it did not contain any new evidence of material error. Its earlier denial also adhered to the governing standards when it recognized that the two cases cited by plaintiff concerned a regrading procedure that did not occur under the 1996 SERB precept. Plaintiff points to no law that was violated by these BCNR decisions, nor does he contradict the BCNR's conclusion that he failed to submit the required evidence. His claim therefore lacks merit.

- 24 -

**D.     Any Relevant Evidence That Could Have Supported Plaintiff's Challenge Was Well Within His Control**

Plaintiff further argues that the BCNR should have imposed the burden on the government because "the pertinent data" that would show whether the allegedly unconstitutional instruction had any prejudicial impact on the plaintiff "were peculiarly within the Navy's ken." Pl. Mem. at 16.  Plaintiff is again incorrect.  The evidence that would be relevant in the context of this case is evidence that would show a likelihood that, if the "special factors" of which plaintiff complains were considered in connection with his record, the SERB would have evaluated his record more favorably.  That evidence – if it exists – is within plaintiff's control, not the government's.  Frizelle, 111 F.3d at 179 (the burden of showing "whether the officer's record appears worse than it would in the absence of the errors . . . rests with the officer").

Plaintiff's argument appears to assume that the only relevant evidence would be statistical.  While both the majority and minority BCNR conclusions referenced the lack of statistical evidence, AR 692, that is not the only possible evidence that might have been presented.  Indeed, statistical evidence might be more relevant if plaintiff had argued that the 1996 instruction had pressured or encouraged the SERB to retain minority officers because of their race even where it did not consider those officers to be as qualified as nonminority officers.  Plaintiff's argument, however, appears to be that the 1996 instruction required the SERB to consider "special factors" in its attempt to assess how qualified a minority officer actually was.  Plaintiff alleges that the 1996 instruction "required the SERB to apply different standards when evaluating minority and non-minority officers," Pl. Mem. at 14, and alleges that the "'invocation of special factors'" in the case of minority candidates is the characteristic that renders the

- 25 -

instruction invalid, id. at 15.  The issue, for purposes of determining whether this alleged

distinction had any impact on plaintiff, is therefore whether the SERB would have evaluated

plaintiff's record differently if these same standards or factors were applied to him.

The 1996 equal opportunity instruction contains three separate provisions.  The first

provision states:

> Many minority officers have been assigned involuntarily outside the traditional
> career development patterns, i.e., recruiting, equal opportunity and specific billets
> requiring minorities.  These assignments, though beneficial to the interests of the
> Navy, have resulted in those officers having career patterns different from officers
> who have been able to serve in their primary or warfare specialties.  In making
> your determination of those officers who are best suited for retention, you must
> view such assignments as having the same value as assignments within the
> primary or warfare specialty.

AR 93.  The application of this provision to plaintiff would have had no impact unless plaintiff

had a "career pattern[] different from officers who have been able to serve in their primary or

warfare specialties," AR 93, and this career pattern was a result of involuntary assignment by the

Navy.  Plaintiff submitted no evidence to the BCNR that this was the case.

The second provision states:

> The 1988 CNO Study Group Report on Equal Opportunity in the Navy, which is
> available to you, noted that minority officers who, prior to entering Navy, had
> limited interaction with a predominately majority environment, may take a longer
> time to adjust and perform to the level of their contemporaries.  This may result in
> initially lower fitness reports at the junior officer level (through 0-3) and a higher
> percentage of "late bloomers" than their majority counterparts.  You must
> consider this when evaluating a minority officer.

AR 93.  The application of this provision to plaintiff would have had no impact unless plaintiff

had "initially lower fitness reports at the junior officer level" or otherwise appeared to be a "late

bloomer."  AR 93.  Again, plaintiff submitted no evidence to the BCNR that his record gave any

such indication, or that he had in fact had only limited interaction with a predominately majority environment prior to entering the Navy.

The third provision states:

In evaluating the records of eligible officers, you should be aware that past discrimination may have operated to the disadvantage of minority officers.  Such discrimination may have manifested itself in comparatively lower fitness reports. Equivalent performance by a minority officer and a non-minority officer may not have resulted in equivalent fitness reports.  You must consider this when evaluating minority officers.

AR 93.  Plaintiff could have shown that he was negatively impacted by the SERB's failure to apply this provision to him by submitting evidence that he had suffered from past discrimination or that his fitness reports did not accurately reflect his qualifications.  He failed to do so, or even to assert that this was the case.  Indeed, plaintiff urged the BCNR to compare his record as it stands to the records of other officers, suggesting that, in his view, his record does accurately reflect his qualifications.  AR 185.

Nothing prevented plaintiff from providing relevant evidence – if it did in fact exist – in connection with any of these three provisions, but he declined to do so.[11]  The BCNR was perfectly entitled to follow the standards that govern its review by concluding that, absent any evidence to the contrary, any error that might have occurred was not likely to be material as

_____

[11]Of course, nothing in the precept would have prevented the 1996 SERB from considering any similar evidence that plaintiff or any other nonminority candidate might have presented at the time of the original SERB decision.  All candidates eligible for SERB consideration were given the opportunity to submit written communications, which the SERB was required to consider along with official records.  AR 206.  Since the governing precept's stated goal was to "consider each officer's potential for future contributions . . . and retain those who have the highest potential for significant further service," AR 206, the SERB would presumably have taken any such information into account in evaluating whether a nonminority was one of the best qualified candidates.

applied to plaintiff.  Again, plaintiff's failure to meet his burden doomed his claim.  The Court should conclude on this basis that defendant is entitled to summary judgment, and plaintiff's challenge to a twelve-year-old instruction with language no longer in effect should end here.

