UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GEORGE P. BYRUM, :
:
    Plaintiff, : Civil Action No.: 06-2102 (RMU)
:
v. : Re Document Nos.: 10, 25
:
DONALD WINTER, Secretary of the :
Department of the Navy :
:
    Defendant. :

# MEMORANDUM OPINION

### DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE DEFENDANT'S MOTION TO DISMISS; DENYING WITHOUT PREJUDICE THE DEFENDANT'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

The plaintiff is a white minister formerly employed as a Commander in the Navy Chaplain Corps. He commenced this action to challenge the recommendation of the Department of the Navy's Selective Early Retirement Board's ("SERB") that resulted in his involuntary retirement. The plaintiff now moves for summary judgment, arguing that the recommendation was based on official Navy policy giving preference to minorities and thus constituted reverse racial discrimination. The defendant, the Secretary of the Department of the Navy ("Secretary"), has filed a motion to dismiss or, in the alternative, a cross-motion for summary judgment,[1] arguing, *inter alia*, that this court lacks jurisdiction to entertain the plaintiff's claim because he failed to exhaust his administrative remedies prior to commencing this action. The court concurs that the plaintiff has failed to establish the court's subject matter jurisdiction over this matter and,

---

1     Although the defendant's motion is presented as a cross-motion for summary judgment, the court construes it as a motion to dismiss or, in the alternative, for summary judgment because of the jurisdictional arguments presented by the defendant in its motion.

as a result, grants the defendant's motion to dismiss.

## II. FACTUAL & PROCEDURAL BACKGROUND

In November 1995, the Secretary issued an instructional memorandum or "precept" that convened a selection board to consider whether Chaplain Corps servicemembers at the rank of Commander should be made eligible for selective early retirement. Admin. R. at 4. In the "supplemental guidance" attached to the precept, the Secretary stated in relevant part as follows:

> The Department of the Navy is dedicated to equality of treatment for all personnel without regard to race, creed, color, sex, or national origin. Aggressive commitment to equal opportunity is critical.
>
> (a) Many minority officers have been assigned involuntarily outside the traditional career development patterns, *i.e.*, recruiting, equal opportunity and specific billets requiring minorities. These assignments, though beneficial to the interests of the Navy, have resulted in those officers having career patterns different from officers who have been able to serve in their primary or warfare specialties. In making your determination of those officers who are best suited for retention, you must view such assignments as having the same value as assignments within the primary or warfare speciality.
>
> (b) The <u>1988 CNO Study Group Report on Equal Opportunity in Navy</u>, which is available to you, noted that minority officers who, prior to entering Navy, had limited interaction with a predominately majority environment, may take a longer time to adjust and, perform to the level of their contemporaries. This may result in initially lower fitness reports at the junior officer level (through 0-3) and a higher percentage of 'late bloomers' than their majority counterparts. You must consider this when evaluating a minority officer.
>
> (c) In evaluating the records of eligible officers, you should be aware that past discrimination may have operated to the disadvantage of minority officers. Such discrimination may have manifested itself in comparatively lower fitness reports. Equivalent performance by a minority officer and a non-minority officer may not have resulted in equivalent fitness reports. You must consider this when evaluating minority officers.

In August 1996, the plaintiff, a white minister who served as a Commander in the Chaplain Corps, was "involuntarily retired" in accordance with a recommendation of the SERB.

2

Compl. ¶ 4. In May 2002, almost six years after the SERB's decision forcing his involuntary retirement, the plaintiff applied to the Board for Correction of Naval Records ("BCNR"), arguing that the SERB had failed to consider some officers for early retirement who should have been considered before the plaintiff. Admin. R. at 2. After requesting and reviewing the comments and recommendation of the Office of the Judge Advocate General ("OJAG"), the BCNR denied the plaintiff's application in February 2003. *Id.* at 113-14.