**IV.    EVEN IF THIS COURT REVERSES THE BCNR'S DECISION, PLAINTIFF IS NOT ENTITLED TO THE RELIEF HE REQUESTS**

        **A.    If The Court Holds That The 2006 BCNR Panel Improperly Failed To Consider Plaintiff's Claim Or Applied The Wrong Legal Standard In Addressing Plaintiff's Petition, The Court Should Remand To The BCNR For Further Consideration**

Plaintiff asks this Court to order the Secretary to "reinstate him on active duty," "correct his record to show that he was never retired and by expunging all reference to the SERB," and "cause him to be considered for promotion to Captain."  Compl. at 5.  However, plaintiff is not entitled to any of these remedies, even if he were to prevail in his challenge to the BCNR's decision.  As discussed above, the BCNR rejected plaintiff's petition for reconsideration on the basis that plaintiff failed to submit new and material evidence calling into question the fairness of his SERB selection.  If that decision is set aside, the proper remedy is to remand this matter to the BCNR for further consideration. See Kreis v. Sec'y of Air Force, 406 F.3d 684, 688 (D.C. Cir. 2005) (ordering remand to the Army board of corrections to address argument made in petition for reconsideration, after holding that the board's failure to consider the argument was arbitrary); Frizelle, 111 F.3d at 178 (ordering remand to the Coast Guard correction board where the board had failed to adequately respond to the plaintiff's argument); Roberts v. Harvey, 441 F. Supp. 2d 111, 121-122 (D.D.C. 2006) (recognizing remand to the army correction board was the appropriate remedy where the court held that the board's failure to address an argument was arbitrary) (citing cases).

Remand is equally appropriate and necessary if the Court were to agree with plaintiff that the BCNR applied the wrong legal standard when it failed to review the 1996 equal opportunity instruction under strict scrutiny and to engage in the same burden-shifting analysis that a court would conduct. Where a court concludes that an agency has committed legal error by applying an incorrect standard, the remedy is to remand to the agency so that it can conduct further proceedings in accord with the correct standard. See Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) (holding that when a court holds that an agency has committed legal error, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."); County of Los Angeles v. Shalala, 192 F.3d 1005, 1011 (D.C. Cir. 1999) ("[U]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further actions consistent with the corrected legal standard."). Remand is certainly called for here where, because the BCNR did not perform such an analysis in the first instance, it did not conduct any investigation into the nature of the Navy's interest, and, as it stands, the administrative record contains no evidence on that point. Given that fact, it would not be appropriate for this Court to reach an ultimate conclusion regarding whether the 1996 instruction is facially unconstitutional.[12] See Frizelle, 111 F.3d at 179 (explaining that where an analysis

---

[12]If the Court's review in this case were not of an administrative board proceeding, and were not accordingly limited to the administrative record, it would nevertheless be inappropriate to decide the constitutional issue without allowing the Secretary to present evidence in support of any asserted compelling interest. See Dynalantic Corp. v. U.S. Dep't of Defense, 503 F. Supp. 2d 262, 267 (D.D.C. 2007) (holding that the court could not resolve the Fifth Amendment issue

involves burden-shifting, the correction board on remand would consider whether each side had

met its burden).

> **B.      Ultimately, Even If The 1996 SERB Equal Opportunity Instruction Were
> Held Facially Unconstitutional, Plaintiff's Entitlement To Any Further
> Remedy Must Be Determined By The Secretary**

Even if this Court were to hold that the 1996 SERB equal opportunity instruction is

facially unconstitutional, that holding remains insufficient to entitle plaintiff to the relief he

requests.  Plaintiff's suggestion to the contrary is wholly without merit.  Even those courts that

where "most of th[e] [relevant] evidence is not currently before the Court").  At the same time,
an order at this juncture requiring the Secretary to identify and provide evidentiary support for
the Navy's compelling interest in 1996 would be burdensome to the agency.  There is a strong
likelihood that the Navy's ability to present a compelling interest argument has been significantly
prejudiced by plaintiff's delay in bringing his constitutional challenge.  Because nothing
prevented plaintiff from filing a facial challenge within the statute of limitations period, the
doctrine of laches should preclude this Court from compelling the Secretary to mount a defense
to a claim that is essentially a facial challenge initiated four years after the statute of limitations
expired.  Lebrun, 212 F. Supp. 2d at 13 (the defense of laches applies where "there was both a
lack of diligence by the plaintiff [in bringing his claim] and unreasonable delay that was
prejudicial to the defendant").  In Lebrun, the court rejected a laches defense because it limited
its review to the administrative record.  Id. at 14.  However, courts have applied laches in similar
contexts.  See Mosley v. Sec'y of Navy, 522 F. Supp. 1165, 1167 (D.C. Pa. 1981) ("Equity and
comity both counsel the application of laches, in order to encourage discharged military
personnel to bring their grievances promptly to the attention of the boards of corrections and the
courts. Otherwise, long delays may result (as in this case), with a great possibility of prejudice to
the government."); Andrews v. United States, 6 Cl. Ct. 204, 205 (1984) (holding an over-seven-
year delay in bringing servicemembers' claims challenging the composition of their selection
boards was barred by laches).  As noted above, plaintiff did not even raise a reverse
discrimination argument before the BCNR until over seven years after his retirement, which is
after the statute of limitations on a facial challenge in court had expired.  By the time he did raise
this argument, the equal opportunity instruction at issue was no longer in effect.  In order to put
forth a compelling interest argument at this point, the Secretary would have to search the Navy's
archives, attempt to identify and find the individuals responsible for implementing the
instruction, and gather and conduct analyses of relevant data as it existed at the time.  The
possibility of imposing such a burden twelve years after the fact highlights the rationale behind
the different standards that the BCNR applies, as compared to a court considering a direct facial
challenge.  It also warrants the application of laches in this case if the Court were to contemplate
proceeding with a facial challenge at this point.