The plaintiff subsequently submitted a petition to the BNCR for reconsideration of its decision, which the BCNR accepted in March 2003. *Id*. at 136-37, 165. In December 2003, the plaintiff amended his petition for reconsideration to include allegations that the SERB's decision forcing his early retirement had been guided by a "precept" which "established a preference for minority personnel." Pl.'s Mot. at 2; Admin. R. at 186-87. The plaintiff asked that the SERB decision be overturned "because the [precept] constituted illegal reverse racial discrimination." Pl.'s Mot. at 3; Admin. R. at 184-85.

The BCNR again requested comments and a recommendation from the OJAG. Admin. R. at 253. The OJAG acknowledged that other selection boards had used "[t]he practice of re-grading," which involved "taking the preliminary results of the selection board, and re-grading minority candidates where there [was] a discrepancy between the selection rates of minority and non-minority candidates." *Id.* at 263. The OJAG concluded, however, that "improper re-grading of minority candidates" had not occurred in the 1996 SERB decision and the controlling precept "did not instruct or even permit members to re-grade minority officer records." *Id.* at 255. The BCNR denied the plaintiff's petition for relief upon reconsideration in July 2004, determining that "the precept did not mandate preferential treatment for minorities, but merely encouraged fair and equitable consideration of all officers." *Id.* at 290-93.

3

In August 2004, the BCNR accepted the plaintiff's second petition for reconsideration, in which he alleged that the composition of the SERB that rendered the decision forcing the plaintiff's early retirement was contrary to Navy regulations and that the SERB had improperly selected him for early retirement based on criteria which did not apply to him. *Id.* at 420. The BCNR denied his second petition in March 2005. *Id.* at 651-53.

In May 2006, the plaintiff, through counsel, submitted a "pre-litigation letter" to the OJAG in which he asserted that he would be seeking judicial review of the BCNR's decisions denying his requested relief. *Id.* at 654. In the letter, the plaintiff offered to settle the matter, arguing that the Navy's policy demonstrated a preference for minorities that was illegal and therefore the Navy should "deem [the plaintiff] to have remained on active duty through the date of mandatory retirement by reason of age and to refer his record to a Special Selection Board to consider him for promotion to Captain." *Id*. at 655. The BCNR construed this letter as another request for relief upon reconsideration and forwarded it to the Navy's Assistant General Counsel ("AGC") for comment and a recommendation. *Id.* at 669.

The AGC determined that "a new [BCNR] panel should be expeditiously convened" to evaluate the contested language in the SERB precept and the effect, if any, that it had on the plaintiff. *Id.* at 670; *see also* Pl.'s Mot. at 5. The AGC also directed the BCNR to seek an advisory opinion from the OJAG and asked that the BCNR's recommendation be forwarded to the AGC for "final action." Admin. R. at 670.

In its advisory opinion, the OJAG recommended that the BCNR deny the plaintiff's reconsideration request because the plaintiff had not presented any "new and material evidence or other matter not previously considered by [the] BCNR." *Id.* at 676. More specifically, the OJAG determined that the plaintiff had not provided any evidence to support his allegation that

4

the challenged precept "caused his selection for involuntary retirement." *Id.*

On December 8, 2006, the BCNR issued its decision, adopting the OJAG's recommendation and denying the plaintiff's request for relief upon reconsideration. Pl.'s Mot. at 5; *see also* Admin. R. at 691-93. The BCNR concluded that the plaintiff had provided no evidence, such as statistics, which would "show that the precept language [had] disadvantaged [him]." Admin. R. at 692. The BCNR also determined that "[b]efore applying to this Board, [the plaintiff had] exhausted all administrative remedies which were available under existing law and regulations within the Department of the Navy." *Id.* at 692. The AGC then reviewed and approved the BCNR's decision. *Id.* at 693.

On December 11, 2006, the plaintiff commenced this action, requesting that the court set aside the BCNR's decision and order the defendant to "reinstate him on active duty; correct his record to show that he was never retired . . . by expunging all reference to the SERB; and cause him to be considered for promotion to Captain." *See generally* Compl. at 5. The plaintiff characterizes his complaint as strictly an action under the Administrative Procedure Act and explains that he is not seeking direct review of the SERB decision, but rather, review of the BNCR's decision to deny him relief. Pl.'s Mot. at 7; Pl.'s Reply at 3.