- 30 -

have held that other equal opportunity instructions, that applied to other military promotion or selection boards, were facially unconstitutional – when that issue was presented to them on direct review – have unanimously held that further action by the Secretary was necessary to determine a plaintiff's entitlement to relief; they have done so in recognition of (1) the fact that even if an unconstitutional instruction may have had a material impact on some nonminority officers within the group of officers considered by the promotion or selection board, it could not have had a material impact on every nonminority officer in that group, and (2) the Secretary's entitlement to consider whether any error that may have occurred was harmless in the case of a particular plaintiff.  See Christian, 337 F.3d at 1348-49 (recognizing that without a harmless error inquiry, "approximately two-thirds of the white retired officers would receive a substantial financial windfall to which they have no valid claim," and accordingly ordering remand to the Secretary to follow whatever procedure he deemed appropriate to make a harmless error determination for each plaintiff); Ricks v. United States, 65 Fed. Cl. 826, 833-34 (2005) (holding that remand was appropriate and that the Secretary had discretion to determine how best to assess whether error in an individual officer's case was material); Christensen, 60 Fed. Cl. at 28-29 (holding that "the harmless-error analysis can be a valid method by which the Air Force can avoid liability in individual cases, and the Air Force has a right to undertake the burden of satisfying its evidentiary requirements respecting that analysis"); cf. Saunders, 191 F. Supp. 2d at 138 (concluding that the determination that an equal opportunity instruction is facially unconstitutional "does not entitle the plaintiff to summary judgment on the issue of liability" because "[t]he defendant must be given the opportunity to prove that the plaintiff would not have been promoted under race . . . neutral criteria").

- 31 -

Moreover, as explained above, this action is properly governed by 10 U.S.C. § 1558, which imposes an exhaustion requirement that, as discussed, plaintiff failed to satisfy and therefore warrants dismissal of this action.  Not only does § 1558 impose an exhaustion requirement, but it also makes clear that, even where that requirement has been satisfied, a special board proceeding is an essential prerequisite to any further relief.  See 10 U.S.C. § 1558(f)(2)(B) (directing a court that reverses the Secretary's denial of a special board to "remand the case to the Secretary concerned, who shall provide for consideration by a special board"); Richey v. United States, 322 F.3d 1317, 1323-24 (Fed. Cir. 2003) (recognizing that 10 U.S.C. § 628, the promotion-board equivalent to § 1558, allows the Secretary to convene a special selection board as an alternative to conducting a harmless error analysis).  Even if this Court were to hold that the § 1558 exhaustion requirement does not apply to this case, the Secretary should still be granted the opportunity to determine the most appropriate method to assess whether material error has occurred, which should include the option of convening a special board of the type described in § 1558.  Because the determination of which individuals are best qualified to serve in the military is a matter that implicates the special expertise of the military service in question, the Secretary must be given an opportunity to exercise his discretion in making that determination here.

A special board convened in accord with § 1558 would consider anew, but without the offending instruction, whether plaintiff should have been selected for early retirement. 10 U.S.C. § 1558(b)(1)(A).  Indeed, under that provision, plaintiff would not be entitled to correction of his record unless a special board made a recommendation to that effect.  See 10 U.S.C. § 1558(a) ("The Secretary of a military department may correct a person's military records in accordance

with a recommendation made by a special board." (emphasis added)).  Once a special board was

convened in accord with § 1558, plaintiff would not become entitled to additional remedies

pursuant to 10 U.S.C. § 1558(c) unless the special board does recommend correction of

plaintiff's record, and the Secretary then corrected his record in accord with that

recommendation.  Id. § 1558(c)(1) (stating that the relief described is only available to those

whose records are corrected "under subsection (a)").

These additional remedies would consist, at most, of back pay and other financial relief

associated with a change in plaintiff's date of retirement.[13]  The remedies listed in 10 U.S.C. §

1558(c) are only available when correction of a servicemember's record entitles that

servicemember "to retention on or restoration to active duty."  Id.  Nothing in § 1558 "permit[s] a

person to be on active duty . . . after the date on which the person would have been separated,

retired, or transferred to the Retired Reserve or to inactive status in a reserve component if the

person had not been selected to be involuntarily board-separated."  Id. § 1558(c)(2)(B).