A few months after the plaintiff commenced this action, the defendant moved to dismiss the complaint, arguing that the court lacked jurisdiction over the plaintiff's claims. *See generally* Def.'s Mot. to Dismiss. In response, the plaintiff filed a motion for summary judgment and opposition to the defendant's motion to dismiss, *see generally* Pl.'s Mot. for Summ. J. & Opp'n Def.'s Mot. to Dismiss ("Pl.'s Mot."). The defendant's motion to dismiss was summarily denied

by another member of this court to whom this case was originally assigned.[2]  *See* Minute Order (Jan. 8, 2008).  The defendant proceeded to file another motion to dismiss or, in the alternative, cross-motion for summary judgment, renewing its jurisdictional arguments.  *See generally* Def.'s Opp'n to Pl.'s Mot. & Cross-Mot. for Summ. J. ("Def.'s Cross-Mot.").  With the parties' cross-motions ripe for review, the court turns to the parties' arguments and the applicable legal standards.

### III.  ANALYSIS

#### A.  Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).  On a motion to

---

[2]     This case was originally assigned to another member of this court, but was reassigned to the undersigned judge after the defendant filed a Notice of a Related Case indicating that the plaintiff was also a named plaintiff in *In re Navy Chaplaincy*, Miscellaneous Action 07-269.  *See* Notice of Related Case.  While the case transfer was pending, the original judge stayed the proceedings in light of a pending interlocutory appeal in the related case.  *See* Minute Order (Mar. 10, 2008); Joint Mot. to Lift Stay.  The parties eventually agreed that the cases were not related and asked to proceed with the briefing schedule, *see* Joint Mot. to Lift Stay, a request which the court granted.  Minute Order (July 3, 2008).

6

dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

### B. The Court Lacks Jurisdiction Over the Plaintiff's APA Claim

The defendant asserts that the court lacks jurisdiction over the plaintiff's claim because the plaintiff failed to exhaust his administrative remedies. Def.'s Cross-Mot. at 7-9. More specifically, the defendant argues that the plaintiff failed to request that a "special board" review the 1996 SERB decision, in violation of 10 U.S.C. § 1558(f)(1), and that the plaintiff's failure to exhaust his administrative remedies deprives the court of jurisdiction over his claim. *Id.* at 8.

The plaintiff does not dispute that he was required to "exhaust[] a 'special board' remedy as a precondition to a judicial challenge to a SERB" decision, but argues that he satisfied this requirement by obtaining the BCNR's review of the SERB's recommendation. Pl.'s Mot. at 6.

7

The plaintiff asserts that he requested that his case be referred to a special selection board to consider his retroactive promotion to Captain and maintains that the BCNR board that entertained his request constituted a "'special board' for [special selection board] purposes." *Id.* at 2. The plaintiff also points out that under § 1558(b)(1)(B), the BCNR can serve as such a "special board" and that "the BCNR itself explicitly found that [the plaintiff] had exhausted his remedies" and "saw no impediment to its consideration of the claim." *Id.* at 6-7. Lastly, the plaintiff contends that the defendant's argument comes "much too late," suggesting that the defendant waived any objection based on exhaustion of administrative remedies by not raising such an objection previously at the administrative level. Pl.'s Reply at 3.

"[A]n aggrieved military officer must first exhaust his administrative remedies . . . prior to litigating his claims in federal court." *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) (holding that "settled principles of law requiring exhaustion of administrative remedies" applied to an officer's claim seeking to correct her military record based on purported constitutional violations by the Army). Indeed, 10 U.S.C. § 1558(f)(1) provides that

> [a] person seeking to challenge an action or recommendation of a *selection* board, or an action taken by the Secretary of the military department concerned on the report of a selection board, is not entitled to relief in any judicial proceeding unless the action or recommendation has first been considered by a *special* board under this section or the Secretary concerned has denied the convening of such a board for such consideration.