Here, even if plaintiff's record were corrected to remove his selection for early retirement,

he would not be entitled to return to active duty.  At the time of plaintiff's selective early

retirement on August 1, 1996, he had served a total of 21 years in active service.  AR 3.  Under

---

[13]The Federal Circuit has explained that under 10 U.S.C. § 628, a Secretary who refers an officer's claim challenging his prior passover for promotion to a special selection board ("SSB") need not order the "constructive reinstatement" of an officer who had been discharged as a result of his failure to be promoted "– via the purge of . . . passovers from the officer's record – . . . in order to present the officer's record to an SSB."  Porter v. United States, 163 F.3d 1304, 1321 (Fed. Cir. 1998).  Constructive reinstatement, which would automatically entitle the officer to back pay, id. at 1305, would only be available if the SSB ultimately determined that the officer was entitled to promotion.  Similarly here, any entitlement plaintiff might have to constructive reinstatement would be contingent on correction of his record, which in turn is contingent on the result of a special board proceeding.

10 U.S.C. § 633(a), an active duty servicemember at the rank of commander – plaintiff's rank at

the time of his retirement – may serve no more than 28 years in active service.  Correction of

plaintiff's record would therefore simply change the date of his retirement by 7 years, to August

1, 2003.[14]  Indeed, plaintiff's counsel conceded as much in his May 2, 2006, letter, where he

acknowledged that plaintiff would have passed the "date of mandatory retirement" if he were

deemed to have remained on active duty instead of being selected for early retirement.  AR 655.

**V.    THE FACT THAT THE ONLY RELIEF THAT MIGHT ULTIMATELY BE
       AVAILABLE TO PLAINTIFF IS MONETARY BARS THIS CASE UNDER THE
       DOCTRINE OF SOVEREIGN IMMUNITY**

In accord with the foregoing analysis of remedies, defendant respectfully renews the

contention that this Court lacks subject matter jurisdiction over this action.  The United States

has not waived sovereign immunity for a claim such as plaintiff's to be brought in this Court;

rather, exclusive jurisdiction over plaintiff's claim lies in the Court of Federal Claims under the

Tucker Act.

For claims seeking nonmonetary relief against the government, the APA, 5 U.S.C. §§

701-706, waives sovereign immunity, but only if there is no "adequate remedy . . . available

elsewhere."  Transohio Savings Bank v. OTS, 967 F.2d 598, 607 (D.C. Cir. 1993).  The adequate

remedy exception in § 704 precludes review "under the more general provisions of the APA" that

would be "duplicative of more specific statutory procedures for judicial review."  Bangura v.

Hansen, 434 F.3d 487, 501 (6th Cir. 2006) (citing Bowen v. Massachusetts, 487 U.S. 879, 903

---

[14]Any extension of service beyond 28 years could only be accomplished through further
administrative promotion or continuation proceedings where selection is a matter of military
discretion.  While plaintiff asks to be considered by a special selection board for promotion to
captain, an active duty servicemember at the rank of captain may serve no more than 30 years.
10 U.S.C. § 634(a).

- 34 -

(1988)).  The question of whether an adequate remedy for a plaintiff's claim is available under a statutory provision specifically tailored to the plaintiff's situation requires a comparison of the remedy sought by the plaintiff with the remedy available under the other statute in order to determine whether the remedy under the alternative statute is adequate.  Suburban Mortgage Assocs., Inc. v. HUD, 480 F.3d 1116, 1126-27 (Fed. Cir. 2007).  If the remedy is adequate, the plaintiff must bring the claim under the more specific statutory provision.

The Military Pay Act is the specific provision that, together with the Tucker Act, 28 U.S.C. § 1491, provides an adequate remedy in this case.  Kindred v. United States, 41 Fed. Cl. 106 (1998) (recognizing that pursuant to the Military Pay Act, "a service member may file a complaint in the Court of Federal Claims for back pay on the basis that he has been unlawfully discharged") (citing Holley v. United States, 124 F.3d 1462, 1465-67 (Fed. Cir. 1997)); see also Roth v. United States, 378 F.3d 1371, 1384 (Fed. Cir. 2004) (recognizing such a claim would receive adequate equitable as well as monetary relief under the Tucker Act); Mitchell v. United States, 930 F.2d 893, 896 (Fed. Cir. 1991) (pointing to the "extensive experience" of the Court of Federal Claims in "reviewing decisions of corrections boards in military pay cases").[15]

Moreover, the Court of Federal Claims has exclusive jurisdiction over plaintiff's claim here because the claim in essence seeks monetary relief of more than $10,000.  Tootle v. Sec'y of the Navy, 446 F.3d 167, 171-72 (D.C. Cir. 2006); Kidwell v. Dep't of the Army, 56 F.3d 279, 283 (D.C. Cir. 1995).  Where Court of Federal Claims jurisdiction is exclusive, a district court

---

[15]The fact that, as in this case, the statute of limitations has run on a plaintiff's Tucker Act claim "does not mean that [the Court of Federal Claims] could not offer a full and adequate remedy; it merely means that [the plaintiff] did not file his complaint in time to take advantage of that remedy."  Martinez v. United States, 333 F.3d 1295, 1320 (Fed. Cir. 2003) (en banc).