10 U.S.C. § 1558(f)(1) (emphasis added). Thus, only after a special board has considered the plaintiff's claim or, in the alternative, the Secretary has denied the plaintiff consideration of his claim by a special board, can the court review the plaintiff's claim and provide appropriate relief. *Id.* § 1558(f)(2)-(3) (setting forth the standards for judicial review of the Secretary's decision not to convene a special board and the standards to review the recommendation by a special board); *see also Martinez v. United States*, 333 F.3d 1295, 1305 (Fed. Cir. 2003) (observing that "[w]hen

8

Congress expressly requires exhaustion of administrative remedies before suit is brought, exhaustion is, of course, mandatory"); *Christensen v. United States*, 60 Fed. Cl. 19 (Fed. Cl. 2004) (noting that 10 U.S.C. § 1558 requires that the military service determine whether "to refer correction of an erroneous decision to retire an officer to a special board"); *Cotrich v. Nicholson*, 2006 WL 3842112, at *2 (M.D. Fla. Dec. 19, 2006) (dismissing the case, *inter alia*, for lack of jurisdiction due to the plaintiff's failure to exhaust the administrative procedures in § 1558).

A "special board" is defined as "a board that the Secretary . . . convenes under any authority to consider whether to recommend a person for . . . . retirement." 10 U.S.C. § 1558(b)(1). The "term ['special board'] includes a board for the correction of military records . . . if designated as a special board by the Secretary." *Id.*

Like a "special board," a "selection board" is a board convened by the Secretary to recommend persons for retirement. *Id.* § 1558(b)(2)(A). A "selection board," however, "does not include . . . [a] special board." *Id.* § 1558(b)(2)(A)-(B). Indeed, the statute indicates that at least one purpose of a special board is to review those decisions issued by a selection board, suggesting that the two are wholly separate bodies. *See* § 1558(f)(1).

To add further complication, there is a third type of review board – a "special selection board" – that may be convened in personnel challenges brought in the military context. A "special selection board" is a board convened to consider an officer's eligibility for a promotion, 10 U.S.C. § 628, or to review the decision by a selection board not to recommend an officer (or a former officer) for promotion, 10 U.S.C. § 14502. Again, a special selection board is separate and distinct from both a selection board; *id.* § 1558(b)(2)(B)(iii) (excluding a special selection board from the definition of a selection board), and a special board, *id.* § 1558(b)(1)(C) (excluding a special selection board from the definition of a special board).

9

The parties agree that the special board requirement set forth in § 1558(f) applies to the plaintiff's claims.³ Pl.'s Mot. at 6; Def.'s Reply at 4. Therefore, the plaintiff, as "[a] person seeking to challenge an action or recommendation of the [SERB]," must demonstrate that he applied for a special board under § 1558(f) before judicial review becomes available to him. 10 U.S.C. § 1558(f). Yet the plaintiff has provided no indication that he requested that the Secretary convene such a board to review the 1996 SERB decision at issue or that a "special board" was ever convened. *See generally* Pl.'s Mot.; Pl.'s Reply. Although the plaintiff asserts that his request for a special selection board constituted a request for a special board to review the 1996 SERB decision, *see* Pl.'s Reply at 2, the law is clear that a special selection board is a distinct and separate entity from a special board.⁴ *See* 10 U.S.C. § 1558(b)(2)(A)-(B). Nor does it appear that the Secretary ever designated the BCNR to serve as a "special board" to review the 1996 SERB decision, contrary to the plaintiff's assertions. *See* 10 U.S.C. § 1558(b)(1)(B) (defining a special board to include a board for the correction of military records, such as the BCNR, "if designated as a special board by the Secretary"). Because a special selection board does not constitute a special board and because the record does not indicate that the Secretary

---

3   Notably, the plaintiff does not assert that the exhaustion of such a requirement would have been futile or that the special board could not have provided adequate relief. *See Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) (recognizing that "the exhaustion doctrine is subject to exceptions, even in the context of suits alleging wrongs suffered incident to military service" but declining to consider such exceptions because "no reason ha[d] been advanced to suggest that the [Military] Board lacks the power to provide [the plaintiff] with complete relief or that it would not fairly consider all her claims"). Nor does the plaintiff argue that the court retains jurisdiction under 10 U.S.C. § 1558(g), which provides that the court has jurisdiction to "determine the validity of any law, regulation, or policy relating to selection boards," notwithstanding the language of § 1558(f). 10 U.S.C. § 1558(g). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that it is the plaintiff's burden to establish by a preponderance of the evidence that the court has subject matter jurisdiction).