lacks federal question jurisdiction under 28 U.S.C. § 1331.  As Plaintiff could have sought back

pay in the Court of Federal Claims under the Military Pay Act, the only question is whether his

omission of an explicit request for money in the Complaint he filed in this Court allows him to

circumvent that court's jurisdiction.[16]

Both the D.C. and Federal Circuits have held that a complaint may be construed as

seeking monetary relief even where money is not mentioned in so many words.  Suburban

Mortgage Assocs., 480 F.3d at 1124, 1126 (emphasizing that a plaintiff may be "understood to be

seeking a monetary reward from the Government" "regardless of the form in which the complaint

is drafted"); Kidwell, 56 F.3d at 284 ("[D]istrict court jurisdiction is not established merely

because a suit fails to pray for a money judgment." (internal quotation omitted)).  While the D.C.

Circuit has referred to a "bright line rule" requiring a claim for monetary relief to be apparent in

the complaint, Tootle, 446 F.3d at 174, this bright line "turns out to be rather dim" because a

claim for monetary relief may be present even if not expressed in "'plain language.'" Bublitz v.

Brownlee, 309 F. Supp. 2d 1, 6 (D.D.C. 2004) (quoting Kidwell, 56 F.3d at 284).

Where a plaintiff only requests equitable relief, but the relief requested "triggers the

payment of money" and is not otherwise "of sufficient importance," the district court lacks

jurisdiction.  Id. at 8. The Court of Appeals in Tootle confirmed this rule when it recognized the

"most important[]" question in its analysis to be whether the equitable relief sought by the

plaintiff had "significant value" independent of any monetary benefit that would derive from it.

446 F.3d at 174-75; see Kidwell, 56 F.3d at 284.

---

[16]The amount of back pay that is at issue here, covering a period of years, unquestionably exceeds $10,000.  A back pay claim would thus be subject to the exclusive jurisdiction of the Court of Federal Claims.

As already explained, if plaintiff were to prevail in this Court, his immediate remedy would simply be further consideration of his claim by the Secretary or by a special board. If it were ultimately determined that plaintiff's selective early retirement were void, however, he would not at that point be able to return to active duty. Rather, the only thing he could hope to gain from such a determination would be back pay, and related financial benefits. There is nothing of "significant value" at stake in this case other than money, and it therefore properly belongs in the Court of Federal Claims.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that this Court grant his motion for summary judgment and deny plaintiff's motion for summary judgment.


Dated: February 22, 2008                    Respectfully submitted,

                                            JEFFREY S. BUCHOLTZ
                                            Acting Assistant Attorney General
                                            JEFFREY A. TAYLOR
                                            United States Attorney
                                            VINCENT M. GARVEY
                                            Deputy Branch Director

                                            **/s/ Kathryn L. Wyer**
                                            KATHRYN L. WYER
                                            Trial Attorney, U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Ave. NW
                                            Washington, D.C. 20530
                                            Telephone: (202) 616-8475 / Fax: (202) 616-8202
                                            kathryn.wyer@usdoj.gov
                                            *Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Rev. GEORGE P. BYRUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-02102 (RJL) |
| | ) | |
| DONALD C. WINTER | ) | |
| In his Official Capacity as Secretary, | ) | |
| DEPARTMENT OF THE NAVY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS

Pursuant to LCvRs 7(h) and 56.1, defendant, Donald C. Winter, submits the following

Statement of Material Facts as to which there is no genuine issue in dispute.

1.      On November 17, 1995, the Secretary of the Navy, pursuant to his authority under

10 U.S.C. §§ 611, 638, and 638a, issued a precept convening a selection board to consider

Chaplain Corps servicemembers at the rank of Commander for selective early retirement.  AR 4.

The function of this selective early retirement board ("SERB") was to recommend those regular

and reserve commanders on the active-duty list "whose early retirement, in the opinion of the

majority of the board, is in the best interest of the Navy."  AR 4.  The precept instructed that

seven Chaplain Corps commanders were to be selected.  AR 5.

2.      This precept was based on the standard precept that was developed for Fiscal Year

1996 ("FY96") SERBs, which were held for a number of competitive categories according to a

specific schedule.  AR 38-56.

3.      The precept instructed SERB members to consider each officer's qualifications on

an individualized basis based on an examination of each officer's official service record as well

as any written communications from the officer.  AR 5.  The precept stated that SERB members

"must consider each officer's potential for future contributions in both traditional and more

specialized assignments and retain those who have the highest potential for significant further

service."  AR 5.

       4.      Twenty-four Chaplain Corps commanders were considered by the FY96 SERB.

AR 7.

       5.      Plaintiff was one of those selected by the SERB for early retirement.  AR 8.

Plaintiff retired from active service on August 1, 1996.  AR 2, 3.

       6.      Plaintiff did not challenge his selection for nearly six years after he retired.

Plaintiff's initial application for correction of his military record was filed on May 29, 2002.

Plaintiff's application was filed on DD Form 149, which is entitled Application for Correction of

Military Record Under the Provisions of Title 10, U.S. Code, Section 1552.  AR 1.