4   The plaintiff clearly understood that a special selection board is convened for the purpose of reviewing a promotion (as opposed to a retirement) recommendation, as he expressly requested to have his records referred "to a Special Selection Board to consider him for *promotion* to Captain." Admin. R. at 655 (emphasis added).

designated the BCNR as a special board, the plaintiff has not demonstrated that a special board was ever requested or convened to review the 1996 SERB decision.

Similarly, the BCNR's determination that the plaintiff exhausted all of his administrative remedies does not demonstrate that the plaintiff satisfied the special board requirement. Pl.'s Reply at 2. Although the BCNR stated in its decision that "[b]efore applying to this Board, [the plaintiff] exhausted all administrative remedies which were available under existing law and regulations within the Department of the Navy," Admin. R. at 692, that statement confirms only that the plaintiff had aptly exhausted the remedies necessary for the BCNR to hear his claim. Indeed, the BCNR had no reason to comment on whether the plaintiff had exhausted those administrative remedies that must be satisfied prior to seeking judicial review. Nor has the plaintiff offered any support for his contention that the BCNR's determination that he exhausted his administrative remedies would in any way bind this court, particularly when Congress has stated that a special board exhaustion requirement must be met in order to allow this court to grant relief. 10 U.S.C. § 1558(f); *see also* FED. R. CIV. P. 12(h) (authorizing the court to dismiss an action *sua sponte* if "at any time" it determines that it lacks subject-matter jurisdiction). Accordingly, the court is not persuaded that the plaintiff fulfilled the "special board" administrative requirement of § 1558(f) based solely on the BCNR's determination that the plaintiff had exhausted all of his administrative remedies prior to seeking review at the BCNR.

The plaintiff's final argument is that the defendant waived any argument with regard to his purported failure exhaust his administrative remedies because it did not previously raise the issue before the BCNR. Pl.'s Reply at 3. This argument too falls flat. First, as the defendant plainly had no obligation to argue before the BCNR that a federal court in some future action would lack jurisdiction because the plaintiff had not exhausted his administrative remedies under

§ 1558(f). Moreover, "it is this court's responsibility to consider subject matter [jurisdiction] even if the parties fail to raise the issue." *Ctr. for Nuclear Responsibility, Inc. v. U.S. Nuclear Regulatory Comm'n*, 781 F.2d 935, 944 (D.C. Cir. 1986) (citing FED. R. CIV. P. 12(h)). Thus, the defendant could not have waived the plaintiff's exhaustion requirement found in § 1558(f) because meeting that requirement is necessary to invest this court with proper jurisdiction.[5]

In sum, the plaintiff failed to exhaust the requirement of § 1558(f) by requesting that the Secretary convene a special board to consider the 1996 SERB decision at issue in his claim. Because the plaintiff does not dispute that he was required to have his SERB's 1996 decision reviewed by a special board prior to seeking judicial review in this court and because he does not demonstrate that he fulfilled this exhaustion requirement, the court lacks jurisdiction to hear the plaintiff's claim. Accordingly, the court grants the defendant's motion and dismisses without prejudice the plaintiff's complaint for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss, denies without prejudice the defendant's motion, in the alternative, for summary judgment, and denies the plaintiff's motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 10th day of May, 2011.

RICARDO M. URBINA
United States District Judge

---

[5] The plaintiff also notes that defendant argued in their previously denied motion to dismiss that this case should be dismissed for failure to exhaust administrative remedies. Pl.'s Reply at 1. Under Federal Rule of Civil Procedure 12(h), however, this court is required to dismiss an action if "at any time" it determines that it lacks subject matter jurisdiction. FED. R. CIV. P. 12(h). Because the court concludes that the plaintiff failed to exhaust this administrative remedy and is thus by statute not "entitled to judicial relief," the court lacks subject matter jurisdiction and must dismiss the action notwithstanding the previously issued minute order summarily denying the defendant's motion to dismiss.