       7.      Plaintiff's initial application asserted that, based on plaintiff's review of the lineal

numbers of other servicemembers in the Chaplain Corps at the rank of commander in 1995,

"there were many commanders who met the criteria" for being considered by the SERB who

should have been placed on the consideration list prior to plaintiff.  AR 2.  Plaintiff requested

that his name be removed from the FY96 Commander Chaplain Corps SERB list and that he be

considered for promotion to captain by the FY99 Active Duty Captain Staff Selection Board. AR

1.

       8.      A BCNR panel denied plaintiff's initial application on January 30, 2003, and

plaintiff was informed of this denial by letter dated February 1, 2003.  AR 112-113.  The letter

noted that the BCNR panel was "unable to find that any of those [servicemembers] not considered were, in fact, eligible in all respects for consideration," and explained that "eligibility is not based on lineal position alone." AR 113. The letter informed plaintiff that he was "entitled to have the [BCNR] reconsider its decision upon submission of new and material evidence or other matter not previously considered by the Board" but that "the burden is on the applicant to demonstrate the existence of probable material error or injustice." AR 113-114.

9.       On February 13, 2003, plaintiff submitted his first petition for reconsideration, attaching documents that he claimed would show which commanders not considered by the SERB were actually eligible to be considered. AR 136. Plaintiff also raised an additional assertion that no Roman Catholic chaplains were considered by the FY96 SERB for selective early retirement. AR 137. Plaintiff listed the names of those Roman Catholic chaplains that he claimed should have been considered. AR 137.

10.      Plaintiff's first petition for reconsideration was referred for further consideration with an instruction that for each of the individuals plaintiff named as eligible, the BCNR panel should state whether that individual was in fact eligible. AR 165. An advisory opinion obtained from the Office of the Judge Advocate General ("OJAG") addressing this petition explained that eligibility for consideration by the SERB was not based on seniority on the lineal list but on years of service and nonselection for captain. AR 175. The opinion noted that none of the eight individuals named by plaintiff were eligible for selection under the applicable criteria. AR 176-177.

11.      After this OJAG advisory opinion was sent to plaintiff for his comments, plaintiff responded by letter dated December 8, 2003. AR 181. In this letter, plaintiff conceded that his

- 3 -

earlier submissions had relied on incorrect eligibility criteria for the SERB. AR 181. However, in an enclosure which he characterized as an amendment to his original application for correction of his record, plaintiff raised a number of new issues, including an issue regarding the equal opportunity instruction contained in supplemental guidance attached to the 1996 SERB precept. AR 181-182, 209-210. In regard to that provision, plaintiff asserted that the precept "required re-grading minorities' records" and that "[r]e-grading requirements have consistently been ruled unconstitutional by federal courts." AR 184. Plaintiff cited two judicial decisions, <u>Christian v. United States</u>, 337 F.3d 1338 (Fed. Cir. 2003), and <u>Saunders v. White</u>, 191 F. Supp. 2d 95 (D.D.C. 2002), in support of this argument. AR 184. Plaintiff requested that his record be compared to the records of any retained minorities and that his retirement be rescinded if his record should appear better than theirs. AR 185.

12.    The OJAG advisory opinion addressing the new issues plaintiff submitted in his December 8, 2003, letter responded to plaintiff's claim regarding the equal opportunity instruction as follows:

> The practice of re-grading involves taking the preliminary results of the selection board, and re-grading minority candidates where there is a disparity between the selection rates of minority and non-minority candidates. Petitioner is incorrect in his contention that minority officer fitness reports were re-graded at the FY96 SERB. While in other selection boards re-grading has been used in an attempt to protect minority officers from the effects of possible past racial prejudice, this mechanism was not used in this case.

AR 263-264.

13.    In his response to this opinion, plaintiff asserted that the equal opportunity instruction was unfair to him because it "required reconsideration of any and all uncompetitive grades of minorities." AR 272-273.

14.     The BCNR panel denied plaintiff's February 13 and December 8, 2003, submissions, which it characterized as a petition for reconsideration, on July 22, 2004.  AR 290. The BCNR informed plaintiff of this denial by letter dated July 23, 2004.  In this letter, the BCNR indicated that the BCNR panel had considered plaintiff's letters, "together with all material submitted in support thereof, the Board's file on [plaintiff's] prior case, [plaintiff's] naval record and applicable statutes, regulations and policies," together with the OJAG advisory opinions responding to plaintiff's two letters, and that the BCNR panel had concluded that "the evidence submitted was insufficient to establish the existence of probable material error or injustice."  AR 292.

15.     Plaintiff submitted a second petition for reconsideration on August 28, 2004.  AR 297.  In this petition, he did not raise any issue concerning the 1996 SERB precept.  Instead, he made a number of other claims – challenging the composition of the SERB and captain promotion boards as not in compliance with Navy regulations because board members were selected based on religious affiliation, arguing that his eligibility for selective early retirement should have been based on 10 U.S.C. § 638 rather than § 638a, challenging the Navy's retention of certain commander-grade chaplains as in violation of statutory requirements concerning career military service, and challenging his selection as an unlawful termination in violation of his employment contract.  AR 298-304.

16.     OJAG addressed the first two of these challenges as new issues.  AR 416, 418.  Its advisory opinion rejected plaintiff's first challenge because plaintiff had failed to submit any evidence that 1996 SERB members were improperly selected based on religious affiliation.  AR 418, 420.  The OJAG opinion also rejected plaintiff's second challenge because § 638a does not

contain any grandfather clause providing that § 638 would continue to apply to certain officers. AR 421.

17.     Plaintiff responded to the OJAG opinion by submitting what he alleged to be evidence that the Navy consistently included Roman Catholics as members of SERBs.  AR 428.

18.     The BCNR panel denied plaintiff's second petition for reconsideration on March 31, 2005, and plaintiff was notified of the denial by letter dated March 31, 2005.  AR 651-652.

19.     Over a year later, by letter dated May 2, 2006, plaintiff's counsel submitted an allegation that the equal opportunity instruction in the FY96 SERB precept constituted illegal reverse race discrimination that violated the equal protection component of the Fifth Amendment due process clause.  AR 654-655.  Plaintiff's counsel requested that the Navy "deem [plaintiff] to have remained on active duty through the date of mandatory retirement by reason of age and to refer his record to a Special Selection Board to consider him for promotion to Captain."  AR 655.

20.     The BCNR regarded this letter as a petition for reconsideration, and referred it to OJAG for its recommendation.  AR 669, 671.

21.     OJAG's advisory opinion thoroughly recounted the history of plaintiff's successive petitions.  AR 676-680.  It then noted the standard applicable to the BCNR's review of petitions for reconsideration, which requires that a petition be granted "only upon presentation by the applicant of new and material evidence or other matter not previously considered by the [BCNR]."  AR 681.  The OJAG opinion concluded that plaintiff's current challenge, focusing on alleged reverse race discrimination caused by paragraph three of the 1996 SERB precept's Supplemental Guidance, repeated the similar argument plaintiff had made in his letters dated December 3, 2003, and July 17, 2004, regarding the same precept provision.  OJAG concluded

that "[p]etitioner provides no new and material evidence to support his allegation of error or injustice in the actions and recommendations of the SERB." It therefore stated that the relief plaintiff requested – reinstatement, back pay, and consideration for promotion to captain by an FY99 special selection board – was inappropriate, and recommended that plaintiff's petition be denied. AR 681.

22.     A copy of the OJAG advisory opinion was sent to plaintiff's counsel for a response before the BCNR's decision. AR 682-683.

23.     Plaintiff's counsel did not provide a response to the analysis set forth in the OJAG advisory opinion, nor did he submit any evidence in support of his argument, but asked that the Navy "consider our position to be as set forth in my letter, and include it in the administrative record." AR 686.

24.     On December 8, 2006, a majority of the BCNR panel voted to deny plaintiff's petition based on its concurrence with OJAG's conclusion that plaintiff had failed to provide new and material evidence in support of his allegation. AR 688, 692. The panel's report indicates that, in coming to this determination, the panel reviewed the BCNR files relating to plaintiff's prior petitions, the AGC memo, the most recent OJAG advisory opinion, plaintiff's counsel's response to that opinion, as well as "naval records, and applicable statutes, regulations and policies." AR 691-692. The majority's conclusion was adopted by the Assistant General Counsel (Manpower and Reserve Affairs). AR 693.

25.     Plaintiff's counsel was informed of the denial of plaintiff's third petition for reconsideration by letter dated December 11, 2006. AR 690.

26.     Plaintiff has never requested that the Secretary convene a special board pursuant

to 10 U.S.C. § 1558, nor has the Secretary ever convened or denied a special board on behalf of

plaintiff.  AR (as a whole).

      27.     Even if plaintiff were determined to be otherwise eligible for restoration to active

duty, he would have exceeded the mandatory retirement limits and would therefore not be

entitled to return to active service.  AR 3, 655.  However, if he were constructively reinstated, the

calculation of back pay for his remaining years in service before mandatory retirement would

exceed $10,000.  AR 3.


Dated: February 22, 2008                Respectfully submitted,

                                          JEFFREY S. BUCHOLTZ
                                          Acting Assistant Attorney General
                                          JEFFREY A. TAYLOR
                                        United States Attorney
                                          VINCENT M. GARVEY
                                          Deputy Branch Director


                                          **/s/ Kathryn L. Wyer**
                                          KATHRYN L. WYER
                                          Trial Attorney, U.S. Department of Justice
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Ave. NW
                                          Washington, D.C.  20530
                                          Telephone: (202) 616-8475 / Fax: (202) 616-8202
                                          kathryn.wyer@usdoj.gov
                                          *Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Rev. GEORGE P. BYRUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-02102 (RJL) |
| ) | |
| DONALD C. WINTER ) | |
| In his Official Capacity as Secretary, ) | |
| DEPARTMENT OF THE NAVY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**STATEMENT OF MATERIAL FACTS**

Pursuant to LCvRs 7(h) and 56.1, defendant, Donald C. Winter, submits the following response to Plaintiff's Statement of Material Facts dated April 27, 2007.

1.      Undisputed.

2.      Undisputed.

3.      Undisputed that a precept governed the 1996 SERB.  The precept is in the administrative record.  AR 88-96.  The statement that the precept established a preference for minority personnel is disputed because it is a legal conclusion, not a statement of material fact that requires a response.

4.      Undisputed that the quoted language (with immaterial typographical differences) appears in paragraph 3 of the Supplemental Guidance attached to the 1996 SERB precept.

5.      Undisputed that plaintiff submitted his initial application for correction of his naval record to the BCNR in 2002, that he filed subsequent petitions for reconsideration, and that

he cited various grounds in these submissions.

6.     Defendant disputes plaintiff's characterization of his December 8, 2003 submission as an amended "application."  This submission was in fact an amendment to a petition for reconsideration.  AR 136-37, 165, 181. Undisputed that plaintiff's December 8, 2003 amended petition alleged that the precept was "unfair" in that it "required re-grading minorities' records."  AR 184.

7.     Undisputed, with the qualification that the December 8, 2003 submission was an amended petition for reconsideration.

8.     Undisputed but immaterial.

9.     Undisputed but immaterial.

10.     Undisputed that the referenced correspondence was sent and that the correspondence was treated as a request for reconsideration by the BCNR.  Undisputed that the quoted text constitutes an excerpt from the referenced letter, which is included in the administrative record.  AR 654-55.  To the extent the quoted text sets forth plaintiff's legal argument, it is disputed because that argument is not a material fact requiring a response.  To the extent the quoted text sets forth factual assertions, it is disputed because the text fails to refer to any part of the record other than itself in support of these assertions and is therefore not a statement of material fact requiring a response.  Cf. LCvRs 7(h), 56.1.

11.     Undisputed but immaterial.  The Assistant General Counsel ("AGC") directed that the correspondence referenced in ¶ 10 be treated as a petition for reconsideration.  AR 655.  The OJAG advisory opinion addressing the petition concluded that plaintiff had failed to submit new and material evidence in support of his claim.  AR 681.  The BCNR majority agreed with that

assessment and concluded that plaintiff's petition did not warrant further consideration or relief.

AR 692. The AGC ratified that conclusion by adopting the majority recommendation. AR 693.

The AGC's ultimate decision renders his earlier direction irrelevant.

12.     Defendant disputes that the OJAG advisory opinion provided any opinion

regarding whether the precept was "evil." The OJAG advisory opinion is part of the

administrative record. AR 676-681. Undisputed that the OJAG advisory opinion concluded that

plaintiff failed to meet his burden of submitting evidence of probable material error or injustice,

and that the opinion recommended denial of plaintiff's petition on that basis.

13.     Undisputed but immaterial, except that defendant disputes any implication that the

BCNR's statement that plaintiff had exhausted his administrative remedies to the extent required

in order to file an application for correction of his military record with the BCNR referred to the

pre-judicial review exhaustion requirement of 10 U.S.C. § 1558. The BCNR's decision is part of

the administrative record. AR 691-693.

14.     Disputed, except that it is undisputed that the BCNR denied relief in its December

8, 2006, decision and that the majority stated that its conclusion was "in concurrence with" the

OJAG advisory opinion. The BCNR decision is part of the administrative record. AR 691-693.

15.     Undisputed but immaterial.

16.     Disputed, except that it is undisputed that the majority stated that plaintiff failed

to present any evidence showing that he was disadvantaged by the precept language. AR 692.

17.     Disputed in part but immaterial. The dissenting member expressed the opinion

that the OJAG opinion was inadequate because it did not "adequately deal with the issues the

AGC directed the [BCNR] to address." AR 692. To the extent the dissenting member expressed

the view that the BCNR should "analyze the language of the precept in light of applicable case law," this view reflected the dissenting member's understanding of what the AGC had directed. Undisputed that the minority recommendation was to return the case to OJAG for further analysis in accord with the AGC's memorandum. Because the AGC read the BCNR's report and ratified the majority's conclusion, the minority's concern regarding whether the BCNR had followed the AGC's instruction is immaterial.  AR 693.

      18.    Undisputed.


Dated: February 22, 2008          Respectfully submitted,

                          JEFFREY S. BUCHOLTZ
                          Acting Assistant Attorney General
                          JEFFREY A. TAYLOR
                          United States Attorney
                          VINCENT M. GARVEY
                          Deputy Branch Director

                          **/s/ Kathryn L. Wyer**
                          KATHRYN L. WYER
                          Trial Attorney, U.S. Department of Justice
                          Civil Division, Federal Programs Branch
                          20 Massachusetts Ave. NW
                          Washington, D.C.  20530
                          Telephone: (202) 616-8475 / Fax: (202) 616-8202
                          kathryn.wyer@usdoj.gov
                          *Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rev. GEORGE P. BYRUM,                                    ) | |
| ) | |
| Plaintiff,                ) | Civil Action No. 1:06CV02102 (RJL) |
| ) | |
| ) | |
| v.                ) | |
| ) | |
| DONALD C. WINTER,                                    ) | |
| In his Official Capacity as Secretary,       ) | |
| DEPARTMENT OF THE NAVY                    ) | |
| ) | |
| Defendant.                ) | |
| ) | |

**[Proposed] ORDER**

Upon consideration of the parties' cross-motions for summary judgment, the oppositions

thereto, and the entire record herein, it is hereby ORDERED, that the Defendant's motion for

summary judgment is GRANTED, and the Plaintiff's motion for summary judgment is DENIED.  .

It is further ORDERED, that summary judgment shall be entered in favor of the Defendant.

_____
The Honorable Richard J. Leon
United States District Judge